# UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| MAIN STREET AMERICA ASSURANCE COMPANY, and NGM INSURANCE COMPANY,   Plaintiffs <br><br> v. <br><br> ADVANCED PLASTERING, INC.   Defendant | NO. 2:22-cv-03805-TJS |

**MEMORANDUM OF LAW IN SUPPORT OF ADVANCED PLASTERING, INC.'S MOTION TO DISMISS PLAINTIFFS' COMPLAINT PURSUANT TO F.R.C.P 12(b)(6) FOR FAILURE TO STATE A CLAIM OR IN THE ALTERNATIVE FOR THE COURT TO DECLINE JURISDICTION AND/OR DISMISS PURSUANT TO F.R.C.P. 12(b)(1)**

## I.    BACKGROUND

Defendant Advanced Plastering, Inc. ("Advanced") moves to dismiss the Declaratory Judgment Complaint ("Declaratory Complaint") filed by Plaintiffs Main Street America Assurance Company ("MSACC") and NGM Insurance Company ("NGM") pursuant to F.R.C.P. 12(b)(6) for failure to state a claim. In the alternative, pursuant to F.R.C.P. 12(b)(1), Advanced respectfully suggests that this Court should decline to exercise jurisdiction over this action due to the lack of any federal interest, the application of purely state law to an insurance dispute, and the pendency of state court proceedings in the Delaware County Court of Common Pleas, Commonwealth of Pennsylvania at docket number 2016-11177 (the "State Court Action" and also referred to in the Plaintiffs' Complaint as the "Underlying Lawsuit"). Finally, in all events, the matter should be dismissed as to any claims relating to indemnification as those claims are not yet ripe.

The Homeowners Reserve Community Association (the "Association") commenced the State Court Action by writ of summons filed on December 20, 2016 and then its original complaint on January 10, 2017, seeking recovery of damages allegedly arising out of the construction and delivery of approximately one hundred homes individually owned by the members of the Association in a residential community known as "Haverford Reserve" located in Delaware County, Pennsylvania. The suit named the builder and developers of the Haverford Reserve community as defendants (collectively the "Original Contractor Defendants").[1] Thereafter an Amended Complaint was filed and then a Second Amended Complaint on April 12, 2001, which is the current complaint at issue in the State Court Action. This Second Amended Complaint is attached as Exhibit "D" to the Plaintiffs' Declaratory Complaint.

Advanced was initially brought into the State Court Action by joinder complaint filed April 7, 2021, which complaint was then amended on May 3, 2021 (the "First Amended Joinder Complaint"). The First Amended Joinder Complaint is attached by Plaintiffs as Exhibit "E" to the Declaratory Complaint.[2]

Plaintiffs MSACC and NGM have brought this action seeking a declaration from this Court that they are no longer obligated to defend or indemnify Advanced in the State Court Action filed by the Haverford Reserve Community Association. Those two insurers refer to themselves collectively as "Main Street" in their Declaratory Complaint and that designation is followed herein.

## II.     FACTS AS PLED BY PLAINTIFFS

In the State Court Action, the Association seeks damages caused by alleged deficiencies,

---

[1] The Original Contractor Defendants are Haverford Reserve, LP, Haverford Reserve GP, LLC, The Goldenberg Group, Inc., Guidi Homes at Haverford Reserve, LLC and Guidi Homes, Inc

[2] A "Second Amended Joinder Complaint" was later filed by the original defendants in the State Court Action against several more subcontractors.

nonconformities, inconsistent design and construction resulting in water and moisture infiltration and damage to the residences and various components of those residence at Haverford Reserve. The claims include Breach of the Pennsylvania Planned Community Act codified at 68 Pa.C.S.A. §5101, et. seq (Counts I and II), Breach of Covenant (Count III), Negligent Construction (Count IV), Negligent Supervision (Count V), Violation of the Unfair Trade Practices Act codified at 73 P.S. §201-1 *et seq*. (Count VI), Negligent Misrepresentation (Count VII) and Punitive Damages (Count VIII). (Declaratory Complaint at ¶38 and Exhibit "D" thereto).

On or about May 3, 2021, the Original Contractor Defendants filed the First Amended Joinder complaint naming certain subcontractors, including Advanced, as additional defendants in the State Court Action. (Declaratory Complaint at ¶39). That joinder complaint alleges claims against Advanced for breach of contract, contribution and common law indemnity, contractual indemnity, beach of express warranty, negligence and negligent misrepresentation arising out of the damages claims by the Association regarding the Homeowners' houses (Declaratory Complaint at ¶40-41 and Exhibit "E" thereto). The joinder complaint specifically alleges that the Additional Defendants (including Advanced) were responsible for the workmanship and inspection of workmanship (Declaratory Complaint, Exhibit "E", ¶25). The joinder complaint alleges that any consequential damage related to the alleged defective construction was "neither expected nor intended from the standpoint of the Additional Defendants" (Declaratory Complaint, Exhibit "E", ¶30).

Plaintiffs allege that general liability insurance was provided from MSAAC and "umbrella" insurance policies from NGM to Advanced during the time periods of August 6, 2010 to September 4, 2015 (Declaratory Complaint at ¶14,18). The MSAAC policies all allegedly include the same Business Coverage Form (Declaratory Complaint at ¶15). Five

umbrella policies were issued by NGM under two different Coverage Forms (Declaratory Complaint at ¶19, 22). The MSAAC policies and the NGM Policies are collectively referred to as the "Policies".  Main Street now seeks to avoid any obligations in all of the Policies.

The Declaratory Complaint sets forth the obligations under the MSAAC Policy as "those sums that the insured becomes legally obligated to pay as damages because of "bodily injury", "property damage" or "personal and advertising injury" to which this insurance applies (Declaratory Complaint at ¶16). In turn, the Complaint alleges that policy defines "property damage" as ""[p]hysical injury to tangible property, including all resultant loss of use of that property," and defines "occurrence" as "an accident, including continuous or repeated exposure to substantially the same general harmful conditions." (Declaratory Complaint at ¶17).

As to the umbrella policies issues by NGM, the Declaratory Complaint recites the provisions of those policies as also being restricted to bodily injury and property damage but only if the same are caused by an occurrence taking place in the coverage territory (Declaratory Complaint at ¶20).[3] The First NGM Umbrella Policies[4]  contain the following definition of property damage: "[p]hysical injury to tangible property, including all resultant loss of use of that property," and defines "occurrence" as "an accident, including continuous or repeated exposure to substantially the same general harmful conditions." (Declaratory Complaint at ¶21). The Declaratory Complaint alleges that the Second NGM Policy form found in the fourth and fifth policies is similar as to the foregoing definitions (Declaratory Complaint at ¶25).

---

[3] As an umbrella policy, Plaintiffs also plead that the NGM Policy applies to the net loss of the Insured (Declaratory Complaint at paragraph 20.

[4] As defined by the Declaratory Complaint the reference to First NGM Policies means the first three of five NGM policies and the Second NGM Policies refers to the other two NGM policies.

The Declaratory Complaint sets forth certain Exclusion provisions applicable to the Business Coverage Form (Declaratory Complaint at ¶26), which presumably refers to the MSAAC policies (Declaratory Complaint at ¶15). The Business Coverage Form exclusions cited to by the Plaintiffs include:

**b.  Contractual Liability**

"Bodily injury" or "property damage" for which the insured is obligated to pay damages by reason of the assumption of liability in a contract or agreement. This exclusion does not apply to liability for damages:

(1)  That the insured  would have in the absence of the contract or agreement; or

(2)  Assumed in a contract or agreement that is an "insured contract", provided the "bodily injury" or "property damage" occurs subsequent to the execution of the contract or agreement. Solely for the purposes o f liability assumed in an "insured contract", reasonable attorney fees and necessary litigation expenses incurred by or for a party other than an insured are deemed to be damages because of "bodily injury" or "property damage", provided:

(a)  Liability to such party for, or for the cost of, that party's defense has also been assumed in the same "insured contract"; and

(b)  Such attorney fees and litigation expenses are for defense of that party against a civil or alternative dispute resolution proceeding in which  damages to w h i c h  this  insurance applies are alleged.

.......

**m.  Damage to Your Work**

"Property damage" to "your work" arising out of it or any part of it and included in the "products-completed operations hazard".

This exclusion does not apply if the damaged work or the work out of which the damage arises was performed on your behalf by a subcontractor.

The Plaintiffs allege that the First and Second Umbrella Policies contain the exclusion provisions identical to those cited in the MSAAC policies cited above, meaning the Main Street Policies all have the same Businessowners Coverage exclusions that the MSAAC policies are alleged to have (Declaratory Complaint ¶27).

The Declaratory Complaint also lists two other exclusions that are limited to the MSAAC policies. These are the "Fungi or Bacteria Exclusion" endorsement and the "EIFS Exclusion" (with the EIFS exclusion limited to the last four of the five MSAAC policies). (Declaratory Complaint ¶s 28, 29).

Plaintiffs then allege that Main Street "has evaluated this claim" and "concluded that there is no coverage afforded to Advanced Plastering in connection with the Underlying Lawsuit under the Main Street Policies". The Complaint further alleges that "Advanced disputes this conclusion". (Declaratory Complaint at ¶ 43).[5]

Several grounds are set forth in the Declaratory Complaint to allegedly support the claim by Main Street that no coverage is owed. First, Main Steet argues that the Underlying Lawsuit does not allege "property damage" caused by an "occurrence" (Declaratory Complaint, ¶44). Second, the Declaratory Complaint alleges that no property damage occurred in the time periods that the Policies were in effect (Declaratory Complaint, ¶45). Third, Main Street argues that the Policies contain unspecified "Form Exclusions" or "other provisions" that preclude or limit coverage" (Declaratory Complaint, ¶s 46, 48). Finally, MSAAC argues, without analysis, that

---

[5] Main Street pleads that they are currently providing a defense to Advanced in the State Court Action "under a full reservation of rights" (Declaratory Complaint at ¶5).

the Fungi or Bacteria Exclusions and the EIFS Exclusion preclude or limit coverage (Declaratory Complaint, ¶47). This last argument is apparently limited to the MSAAC policies and not the NGM policies.

The Declaratory Complaint specifically alleges that its position results from a review of the Underlying Lawsuit. The Declaratory Complaint sets forth its review in paragraphs 37-41. In paragraph 37 of its the Declaratory Complaint, Main Street actually picks and chooses certain quoted sections of the Second Amended Complaint. To wit:

> 37.   The Second Amended Complaint alleges because of "construction defects" in the stone and stucco veneers of approximately 100 homes, they are "beset with moisture intrusion issues and excessive damage." This damage was largely caused by "subcontractors" whose "work was performed negligently." These construction defects were "latent." They "were not disclosed by the [contractors who built the homes, and discovering them] required the services of skilled professional engineers to locate and identify in homes." Indeed, because the façade-related defects "were hidden behind the exterior façade/cladding of the building," they "were not discovered until after the drafting and filing of the original complaint." And all other defects are "latent in nature as well." Homeowners and the association learned of the damage through a series of expert inspections of homes, dated from July 30, 2018 to September 28, 2020. Homeowners expect that a remediation project to stop the moisture intrusion and repair any related damage will cost about $10 million.

The review of the pleadings in the Underlying Lawsuit is essentially limited to paragraphs 37-41 of the Declaratory Complaint before Main Street baldly alleges in paragraph 43 of its complaint that it has "evaluated this claim and concluded that there is no coverage to Advanced Plastering" in the Underlying Lawsuit.

## III.   ARGUMENT

### A.   Standard of review for a Motion to Dismiss Pursuant to Rules 12(b)(1) and Rule 12(b)(6)

This Honorable Court has set forth the legal standard for a motion to dismiss pursuant to

Rule 12(b)(1) as follows:

> A motion to dismiss pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure tests the legal sufficiency of the complaint. *See Markowitz v. Ne. Land Co.*, 906 F.2d 100, 103 (3d Cir. 1990); *Sturm v. Clark*, 835 F.2d 1009, 1011 (3d Cir. 1987). Dismissal for failure to state a claim is appropriate when it clearly appears that the plaintiff can prove no set of facts in support of the claim which would entitle him to relief. *See Conley v. Gibson*, 355 U.S. 41, 45-46, 78 S. Ct. 99, 2 L. Ed. 2d 80 (1957); *Robb v. Philadelphia*, 733 F.2d 286, 290 (3d Cir. 1984). In deciding a motion to dismiss pursuant to Rule 12(b)(6), all facts alleged in the complaint must be accepted as true. *Malia v. Gen. Elec. Co.*, 23 F.3d 828, 830 (3d Cir. 1994). A court, however, need not credit conclusory allegations or legal conclusions in deciding a motion to dismiss. *See Gen. Motors Corp. v. New A.C. Chevrolet, Inc.*, 263 F.3d 296, 333 (3d Cir. 2001); *Morse v. Lower Merion School Dist.*, 132 F.3d 902, 906 (3d Cir. 1997). A claim may be dismissed when the facts alleged, and the reasonable inferences therefrom are legally insufficient to support the relief sought. *See Pennsylvania ex rel. Zimmerman v. PepsiCo., Inc.*, 836 F.2d 173, 179 (3d Cir. 1988).

*Magnum v. Archdiocese of Phila.*, 2006 U.S. Dist. LEXIS 84123, 4-6 (E.D. Pa. Nov. 17, 2006)

(Footnote omitted), *aff'd,* 253 F. App'x 224 (3d Cir. 2007). As stated by the Sixth Circuit:

> [W]e are not holding the pleader to an impossibly high standard; we recognize the policies behind Rule 8 and the concept of notice pleading. A plaintiff will not be thrown out of court for failing to plead facts in support of every arcane element of his claim. But when a complaint omits facts that, if they existed, would clearly dominate the case, it seems fair to assume that those facts do not exist.

*Scheid v. Fanny Farmer Candy Shops, Inc.*, 859 F.2d 434, 437 (6th Cir. 1988); *see also Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 548 (2007) (the United States Supreme Court required the now accepted standard that the pleader must allege sufficient facts as to each claim such that it is "plausible on its face.") *Twombly* requires that a pleader allege <u>facts</u> which "raise a right to relief above the speculative level." *Id.* at 555.

A challenge to the District Court's Subject Matter Jurisdiction pursuant to Rule F.R.C.P 12(b)(1), where the Moving Party asks the District Court to refrain from exercising jurisdiction in a Declaratory Judgment Action, is a substantive challenge to subject matter jurisdiction and provides the District Court broad discretion. *Wilton v. Seven Falls Co.*, 515 U.S. 277, 282, 115 S. Ct. 2137, 2140, 132 L. Ed. 2d 214 (1995) (district court has broad discretion in determining whether and when to entertain a declaratory judgment action even when the suit otherwise satisfied subject matter jurisdiction).

"A challenge to the ripeness of an action for adjudication is appropriately brought as a motion to dismiss for lack of subject matter jurisdiction." *Save Ardmore Coal. v. Lower Merion Twp.*, 419 F. Supp. 2d 663, 669 (E.D. Pa. 2005) (citing 5B Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure § 1350 (3d ed. 2004) ).  First Specialty Ins. Corp. v. Hudson Palmer Homes, Inc., No. CV 17-5732, 2018 WL 6002318, at *2 (E.D. Pa. Nov. 14, 2018).

**B.     The Second Amended Complaint and the Joinder Complaint   in the Underlying Lawsuit Together Allege Sufficient Facts to Support Property Damage Claims Under the Policies Constituting Occurrences Such that Main Street Has Failed to State a Plausible Claim for Declaratory Judgment**

In order to survive a Motion to Dismiss under Rule 12(b)(6), Main Street needs to plead facts such that no duty to defend or indemnify is plausible under the Policies based on the facts alleged in the Underlying Lawsuit. "As long as the [underlying] complaint 'might or might not' fall within the policy's coverage, the insurance company is obliged to defend." *Netherlands Ins. Co. v. Butler Area Sch. Dist.*, 256 F. Supp. 3d 600, 616 (W.D. Pa. 2017) *citing American and Foreign Ins. Co. v. Jerry's Sport Center, Inc.*, 606 Pa. 584, 609, 2 A.3d 526 (2010). A review of the facts alleges in the Underlying Lawsuit and the provisions of the Policies demonstrates that Main Street has not established that there currently is no plausible duty to defend.

1.     **The Main Street Policies Definition of Property Damage Does Not Exclude all Damage Asserted by the Association**

Main Street argues that the claims in the Underlying Lawsuit are not "property damage" caused by an "occurrence" and also that some of the damages sought in the Underlying Lawsuit are excluded from coverage by the Form Exclusions, the Fungi or Bacteria Exclusion and the EIFS Exclusion (Declaratory Complaint ¶¶44, 50, 51). However, as set forth below, the claims in the Underlying Litigation are simply not as narrow or clear cut as Main Street would like in order to make such a determination at this stage.

a.     **Main Street's Duty to Defend is Broad and Exists Until Coverage is Precluded for any claim**

The Declaratory Complaint alleges that the Underlying Lawsuit does not allege property damage caused by an occurrence. The same Declaratory Complaint acknowledges that Main Street is currently providing a defense for Advanced under a reservation of rights (Declaratory Complaint ¶6). Under Pennsylvania law, it is the four corners of the complaint that must be reviewed such that a determination can be made as to coverage. The Pennsylvania Supreme Court has explained "[i]f the complaint filed against the insured avers facts which would support a recovery that is covered by the policy, it is the duty of the insurer to defend until such time as the claim is confined to a recovery that the policy does not cover." _Erie Ins. Exch. v. Transamerica Ins. Co._, 533 A.2d 1363, 1368 (Pa. 1987). As long as a complaint alleges an injury which may be within the scope of the policy, the insurer must defend its insured until the claim is confined to a recovery the policy does not cover. _Erie Ins. Exchange v. Fidler,_ 808 A.2d 587, 590 (Pa.Super.2002). As such, the duty to defend is "determined _solely_ by the allegations of the complaint in the [underlying] action." _Kvaerner Metals Div. of Kvaerner U.S., Inc. v. Commercial Union Ins. Co._, 908 A.2d 888, 896 (Pa. 2006) (emphasis in original). Moreover, in determining whether an insurer's duties are triggered, the factual allegations in the underlying complaint are taken as true and liberally

construed in favor of the insured. See _Indalex Inc. v. National Union Fire Ins. Co. of Pittsburgh,_ 83 A.3d 418, 421 (Pa.Super.2013).

Thus, the insurer has a duty to defend that is only terminated when the insurer has confined the claim to a recovery that is not covered by the policy. See _General Acc. Ins. Co. of America v. Allen,_ 547 Pa. 693, 692 A.2d 1089, 1095 (1997) ("If the complaint against the insured avers facts that would support a recovery covered by the policy, then coverage is triggered, and the insurer has a duty to defend until such time that the claim is confined to a recovery that the policy does not cover."). As the Third Circuit Court of Appeals put the matter in its recent decision in _Vitamin Energy, LLC v. Evanston Insurance Company_ "the question for us is whether _a_ claim against an insured is potentially covered, not whether the most salient claim is potentially covered." (Italics in original.) _Vitamin Energy, LLC v. Evanston Ins. Co.,_ 22 F.4th 386, 20-3461, 2022 WL 39839 (3d Cir. Jan. 5, 2022).

> **b.    The Underlying Lawsuit Alleges Facts Sufficient to Find Property Damage and an Occurrence**

Main Street argues that there has been no property damage caused by an occurrence. This exact argument was already made in a strikingly similar case in this same Court in _Merchants Insurance Co. v. Blackwater Stucco, Inc. et al._ 2010WL 11710941 (E.D.Pa. 2010). In _Merchants_, the insurer Merchants filed a Declaratory Action seeking a ruling that the general liability policy issued to Blackwater Stucco did not cover the stucco work Blackwater performed for homeowners in Chester County, Pennsylvania and that even if it did, the homeowners did not discover the damage until after the policy expired. Merchants alleged that it had no duty to defend or indemnify Blackwater in the underlying state court action in Chester County. Merchants argued the same thing that Main Street argues in the present case – that the underlying state court claim by the homeowner was premised on faulty workmanship, which cannot be the basis for an occurrence.

11

The Eastern District Court found the legal argument lacking because the law was not clear on this issue:

> Pennsylvania law governing this dispute is not clear. Merchants argues that the law governing the coverage questions presented here was resolved in <u>Kvaerner Metals Div. of Kvaerner U.S., Inc. v. Commercial Union Ins. Co.</u>, 908 A.2d 888 (Pa. 2006) and <u>Millers Capital Ins. Co. v. Gambone Bros. Devel. Co.</u>, 941 A.2d 706 (Pa. Super. Ct. 2007). (Doc. No. 22 at 12-13.) I agree with Blackwater and the Spaeders that <u>Millers Capital</u> is the more apposite case. (Doc. No. 21 at 11; Doc. No. 24 at 4.) The gravamen of Merchants' position in the instant litigation is that the Spaeders' claims based upon faulty workmanship cannot be considered "occurrences" under Blackwater's liability policy, and that the "your work" exclusion precludes coverage for claims based on faulty workmanship. (Doc. No. 22 at 12.) The <u>Millers Capital</u> Court itself, however, expressed doubt with respect to these assertions:
>
>> [A] scenario could arise where a subcontractor confuses job orders and works on a part of a project on which it was not contracted to work; such a scenario would, in all likelihood, be considered an "occurrence" which would not be defined as faulty workmanship and would fit within the exception to the "your work" exclusion. We can also conjure up additional examples. A subcontractor could use materials on a job not contemplated by the contractual arrangement between the contractor and subcontractor. An error such as this could also be considered an "occurrence" and could fit within the exception to the "your work" exclusion.

<u>Merchants Insurance Co. v. Blackwater Stucco</u>, Inc. et al. 2010WL 11710941, *3. (**emphasis added**).

As the District Court in <u>Merchants</u> accurately predicted, the <u>Gambone</u> case was far from the last word by the Pennsylvania Appellate Courts after <u>Kvaerner</u> was decided by the Pennsylvania Supreme Court. <u>Gambone</u> was a case involving contract and breach of warranty claims, as opposed to tort claims, which the Second Amended Complaint and First Amended Joinder Complaint in the Underlying Lawsuit contain. This pleading difference was critical when the Superior Court once again took up its decision in <u>Gambone</u> six years later in <u>Indalex, Inc. v. National Union Fire Ins. Co. of Pittsburgh, PA,</u> 83 A.3d 418 (Pa. Super 2013).

In *Indalex*, the Superior Court concluded that an "occurrence" under a commercial umbrella liability policy issued to a contractor may arise in the context of defectively manufactured components used in a home, which resulted in alleged property damage and bodily injury to other parts of the home. Specifically, Indalex claimed that it was entitled to coverage under a commercial umbrella policy against claims made in underlying state court actions in Chester County, Pennsylvania. The underlying lawsuits claimed that Appellants' windows and doors were defectively designed or manufactured and resulted in water leakage that caused physical damage, such as mold and cracked walls, in addition to personal injury. The claims against Appellants were based on strict liability, negligence, breach of warranty, and breach of contract. The insurer argued, just as Plaintiffs are arguing here, that it was not required to provide coverage because under Pennsylvania law there was no occurrence triggering coverage, relying on *Gambone*. The Superior Court disagreed, stating:

> Upon review of the record in the instant matter, we are constrained to conclude that neither *Kvaerner, Gambone nor Abbott,* bar coverage. As acknowledged by the trial court in this case, the *Kvaerner* holding was limited to situations "where the underlying claims were for breach of contract and breach of warranty, and the only damages were to the [insured's] work product." Trial Court Opinion, 3/8/12, at 12. *Gambone* was a suit against a property developer and builder of homes, not a typical product manufacturer, with the "product" being the home itself. In the instant case, we have an off-the-shelf product that failed and allegedly caused property damage and personal injury. Also, the court in *Gambone* framed the issue as faulty workmanship in the application of the stucco and other items. Here, there are issues framed in terms of a bad product, which can be construed as an "active malfunction," and not merely bad workmanship.

*Indalex at* 83 A.3d 424.

Here, like in *Indalex,* the claims in the Underlying Lawsuit are not limited to breach of contract and breach of warranty, but contain negligence and other tort claims. In the State Court Action, both the Association and the Original Contractors assert claims for negligence. Also, like in *Indalex,* the Underlying Lawsuit pleadings cannot be read as being solely limited to defective

13

"workmanship" claims, but also can plausibly be read to include allegations that defective products were used by Advanced. To wit, in the Amended Joinder Complaint, the Original Contractor Defendants attach to the complaint a copy of the Master Agreement with Advanced. In that Master Agreement, Advanced is required to provide not just labor for workmanship, but also the materials for the "Work" it is providing:

A.    Subcontractor's Responsibilities.  The Subcontractor agrees to furnish all materials, labor, supervision, tools, equipment and supplies as necessary to provide your line of Work on various Projects authorized and defined in Subcontract Work Order(s) (hereinafter "Subcontract" or "Work Order") to be issued, executed, and made part of this Master Agreement (hereinafter "Agreement" or "Contract").  All Work shall be performed in accordance with the Contractor's Terms and Conditions, which are attached hereto and form part of this Agreement unless specifically modified by the Work Order(s).  It is understood that in the event that Subcontractor performs Work without a Subcontract Work Order on behalf of Contractor, at Contractor's specific direction, the terms of this Agreement shall be binding upon both parties until such time as these terms are modified or expanded by Work Order.  All work provided for in the above referenced Work Order(s), for and at the Project listed on the Work Order (hereinafter called the Project), shall be performed as shown and described in and in strict accordance with the Plans, Specifications, General Conditions, Special Conditions and Addenda thereto prepared by the Architect listed and with the terms and provisions of the General Contract between Contractor and the Owner (hereinafter "General Contract") listed and in strict accordance with the above-referenced Work Order(s), and the Exhibits annexed hereto and made a part hereof.  Subcontractor also agrees that any modification contained in any Work Order shall only apply to that particular Work Order and shall not apply to any other Work Order.  This Master Agreement, subject to the terms of Exhibit A, carries forward in perpetuity until modified by both parties, even if ownership of either company changes or the assets or liabilities of the company are assigned.  The price and schedule shall be kept and monitored separately for each Work Order, and each Work Order shall have a separate Schedule of Values, Change Order numbering, schedule, start and completion date, warranty requirements, Application for Payment, and retainage.  The language of this Agreement and the Contract Documents in whole shall apply to each Work Order.

*See Exhibit "B" to the First Amended Joinder Complaint attached as Exhibit "E" to the Declaratory Complaint (highlighting added).*

Among the components alleged by the Original Contractor Defendants to have been part of the Work provided by Advanced were the weather resistant barrier and flashings (both of which are obviously materials):

45.     Guidi Homes, Inc. had a written contract with Additional Defendant, Advanced Plastering, Inc. for work pertaining to various elements of the exterior wall system of certain homes including, but not limited to, elements of the exterior water management system such as weather resistant barrier elements and flashings and also stucco and veneer stone work that is allegedly at issue throughout the Community. A copy of the subject contract is attached hereto as Exhibit "B".

(Exhibit "E" of said Declaratory Complaint at paragraph 45).

In the First Amended Joinder Complaint, the Original Contractor Defendants plead that the various elements of the exterior of the homes were defective and that the subcontractors negligently performed their work. To wit, paragraph 78 of the Joinder Complaint alleges:

78.     Plaintiff's Second Amended Complaint claims that the various components comprising the various elements of the Community and the exterior envelopes of the homes within the Community were defective, and that subcontractors negligently performed their work, as detailed above.

Therefore, like in _Indalex_, the allegations against Advanced include not just allegations that Advanced provided defective labor (i.e., workmanship), but also that it supplied products that also were defective.

More recently, the Superior Court in _Pennsylvania Manufacturers Indemnity Company v. Pottstown_, 215 A.3d 1010 (2019) further limited the _Gambone_ holding by pointing out that in Gambone, the alleged property damage was to the product itself, namely the home:

In _Gambone Brothers_, this Court held that claims for water damage to houses that the insured had constructed did not allege an "occurrence" and were therefore not covered by its liability insurance policies. 941 A.2d at 708, 713-14. The Court held that the claims for damage to the houses were indistinguishable from the type of claim in _Kvaerner_ because they alleged faulty workmanship and damage to the insured's products themselves, the houses.

_Pennsylvania Manufacturers, 215 A.3d at 1016._ Finding that _Indalex_ was dispositive, the Superior

Court in _Pennsylvania Manufacturers_ wrote:

> In contrast, where the underlying claims allege that the insured's faulty work caused personal injury or an event that damaged **other property**, this Court has concluded that there was an "occurrence" and that the insurer had a duty to defend. _Indalex_, 83 A.3d at 425-26. In _Indalex_, the underlying actions alleged that the insureds supplied windows and doors that "were defectively designed or manufactured and resulted in water leakage that caused physical damage, such as mold and cracked walls, in addition to personal injury" and asserted claims based on strict tort liability, negligence, breach of warranty, and breach of contract. _Id._ at 419-20. This Court distinguished _Kvaerner_ and _Gambone Brothers_ on the ground that those cases involved coverage for damage to the product that the insured supplied, not personal injury or damage to **other property**, and held that because the underlying actions alleged "property loss, to property other than [the insureds'] products, and personal injury," the claims were for damages caused by an "occurrence." _Indalex_, 83 A.3d at 422-23, 426.

_Id_. at 1016, 1017. _**(emphasis added)**_.

In the case at bar, the allegations are that Advanced did work and supplied products that

damaged _other_ parts of the home and not the work and products themselves supplied by Advanced.

Unlike _Gambone_, Advanced was not the general contractor whose product was the home.  Finally,

unlike the _Gambone_ case, where Gambone's work was the entire home, here Advanced merely

supplied one part of the many that make up the home and the damage that is pled includes damage

to work not supplied by Advanced.

In the case at bar, even _Kvaerner_ acknowledged that damage caused to other work is a risk that is

intended to be insured by a liability policy:

> The risk intended to be insured [by commercial general liability policies] is the possibility that the goods, products or work of the insured, once relinquished and completed, will cause bodily injury or damage to property other than to the completed work itself and for which the insured by [sic] be found liable. The insured, as a source of goods or services, may be liable as a matter of contract law to make good on products or work which is defective or otherwise unsuitable because it is lacking in some capacity. This may even extend to an obligation to completely replace or rebuild the deficient work or product. This liability, however, is not what the coverages in question are designed to protect against.

> The coverage is for tort liability for physical damages to others and not for contractual liability of the insured for economic loss because the product or completed work is not that for which the damaged person bargained.

*Kvaerner* at 899 n.10, citing <u>Insurance Protection for Products Liability and Completed Operations; What Every Lawyer Should Know</u>, 50 Neb.L.Rev. 415, 441 (1971) (emphasis added). In the Underlying Lawsuit, the Association has claimed damage to property other than that of Advanced's own work. In turn, the Original Contractor Defendants have alleged that the defective work performed by Advanced included supplying materials  alleged to defective  (Declaratory Complaint,  Exhibit "E" at ¶s 45 and 78).

In addition, the pleadings in the Underlying Lawsuit allege that the work by Advanced was performed by subcontractors. The applicable joinder complaint filed by the Original Contractors in the Underlying Litigation pleads in multiple places that the work by Advanced was performed *solely* by subcontractors:

> 74.    The Defendants' work on the stone veneer foundation weep screed and entry stoops was performed solely by subcontractors hired by Defendants to do this work on their behalf, which work was performed negligently.   Said negligent work has further damaged the underlying components of the Units in the Community.

(Exhibit "E" to Declaratory Complaint at ¶ 74 of said Exhibit). See also additional ¶¶ 94, 105, 117, 119, 181).

While faulty workmanship by a contractor might reasonably be expected by that contractor to cause property damage down the road (and hence might not be understood to be an occurrence under the policy definition), the same cannot be said if the contractor did not perform the work itself. One contractor cannot control a subcontractor's negligence as it can its own.

Consistent with this reasoning, the form language cited by Main Street in its Declaratory Complaint under Exclusions in the MSAAC Policy for "property damage" makes clear that the exclusion for property damage to the contractor's work is not applicable when the damage alleged to have occurred was to work performed by a subcontractor. To wit:

> **m. Damage to Your Work**
>
> "Property damage" to "your work" arising out of it or any part of it and included in the "products-completed operations hazard".
>
> **This exclusion does not apply if the damaged work or the work out of which the damage arises was performed on your behalf by a subcontractor. (emphasis added)**

This language on subcontractors, which Main Street agrees appears in all of the Policies at issue, indicates that while the policy generally excludes property damage to work performed by the contractor in a product completed operation (such as the new homes at Haverford Reserve), the exclusion of coverage will not apply if the work by the contractor was supplied to the contractor by a subcontractor. As set forth above, faulty workmanship performed by another party has different degree of fortuity than faulty workmanship by an insured under a policy, particularly where the underlying allegations are in tort.

In *Limbach Co. v. Zurich Am. Ins. Co*. 396 F.3rd 358, 363 (4th Cir. 2005) (applying Pennsylvania law), Limbach Company subcontracted with Morse Diesel/Essex to install a prefabricated, insulated, underground steam line. Limbach in turn subcontracted with Legacy to excavate the trench for the pipe. Limbach improperly unpacked the steam pipe, which caused a leak in the steam line and in turn damage to the insulation and landscaping. The Court held that the cost of repairing the damage was not excluded based on the subcontractor exception in the

18

Your Work exclusion, even though the faulty work was performed by Limbach.  This is because the work performed by Limbach damaged work performed by others.

Here, the work alleged to be performed by Advanced is the stucco system, but the damage alleged includes sheathing and other parts of the homes that did not constitute Advanced's own work. The allegations are also not limited to simply claiming defective workmanship with damage pursuant to a breach of contract theory alone. Rather, the pleadings included allegations that Advanced negligently caused damage to other Work through the use of defective products used as part of the Work provided by Advanced and that Advanced's had a duty to inspect.  At the very least, the First Amended Joinder Complaint "might or might not" fall within the policy's coverage, meaning the insurance company is obliged to defend. See *Netherlands Ins. Co. v. Butler Area Sch. Dist.*, *supra*.  Because some of the claims alleged in the Underlying Lawsuit are or may be covered, Main Street cannot at present confine the claims to those where no recovery is possible, it cannot disclaim its obligations to defend Advanced.

> c.     **The Exclusions Cited by Main Street Have No Factual Application at this Stage**

Plaintiffs claim that certain exclusions in the Policies absolve them (or one of them) from obligations under the Policies. Without analysis, Main Street alleged that "the Form Exclusions preclude or limit coverage". (Declaratory Complaint at ¶ 46). Initially, and consistent with the cases cited above, any Exclusion that merely *limits* coverage would not remove the duty to defend and as such, would not serve as grounds to grant the relief requested by Main Street that is has not obligations and can withdraw from its defense.

Second, the "Form Exclusions" set forth in the Complaint as to both the MSAAC and NGM Policies are "**Contractual Liability**", "**Damage to Property**", "**Damage to Work**", "**Damage to Impaired Property or Property Not Physically Injured**" and "**Recall of Products, Work or

**Impaired Property".** (Declaratory Complaint at ¶ 26). While these policy exclusion provisions are set forth in the Declaratory Complaint, Main Street provides no factual analysis of the claims in the Underlying Litigation that would inform the Defendant or the Court what the basis is for Main Street to apply any of the Exclusions, other than the argument that the Exclusion for "Damage to Your Work" applies. The "Damage to Your Work" argument is analyzed above and as shown, by its own language, does not apply to work performed by subcontractors. Since the operative joinder complaint in the Underlying Litigation alleges the work was performed by subcontractors, that Exclusion cannot on its face serve as the basis for relief to Plaintiffs.

Likewise, the first Exclusion listed, "Contractual Liability", does not assist Plaintiffs because that Exclusion, by its terms, does not apply, *inter alia*, to claims "the Insured would have in the absence of the contract or agreement". (Declaratory Complaint at ¶ 26). This Exclusion applies to contractual assumption of liability agreements under which an insured has "assumed" the tort liability of another party. *See*, *e.g.*, *Brooks v. Colton*, 760 A.2d 393 (Pa.Super. 2000). Here, while the joinder complaint seeks contractual indemnity (i.e., a contractual assumption of liability), it also seeks common law indemnity from Advanced, which clearly is liability Advanced is alleged to have irrespective of any contractual assumption. (Exhibit "E" to Declaratory Complaint at Count III). As to the other cited exclusions listed in ¶ 26, other than listing them, the Declaratory Complaint provides no basis or analysis as to whether any of them are actually at issue and if so, why the exclusions would apply.

In paragraphs 46-47 of the Declaratory Complaint, the other exclusions cited are again either not properly identified or have no relevance. For instance, MSAAC contends that the Fungi or Bacteria Exclusion may preclude or limit coverage. A review of Fungi or Bacteria exclusion set forth in the Declaratory Complaint at ¶ 28 reveals that it excludes property damage which would

not have occurred in whole or part but for inhalation of, ingestion of, contact with, exposure to, existence of, or presence of fungi or bacteria within a building or structure. Main Street provides no citation or review of the allegations in the Underlying Lawsuit to support its broad claims that the Exclusion somehow allows Main Street to walk away from this case. Nor does a review of the Second Amended Complaint filed by the Association reveal allegations that fits into this Exclusion such that Main Street could remove coverage as to all of the allegations in the Underlying Lawsuit. As for the purported EIFS exclusion, the Underlying Lawsuit does not even allege the siding is an EIFS system in the first place. Finally, Main Street vaguely alleges other provisions limit or exclude coverage, but site to nothing to back up these bald claims.

### C.   The Second Amended Complaint in the Underlying State Court Action does not plead any dates the alleged property damage first manifested itself and no Discovery Has Taken Place Yet to Make Such a Determination

Main Street next argues that the Underlying Lawsuit does not allege that "property damage" occurred during the policy periods of the Main Street policies of August 6, 2010 to September 4, 2015. In other words, Main Street argues that assuming the Underlying Litigation does plead facts such that coverage might or might not apply under the Policies, there is still no coverage because the dates the damages occurred are not within the policy periods. However, a review of the Underlying Lawsuit establishes that the dates for the occurrences are simply not pled in a manner that would allow a complete determination of coverage dates at this stage. Instead, the pleadings allege damage that again "might or might not" fall with the coverage time frames.

Initially, and as referenced above, Main Street limits its analysis of the Underlying Lawsuit facts to  paragraph 37 of its Declaratory Complaint. In that paragraph, Main Street quotes certain allegations in the Second Amended Complaint (without citing to the paragraph those quotes come from) and then summarily states that the homeowners and the association learned of the damage

through a series of expert inspections of homes, dated from July 30, 2018 to September 28, 2020. However, a review of the Second Amended Complaint filed in the Underlying Action (attached as Exhibit "D" to the Declaratory Complaint) reveals the following facts relevant to allegations made in paragraph 37 of the Declaratory Complaint for which no dates demonstrating the manifestation of damage are alleged:

- The Association provided information to the Defendants before the filing of the Association's 2016 lawsuit to persuade them to conduct repairs discovered to be necessary as part of a joint investigation by the parties of construction defects and later as part of the Association's own investigation by its engineering experts" (paragraph 57 of Exhibit "D").

- That in addition to alleged "structural defects" there is "moisture damage of increasing severity" (paragraph 58 of Exhibit "D").

- That the Defendants negligent work on the stone veneer foundation weep screes, entry stoops and exterior cladding system has resulted in damage the underlying components of the Units (homes) in the Community (paragraphs 74 of Exhibit "D").

- That Defendants admit that the lack of drainage mats on four units has caused "extensive water damage" to building components (paragraph 79 of Exhibit "D").

Multiple other paragraphs in the Second Amended Complaint also plead resultant damage, including paragraphs 2, 83, 90, 120, 203 and 205. None of these paragraphs plead when said damage was first discovered or first manifested itself. In fact, paragraph 126 of the Second Amended Complaint goes on to simply allege that the owners of the Units and the Association were not aware of the defects and damage for "years after they purchased Units from Defendants"

(paragraph 126 of Exhibit "D").   The Joinder Complaint (attached Exhibit "E" to the Declaratory Complaint) pleads that Advanced in responsible for damage allegedly caused Advanced but pleads no dates demonstrating the manifestation of said alleged damages.

Where the underlying complaint asserts injuries that could potentially have manifested themselves during the policy period, then the underlying complaint has asserted claims that are potentially covered and a duty to defend exists. *Giant Eagle, Inc. v. Am. Guarantee & Liab. Ins. Co.*, 499 F. Supp. 3d 147, 170 (W.D. Pa. 2020), *opinion withdrawn and vacated on reconsideration on other grounds*, No. 2:19-CV-00904-RJC, 2021 WL 6276267 (W.D. Pa. May 25, 2021), *motion to certify appeal denied*, No. 2:19-CV-00904-RJC, 2022 WL 19780 (W.D. Pa. Jan. 3, 2022).

As set forth above, in numerous allegations regarding damage that are pled in the Second Amended Complaint filed by the Association, the dates for manifestation of the alleged property damage are not all specifically pled. While it may well be that all the property damage was discovered post policy periods, it is not clear yet that this is the case.

The Pennsylvania Supreme Court has held that if the factual allegations in the underlying matter encompass an injury that is actually or potentially within the scope of the policy, then a duty to defend is owed. *Erie Insurance Exchange v. Moore*, 228 A.3d 258, 265, 658 Pa. 256, 267-268 (2020). Further, "to the extent there are undetermined facts that might impact on coverage, the insurer has a duty to defend until the claim is narrowed to one patently outside the policy coverage, for example through discovery". *Id.* (*citations omitted*). In the Underlying Matter, the factual allegations are such that the alleged injury could potentially be within the scope of the subject policies and unless and until it is determined in the underling matter that the damage occurred outside the subject policy periods of the Main Street Policies, Plaintiffs is owed a duty to defend.

**D.      This Court Has Discretion to Determine Whether to Exercise Jurisdiction Over the Declaratory Complaint Because the Declaratory Complaint Does Not Raise Any Federal Interest**

In the Declaratory Complaint, Main Street and MGM asks the Court to declare its rights and obligations under the Policy by invoking the remedy available under the federal Declaratory Judgment Act, 28 U.S.C. §2201(a). The Act does not confer subject matter jurisdiction upon the district courts, but merely permits them to render declaratory relief or exercise their discretion to dismiss claims that should be decided by a state court. That is because the express terms of the Act are permissive and have been understood to confer upon federal courts substantial discretion in deciding whether to declare the rights of litigants. *See Wilton v. Seven Falls Co.*, 515 U.S. 277, 286 (1995). Thus, district courts may decline to entertain cases which might otherwise satisfy the federal subject matter jurisdictional requirements. *Id.*, 515 U.S. at 282.

In determining whether to exercise its discretion under the Act, a district court should determine whether the controversy is more appropriately brought in a state court proceeding. *Williams v. State Auto Prop. & Cas. Ins. Co.*, 2009 WL 1119502, *2 (E.D.Pa. 2009) (citing *Brillhart v. Excess Ins. Co. of America*, 316 U.S. 491, 495 (1942)). "The desire of insurance companies and their insured to receive declarations in federal court on matters of purely state law has no special call on the federal forum." *State Auto Ins. Co. v. Summy*, 234 F.3d 131, 136 (3d Cir. 2000). In *Brillhart*, the Supreme Court found held that the courts should consider "whether the questions in controversy between the parties to the federal suit, and which are not foreclosed under the applicable substantive law, can better be settled in the proceeding pending in the state court."[6]

---

[6] Answering this question may entail inquiry into the scope of the pending state court proceeding and the nature of the defenses open there.... whether the claims of all parties in interest can satisfactorily be adjudicated in that proceeding, whether necessary parties have been joined, whether such parties are amenable to process in that proceeding, etc. *Brillhart*, 316 U.S. at 495, 62 S.Ct. 1173.

Here, Advanced contends that due to the unique nature of the claims in the State Court Action which are complex and involve multiple parties and claims, any claims for a determination of insurance coverage are more appropriately brought in a Pennsylvania state court because so much of the parties' respective contractual rights and obligations under the Policies implicate the facts to be decided in the State Court Action. There is no real federal interest at stake in this litigation and under the factors identified by the Third Circuit, state court is the most appropriate forum to address the claims raised in the Declaratory Complaint.

> 1.  **This Court Has Discretion to Decline Jurisdiction Under Rule 12(b)(1) Even in the Absence of a Parallel State Court Declaratory Judgment Action**

The Declaratory Judgment Act ("DJA") permits federal courts to "declare the rights and other legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought." 28 U.S.C. § 2201(a). Because the DJA grants discretionary jurisdiction to federal courts, the DJA is an exception to the general obligation to hear cases over which District Courts have subject matter jurisdiction. *Reifer v. Westport Ins. Corp.*, 751 F.3d 129, 134–135 (3d Cir. 2014) (citing *Brillhart v. Excess Ins. Co. of Am.*, 316 U.S. 491, 494 (1942); *Quackenbush v. Allstate Ins. Co.*, 517 U.S. 706, 716 (1996)).

Under current Third Circuit jurisprudence, the controlling cases for when a District Court should decline jurisdiction are *State Auto Ins. Co. v. Summy*, 234 F.3d 131 (3d Cir. 2000) and *Reifer*. While *Summy* involved a parallel state court action for a declaratory judgment under the same insurance policy and *Reifer* did not, this Court has the discretion to decline jurisdiction in the absence of such a state court declaratory judgment action in any event. The existence of identical state and federal court declaratory judgment actions is not a prerequisite to declining jurisdiction, but merely one factor to consider, which can be outweighed by the lack of any federal

interest and the factors cited in _Reifer_.

Here, no parallel state court action exists as of now.[7] Where no state parallel proceeding exists, then "district courts declining jurisdiction should be rigorous in ensuring themselves that the lack of pending parallel state proceedings is outweighed by opposing factors." _Reifer_, 751 F.3d at 144.[8] The _Reifer_ Court held that District Courts, in addition to consulting the Brillhart factors, should give "meaningful consideration to the following factors to the extent they are relevant" in determining whether to decline or accept jurisdiction:

> (1) the likelihood that a federal court declaration will resolve the uncertainty of obligation which gave rise to the controversy;
>
> (2) the convenience of the parties;
>
> (3) the public interest in settlement of the uncertainty of obligation;
>
> (4) the availability and relative convenience of other remedies;
>
> (5) a general policy of restraint when the same issues are pending in a state court;
>
> (6) avoidance of duplicative litigation;
>
> (7) prevention of the use of the declaratory action as a method of procedural fencing or as a means to provide another forum in a race for res judicata; and
>
> (8) (in the insurance context), an inherent conflict of interest between an insurer's duty to defend in state court and its attempt to characterize that suit in federal court as falling within the scope of a policy exclusion.

---

[7] A state proceeding is parallel with a federal declaratory judgment action if it "involv[es] the same parties and present[s the] opportunity for ventilation of the same state law issues." _Kelly v. Maxum Specialty Ins. Grp._, 868 F.3d 274, 282 (3d Cir. 2017) (quoting _Reifer_, 751 F.3d at 144).*Kelly*, 868 F.3d at 284. In this case, Main Street is not a party to the underlying action.
[8] _Reifer_, 751 F.3d at 146.

*Reifer*, 751 F.3d at 146.[9]

Under the Third Circuit's analysis in *Brillhart*, *Summy* and *Reifer*, discretionary jurisdiction under the Declaratory Judgment Act should not be exercised in this case. Each of the factors in *Reifer* is discussed below:[10]

###### i.        A Federal Court Declaration Will Not Resolve the Uncertainty Surrounding the Policy

The duty of Main Street to defend and indemnify Advanced under the Policies is dependent upon the proceedings in the State Court Action. While this Court may consider the pleadings and evidence from the State Court Action, because the pleadings as drafted are not definite or clear, the factual determinations made in the State Court Action will ultimately determine what protections the Policies should afford Advanced. What subcontractors were used for what work, when damage manifested itself, who performed the work that caused damage, whether any defective products were used, etc. will all be determined in the State Court Action. A federal court declaration prior to a final decision in the State Court Action is therefore premature and will not resolve all of the rights and obligations under the Policy.

First, while the duty of an insurer to defend and indemnify is triggered by the allegations of a complaint, the possibility exists that the allegations in the State Court Action will be amended. Those allegations will then ultimately be used to consider whether Main Street and MGM is liable to Advanced under the Policy. *See Kvaerner Metals Div. of Kvaerner U.S., Inc. v. Commercial Union Ins. Co.*, 589 Pa. 317, 330, 908 A.2d 888, 896 (2006). There have already been three (3)

---

[9] The first seven of these factors are also cited in *Summy*. *Reifer* added an eight factor, prevention of the use of a declaratory actin as a method of procedural fencing.

[10] A review of case law reveals that the application of *Brillhart* abstention remains robust since *Reifer* was issued. *See for example*, *Rachel II. Inc. v. State Nat'l Ins. Co.*, No. 15-1096, 2016 WL 1273941 (E.D. Pa. Mar. 31, 2016); *Nugiel v. Westchester Fire Ins. Co.*, No. 15-7787, 2015 WL 6739111 (D.N.J. Nov. 3, 2015):

versions of complaints alone filed by the Association and three (3) versions of the separate joinder complaint filed by the Original Contractors.

Furthermore, as Advanced was joined to the State Court Action as an Additional Defendant on the basis, *inter alia*, of being solely liable to the Association, the Association now has a claim directly against Advanced without amending the pleadings. *See paragraph 43 of the Joinder Complaint attached as Exhibit "E" to the Declaratory Complaint*. See also Rule 2255(d) of the Pennsylvania Rules of Civil Procedure providing that "[t]he plaintiff shall recover from an additional defendant found liable to the plaintiff alone or jointly with the defendant as though such additional defendant had been joined as a defendant and duly served and the initial pleading of the plaintiff had averred such liability."  It is therefore not possible to predict what allegations will ultimately be asserted in the State Court Action at this time. If this Court decides to exercise jurisdiction and bases its decision as to the coverage issues raised in the Declaratory Complaint on assumptions from the unsettled State Court Action, a change in those assumptions could alter this Court's decision.

Finally, the pleadings are not clear enough to establish that there is no plausible duty to defend at this point, and the factual questions that remain will be answered as part of the State Court Action. There is also no reason this District Court is needed to resolve the controversy set forth in the Declaratory Complaint. The liability of Advanced and the multitude of factors that will be determined in the State Court Action will ultimately govern the coverage obligations which cannot be precisely determined by the pleadings at this stage, particularly given the Association's rights against Advanced pursuant to Pa.R.C.P. 2252(d). Accordingly, a decision by this Court, removed from the underlying action, would not entirely resolve the uncertainty regarding the Policy.

ii.    **The Convenience of the Parties is Neutral**

The convenience of the parties is no worse or better from a proximity point of view (as Delaware County is physically located in the Eastern District).

iii.    **The Complaint Raises No Public Interest**

There is no public interest involved in settling the coverage issues under the Policy. As both the Third Circuit and this Court have noted, federal court declarations on insurance policies implicating matters of state law raise no special public interest. *See Summy*, 234 F.3d at 136; *Scottsdale Ins. Co. v. Broaddus*, 2009 WL 349697, *9 (E.D.Pa. 2009). This private dispute between an insurer and its insured can and should be resolved in the course of the State Court Action, or filed separately in the state court, which is available to Main Street to resolve the coverage issues raised in the Declaratory Complaint.

iv.    **The Availability and Relative Convenience of other Remedies**

Initially, when an action is already pending in federal court, it is arguably more convenient for the parties to litigate their insurance coverage dispute in that forum, rather than start anew in state court. *Landmark Am. Ins. Co. v. Mandracchia*, 2019 WL 3934913, at *3 (E.D. Pa. Aug. 19, 2019). But here, this arguable balance should tilt towards Advanced because it is already involved in a time-consuming state court action that will ultimately resolve all of the issues.

v.    **The Federal Court's General Policy of Restraint and Avoidance of Duplicative Litigation Favor Declining Jurisdiction**

All of the issues raised in this action will or could be ultimately raised in the State Court Action. *See Atlantic Mut. Ins. Co. v. Gula*, 84 Fed. Appx. 173, 175 (3d Cir. 2003) (coverage issues under a policy of insurance can and should be raised in context of garnishment proceedings). Indeed, the avoidance of such duplicative litigation is precisely what the Third Circuit cautioned against in the *Summy* decision. *Summy*, 234 F.3d at 135 ("A federal court should also decline to

exercise its discretionary jurisdiction when doing so would promote judicial economy by avoiding duplicative and piecemeal litigation."). A resolution of the coverage issues through the State Court Action is the most convenient remedy available to Main Street and Advanced. The State Court Action is currently proceeding with the Association's and Original Contractors' claims against Advanced and the state court is fully equipped to coordinate the coverage issues raised by Main Street in the context of the pending claims which will determine whether there is any merit to the position of Main Street under the Policies. This Court should avoid "[g]ratuitous interference with the orderly and comprehensive disposition of a state court litigation[.]" *Brillhart*, 316 U.S. at 494. Failing to do so creates the possibility of inconsistent decisions which exceed the scope of the matters contained in a declaratory judgment action.

The state court is fully capable of making its own rulings under Pennsylvania law, which will impact coverage issues under the Policy. The state court can then determine, based upon a full review of the rulings and actions in the State Court Action, any coverage issues that may arise. As noted by this Court in *Scottsdale Ins. Co. v. Broaddus*, 2009 WL 349697, *8 (E.D.Pa. 2009) (quoting *Nationwide Mut. Fire Co. v. Shank*, 951 F. Supp. 68, 71-71 (E.D.Pa. 1997)), "the duty to indemnify need not and sometimes should not be, determined until the state court has evaluated the facts." The facts, which will ultimately be decided in the State Court Action are intimately linked to the coverage issues that Main Street seeks to press in this Court.

As set forth above, in the State Court Action, both the Association and the Original Contractors assert claims for negligence. None of the negligence claims have been dismissed in the Underlying Lawsuit as to Advanced. Main Street has the ability to raise the same coverage issues that it seeks to assert here in the Underlying State Court. "[E]ven if the coverage issue is not currently pending, it will as a matter of logic necessarily arise before the matter is concluded in

state court" garnishment proceedings. *See Pronational Ins. Co. v. Shah*, 2007 WL 2713243, *3 (E.D.Pa. 2007) (quoting *Atlantic Mut. Ins. Co. v. Gula*, 84 Fed. Appx. 173, 175 (3d Cir. 2003)). None of the parties that would be affected by the decision of this Court have been named as defendants here.

In Merchants, the District Court declined to entertain the Declaratory Action, finding that litigating the coverage dispute in that case would involve litigating the issues being decided in the underlying State Court Action:

> Determining Merchants' coverage obligations – and my resolution of the corresponding state law questions – would seem necessarily to require the Parties to try before me a version of the state court construction defect case. At the very least, in resolving the coverage questions before me, I would have to make factual findings that are central to the state court litigation; i.e., the terms and conditions of the oral contract between Blackwater and the other contractors who worked on the Spaeders' home; whether any of the construction on the Spaeders' home was faulty. (Doc. No. 21 at 12; Doc. No. 24 at 5.) This is exactly the kind of duplicative litigation district courts are encouraged to avoid. See Nationwide Mut. Fire Co. v. Shank, 951 F. Supp. 68, 71-72 (E.D. Pa. 1997) ("[T]he duty to indemnify need not, and sometimes should not be, be determined until the state court has evaluated the facts.") In sum, I conclude that the interest in avoiding duplicative litigation weighs strongly against exercising jurisdiction over this action.

*Merchants Insurance Co. v. Blackwater Stucco*, Inc. et al. 2010WL 11710941, *3

The Declaratory Complaint also raises questions of contractual interpretation under Pennsylvania state law as acknowledged in the *Merchants* decision. The Pennsylvania Supreme Court has not completely decided the question of insurance coverage under the facts presented in the Declaratory Complaint. regarding what is an occurrence where subcontractors were utilized by the contractor with insurance coverage or when said work results in damage to other's work and the claims are tort based in part. This Court should avoid deciding matters of Pennsylvania law that have been left unresolved by the Pennsylvania Supreme Court. The *Merchants* Court put the matter this way as to the unresolved state law issues involving the *Gambone* case:

The <u>Summy</u> Court made clear that it would be inappropriate for me to predict how the Pennsylvania courts would resolve these questions of Pennsylvania law: "the state's interest in resolving its own law must not be given short shrift simply because one party or, indeed, both parties, perceive some advantage in the federal forum." <u>Summy</u>, 234 F.3d at 136. Accordingly, these unsettled state law questions weigh strongly against exercising federal jurisdiction here.

<u>Merchants Insurance Co. v. Blackwater Stucco</u>, Inc. et al. 2010WL 11710941, *3

A district court should exercise restraint when the state law involved in the declaratory judgment action is close or unsettled. <u>Summy</u>, 234 F.3d at 135. The attempt of Main Street to disclaim coverage under the Policy is presumably based upon two Pennsylvania state court cases, <u>Kvaerner Metals Div. of Kvaerner U.S., Inc. v. Commercial Union Ins. Co</u>., *supra* and <u>Gambone Bros. Devel. Co.</u>, *supra.* The <u>Kvaerner</u> case is distinguishable from this case because it involved only allegations of poor workmanship to the work product itself, did not deal with work performed by subcontractor for the insured and dealt with contract claims. <u>Id</u>. at 336, 908 A.2d 900. That allegation of poor workmanship arose out of Kvaerner's failure to build coke oven batteries according to precise plans and specifications that were part of a written contract. <u>Id.</u>, at 322, 908 A.3d 891. Kvaerner's failures resulted in damage only to the coke oven batteries, with monetary recovery based upon replacement cost or diminution of value in the defective batteries. *Id.*

Here, the pleadings allege that Advanced used subcontractors to perform its work and that there is damage to parts of the homes other than the work itself performed by Advanced's subcontractors and that said damages were neither expected nor intended (Complaint, Exhibit "E" at ¶ 30) . The Association damages allegedly relate to property damage caused by water leaks and moisture intrusion to sheathing and other parts of the home such as framing and the use of other products that may have caused damage as opposed to workmanship. (Complaint, Exhibit "D" at ¶ 45, 79, 105, 107, 120).

Nor does *Gambone* lend support to Main Street's case as discussed above. *Gambone* was a panel decision of the Superior Court, not a decision from the Pennsylvania Supreme Court and followed *Kvaerner* because the damages alleged in the *Gambone* case were damages to Gambone's work product, the house that Gambone built for its customer. The work product exclusion in both *Kvaerner* and *Gambone* are simply inapplicable to the Policies where the Main Street Policies contain exceptions for work performed by subcontractors under the Exclusions for "Your Work", as set forth above. Finally, as reviewed at length above, the *Gambone* case did not involve negligence claims and has since been distinguished on that basis alone in several published decision of the Superior Court in *Indalex* and *Pennsylvania Manufacturers*, as set forth above, and *Gambone* did not involve the type of claims being made in the First Amended Joinder Complaint, which plausibly include allegations of the use of defective products by Advanced.

The claims and defenses of all parties in this action will be presented to the state court for resolution as part of the State Court Action. Permitting Main Street to raise those claims and defenses as part of this action will duplicate the litigation in the state court and will unnecessarily increase the cost of litigation and the burden on the courts. In order to avoid duplicative litigation, this Court should decline to exercise jurisdiction over the Declaratory Complaint.

> **vii.    The prevention of the use of the declaratory action as a method of procedural fencing or as a means to provide another forum in a race for res judicata**

Main Street filed this case in order to avoid the discovery costs of the State Court Action and obtain a decision that will insulate it from liability in the State Court Action long before that Action is determined, all to the detriment of Advanced. A review of the State Court Dockets demonstrates an Order of the Delaware County Court of Common Pleas in the Underlying Lawsuit

entered on September 20, 2022 and attached as Exhibit "A" hereto, showing the State Court has just setting a discovery schedule that will allow discovery for almost one year. This Declaratory Complaint by Main Street was filed three days later. Clearly Main Street is racing to obtain a decision to create res judicata on any obligations it would otherwise be determined to have when any garnishment actions occur in the State Court Action.[11]

> ### viii.   Main Street Has a Conflict of Interest in Attempting to Disclaim Coverage under the Policy While the State Court Action is Pending

Main Street has an obvious conflict of interest in its duty to defend the State Court Action while at the same time attempting to characterize that suit in federal court as falling within the scope of a policy exclusion. *See Summy*, 234 F.3d at 134.[12] In order to decide the issues raised in the Declaratory Complaint, this Court must make factual determinations (was faulty work done, when did damage manifest itself, what work was done by a subcontractor, etc.) that impact the coverage issues under the Policy. By declining to exercise jurisdiction, this Court can permit those unresolved factual issues to be decided in the State Court Action, which will resolve the conflict of interest in which Main Street and Advanced presently have. The facts necessary to decide this declaratory judgment action could otherwise be used to prejudice Advanced in the State Court Action. The prospect for conflict given the common factual questions weighed heavily in the *Merchants* against accepting jurisdiction:

> There is an inherent conflict of interest between an insurer's duty to defend in state court and its attempt to characterize that suit in federal court as falling within the scope of a policy exclusion. This is especially true here because, as I have explained, there are factual

---

[11] In deciding a Rule 12(b)(6) motion, the Court limits its inquiry to the facts alleged in the complaint and its attachments, matters of public record, and undisputedly authentic documents if the complainant's claims are based upon these documents. See *Jordan v. Fox, Rothschild, O'Brien & Frankel*, 20 F.3d 1250, 1261 (3d Cir. 1994); *Pension Benefit Guar. Corp. v. White Consol. Indus., Inc.*, 998 F.2d 1192, 1196 (3d Cir. 1993). This includes docket entries. *Zedonis v. Lynch*, 233 F. Supp. 3d 417, 422 (M.D. Pa. 2017).

[12] Main Street is currently facing having to pay for depositions of numerous parties, which is likely the reason it now seeks to withdraw the counsel for Advanced that it previously provided.

questions critical to both the construction defect litigation and this declaratory action. (Doc. No. 22 at 14.) The conflict Merchants has thus created is unseemly and weighs heavily against exercising jurisdiction over this matter. _Summy_, 234 F.3d at 134.

_Merchants Insurance Co. v. Blackwater Stucco, Inc. et al_. 2010WL 11710941, *4.

In sum, the Underlying Lawsuit involves numerous issues that are legally complex and factual in nature and can best be litigated with all parties present in the underlying State Court Action.

### 2.    In All Events, the Claims Involving Main Street's Indemnity Obligations are Not Yet Ripe

"Ripeness is a matter of degree whose threshold is notoriously hard to pinpoint." _Pittsburgh Mack Sales & Serv., Inc. v. Int'l Union of Operating Engineers, Local Union No. 66_, 580 F.3d 185, 190 (3d Cir. 2009).  The Third Circuit has commented that the task is especially difficult in declaratory judgment actions "because declaratory judgments are typically sought before a completed injury has occurred." _Id._  The Supreme Court has explained, "[b]asically, the question in each case is whether the facts alleged, under all the circumstances, show that there is a substantial controversy, between parties having adverse legal interests, of sufficient immediacy and reality to warrant the issuance of a declaratory judgment." _Maryland Cas. Co. v. Pac. Coal & Oil Co._, 312 U.S. 270, 273 (1941) (citation omitted).

The Third Circuit has found that the test in the declaratory judgment context for ripeness requires the courts to  examine (1) the adversity of the interest of the parties; (2) the conclusiveness of the judicial judgment; and (3) the practical help, or utility, of that judgment. _See Step-Saver Data Sys., Inc. v. Wyse Tech._, 912 F.2d 643, 647 (3d Cir. 1990) (citations omitted); _see also Plains All Am. Pipeline L.P. v. Cook_, 866 F.3d 534, 540 (3d Cir. 2017).

It is well-settled under Pennsylvania law that an insurer is required to indemnify only where the insured is held liable for a claim actually covered by the policy. *First Specialty Ins. Corp. v. Hudson Palmer Homes, Inc.*, No. CV 17-5732, 2018 WL 6002318, at *4 (E.D. Pa. Nov. 14, 2018) quoting *Sabia Landscaping v. Merchants Mut. Ins. Co.*, No. 13-3820, 2013 WL 6022129, at *4 (E.D. Pa. Nov. 6, 2013) (DuBois, J.).   As such, in the case at bar, no conclusive ruling on the liability to indemnify under the policies can be provided right now.  In *Sabia*, the Eastern District of Pennsylvania Court reiterated that "a court entertaining a declaratory judgment action in an insurance coverage case should refrain from determining the insurer's duty to indemnify until the insured is found liable for damages in the underlying action" (quoting *TDY Indus. Inc. v. Nat'l Freight Transp. Inc.*, No. 07–cv–984, 2009 WL 691947 at *11 (W.D.Pa. March 12, 2009)).

Thus, whether an insurer has a duty to indemnify is not ripe "until there is an actual need for indemnification, that is, until liability has been determined in the underlying action." *Republic Servs. of Pennsylvania, LLC v. Caribbean Operators, LLC*, 301 F. Supp. 3d 468, 474 (E.D. Pa. 2018) (citing *Knightbrook Ins. Co. v. DNA Ambulance, Inc., No.* 13-2961, 2013 WL 12145016, at *6 (E.D. Pa. Oct. 2, 2013)); *Trustgard Ins. Co. v. Fagan*, No. 18-714, 2018 WL 3631935, at *5 (M.D. Pa. July 31, 2018) ("Counts III, IV, V and VI will be dismissed because they seek declaratory relief related to [the insurer]'s duty to indemnify prior to a decision on its insured's liability.").

The State Court Action is ongoing, discovery is not yet complete and no judgment or determination has been entered. As such, any claims regarding Main Street's duty to indemnify are not yet ripe and should be dismissed.

## IV.    CONCLUSION

Main Street has not pled facts that demonstrate that all potential obligations under the Policies are foreclosed. In reality, there may or may not be coverage under the Policies. Advanced's Motion to Dismiss should be granted on that basis. Moreover, a balancing of the _Reif_ factors does not require this Court to exercise discretionary jurisdiction in this case. Instead, those factors reveal that the State Court Action is the appropriate forum in which to raise the coverage issues implicated by the Declaratory Complaint. Finally the claims for a determination on any duty to indemnify are not ripe.  Accordingly, this Court should dismiss the Declaratory Complaint.

**Respectfully submitted,**

Date: November 7, 2022

_/s/ Blair H. Granger_
Blair H. Granger, Esquire
David J. Scaggs, Esquire
Counsel for Advanced Plastering, Inc.

**EXHIBIT "A"**

Scheduling Order from the Delaware County Court of Common Pleas
dated September 20, 2022

**IN THE COURT OF COMMON PLEAS OF DELAWARE COUNTY, PENNSYLVANIA**
**CIVIL DIVISION**

| | |
|---|---|
| HAVERFORD RESERVE | : |
| COMMUNITY ASSOCIATION | |
|            Plaintiff | : |
| | :     CV NO. 2016-11177 |
|    Vs. | : |
| | : |
| HAVERFORD RESERVE, LP; HAVERFORD | : |
| RESERVE, GP, LP; HAVERFORD HILLS | : |
| ASSOCIATION, LP; HAVERFORD HILLS | : |
| ASSOCIATION, GP, LLC; THE GOLDENBERG | : |
| GROUO, INC; GUIDI HOMES AT HAVERFORD | : |
| RESERVE, LLC; GUIDI HOMES, INC | : |
|            Defendants | : |
| | |
| ADVANCED PLASTERING, INC., GUERRERO | : |
| BROTHERS, INC., STUCCO CODE, INC., JL | : |
| HORGAN SERVICES, LLC, CORNERSTONE | : |
| CONCRETE, INC., DH CUSTOM CARPENTRY, | : |
| LLC, DREAM MAKER CONSTRUCTION | : |
| SERVICES, LLC, AND DREIFUSS PREBILT, | : |
| INC. A/K/A DREIFUSS FIREPLACES AND : | |
| SPECIALTY SUPPLY COMPANY, INC. | : |
| | : |
|     Additional Defendants | : |
| | |
| BONUCCI MASONRY AND STRUCTURES LLC | : |
|     Additional Defendants | : |
| | |
|    And | : |

| | |
|---|---|
| VALTS ROOFING, INC. | : |
| | : |
|    And | : |
| | : |
| LEMUS CONSTRUCTION, INC. | : |
|     Additional Defendants | |

Robert Hoffman, Esquire and James P. McEvilly, Esquire, for Plaintiff

Jay D. Branderbit, Esquire and Caitlin Harley, Esquire for Defendant Haverford Reserve,
   LP

Daniel Utain, Esquire, Marc Kaplan, Esquire for Defendants Haverford Reserve, LP and
    Haverford Reserve, GP, LLC; Haverford Hills Associates, LP; Haverford GP, LLC;
    Golden Group, Inc; Guidi Homes at Haverford Reserve, LLC; Guidi Homes, Inc

Andrew J. Reilly, Esquire for Defendants Goldenberg Group, Inc; Guidi Homes at
    Haverford Reserve, LLC; Guidi Homes, Inc; Haverford GP, LLC; Haverford Hills
    Associates LP; Haverford Reserve GP, LLC and Haverford Reserve, LP.

Michael L. Detweiler, Esquire, for Guidi Homes, Inc and Guidi Homes at Haverford
    Reserve, LLC

Mark Parisi, Esquire for Defendant Goldenberg Group, Inc; Guidi Homes at Haverford
    Reserve, LLC; Guidi Homes, Inc; Haverford GP, LLC; Haverford Hills
    Associates LP; Haverford Reserve GP, LLC and Haverford Reserve, LP.

Joel I. Fishbein, Esquire and James A. Murray, Esquire for Additional Defendant
    Advanced Plastering, Inc.

Carmelo T. Torraco, Esquire and Brian D. Barr, Esquire for additional Defendant
    Dreifuss Prebilt a/k/a Dreifuss Fireplaces

Kevin C. Hayes, Esquire and James A. Doherty, Esquire and Thomas R. Nealon, Esquire
    for additional Defendant JL Horgan Services, LLC

Andrew C. Eckert, Esquire for additional Defendant Dream Maker Construction Services,
    LLC

Gregory S. Hirtzel, Esquire, and Benjamin Novak, Esquire, Zoe A. Otway, Esquire, for
    Defendant Stucco Code, Inc.

Ryan Kennedy, Esquire and Joseph B. Mayers, Esquire for Bonucci Masonry and
    Structures, LLC

Jeffrey Petit, Esquire and Ryan J. Murphy, Esquire for Defendant Guerrero Brothers,
    Inc.

Joseph Mayers, Esquire and Ryan Kennedy, Esquire for Bonucci Masonry And Structures
    LLC

DH Custom Carpentry, LLC Additional Defendants, 1224 Valley Forge Road, Norristown,
    PA 19403

Specialty Supply Company, INC., 5 N. Olney Avenue, Suite 100A, Cherry Hill, NJ  08003

Page **2** of **4**

Valts Roofing, INC., P.O. Box 178, 2775 Street Road, Warrington, PA 18976

Lemus Construction, INC., 3428 York Road, Furlong, PA 18925

## **SCHEDULING ORDER**

      **AND NOW**, this _20_ day of September 2022, it is hereby **ORDERED** and

**DECREED** as follows:

1. This case is scheduled for a Status Conference on **Friday, January 20, 2023 at 9:00AM in Courtroom 7 at the Delaware County Courthouse, Media, Pennsylvania.**

2. All Fact Discovery (including written discovery and depositions) to be completed by **August 7, 2023.**

3. Plaintiff's expert report and submissions are due by **September 29, 2023.**

4. Defendant's expert reports and submissions are due by **October 31, 2023.**

5. Additional Defendant's expert reports and submissions are due by **November 30, 2023.**

6. Rebuttal reports from any party's expert are due by **December 29, 2023.**

7. Pre-Trial Dispositive Motions are due by January 12, 2024, **with responses to those dispositive Motions due in accordance with the Rules of Civil Procedure.**

8. This case is scheduled for a Status Conference on **Tuesday, February 20, 2024 at 9:00AM in Courtroom 7 at the Delaware County Courthouse, Media, Pennsylvania** wherein the Court and the parties will discuss the readiness for trial in 2024.

9. **As Discovery progresses, the parties are expected to "meet and confer" as to any impasse and pursing a dialogue regarding settlement and mediation.**

10. This Court will remain engaged as the parties may request.

BY THE COURT:

_____

Barry C. Dozor, J.