GERALD D. WIXTED, ESQ.
# DILWORTH PAXSON LLP
2 RESEARCH WAY
PRINCETON, NEW JERSEY 08540
(609) 924-6000 (MAIN #)/(609) 734-6193 (DIRECT #)
(215) 893-8537 (FACSIMILE)
gwixted@dilworthlaw.com

SUSAN M. HOGAN, ESQ.,
JOSEPH DUDEK, ESQ.
# KRAMON & GRAHAM PA
ONE SOUTH STREET, SUITE 2600
BALTIMORE, MARYLAND 21202
(410) 752-6030 (MAIN #)
(410) 539-1269 (FACSIMILE)
shogan@kg-law.com
jdudek@kg-law.com

*ATTORNEYS FOR PLAINTIFFS, MAIN STREET AMERICA ASSURANCE COMPANY AND NGM INSURANCE COMPANY*

## UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| MAIN STREET AMERICA ASSURANCE COMPANY : : and : : NGM INSURANCE COMPANY, : : *Plaintiffs*, : : v. : : ADVANCED PLASTERING, INC. : : *Defendant*. | Case No.: 2:22-cv-03805-TJS |

## AMENDED COMPLAINT

Plaintiffs Main Street America Assurance Company ("MSAAC") and NGM Insurance Company ("NGM"; together "Main Street") sue Advanced Plastering, Inc. ("Advanced Plastering") and allege:

## INTRODUCTION

1. This action concerns Main Street's obligations under general liability insurance policies that MSAAC and NGM issued to Advanced Plastering, a stucco and veneer stonework subcontractor (the "Main Street Policies"). MSAAC issued primary general liability policies to Advanced Plastering (the "MSAAC Policies") and NGM issued umbrella insurance policies to Advanced Plastering (the "NGM Policies").

2. Advanced Plastering has been joined as a defendant in the lawsuit captioned *Haverford Reserve Community Association v. Haverford Reserve, LP*, No. 2016-11177 (Pa. Ct. Common Pleas Delaware Cnty.) (the "Underlying Lawsuit"). The Underlying Lawsuit was originally brought by a community association representing 100 homes in a Philadelphia suburb against the developer and general contractor for the homes (and related corporate entities) for alleged construction defects in the homes.

3. Main Street seeks a declaration that neither MSAAC nor NGM owes a duty to defend or indemnify Advanced Plastering under the Main Street Policies in connection with the Underlying Lawsuit.

4. The primary bases for seeking this relief are that: (1) the claims against Advanced Plastering in the Underlying Lawsuit are not, as a matter of law, claims for property damage caused by an occurrence under the Main Street Policies; and (2) the pleadings in the Underlying Lawsuit do not allege property damage during the policy periods of the Main Street Policies.

5. MSAAC is currently defending Advanced Plastering in the Underlying Lawsuit under a full reservation of its rights under the MSAAC Policies.

6. This case presents a justiciable controversy concerning Main Street's obligations under the Main Street Policies with respect to Advanced Plastering, because Main Street believes that it does not have an obligation to defend or indemnify Advanced Plastering in connection with

the Underlying Lawsuit, while Advanced Plastering believes that Main Street has obligations to defend and indemnify it in connection with the Underlying Lawsuit. The purpose of this case is to resolve this dispute.

## PARTIES

7. MSAAC is a Florida corporation with its principal place of business in Jacksonville, Florida.

8. NGM is a Florida corporation with its principal place of business in Jacksonville, Florida.

9. Advanced Plastering is a Pennsylvania corporation with its principal place of business in Eagleville, Pennsylvania.

## JURISDICTION AND VENUE

10. This Court has jurisdiction under 28 U.S.C. § 1332 because no plaintiff is a citizen of the same state as any defendant and the amount in controversy exceeds $75,000. The Underlying Lawsuit concerns allegations of water damage to some 100 houses, a loss that exceeds $75,000, and MSAAC's defense of Advanced Plastering in the Underlying Lawsuit is likely to cost MSAAC more than $75,000. The MSAAC Policies have total primary aggregate products-completed operations limits of $12 million, and the NGM Policies have total umbrella limits of $21 million.

11. This Court has authority to issue a declaratory judgment under the Declaratory Judgment Act, 28 U.S.C. §§ 2201 *et seq*.

12. Venue is proper in this district under 28 U.S.C. § 1391(b)(1), because Advanced Plastering resides in this district.

13. Venue is proper in this district under 28 U.S.C. § 1391(b)(2), because a substantial part of the events giving rise to the claim occurred in this judicial district.

## FACTS COMMON TO ALL COUNTS

**A.    The Main Street Policies**

14.    The MSAAC Policies bear policy number MPZ9088B and were issued for consecutive annual policy periods from August 6, 2010, to August 6, 2016.  The last of the MSAAC Policies was canceled *pro rata* on September 4, 2015.  Copies of all the MSAAC Policies are attached as <u>Exhibits A1 – A5</u>.

15.    The MSAAC Policies, which are primary policies, all include the same Businessowners Coverage Form with form number BPM P 2 1207 (the "Businessowners Coverage Form").

16.    The Businessowners Coverage Form includes the following relevant language:

> **A.    Coverages**
>
> **1.    Business Liability**
>
> **a.**    We will pay those sums that the insured becomes legally obligated to pay as damages because of "bodily injury", "property damage" or "personal and advertising injury" to which this insurance applies. We will have the right and duty to defend the insured against any "suit" seeking those damages. However, we will have no duty to defend the insured against any "suit" seeking damages for "bodily injury", "property damage" or "personal and advertising injury", to which this insurance does not apply. We may at our discretion, investigate any "occurrence" and settle any claim or "suit" that may result. But:
>
> > **(1)**    The amount we will pay for damages is limited as described in Paragraph **D.** – Liability And Medical Expenses Limits Of Insurance in Section **II** – Liability; and
> >
> > **(2)**    Our right and duty to defend end when we have used up the applicable Limit of Insurance in the payment of judgments or settlements or medical expenses.
>
> No other obligation or liability to pay sums or perform acts or services is covered unless explicitly provided for under

4

        Paragraph **f.** Coverage Extension – Supplementary Payments.

  **b.**  This insurance applies:

    **(1)**  To "bodily injury" and "property damage" only if:

      **(a)**  The "bodily injury" or "property damage" is caused by an "occurrence" that takes place in the "coverage territory";

      **(b)**  The "bodily injury" or "property damage" occurs during the policy period; and

      **(c)**  Prior to the policy period, no insured listed under Paragraph **C.1.** Who Is An Insured and no "employee" authorized by you to give or receive notice of an "occurrence" or claim, knew that the "bodily injury" or "property damage" had occurred, in whole or in part. If such a listed insured or authorized "employee" knew, prior to the policy period, that the "bodily injury" or "property damage" occurred, then any continuation, change or resumption of such "bodily injury" or "property damage" during or after the policy period will be deemed to have been known before the policy period.

  17.  The Businessowners Coverage Form defines "property damage" as "[p]hysical injury to tangible property, including all resultant loss of use of that property," and defines "occurrence" as "an accident, including continuous or repeated exposure to substantially the same general harmful conditions."

  18.  The NGM Policies bear policy number CUZ9088B and were issued for consecutive annual policy periods from August 6, 2010, to August 6, 2016. The last of the NGM Policies was canceled *pro rata* on September 4, 2015. Copies of all the NGM Policies are attached as <u>Exhibits B1–B5</u>.

19. Of the five NGM Policies, the first three include the same Commercial Liability Umbrella Coverage Form with form number CU 00 01 12 07 (the "First Commercial Liability Umbrella Coverage Form").

20. The First Commercial Liability Umbrella Coverage Form includes the following relevant language:

**SECTION 1 – COVERAGES**

**COVERAGE A – BODILY INJURY AND PROPERTY DAMAGE LIABILITY**

    **1.**   **Insuring Agreement**

        **a.**   We will pay on behalf of the insured the "ultimate net loss" in excess of the "retained limit" because of "bodily injury" or "property damage" to which this insurance applies. We will have the right and duty to defend the insured against any "suit" seeking damages for such "bodily injury" or "property damage" when the "underlying insurance" does not provide coverage or the limits of "underlying insurance" have been exhausted. When we have no duty to defend, we will have the right and duty to defend, or to participate in the defense of, the insured against any other "suit" seeking damages to which this insurance may apply. However, we will have no duty to defend the insured against any "suit" seeking damages for "bodily injury" or "property damage" to which this insurance does not apply. At our discretion, we may investigate any "occurrence" that may involve this insurance and settle any resultant claim or "suit", for which we have the duty to defend. But:

            **(1)**   The amount we will pay for the "ultimate net loss" is limited as described in Section **III.** – Limits of Insurance; and

            **(2)**   Our right and duty to defend end when we have used up the applicable limit of insurance in the payment of judgments or settlements under Coverages **A** or **B**.

        No other obligation or liability to pay sums or perform acts or services is covered unless explicitly provided for under Supplementary Payments – Coverages **A** and **B**.

      **b.**      This insurance applies to "bodily injury" and "property damage" only if:

            **(1)**     The "bodily injury" or "property damage" is caused by an "occurrence" that takes place in the "coverage territory";

            **(2)**     The "bodily injury" or "property damage" occurs during the policy period; and

            **(3)**     Prior to the policy period, no insured listed under Paragraph **1.a.** of Section **II** – Who Is An Insured and no "employee" authorized by you to give or receive notice of an "occurrence" or claim, knew that the "bodily injury" or "property damage" had occurred, in whole or in part. If such a listed insured or authorized "employee" knew, prior to the policy period, that the "bodily injury" or "property damage" occurred, then any continuation, change or resumption of such "bodily injury" or "property damage" during or after the policy period will be deemed to have been known before the policy period.

21.    The First Commercial Liability Umbrella Coverage Form defines "property damage" as "[p]hysical injury to tangible property, including all resultant loss of use of that property," and defines "occurrence" as "an accident, including continuous or repeated exposure to substantially the same general harmful conditions."

22.    Of the five NGM Policies, the last two include the same Commercial Liability Umbrella Coverage Form with form number CU 00 01 04 13 (the "Second Commercial Liability Umbrella Coverage Form").

23.    The Second Commercial Liability Umbrella Coverage Form includes the following relevant language:

**SECTION 1 –COVERAGES**

**COVERAGE A – BODILY INJURY AND PROPERTY DAMAGE LIABILITY**

    **1.**     **Insuring Agreement**

7

    **a.**    We will pay on behalf of the insured the "ultimate net loss" in excess of the "retained limit" because of "bodily injury" or "property damage" to which this insurance applies. We will have the right and duty to defend the insured against any "suit" seeking damages for such "bodily injury" or "property damage" when the "underlying insurance" does not provide coverage or the limits of "underlying insurance" have been exhausted. When we have no duty to defend, we will have the right and duty to defend, or to participate in the defense of, the insured against any other "suit" seeking damages to which this insurance may apply. However, we will have no duty to defend the insured against any "suit" seeking damages for "bodily injury" or "property damage" to which this insurance does not apply. At our discretion, we may investigate any "occurrence" that may involve this insurance and settle any resultant claim or "suit", for which we have the duty to defend. But:

        **(1)**    The amount we will pay for the "ultimate net loss" is limited as described in Section **III.** – Limits of Insurance; and

        **(2)**    Our right and duty to defend end when we have used up the applicable limit of insurance in the payment of judgments or settlements under Coverages **A** or **B**.

    No other obligation or liability to pay sums or perform acts or services is covered unless explicitly provided for under Supplementary Payments – Coverages **A** and **B**.

    **b.**    This insurance applies to "bodily injury" or "property damage" that is subject to an applicable "retained limit". If any other limit, such as a sublimit, is specified in the "underlying insurance", this insurance does not apply to "bodily injury" or "property damage" arising out of that exposure unless that limit is specified in the Declarations under the Schedule of "underlying insurance".

    **c.**    This insurance applies to "bodily injury" and "property damage" only if:

        **(1)**    The "bodily injury" or "property damage" is caused by an "occurrence" that takes place in the "coverage territory";

        **(2)**    The "bodily injury" or "property damage" occurs during the policy period; and

8

> **(3)** Prior to the policy period, no insured listed under Paragraph **1.a.** of Section **II** – Who Is An Insured and no "employee" authorized by you to give or receive notice of an "occurrence" or claim, knew that the "bodily injury" or "property damage" had occurred, in whole or in part. If such a listed insured or authorized "employee" knew, prior to the policy period, that the "bodily injury" or "property damage" occurred, then any continuation, change or resumption of such "bodily injury" or "property damage" during or after the policy period will be deemed to have been known before the policy period.

24. The Second Commercial Liability Umbrella Coverage Form defines "property damage" as "[p]hysical injury to tangible property, including all resultant loss of use of that property," and defines "occurrence" as "an accident, including continuous or repeated exposure to substantially the same general harmful conditions."

25. In sum, all the coverage forms in the Main Street Policies provide coverage for "property damage" that is "caused by an occurrence" and that "occurs during the policy period," using identical definitions of "property damage" and "occurrence."

26. The Businessowners Coverage Form also provides the following respecting exclusions from coverage (the "Form Exclusions"):

> **B. Exclusions**
>
> **1. Applicable to Business Liability Coverage**
>
> This insurance does not apply to:
>
> **b. Contractual Liability**
>
> "Bodily injury" or "property damage" for which the insured is obligated to pay damages by reason of the assumption of liability in a contract or agreement. This exclusion does not apply to liability for damages:
>
> **(1)** That the insured would have in the absence of the contract or agreement; or

9

    **(2)**    Assumed in a contract or agreement that is an "insured contract", provided the "bodily injury" or "property damage" occurs subsequent to the execution of the contract or agreement. Solely for the purposes of liability assumed in an "insured contract", reasonable attorney fees and necessary litigation expenses incurred by or for a party other than an insured are deemed to be damages because of "bodily injury" or "property damage", provided:

        **(a)**    Liability to such party for, or for the cost of, that party's defense has also been assumed in the same "insured contract"; and

        **(b)**    Such attorney fees and litigation expenses are for defense of that party against a civil or alternative dispute resolution proceeding in which damages to which this insurance applies are alleged.

\*    \*    \*

**k.**    **Damage To Property**

"Property damage" to:

    **(1)**    Property you own, rent or occupy, including any costs or expenses incurred by you, or any other person, organization or entity, for repair, replacement, enhancement, restoration or maintenance of such property for any reason, including prevention of injury to a person or damage to another's property;

    **(2)**    Premises you sell, give away or abandon, if the "property damage" arises out of any part of those premises;

    **(3)**    Property loaned to you;

    **(4)**    Personal property in the care, custody or control of the insured;

    **(5)**    That particular part of real property on which you or any contractor or subcontractor working directly or indirectly on your behalf is performing operations, if the "property damage" arises out of those operations; or

    **(6)**    That particular part of any property that must be restored, repaired or replaced because "your work" was incorrectly performed on it.

Paragraphs **(1), (3)** and **(4)** of this exclusion do not apply to "property damage" (other than damage by fire) to premises, including the contents of such premises, rented to you for a period of 7 or fewer consecutive days. A separate Limit of Insurance applies to Damage To Premises Rented To You as described in Paragraph **D.** Liability And Medical Expenses Limit Of Insurance in Section **II** --- - Liability.

Paragraph **(2)** of this exclusion does not apply if the premises are "your work" and were never occupied, rented or held for rental by you.

Paragraphs **(3), (4), (5)** and **(6)** of this exclusion do not apply to liability assumed under a sidetrack agreement.

Paragraph **(6)** of this exclusion does not apply to "property damage" included in the "products-completed operations hazard".

\*    \*    \*

**m.**    **Damage To Your Work**

"Property damage" to "your work" arising out of it or any part of it and included in the "products-completed operations hazard".

This exclusion does not apply if the damaged work or the work out of which the damage arises was performed on your behalf by a subcontractor.

**n.**    **Damage To Impaired Property Or Property Not Physically Injured**

"Property damage" to "impaired property" or property that has not been physically injured, arising out of:

    **(1)**    A defect, deficiency, inadequacy or dangerous condition in "your product" or "your work"; or

    **(2)**    A delay or failure by you or anyone acting on your behalf to perform a contract or agreement in accordance with its terms.

11

>> This exclusion does not apply to the loss of use of other property arising out of sudden and accidental physical injury to "your product" or "your work" after it has been put to its intended use.
>
> **o.   Recall Of Products, Work Or Impaired Property**
>
> Damages claimed for any loss, cost or expense incurred by you or others for the loss of use, withdrawal, recall, inspection, repair, replacement, adjustment, removal or disposal of:
>
> **(1)**   "Your product";
>
> **(2)**   "Your work"; or
>
> **(3)**   "Impaired property";
>
> if such product, work or property is withdrawn or recalled from the market or from use by any person or organization because of a known or suspected defect, deficiency, inadequacy or dangerous condition in it.

27.   The First Commercial Liability Umbrella Coverage Form and the Second Commercial Liability Umbrella Coverage Form each contain exclusions with identical wording to those quoted in the preceding paragraph of this complaint, but some of these exclusions in the First Commercial Liability Umbrella Coverage Form and the Second Commercial Liability Umbrella Coverage Form have different enumeration.  Thus, the Main Street Policies all include these exclusions.

28.   The MSAAC Policies also include a "Fungi or Bacteria Exclusion (Liability)" endorsement on form BP 05 77 01 06 (the "Fungi or Bacteria Exclusion"), which provides:

> The following provisions are added to **Section II – Liability:**
>
> **A.**   The following exclusion is added to Paragraph **B.1., Exclusions – Applicable To Business Liability Coverage:**
>
> **t.   Fungi Or Bacteria**
>
> **(1)**   "Bodily injury", "property damage" or "personal and advertising injury" which would not have occurred,

12

                in whole or in part, but for the actual, alleged or threatened inhalation of, ingestion of, contact with, exposure to, existence of, or presence of, any "fungi" or bacteria on or within a building or structure, including its contents, regardless of whether any other cause, event, material or product contributed concurrently or in any sequence to such injury or damage.

        **(2)**    Any loss, cost or expenses arising out of the abating, testing for, monitoring, cleaning up, removing, containing, treating, detoxifying, neutralizing, remediating or disposing of, or in any way responding to, or assessing the effects of, "fungi" or bacteria, by any insured or by any other person or entity.

        This exclusion does not apply to any "fungi" or bacteria that are, are on, or are contained in, a good or product intended for bodily consumption.

    **B.**    The following definition is added Paragraph **F. Liability And Medical Expenses Definitions:**

        **1.**    "Fungi" means any type or form of fungus, including mold or mildew and any mycotoxins, spores, scents or by-products produced or released by fungi.

29.    The latter four of the five MSAAC Policies also include an "Exclusion – Exterior Insulation and Finish Systems" endorsement (the "EIFS Exclusion") on form BPM 3110 1207, which provides:

**Section II – Liability** is amended as follows:

    **A.**    This insurance does not apply to "bodily injury", "property damage" or "personal and advertising injury" arising out of, caused by, or attributable to, whether in whole or in part, the following:

        **1.**    The design, manufacture, construction, fabrication, preparation, distribution and sale, installation, application, maintenance or repair, including remodeling, service, correction or replacement, of any "exterior insulation and finish system" or any part thereof, or any substantially similar system or any part thereof, including the application or use of conditioners, primers, accessories, flashings,

        coatings, caulking or sealants in connection with such a system; or

2.   "Your product" or "your work" with respect to any exterior component, fixture or feature of any structure if an "exterior insulation and finish system", or any substantially similar system, is used on the part of that structure containing that component, fixture or feature.

B.   The following definition is added to the **Definitions** Section:

"Exterior insulation and finish system" means a non-load bearing exterior cladding or finish system, and all component parts therein, used on any part of any structure, and consisting of:

1. A rigid or semi-rigid insulation board made of expanded polystyrene and other materials;

2. The adhesive and/or mechanical fasteners used to attach the insulation board to the substrate;

3. A reinforced or unreinforced base coat;

4. A finish coat providing surface texture to which color may be added; and

5. Any flashing, caulking or sealant used with the system for any purpose.

## B. The Subcontract

30. Advanced Plastering entered into a "Master Agreement" with Guidi Homes, Inc. ("Guidi"). A copy of the Master Agreement is attached as <u>Exhibit C</u>.

31. Under the Master Agreement, Guidi was to issue one or more "Work Order[s]" to Advanced Plastering describing the scope of Advanced Plastering's subcontracted work.

32. On information and belief, Guidi issued one or more work orders to Advanced Plastering, directing Advanced Plastering to install stucco and veneer stonework exteriors to some of the homes at issue in the Underlying Lawsuit.

33.     On information and belief, Advanced Plastering received these work orders and, in response, applied stucco and veneer stonework exteriors to some of the homes at issue in the Underlying Lawsuit.

**C.      The Underlying Lawsuit**

34.     The first complaint in the Underlying Lawsuit was filed on January 10, 2017.

35.     The Underlying Lawsuit now consists of claims brought by Haverford Reserve Community Association (the "Underlying Plaintiff") against Haverford Reserve, LP; Haverford Reserve GP, LLC; The Goldenberg Group, Inc.; Guidi Homes at Haverford Reserve, LLC; and Guidi Homes, Inc. (the "Underlying Direct Defendants"), together with indemnity claims brought by the Underlying Direct Defendants against Advanced Plastering; Guerrero Brothers, Inc.; Stucco Code, Inc.; JL Horgan Services, LLC; Cornerstone Concrete, Inc.; DH Custom Carpentry, LLC; Dream Maker Construction Services, LLC; and Dreifuss Prebuilt, Inc. a/k/a Dreifuss Fireplaces and Specialty Supply Company, Inc. (the "Underlying Joinder Defendants").

36.     The operative complaint by the Underlying Plaintiff against the Underlying Direct Defendants is the Second Amended Complaint. A copy of the Second Amended Complaint is attached as Exhibit D.

37.     The Second Amended Complaint alleges because of "construction defects" in the stone and stucco veneers of approximately 100 homes, they are "beset with moisture intrusion issues and excessive damage." This damage was largely caused by "subcontractors" whose "work was performed negligently." These construction defects were "latent." They "were not disclosed by the [contractors who built the homes, and discovering them] required the services of skilled professional engineers to locate and identify in homes." Indeed, because the façade-related defects "were hidden behind the exterior façade/cladding of the building," they "were not discovered until after the drafting and filing of the original complaint." And all other defects are "latent in nature

as well." Homeowners and the association learned of the damage through a series of expert inspections of homes, dated from July 30, 2018 to September 28, 2020. Homeowners expect that a remediation project to stop the moisture intrusion and repair any related damage will cost about $10 million.

38. The Second Amended Complaint includes counts for breach of warranty, breach of fiduciary duty, breach of a covenant, negligent construction, negligent supervision, negligent misrepresentation, violations of a Pennsylvania unfair trade practices statute, and punitive damages.

39. The operative complaint by the Underlying Direct Defendants against the Underlying Joinder Defendants (including against Advanced Plastering) is the First Amended Joinder Complaint dated May 3, 2021. A copy of the First Amended Joinder Complaint is attached as Exhibit E.

40. The First Amended Joinder Complaint alleges that by virtue of indemnity agreements between Guidi Homes, Inc. and each of the Underlying Joinder Defendants, the Underlying Joinder Defendants are liable for some or all of the Underlying Direct Defendants' liability to Haverford Reserve Community Association.

41. The First Amended Joinder Complaint includes counts for breach of contract, contribution and indemnity, contractual indemnity, breach of express warranty, negligence, and negligent misrepresentation.

42. Main Street first became aware of the Underlying Lawsuit on October 18, 2021, when it received a joinder complaint in the Underlying Lawsuit by email from Advanced Plastering. On October 26, 2021, in response to receipt of the joinder complaint, Main Street contacted Advanced Plastering directly to begin investigating the claim.

43. Main Street has evaluated this claim and concluded that there is no coverage afforded to Advanced Plastering in connection with the Underlying Lawsuit under the Main Street Policies. Advanced Plastering disputes this conclusion.

D.   **Main Street's Bases for Seeking Declaratory Relief**

44. Main Street has no duty to defend or indemnify Advanced Plastering because the Underlying Lawsuit does not allege damages because of "property damage" caused by an "occurrence," as those terms are defined under the Main Street Policies.

45. Main Street has no duty to defend or indemnify Advanced Plastering because the Underlying Lawsuit does not allege "property damage" that occurred in the policy periods of the Main Street Policies.

46. Main Street has no duty to defend or indemnify Advanced Plastering because the Form Exclusions preclude or limit coverage for Advanced Plastering in connection with the Underlying Lawsuit.

47. MSAAC has no duty to defend or indemnify Advanced Plastering because the Fungi or Bacteria Exclusion and the EIFS Exclusion preclude or limit coverage for Advanced Plastering in connection with the Underlying Lawsuit.

48. Main Street has no duty to defend or indemnify Advanced Plastering because coverage is limited or precluded by other provisions in the Main Street Policies.

**COUNT I**
**DECLARATORY RELIEF**

49. Main Street incorporates the foregoing allegations here as if they were fully set forth in this count.

50. The damages sought from Advanced Plastering in the Underlying Lawsuit are not damages for "property damage" caused by an "occurrence" as those terms are defined in the Main Street Policies.

51. Some or all of the damages sought in the Underlying Lawsuit are excluded from coverage by the Form Exclusions, the Fungi or Bacteria Exclusion, and the EIFS Exclusion.

52. Main Street is not obligated under the Main Street Policies to defend or indemnify Advanced Plastering in connection with the Underlying Lawsuit.

53. Main Street is entitled under the Main Street Policies to withdraw its defense of Advanced Plastering in the Underlying Lawsuit.

54. Whether Main Street is obligated under the Main Street Policies to defend or indemnify Advanced Plastering in connection with the Underlying Lawsuit is the subject of a genuine dispute between Main Street and Advanced Plastering.

**WHEREFORE**, Main Street requests that this Court enter judgment declaring:

A. That neither MSAAC nor NGM is obligated under the Main Street Policies to defend or indemnify Advanced Plastering in connection with the Underlying Lawsuit;

B. That MSAAC is entitled to withdraw its defense of Advanced Plastering in the Underlying Lawsuit; and

C. That MSAAC and NGM are entitled to such other relief as this Court deems just and proper.

Dated: November 21, 2022

Respectfully submitted,

*/s/ Gerald D. Wixted*
Gerald D. Wixted
Dilworth Paxson LLP
2 Research Way
Princeton, New Jersey 08540
Telephone: 609-734-6193
Facsimile: 215-893-8537
gwixted@dilworthlaw.com

Susan M. Hogan
Joseph Dudek
Kramon & Graham, P.A.
One South Street, Suite 2600
Baltimore, Maryland 21202-3201
Telephone: 410-752-6030
Facsimile: 410-539-1269
shogan@kg-law.com
jdudek@kg-law.com

*Attorneys for Plaintiffs Main Street America Assurance Company and NGM Insurance Company*