# Exhibit E

**MARSHALL, DENNEHEY, WARNER, COLEMAN & GOGGIN**
BY: MICHAEL L. DETWEILER, ESQ.
I.D. NO. 91185
620 FREEDOM BUSINESS CENTER, SUITE 300
KING OF PRUSSIA, PA 19406
610-354-8271/m1detweiler@mdwcg.com

**Attorney for Defendants**
Guidi Homes, Inc. and
Guidi Homes at
Haverford Reserve, LLC

**KAPLIN STEWART**
BY: DANIEL R. UTAIN, ESQ.
I.D. NO. 85619
910 HARVEST DRIVE, P.O. BOX 3037
BLUE BELL, PA 19422-0765
610-941-2582/dutain@kaplaw.com

**Attorney for Defendants**
Haverford Reserve, LP, Haverford
Reserve GP, LLC, The Goldenberg
Group, Inc., Guidi Homes at
Haverford Reserve, LLC and Guidi
Homes, Inc.

**WHITE AND WILLIAMS, LLP**
BY: MARK L. PARISI, ESQ.
I.D. NO. 34651
1650 MARKET STREET
ONE LIBERTY PLACE, SUITE 1800
PHILADELPHIA, PA 19103
215-864-7180/parisim@whiteandwilliams.com

**Attorney for Defendants**
Haverford      Reserve,      LP,
Haverford Reserve GP, LLC, The
Goldenberg Group, Inc., Guidi
Homes at Haverford Reserve,
LLC, and Guidi Homes, Inc.

**SWARTZ CAMPBELL, LLC**
BY: ANDREW J. REILLY, ESQ.
I.D. NO. 50076
115 NORTH JACKSON STREET
MEDIA, PA 19063
610-566-9222/areilly@swartzcampbell.com

**Attorney for Defendants**
Haverford      Reserve,      LP,
Haverford Reserve GP, LLC, The
Goldenberg Group, Inc., Guidi
Homes at Haverford Reserve,
LLC, and Guidi Homes, Inc.

**KENT & MCBRIDE, P.C.**
BY: JAY D. BRANDERBIT, ESQ.
I.D. NO. 55755
1617 JFK BOULEVARD
SUITE 1140
PHILADELPHIA, PA 19103
215-568-1800/jbranderbrit@kentmcbride.com

**Attorney for Defendant**
Haverford Reserve, LP

Copying Prohibited

1

TO ADVANCED PLASTERING, INC.,
GUERRERO BROTHERS, INC. STUCCO
CODE, INC. JL HORGAN SERVICES,
LLC, CORNERSTONE CONCRETE, INC.,
DH CUSTOM CARPENTRY, LLC,
DREAM MAKER CONSTRUCTION
SERVICES, LLC AND DREIFUSS-
PREBILT INC. A/K/A DREIFUSS
FIREPLACES AND SPECIALTY
SUPPLY: YOU ARE HEREBY NOTIFIED
TO PLEAD TO THE ENCLOSED
**JOINDER COMPLAINT** WITHIN
**TWENTY (20)** DAYS FROM THE
SERVICE HEREOF OR A DEFAULT
JUDGMENT MAY BE ENTERED
AGAINST YOU.

*/s/ Michael L. Detweiler*
MICHAEL L. DETWEILER, ESQUIRE
ATTORNEY FOR DEFENDANTS,
GUIDI HOMES AT HAVERFORD
RESERVE, LLC AND GUIDI HOMES,
INC.

COURT OF COMMON PLEAS OF
DELAWARE COUNTY, PA

DOCKET NO. 16-11177

HAVERFORD RESERVE
COMMUNITY ASSOCIATION        :
                             :
            Plaintiff        :
    vs.                      :
                             :
HAVERFORD RESERVE, LP,       :
HAVERFORD RESERVE, GP, LLC,  :
THE GOLDENBERG GROUP, INC.,  :
GUIDI HOMES AT HAVERFORD     :
RESERVE, LLC AND GUIDI HOMES,:
INC.                         :
                             :
            Defendants       :
                             :
    vs.                      :
                             :
ADVANCED PLASTERING, INC,    :
GUERRERO BROTHERS, INC.,     :
STUCCO CODE, INC., JL HORGAN :
SERVICES, LLC, CORNERSTONE   :
CONCRETE, INC., DH CUSTOM    :

Copying Prohibited

CARPENTRY, LLC, DREAM MAKER   :
CONSTRUCTION SERVICES, LLC,     :
AND DREIFUSS PREBILT, INC. A/K/A   :
DREIFUSS FIREPLACES AND            :
SPECIALTY SUPPLY COMPANY, INC.   :
                                                       :
            Additional Defendants         :

---

**FIRST AMENDED JOINDER COMPLAINT OF DEFENDANT, HAVERFORD
RESERVE, LP, HAVERFORD RESERVE, GP, LLC, THE GOLDENBERG GROUP,
INC., GUIDI HOMES AT HAVERFORD RESERVE LLC, AND GUIDI HOMES, INC.
AS TO ADDITIONAL DEFENDANTS, ADVANCED PLASTERING, INC. GUERRERO
BROTHERS, INC., STUCCO CODE, INC. JL HORGAN SERVICES, LLC,
CORNERSTONE CONCRETE, INC., DH CUSTOM CARPENTRY, LLC, DREAM
MAKER CONSTRUCTION SERVICE, LLC, DREIFUSS-PREBILT, INC. A/K/A
DREIFUSS FIREPLACES, AND SPECIALTY SUPPLY COMPANY, INC**

Defendants, Haverford Reserve, LP, Haverford Reserve, GP, LLC, The Goldenberg
Group, Inc., Guidi Homes at Haverford Reserve and Guidi Homes, Inc. (collectively, "Original
Defendants") by and through undersigned counsel, hereby file this First Amended Joinder
Complaint against Advanced Plastering, Inc., Guerrero Brothers, Inc., Stucco Code, Inc., JL
Horgan Services, LLC, Cornerstone Concrete, Inc., DH Custom Carpentry, LLC, Dream Maker
Construction Services, LLC, Dreifuss Prebilt, Inc. a/k/a Dreifuss Fireplaces and Specialty Supply
Company, Inc. (hereinafter collectively "Additional Defendants"), based upon the following:

1.      This matter arises from Plaintiff, Haverford Reserve Community Association's
("Plaintiff") allegations of construction defects in certain homes located within the planned
residential community known as Haverford Reserve (the "Community").

2.      Construction of the Community, which is located in Haverford, Delaware County,
Pennsylvania, began in 2008.

3.      Plaintiff initiated this action on January 10, 2017 against the Original Defendants.

4.    On February 26, 2021, Plaintiff filed an Amended Complaint against the Original Defendants.

5.    After the Original Defendants filed Preliminary Objections to Plaintiff's First Amended Complaint, Plaintiff filed a Second Amended Complaint on April 12, 2021. See Plaintiff's Second Amended Complaint attached hereto as Exhibit "A".

6.    As was the case with regard to the First Amended Complaint, the Second Amended Complaint alleges the same structural defects in the Common Elements and Controlled Facilities of the Community relating to roof and gutter Controlled Facilities of the Community alleged in the original Complaint, but adds allegations relating to façade construction defects as well as undersized gutters and downspouts due to poor and inconsistent design and construction, deficient end caps and outlet tubes, and incorrectly designed gutter slopes. See Exhibit "A" paragraphs 99-105, 116.

7.    Additionally, the Second Amended Complaint alleges new defects pertaining to structural elements of the units and alleging that the case involves: "Defendants and/or Defendants' subcontractors failure to comply with applicable building codes, manufacturers specifications, construction plans and established industry standards Defendants' design and installation of structural elements of the units constructed, marketed, and sold by them at the Haverford Reserve Community, including without limitation: Exterior facade stucco, stone veneer and cement fiber siding (collectively "cladding"), weep screeds, weather resistant barriers beneath the cladding, and flashing for proper drainage of the moisture beneath unit cladding, chimney caps, pans and enclosures with weep screed, windows and flashing, cladding, and roofs, deck ledger boards and flashing, entry stoops/porches, frieze board installation; and undersized gutters and downspouts." See Exhibit "A" paragraph 31.

Copying Prohibited

26665832v.1

8.    Moreover, Plaintiff's Second Amended Complaint contains additional allegations directed at the subcontractors retained by the Original Defendants, including, but not limited to the following:

31.    "This case involves Defendants' and/or Defendants' subcontractors failure to comply with applicable building codes, manufacturers specifications, construction plans, and established industry standards in Defendants' design and installation of structural elements of the Units constructed, marketed and sold to them…" See Exhibit "A" Paragraph 31.

74.    "The Defendants' work on the stone veneer foundation sweep screed and entry stoops was performed solely by the subcontractors hired by Defendants to do this work on their behalf, which work was performed negligently…" See Exhibit "A" Paragraph 74.

85.    "The Defendants' work on the defectively installed chimney caps and enclosures was performed solely by subcontractors hired by Defendants to do this work on their behalf, which was performed negligently." See Exhibit "A" Paragraph 85.

See also Exhibit "A" Paragraphs 62, 78, 79, 80, 93, 94, 98, 111, 117, 118, 119, 127.

9.    In the Second Amended Complaint, Plaintiff brings claims for Violation of 68 Pa.C.S.A. §§ 5101 et seq. (Count I, Count II), Breach of Covenant (Count III), Negligent Construction (Count IV), Negligent Supervision (Count V), Violation of the Pennsylvania Unfair Trade Practices and Consumer Protection Law (Count VI), Negligent Misrepresentation (Count VII) and Punitive Damages (Count VIII) as to Original Defendants. See Exhibit "A".

10.    According to Plaintiff's Complaint," the Defendants owed a duty to the Association and its members, independent of and supplemental to any contractual or statutory duties, to exercise such reasonable care, technical skill and ability and diligence as are ordinarily required of builders, contactors." See Exhibit "A," at Paragraph 176.

11.    The Complaint alleges further: "The Defendants were careless and negligent in the performance of their duties in connection with the building and construction of the Community by failing to exercise such reasonable care, technical skill, ability and diligence as are ordinarily

26665832v.1

required of builders, contractors and developers in the course of building and constructing the Community. See Exhibit "A" at Paragraph 176.

12.     Additionally, the Complaint alleges: "The construction defects, deficiencies and non-conformities in the Units throughout the Community identified in this Second Amended Complaint were caused by the work performed on Defendants' behalf by various third-party subcontractors." See Exhibit "A" at Paragraph 118.

13.     The Original Defendants, specifically Guidi Homes, Inc., contracted with Additional Defendants via separate Master Agreements to perform some of the aforementioned work throughout the Community. See Exhibits "B"-"G", discussed more fully below.

14.     Haverford Reserve, LP., is the Owner of the property, as identified in the Master Agreements/Subcontracts referenced below. Haverford Reserve, GP, LLC is the General Partner of Haverford Reserve, LP.   The Goldenberg Group, Inc. is an affiliated company to Haverford Reserve, LP.

15.     The Master Agreements with the subcontractors specifically incorporate all provisions of the construction contract between the Owners of the property, Haverford Reserve, LP and its parent and/or affiliated companies and the Contractor, Guidi Homes, Inc. See Exhibits "B"-"G", specifically the portion of those Master Agreements labelled Exhibit "A".

16.     Additional Defendant, Advanced Plastering, Inc. is a corporation located at 1340 Dell Road, Worcester, PA 19403. At all times relevant hereto, Guidi Homes, Inc. contracted with Additional Defendant, Advanced Plastering, Inc. for work pertaining to various elements of the exterior wall system of certain homes including, but not limited to, elements of the exterior water management system such as weather resistant barrier elements and flashings and also stucco and

Copying Prohibited

6

veneer stone work that is allegedly at issue throughout the Community. See Master Agreement with Advanced Plastering attached hereto as Exhibit "B".

17.     Additional Defendant, Stucco Code, Inc. is a corporation located at 918 Shadeland Avenue, Drexel Hill, PA 19026. At all times relevant hereto, Guidi Homes, Inc. contracted with Additional Defendant, Stucco Code, Inc. for work pertaining to various elements of the exterior wall system of certain homes including, but not limited to, elements of the exterior water management system such as weather resistant barrier elements and flashings and also stucco and veneer stone work that is allegedly at issue throughout the Community. See Master Agreement with Stucco Code attached hereto as Exhibit "C".

18.     Additional Defendant, Guerrero Brothers, Inc. is a corporation located at 380 Country Lane, King of Prussia, PA 19406. At all times relevant hereto, Guidi Homes, Inc. contracted with Additional Defendant, Guerrero Brothers, Inc. for work pertaining to various elements of the exterior wall system of certain homes including, but not limited to, elements of the exterior water management system such as weather resistant barrier elements and flashings and also stucco and veneer stone work that is allegedly at issue throughout the Community. See Master Agreement with Guerrero Brothers, Inc attached hereto as Exhibit "D".

19.     Additional Defendant, JL Horgan Services, LLC is a limited liability company located at 1213 Patty's Circle, Lansdale, PA 19446. At all times relevant hereto, Guidi Homes, Inc. contracted with Additional Defendant, JL Horgan Services, LLC for work pertaining to the concrete steps of certain homes that are allegedly at issue throughout the Community. See Master Agreement with JL Horgan Services, LLC attached hereto as Exhibit "E".

20.     Additional Defendant, Cornerstone Concrete, Inc. is a corporation located at 12 Edgemoor Lane, Honey Brook, PA 19344. At all times relevant hereto, Guidi Homes, Inc.

7

contracted with Additional Defendant, Cornerstone Concrete, Inc. for work pertaining to the concrete steps of certain homes that are allegedly at issue throughout the Community.

21.     Additional Defendant, DH Custom Carpentry, LLC is a limited liability company located at 1224 Valley Forge Road, Norristown, PA 19403. At all times relevant hereto, Guidi Homes, Inc. contracted with Additional Defendant, DH Custom Carpentry, LLC for work pertaining to the decks of certain homes that are allegedly at issue throughout the Community.

22.     Additional Defendant, Dream Maker Construction Services, LLC is a limited liability company located at 5284 Clymer Road, Quakertown, PA 18951. At all times relevant hereto, Guidi Homes, Inc. contracted with Additional Defendant, Dream Maker Construction Services, LLC for work pertaining to the decks of certain homes that are allegedly at issue throughout the Community. See Master Agreement with Dream Maker Construction Services, LLC attached hereto as Exhibit "F".

23.     Additional Defendant, Dreifuss Prebilt, Inc. a/k/a Dreifuss Fireplaces is a corporation located at 6610 Hasbrook Avenue, Philadelphia, PA 19111. At all times relevant hereto, Guidi Homes, Inc. contracted with Additional Defendant, Dreifuss Prebilt, Inc. a/k/a Dreifuss Fireplaces for work pertaining to the chimneys and/or chimney flashing and caps of certain homes that are allegedly at issues throughout the Community. See Master Agreement with Dreifuss Prebilt attached hereto as Exhibit "G".

24.     Additional Defendant, Specialty Supply Company, Inc. is a corporation located at 5 N. Olney Avenue, Suite 100A, Cherry Hill, NJ 08003. At all times relevant hereto, Guidi Homes, Inc. contracted with Additional Defendant, Specialty Supply Company, Inc. for work pertaining to the chimneys and/or chimney flashing and caps of certain homes that are allegedly at issues throughout the Community.

8

25.    Pursuant to the individual Agreements between Guidi Homes, Inc. and Additional Defendants to perform the aforementioned work throughout the Community, Additional Defendants were responsible for the workmanship and inspection of workmanship relating to the subcontracted work at the Community and were responsible to perform such work in accordance with the architectural plans and specifications as well as all applicable building codes and industry standards and Original Defendants relied on the Additional Defendants to be experts in their particular trades.

26.    Accordingly, without admitting same, Original Defendants incorporate by reference all allegations in Plaintiff's Second Amended Complaint to re-aver such allegations as to Additional Defendants, Advanced Plastering, Inc., Guerrero Brothers, Inc., Stucco Code, Inc., JL Horgan Services, LLC, Cornerstone Concrete, Inc., DH Custom Carpentry, LLC, Dream Maker Construction Services, LLC, Dreifuss Prebilt, Inc. a/k/a Dreifuss Fireplaces and Specialty Supply Company, Inc.

**COUNT I: BREACH OF CONTRACT**
**GUIDI HOMES, INC. v. ADDITIONAL DEFENDANTS ADVANCED PLASTERING,**
**INC., GUERRERO BROS., INC., STUCCO CODE, INC., JL HORGAN SERVICES,**
**LLC, CORNERSTONE CONCRETE, INC., DH CUSTOM CARPENTRY, LLC, DREAM**
**MAKER CONSTRUCTION SERVICES, LLC, DREIFUSS PREBILT, INC. A/K/A**
**DREIFUSS FIREPLACES AND SPECIALTY SUPPLY COMPANY, INC.**

27.    Defendant, Guidi Homes, Inc. incorporates by reference the allegations set forth in all preceding paragraphs as though fully set forth herein.

28.    Defendant, Guidi Homes, Inc. contracted with the Additional Defendants to perform all of the work that pertains to the various elements of the Community that Plaintiff claims were defective, as detailed above.

9

29.     Guidi Homes, Inc contracted with the Additional Defendants in reliance upon them being experts in their particular trades, but to the extent that the Additional Defendants fell short in their respective areas of expertise, it was due to their negligence in that regard.

30.     Notwithstanding the aforementioned negligence, the defective construction and any consequential damage related thereto was neither expected nor intended from the standpoint of the Additional Defendants.

31.     The contracts with the Additional Defendants required that their work, "shall be performed as shown and described in and in strict accordance with the Plans, Specifications, General Conditions, Special Conditions and Addenda thereto." See Exhibits "B"-"G".

32.     The incorporated plans, specifications, general conditions, special conditions and addenda, in turn, incorporated the applicable building codes and industry standards.

33.     The Terms and Conditions in the aforementioned contract further required at section 2.4.3, "Subcontractor shall also be directly responsible to purchaser for any warranty obligations set forth in the Owner's Purchase and Sales Agreement ... [and] shall also be directly responsible to Owner and any subsequent purchaser for any warranty obligations set forth in the Owner's standard Purchase and Sales Agreement." See Exhibits "B" -"G".

34.     Accordingly, should the allegations made by Plaintiff be proven, which allegations are specifically denied, then Defendant, Guidi Homes, Inc. alleges that the Additional Defendants breached their contractual duties related to the aforementioned work causing the damages alleged by Plaintiff and therefore in the event of a verdict in favor of Plaintiff and against Guidi Homes, Inc., the Additional Defendants are liable over to Guidi Homes, Inc. for the entirety of the amounts awarded.

10

WHEREFORE, Defendant, Guidi Homes, Inc. hereby joins, Advanced Plastering, Inc., Guerrero Brothers, Inc., Stucco Code, Inc., JL Horgan Services, LLC, Cornerstone Concrete, Inc., DH Custom Carpentry, LLC, Dream Maker Construction Services, LLC, Dreifuss Prebilt, Inc. a/k/a Dreifuss Fireplaces and Specialty Supply Company, Inc. on the claims of Plaintiff for breach of their contractual duties owed to Defendant, Guidi Homes, Inc. the existence of any liability on the part of Guidi Homes, Inc. being expressly denied.

### COUNT II: BREACH OF CONTRACT—BREACH OF CONTRACT QUALITY REQUIREMENTS
### GUIDI HOMES, INC. v. ADDITIONAL DEFENDANTS ADVANCED PLASTERING, INC., GUERRERO BROS., INC., STUCCO CODE, INC., JL HORGAN SERVICES, LLC, CORNERSTONE CONCRETE, INC., DH CUSTOM CARPENTRY, LLC, DREAM MAKER CONSTRUCTION SERVICES, LLC, DREIFUSS PREBILT, INC. A/K/A DREIFUSS FIREPLACES AND SPECIALTY SUPPLY COMPANY, INC.

35.     Defendant, Guidi Homes, Inc. incorporates by reference the allegations set forth in all preceding paragraphs as though fully set forth herein.

36.     Defendant, Guidi Homes, Inc. contracted with the Additional Defendants to perform all of the work that pertains to the various elements of the Community that Plaintiff claims were defective as detailed above.

37.     Defendant, Guidi Homes, Inc. contracted with the Additional Defendants to perform the above referenced work in a reasonably workmanlike manner and in compliance with industry standards and local building code requirements.

38.     Defendant Guidi Homes, Inc.  relied on the Additional Defendants to perform the above referenced work in a reasonably workmanlike manner and in compliance with industry standards and local building code requirements but to the extent that the Additional Defendants fell short of these obligations, it was due to their failure in that regard.

26665832v.1

39.     Accordingly, should the allegations made by Plaintiff be proven, which allegations are specifically denied, then Defendant, Guidi Homes, Inc. alleges that the Additional Defendants breached their contractual duties related to the aforementioned work causing the damages alleged by Plaintiff and therefore in the event of a verdict in favor of Plaintiff and against Guidi Homes, Inc., the Additional Defendants are liable over to Guidi Homes, Inc. for the entirety of the amounts awarded.

WHEREFORE, Defendant, Guidi Homes, Inc. hereby joins, Advanced Plastering, Inc., Guerrero Brothers, Inc., Stucco Code, Inc., JL Horgan Services, LLC, Cornerstone Concrete, Inc., DH Custom Carpentry, LLC, Dream Maker Construction Services, LLC, Dreifuss Prebilt, Inc. a/k/a Dreifuss Fireplaces and Specialty Supply Company, Inc. on the claims of Plaintiff for breach of their contractual duties owed to Defendant, Guidi Homes, Inc. the existence of any liability on the part of Guidi Homes, Inc. being expressly denied.

<div align="center">

**COUNT III: CONTRIBUTION AND INDEMNITY**
**COMMON LAW**
**ORIGINAL DEFENDANTS v. ADDITIONAL DEFENDANTS ADVANCED**
**PLASTERING, INC., GUERRERO BROS., INC., STUCCO CODE, INC., JL HORGAN**
**SERVICES, LLC, CORNERSTONE CONCRETE, INC., DH CUSTOM CARPENTRY,**
**LLC, DREAM MAKER CONSTRUCTION SERVICES, LLC, DREIFUSS PREBILT,**
**INC. A/K/A DREIFUSS FIREPLACES AND SPECIALTY SUPPLY COMPANY, INC.**

</div>

40.     Original Defendants incorporate by reference the allegations set forth in all preceding paragraphs as though fully set forth herein.

41.     The Additional Defendants performed all of the work that pertains to the various elements of the Community that Plaintiff claims were defective as detailed above.

42.     Accordingly, should the allegations made by Plaintiff be proven, which allegations are specifically denied, Original Defendants allege that the Additional Defendants were negligent and failed to exercise their duties and reasonable care to perform all of the work that pertains to

<div align="center">12</div>

the various elements of the Community that Plaintiff claims were defective and allegedly caused the consequential damages alleged by Plaintiff.

43.     Therefore, in the event it is judicially determined that Plaintiff is entitled to an award of damages based upon the allegations in Plaintiff's Complaint and Amended Complaint, then the Additional  Defendants are solely liable to the Plaintiff, or alternatively jointly and/or severally liable with Original Defendants, or liable over to Original Defendants for common law contribution and/or indemnity.

WHEREFORE, Defendants, hereby  demand judgment in their favor and against Advanced Plastering, Inc., Guerrero Brothers, Inc., Stucco Code, Inc., JL Horgan Services, LLC, Cornerstone Concrete, Inc., DH Custom Carpentry, LLC, Dream Maker Construction Services, LLC, Dreifuss Prebilt, Inc. a/k/a Dreifuss Fireplaces and Specialty Supply Company, Inc. the existence of any liability on the part of the original Defendants being expressly denied.

<div align="center">

**COUNT IV: CONTRACTUAL INDEMNITY**
**ORIGINAL DEFENDANTS v. ADDITIONAL DEFENDANTS ADVANCED**
**PLASTERING, INC., GUERRERO BROS., INC., STUCCO CODE, INC., JL HORGAN**
**SERVICES, LLC, CORNERSTONE CONCRETE, INC., DH CUSTOM CARPENTRY,**
**LLC, DREAM MAKER CONSTRUCTION SERVICES, LLC, DREIFUSS PREBILT,**
**INC. A/K/A DREIFUSS FIREPLACES AND SPECIALTY SUPPLY COMPANY, INC.**

</div>

44.     Original Defendants incorporate by reference the allegations set forth in all preceding paragraphs as though fully set forth herein.

45.     Guidi Homes, Inc. had a written contract with Additional Defendant, Advanced Plastering, Inc. for work pertaining to various elements of the exterior wall system of certain homes including, but not limited to, elements of the exterior water management system such as weather resistant barrier elements and flashings and also stucco and veneer stone work that is allegedly at issue throughout the Community. A copy of the subject contract is attached hereto as Exhibit "B".

26665832v.1

46.     Guidi Homes, Inc. had a written contract with Additional Defendant, Stucco Code, Inc. for work pertaining to various elements of the exterior wall system of certain homes including, but not limited to, elements of the exterior water management system such as weather resistant barrier elements and flashings and also stucco and veneer stone work that is allegedly at issue throughout the Community. A copy of the subject contract is attached hereto as Exhibit "C".

47.     Guidi Homes, Inc. had a written contract with Additional Defendant, Guerrero Brothers, Inc. for work pertaining to various elements of the exterior wall system of certain homes including, but not limited to, elements of the exterior water management system such as weather resistant barrier elements and flashings and also stucco and veneer stone work that is allegedly at issue throughout the Community. A copy of the subject contract is attached hereto as Exhibit "D".

48.     Guidi Homes, Inc. had a written contract with Additional Defendant, JL Horgan Services, LLC for work pertaining to the concrete steps of certain homes that are allegedly at issue throughout the Community. A copy of the subject contract is attached hereto as Exhibit "E".

49.     Guidi Homes, Inc. had a written contract with Additional Defendant, Cornerstone Concrete, Inc. for work pertaining to the concrete steps of certain homes that are allegedly at issue throughout the Community. A copy of the subject contract cannot be located at this time but it is believed and therefore averred that the language and terms of such contract were identical to Exhibits "C", "D", "E" and "F" with respect to requirements for defense and indemnity.

50.     Guidi Homes, Inc. had a written contract with Additional Defendant, DH Custom Carpentry, LLC for work pertaining to the decks of certain homes that are allegedly at issue throughout the Community. A copy of the subject contract cannot be located at this time but it is believed and therefore averred that the language and terms of such contract were identical to Exhibits "C", "D", "E" and "F" with respect to requirements for defense and indemnity.

14

51.     Guidi Homes, Inc. had a written contract with Additional Defendant, Dream Maker Construction Services, LLC for work pertaining to the decks of certain homes that are allegedly at issue throughout the Community. A copy of the subject contract is attached hereto as Exhibit "F".

52.     Guidi Homes, Inc. had a written contract with Additional Defendant, Dreifuss Prebilt, Inc. a/k/a Dreifuss Fireplaces for work pertaining to the chimneys and/or chimney caps of certain homes that are allegedly at issues throughout the Community. A copy of the subject contract is attached hereto as Exhibit "G".

53.     Guidi Homes, Inc. had a written contract with Additional Defendant, Specialty Supply Company, Inc. for work pertaining to the chimneys and/or chimney caps of certain homes that are allegedly at issues throughout the Community. A copy of the subject contract cannot be located at this time but it is believed and therefore averred that the language and terms of such contract were identical to Exhibits "B", "C", "D", "E", "F" and "G" with respect to requirements for defense and indemnity.

54.     The aforementioned written contracts required that the Additional Defendants defend and indemnify, "Guidi Homes, Inc. and General Contractor, Construction Manager, Prime Contractor, Owner, Architect, Engineer, Partner and Joint Venture and their agents, employees, representatives, officers, directors, stockholders, members, managers and parent, subsidiary and affiliated companies" and as such the Additional Defendants are contractually required to defend and indemnify all of the Original Defendants. See, e.g., Paragraph 24.1 of Exhibits "B", "C", "D", "E", "F", and "G".

55.     Original Defendants have tendered the claims of Plaintiff to Additional Defendants, Advanced Plastering, Inc., Stucco Code, Inc. Guerrero Brothers, Inc., JL Horgan Services, LLC, Cornerstone Concrete, Inc., DH Carpentry, LLC, Dream Maker Construction Services, LLC,

15

Dreifuss Prebilt, Inc. a/k/a Dreifuss Fireplaces and Specialty Supply Company, Inc. by letters attached hereto collectively as Exhibit "H".

56.     All Additional Defendants have improperly declined the aforementioned tenders and as such are in breach of their contractual obligations to defend and indemnify all of the Original Defendants.

WHEREFORE, Defendants, hereby demand judgment in their favor and against Advanced Plastering, Inc., Guerrero Brothers, Inc., Stucco Code, Inc., JL Horgan Services, LLC, Cornerstone Concrete, Inc., DH Custom Carpentry, LLC, Dream Maker Construction Services, LLC, Dreifuss Prebilt, Inc. a/k/a Dreifuss Fireplaces and Specialty Supply Company, Inc. the existence of any liability on the part of the original Defendants being expressly denied.

## COUNT V: BREACH OF CONTRACT—FAILURE TO PROCURE INSURANCE
### ORIGINAL DEFENDANTS v. ADDITIONAL DEFENDANTS ADVANCED PLASTERING, INC., GUERRERO BROS., INC., STUCCO CODE, INC., JL HORGAN SERVICES, LLC, CORNERSTONE CONCRETE, INC., DH CUSTOM CARPENTRY, LLC, DREAM MAKER CONSTRUCTION SERVICES, LLC, DREIFUSS PREBILT, INC. A/K/A DREIFUSS FIREPLACES AND SPECIALTY SUPPLY COMPANY, INC.

57.     Original Defendants incorporate by reference the allegations set forth in all preceding paragraphs as though fully set forth herein.

58.     The aforementioned contracts contained insurance requirements that required the Additional Defendants to arrange for certain specific types of insurance and to arrange for the Original Defendants to be named as Additional Insureds on those policies on a primary and non-contributory basis. See, e.g., Article 36 of Exhibits "B", "C", "D", "E", "F", and "G".

59.     To the extent that the Additional Defendants failed to comply with the aforementioned insurance requirements and their insurance company has denied defense and indemnity to the Original Defendants, the Additional Defendants are in breach of their contractual obligations regarding provision of insurance.

16

26665832v.1

WHEREFORE, Defendants, hereby demand judgment in their favor and against Advanced Plastering, Inc., Guerrero Brothers, Inc., Stucco Code, Inc., JL Horgan Services, LLC, Cornerstone Concrete, Inc., DH Custom Carpentry, LLC, Dream Maker Construction Services, LLC, Dreifuss Prebilt, Inc. a/k/a Dreifuss Fireplaces and Specialty Supply Company, Inc. the existence of any liability on the part of the original Defendants being expressly denied.

## COUNT VI: BREACH OF EXPRESS WARRANTY
**DEFENDANT, GUIDI HOMES, INC. v. ADDITIONAL DEFENDANTS ADVANCED PLASTERING, INC., GUERRERO BROS., INC., STUCCO CODE, INC., JL HORGAN SERVICES, LLC, CORNERSTONE CONCRETE, INC., DH CUSTOM CARPENTRY, LLC, DREAM MAKER CONSTRUCTION SERVICES, LLC, DREIFUSS PREBILT, INC. A/K/A DREIFUSS FIREPLACES AND SPECIALTY SUPPLY COMPANY, INC.**

60.     Defendant, Guidi Homes, Inc. incorporates by reference the allegations set forth in all preceding paragraphs as though fully set forth herein.

61.     Defendant, Guidi Homes, Inc. contracted with the Additional Defendants to perform all of the work that pertains to the various elements of the Community that Plaintiff claims were defective, as detailed above.

62.     Additional Defendants' certifications and representations in their respective subcontract agreements constituted express warranties that Additional Defendants' work and materials which were performed or furnished under the respective subcontract agreements would be made good, at the Additional Defendants' own expense, with respect to any defect in materials or workmanship which may occur or develop prior to Guidi's release from responsibility to the owners of the homes. See, Paragraph 16.1 of Exhibits "B", "C", "D", "E", "F", and "G".

63.     Additional Defendants also expressly warranted to assume, as a direct obligation to Guidi and/or the owners of the respective homes any guarantees or warranties which would otherwise be the responsibility of Guidi or other subcontractors, when such guarantees or

17

warranties have been cancelled as a result of the Additional Defendant's operations in performance of the subcontract agreement.  See, Paragraph 16.2 of Exhibits "B", "C", "D", "E", "F", and "G".

64.     Accordingly, should the allegations made by Plaintiff be proven, which allegations are specifically denied, then Defendant, Guidi Homes, Inc. alleges that the Additional Defendants breached the express warranties related to the aforementioned work causing the damages alleged by Plaintiff and therefore in the event of a verdict in favor of Plaintiff and against Guidi Homes, Inc., the Additional Defendants are liable over to Guidi Homes, Inc. for the entirety of the amounts awarded.

WHEREFORE, Defendants, hereby  demand judgment in their favor and against Advanced Plastering, Inc., Guerrero Brothers, Inc., Stucco Code, Inc., JL Horgan Services, LLC, Cornerstone Concrete, Inc., DH Custom Carpentry, LLC, Dream Maker Construction Services, LLC, Dreifuss Prebilt, Inc. a/k/a Dreifuss Fireplaces and Specialty Supply Company, Inc. the existence of any liability on the part of the original Defendants being expressly denied.

## COUNT VII: BREACH OF CONTRACT
### (THIRD PARTY BENEFICIARY)
**ORIGINAL DEFENDANTS. v. ADDITIONAL DEFENDANTS ADVANCED PLASTERING, INC., GUERRERO BROS., INC., STUCCO CODE, INC., JL HORGAN SERVICES, LLC, CORNERSTONE CONCRETE, INC., DH CUSTOM CARPENTRY, LLC, DREAM MAKER CONSTRUCTION SERVICES, LLC, DREIFUSS PREBILT, INC. A/K/A DREIFUSS FIREPLACES AND SPECIALTY SUPPLY COMPANY, INC.**

65.     Original Defendants incorporate by reference the allegations set forth in all preceding paragraphs as though fully set forth herein.

66.     Defendant, Guidi Homes, Inc. contracted with the Additional Defendants to perform all of the work that pertains to the various elements of the Community that Plaintiff claims were defective, as detailed above.

26665832v.1

67.     At the time the various subcontractor agreements were entered into, it was the intent of Guidi Homes, Inc. and the Additional Defendants that the other Original Defendants, as well as purchasers of the homes within the Community and Plaintiff, as the homeowners association, benefit from the above referenced work performed in accordance with the subcontractor agreements.

68.     As the general contractor of the homes located in the Community, Guidi Homes, Inc. knew, and intended for, Additional Defendants' work supplied pursuant to the various subcontractor agreements to benefit the other Original Defendants, as well as all purchasers of the homes in the Community as well as Plaintiff.

69.     Indeed, Article 33 of Exhibits "B", "C", "D", "E", "F", and "G" specifically states:

"Article 33. Owner Right to Reject Subcontract and Third Party Beneficiary Rights
33.1    Subcontractor recognizes that the Owner may reject any proposed subcontractor or supplier for any reason and its discretion prior to execution of the subcontract.
33.2    Nothing contained in the Subcontract Documents or Contract Documents shall create a contractual relationship between the Owner and any third parties; however, it is understood and agreed that the Owner is an intended beneficiary of all subcontracts, purchase orders, and other agreements between the Contractor and third parties."

See Exhibits "B", "C", "D", "E", "F", and "G".

70.     Similarly, the Additional Defendants knew and intended that the other Original Defendants, as well as all purchasers of the homes within the Community and Plaintiff benefit from their work provided under the subcontractor Agreements.

71.     After all, Additional Defendants knew, or should have known, that the homes in which they were performing work would be sold and lived-in by purchasers of the homes within the Community.

72.     Additional Defendants knew, or should have known, that the other Original Defendants, as well as the purchasers of the homes within the Community and Plaintiff, would

26665832v.1

rely upon their contractual obligations to Guidi Homes to perform their work in a reasonably workmanlike manner and in compliance with industry standards and local building code requirements.

73.     Thus, Additional Defendants knew, could not have been unaware of, and intended that the other Original Defendants, as well as the purchasers of the homes within the Community and Plaintiff, were intended third-party beneficiaries of the subcontractor agreements between Guidi Homes, Inc. and Additional Defendants.

74.     Additional Defendants breached their respective subcontractor agreements when they failed to perform all of their work in a reasonably workmanlike manner and in compliance with industry standards and local building code requirements.

75.     Original Defendants intend to support this allegation with facts developed during the course and scope of discovery, and expert reports to be produced during the course of litigation, as well as the language of Exhibits "B", "C", "D", "E", "F" and "G", particularly Article 33.

WHEREFORE, Defendants, hereby demand judgment in their favor and against Advanced Plastering, Inc., Guerrero Brothers, Inc., Stucco Code, Inc., JL Horgan Services, LLC, Cornerstone Concrete, Inc., DH Custom Carpentry, LLC, Dream Maker Construction Services, LLC, Dreifuss Prebilt, Inc. a/k/a Dreifuss Fireplaces and Specialty Supply Company, Inc. the existence of any liability on the part of the original Defendants being expressly denied.

<center>

**COUNT VIII: NEGLIGENCE**
**<u>ORIGINAL DEFENDANTS. v. ADDITIONAL DEFENDANTS ADVANCED
PLASTERING, INC., GUERRERO BROS., INC., STUCCO CODE, INC., JL HORGAN
SERVICES, LLC, CORNERSTONE CONCRETE, INC., DH CUSTOM CARPENTRY,
LLC, DREAM MAKER CONSTRUCTION SERVICES, LLC, DREIFUSS PREBILT,
INC. A/K/A DREIFUSS FIREPLACES AND SPECIALTY SUPPLY COMPANY, INC.</u>**

</center>

76.     Original Defendants incorporate by reference the allegations set forth in all preceding paragraphs as though fully set forth herein.

<center>20</center>

26665832v.1

77.     Defendant, Guidi Homes, Inc. contracted with the Additional Defendants to perform all of the work that pertains to the various elements of the Community that Plaintiff claims were defective, as detailed above.

78.     Plaintiff's Second Amended Complaint claims that the various components comprising the various elements of the Community and the exterior envelopes of the homes within the Community were defective, and that subcontractors negligently performed their work, as detailed above.

79.     Additional Defendants owed a duty to the Original Defendants to perform their work in a reasonable workmanlike manner, free of construction defects.

80.     Additional Defendants performed the construction and/or installation of the various components comprising the various elements of the Community referenced above that Plaintiff alleges were defectively built.

81.     The aforementioned allegedly defective work and consequential damage sustained by the Plaintiff were caused by the negligent and careless acts and omissions of Additional Defendants.

82.     The defects and consequential damages alleged by Plaintiff was neither expected nor intended from the standpoint of the Additional Defendants.

83.     The negligence and carelessness of Additional Defendants, and not Original Defendants, is the legal and proximate cause of the damages sustained by Plaintiff.

WHEREFORE, Defendants, hereby  demand judgment in their favor and against Advanced Plastering, Inc., Guerrero Brothers, Inc., Stucco Code, Inc., JL Horgan Services, LLC, Cornerstone Concrete, Inc., DH Custom Carpentry, LLC, Dream Maker Construction Services,

26665832v.1

LLC, Dreifuss Prebilt, Inc. a/k/a Dreifuss Fireplaces and Specialty Supply Company, Inc. the existence of any liability on the part of the original Defendants being expressly denied.

**COUNT IX: NEGLIGENT MISREPRESENTATION UNDER *BILT-RITE*/RESTATEMENT OF TORTS (SECOND) SECTION 552 ORIGINAL DEFENDANTS. v. ADDITIONAL DEFENDANTS ADVANCED PLASTERING, INC., GUERRERO BROS., INC., STUCCO CODE, INC., JL HORGAN SERVICES, LLC, CORNERSTONE CONCRETE, INC., DH CUSTOM CARPENTRY, LLC, DREAM MAKER CONSTRUCTION SERVICES, LLC, DREIFUSS PREBILT, INC. A/K/A DREIFUSS FIREPLACES AND SPECIALTY SUPPLY COMPANY, INC.**

84.     Original Defendants incorporate by reference the allegations set forth in all preceding paragraphs as though fully set forth herein.

85.     Defendant, Guidi Homes, Inc. contracted with the Additional Defendants to perform all of the work that pertains to the various elements of the Community that Plaintiff claims were defective, as detailed above.

86.     As defined by the Restatement (Second) of Torts, Section 522, and applied in *Bilt-Rite Contractors, Inc. v. The Architectural Studio*, 581 Pa. 454, 480, 866 A.2d 270, 286 (Pa. 2005), Additional Defendants, as contractors, or holding themselves out as such, were in the business of supplying information and work for the guidance and benefit of others.

87.     Additional Defendants supplied work and other information to Guidi Homes, Inc. regarding the homes within the Community pursuant to a transaction in which they had a pecuniary interest.

88.     Additional Defendants had a duty to perform their work in compliance with all relevant laws, regulations, codes and industry standards.

89.     Under *Bilt-Rite*, in supplying the work and information, Additional Defendants represented that their work was free from deficiencies and defects.

90.     In supplying the work and information, Additional Defendants also represented that their work was sufficient for the sale and occupancy of the homes, in accordance with all relevant laws, regulations, codes and industry standards and would be habitable and free from water infiltration.

91.     Additional Defendants made their representations with the intent to induce Guidi Homes, Inc., to act on that information in contracting with the Additional Defendants for construction of the homes within the Community.

92.     Guidi Homes, Inc. as the general contractor for construction of the homes within the Community justifiably relied upon Additional Defendants and were made to believe that the homes in the Community were built by competent subcontractors and were safe, habitable and free from defects.

93.     If the allegations of Plaintiff as to defects are proven as true, all such allegations being denied, then Additional Defendants, as the subcontractors of the homes within the Community knew or should have known that the information they provided to Guidi Homes, Inc. was false, incomplete, deficient and defective.

94.     However, the Additional Defendants failed to exercise reasonable care to determine whether the information supplied was accurate and in accordance with the applicable laws and regulations.

95.     Thus, Additional Defendants are liable to the Original Defendants for their negligent misrepresentations pursuant to the Restatement (Second) of Torts, Section 552, and as elucidated in Bilt-Rite Contractors, Inc. v. The Architectural Studio.

WHEREFORE, Defendants, hereby demand judgment in their favor and against Advanced Plastering, Inc., Guerrero Brothers, Inc., Stucco Code, Inc., JL Horgan Services, LLC, Cornerstone

23

Concrete, Inc., DH Custom Carpentry, LLC, Dream Maker Construction Services, LLC, Dreifuss

Prebilt, Inc. a/k/a Dreifuss Fireplaces and Specialty Supply Company, Inc. the existence of any

liability on the part of the original Defendants being expressly denied.

**MARSHALL DENNEHEY WARNER
COLEMAN & GOGGIN**

BY:     */s/ Michael L. Detweiler, Esq.*
_____
MICHAEL L. DETWEILER, ESQ.
Attorney for Defendants,
Guidi Homes at Haverford Reserve, LLC
and Guidi Homes, Inc.

**KAPLIN STEWART**

BY:     */s/ Daniel R. Utain, Esq.*
_____
Daniel R. Utain, Esq.
Attorney for Defendants, Haverford Reserve
LP, Haverford Reserve GP, LLC, The
Goldenberg Group, Inc., Guidi Homes at
Haverford Reserve LLC, and Guidi Homes,
Inc.


**KENT & MCBRIDE, P.C.**

BY:     */s/ Jay D. Branderbit, Esq.*
_____
Jay D. Branderbit, Esq.
Attorney for Defendant Haverford Reserve
LP

Copying Prohibited

24

**WHITE AND WILLIAMS, LLP**

BY:   */s/ Mark Parisi, Esq.*

Mark L. Parisi, Esq.
Attorney for Defendants, Haverford Reserve
LP, Haverford Reserve, GP, LLC, The
Goldenberg Group, Inc., Guidi Homes at
Haverford Reserve, LLC and Guidi Homes,
Inc.

**SWARTZ CAMPBELL, LLC**

BY:   */s/ Andrew J. Reilly, Esq.*

Andrew J. Reilly, Esq.
Attorney for Defendants, Haverford
Reserve, LP, Haverford Reserve GP, LLC,
The Goldenberg Group, Inc., Guidi Homes
at Haverford Reserve, LLC and Guidi
Homes, Inc.

Dated:  May 3, 2021

26665832v.1

## **VERIFICATION**

I, Peter Guidi, am authorized to make this Verification on behalf of Defendants Guidi Homes, Inc. and Guidi Homes at Haverford Reserve, LLC.   I verify that the factual statements contained in the foregoing First Amended Joinder Complaint are true and correct to the best of my present knowledge, information, and belief.   I understand that if the above statements are not true, the deponent is subject to the penalties of 18 Pa.C.S. §4904 relating to unsworn falsification to authorities.

_____/s/_____
(Signature)

_____Peter Guidi_____
(Printed)

DATE:  May 3, 2021

26

26665832v.1

## **VERIFICATION**

I, David Mercuris, am authorized to make this Verification on behalf of Defendants Haverford Reserve, LP, Haverford Reserve GP, LLC,  and The Goldenberg Group.   I verify that the factual statements contained in the foregoing First Amended Joinder Complaint are true and correct to the best of my present knowledge, information, and belief.   I understand that if the above statements are not true, the deponent is subject to the penalties of 18 Pa.C.S. §4904 relating to unsworn falsification to authorities.

        ___/s/_____
        (Signature)


        David Mercuris_____
        (Printed)

DATE:  May 3, 2021

27

26665832v.1

| | | |
|---|---|---|
| HAVERFORD RESERVE<br>COMMUNITY ASSOCIATION | : | COURT OF COMMON PLEAS OF<br>DELAWARE COUNTY, PA |
| Plaintiff | : | DOCKET NO. 16-11177 |
| vs. | : | |
| HAVERFORD RESERVE, LP,<br>HAVERFORD RESERVE, GP, LLC,<br>THE GOLDENBERG GROUP, INC.,<br>GUIDI HOMES AT HAVERFORD<br>RESERVE, LLC AND GUIDI HOMES,<br>INC. | : | |
| Defendants | : | |
| vs. | : | |
| ADVANCED PLASTERING, INC,<br>GUERRERO BROTHERS, INC.,<br>STUCCO CODE, INC., JL HORGAN<br>SERVICES, LLC, CORNERSTONE<br>CONCRETE, INC., DH CUSTOM<br>CARPENTRY, LLC, DREAM MAKER<br>CONSTRUCTION SERVICES, LLC,<br>AND DREIFUSS PREBILT, INC. A/K/A<br>DREIFUSS FIREPLACES AND<br>SPECIALTY SUPPLY COMPANY, INC. | : | |
| Additional Defendants | : | |

## CERTIFICATE OF SERVICE

I, Jay D. Branderbit, attorney for Defendant, Haverford Reserve, LP, hereby certify that the foregoing First Amended Joinder Complaint was served upon the follow via notice of electronic filing and/or US Mail:

*Robert J. Hoffman, Esquire*
*James P. McEvilly, III, Esquire*
*Marcus & Hoffman, PC*
*326 West State Street*
*Media, PA 19063*
*Attorneys for Plaintiff*

26665832v.1

Blair H. Granger, Esquire
The Granger Firm
1800 East Lancaster Ave.
Paoli, PA 19301
Attorney for Advanced Plastering

GUERRERO BROTHERS, INC.,
380 Country Ln.
King of Prussia, PA  19406

Gregory S. Hirtzel, Esquire
Fowler Firtzel McNulty Spaulding
1860 Charter Lane, Suite 201
Lancaster, PA 17601
Attorney for Stucco Code, Inc.

Matthew E. McGuire, Esquire
**Brown McGarry Nimeroff LLC**
158 W. Gay Street, Suite 200
West Chester, PA 19380
Attorneys for Dream Maker Construction Services, LLC

CORNERSTONE CONCRETE, INC.
12 Edgemoor Lane
Honey Brook, PA 19344

DH CUSTOM CARPENTRY, LLC
1224 Valley Forge Road
Norristown, PA 19403

Kevin C. Hayes, Esquire
James A. Doherty, Esquire
**Scanlon Howley & Doherty, P.C.**
217 Wyoming Avenue
Scranton, PA 18503
Attorneys for JL Horgan Services, LLC

Carmelo T. Torraca, Esq.
Cooper Levenson
1125 Atlantic Avenue
Atlantic City, NJ 08401
Attorney for Dreifuss Prebilt, Inc. a/k/a Dreifuss Fireplaces

SPECIALTY SUPPLY COMPANY, INC.
5 N. Olney Avenue, Suite 100A

29

26665832v.1

*Cherry Hill, NJ 08003*

**MARSHALL DENNEHEY WARNER
COLEMAN & GOGGIN**

BY:    */s/ Michael L. Detweiler, Esq.*

MICHAEL L. DETWEILER, ESQ.
Attorney for Defendants,
Guidi Homes at Haverford Reserve, LLC
and Guidi Homes, Inc.

**KAPLIN STEWART**

BY:    */s/ Daniel R. Utain, Esq.*

Daniel R. Utain, Esq.
Attorney for Defendants, Haverford Reserve
LP, Haverford Reserve GP, LLC, The
Goldenberg Group, Inc., Guidi Homes at
Haverford Reserve LLC, and Guidi Homes,
Inc.

**KENT & MCBRIDE, P.C.**

BY:    */s/ Jay D. Branderbit, Esq.*

Jay D. Branderbit, Esq.
Attorney for Defendant Haverford Reserve
LP

**WHITE AND WILLIAMS, LLP**

BY:    */s/ Mark Parisi, Esq.*

Mark L. Parisi, Esq.

30

Copying Prohibited

26665832v.1

Attorney for Defendants, Haverford Reserve
LP, Haverford Reserve, GP, LLC, The
Goldenberg Group, Inc., Guidi Homes at
Haverford Reserve, LLC and Guidi Homes,
Inc.

**SWARTZ CAMPBELL, LLC**

BY:   */s/ Andrew J. Reilly, Esq.*

_____

Andrew J. Reilly, Esq.
Attorney for Defendants, Haverford
Reserve, LP, Haverford Reserve GP, LLC,
The Goldenberg Group, Inc., Guidi Homes
at Haverford Reserve, LLC and Guidi
Homes, Inc.

Dated:  May 3, 2021

Copying Prohibited

26665832v.1

# EXHIBIT "A"

**MARCUS & HOFFMAN, P.C.**
**BY: ROBERT J. HOFFMAN, ESQUIRE**
Attorney Identification No. 68743
**BY: JAMES P. McEVILLY, III, ESQUIRE**
Attorney Identification No. 74072
326 West State Street
Media, PA 19063
(610) 565-4660
Attorneys for Plaintiff

## IN THE COURT OF COMMON PLEAS OF DELAWARE COUNTY, PA
## CIVIL ACTION - LAW

| | | |
|---|---|---|
| HAVERFORD RESERVE COMMUNITY ASSOCIATION | : | |
| Plaintiff | : | No. 2016-11177 |
| v. | : | |
| | : | |
| HAVERFORD RESERVE, LP | : | JURY TRIAL DEMANDED |
| HAVERFORD RESERVE GP, LLC | : | |
| THE GOLDENBERG GROUP, INC. | : | |
| GUIDI HOMES AT HAVERFORD RESERVE, LLC | : | |
| GUIDI HOMES, INC. | : | |
| Defendants | : | |

## NOTICE

    You have been sued in Court. If you wish to defend against the claims set forth in the following pages, you must take action within twenty (20) days after this Complaint and Notice are served by entering in writing with the Court your defenses or objections to the claims set forth against you herein. You are warned that if you fail to do so, the case may proceed without you and a Judgment may be entered against you by the Court without further notice for any money claimed in the Complaint or for any other claim or relief requested by the Plaintiff. You may lose money or property or other rights important to you.

    **YOU SHOULD TAKE THIS PAPER TO YOUR LAWYER AT ONCE. IF YOU DO NOT HAVE A LAWYER OR CANNOT AFFORD A LAWYER, GO TO OR TELEPHONE THE OFFICE SET FORTH BELOW TO FIND OUT WHERE YOU CAN GET LEGAL HELP.**

<div align="center">

LAWYER'S REFERENCE SERVICE
DELAWARE COUNTY BAR ASSOCIATION
Front & Lemon Streets
Media, Pennsylvania 19063
(610) 566-6625

</div>

Copying Prohibited

## AVISO

LE HAN DEMANDADO A USTED EN LA CORTE. SI USTED QUIERE DEFENDERSE DE ESTAS DEMANDAS EXPUESTAS EN LAS PAGINAS SIGUIENTES, USTED TIENE VEINTE (20) DIAS DE PLAZO AL PARTIR DE LA FECHA DE LA DEMANDA Y LA NOTIFICACION. HACE FALTA ASCENTAR UNA COMPARENCIA ESCRITA O EN PERSONA O CON UN ABOGADO Y ENTREGAR A LA CORTE EN FORMA ESCRITA SUS DEFENSAS O SUS OBJECIONES A LAS DEMANDAS EN CONTRA DE SU PERSONA. SEA AVISADO QUE SI USTED NO SE DEFIENDE, LA CORTE TOMARA, MEDIDAS Y PUEDE CONTINUAR LA DEMANDA EN CONTRA SUYA SIN PREVIO AVISO O NOTIFICACION. ADEMAS, LA CORTE PUEDE DECIDER A FAVOR DEL DEMANDANTE Y REQUIERE QUE USTED CUMPLA CON TODAS LAS PROVISIONES DE ESTA DEMANDA. USTED PUEDE PERDER DINERO O SUS PROPIEDADES U OTROS DERECHOS IMPORTANTES PARA USTED.

LLEVE ESTA DEMANDA A UN ABOGADO IMMEDIATAMENTE. SI NO TIENE ABOGADO O SI NO TIENE EL DINERO SUFICIENTE DE PAGAR TAL SERVICIO, VAYA EN PERSONA O LLAME POR TELEFONO A LA OFICINA CUYA DIRECCION SE ENCUENTRA ESCRITA ABAJO PARA AVERIGUAR DONDE SE PUEDE CONSEGUIR ASISTENCIA LEGAL.

LAWYER'S REFERENCE SERVICE
DELAWARE COUNTY BAR ASSOCIATION
Front & Lemon Streets
Media, Pennsylvania 19063
(610) 566-6625

**MARCUS & HOFFMAN, P.C.**
**BY: ROBERT J. HOFFMAN, ESQUIRE**
Attorney Identification No. 68743
**BY: JAMES P. McEVILLY, III, ESQUIRE**
Attorney Identification No. 74072
326 West State Street
Media, PA 19063
(610) 565-4660
Attorneys for Plaintiff

## IN THE COURT OF COMMON PLEAS OF DELAWARE COUNTY, PA
## CIVIL ACTION - LAW

| | | |
|---|---|---|
| HAVERFORD RESERVE COMMUNITY ASSOCIATION | : | |
| Plaintiff | : | No. 2016-11177 |
| v. | : | |
| | : | |
| HAVERFORD RESERVE, LP | : | JURY TRIAL DEMANDED |
| HAVERFORD RESERVE GP, LLC | : | |
| THE GOLDENBERG GROUP, INC. | : | |
| GUIDI HOMES AT HAVERFORD RESERVE, LLC | : | |
| GUIDI HOMES, INC. | : | |
| Defendants | : | |

## SECOND AMENDED COMPLAINT

Plaintiff, Haverford Reserve Community Association ("Association") by and through its undersigned counsel, hereby files this Second Amended Complaint (hereinafter referred to as "Second Amended Complaint") and in support thereof avers as follows:

## I.    BACKGROUND

1.    Haverford Reserve, the Carriage Homes ("Haverford Reserve" or "Community"), is a relatively new 100 home planned community in Haverford Township with stucco and stone-clad homes that were constructed from 2010-2019.

Copying Prohibited

2.      Homes throughout the Community are currently beset with moisture intrusion issues and extensive damage behind the exterior cladding due to numerous construction defects from the tops of the chimney enclosures to the bottom of grade level stone veneer and stucco.

3.      The entire Community is currently in the midst of a multi-million dollar repair and remediation project funded by a bank construction loan and special assessments levied by the Association on homeowners in an effort to salvage the integrity, habitability and value of their homes.

4.      The remediation project commenced with the Association's general contractor on March 1, 2021, and the removal of stucco and stone veneer has revealed far more extensive moisture damage to the underlying building components in multiple homes than anticipated by the thorough invasive testing procedures performed by the Association's engineers and contractors.

5.      As a result, the expected cost of the approximately $10 million remediation project undertaken by the Association on March 1st, after a diligent bidding and negotiation process conducted by the Board of the Association and its advisers, has now quickly ballooned to the point that the cost is expected to far outstrip original estimates when the remediation project started.

6.      After engaging in a joint investigation with the Association's engineering representatives and developing repair protocols for numerous structural defects in homes throughout the Community in 2018 and 2019, Defendants abruptly reversed course in late 2019 and have since engaged in a campaign of delay, denial and obstruction in defiance of their obligations to the Community.

7.      Prior to the inception of this Action, the Association offered to enter into a tolling agreement with Defendants to avoid filing a legal action while still protecting any potential claims from being allegedly barred by the applicable statute of limitations while transition of control of

the Association from defendants' control to homeowner control took place, but the Association's overture was rebuffed.

8.    Consequently, on December 20, 2016, the Association filed and served a Praecipe for Writ of Summons in the above-referenced matter.

9.    The next day, on December 21, 2016, the Defendants forced the Association to file a Complaint by filing of a Rule requiring the filing of a Complaint within twenty days.

10.    Thus, on January 10, 2017, the Association filed its original Complaint at the direct behest and insistence of Defendants.

11.    Immediately thereafter, Defendants waged an aggressive attack on the Association, its volunteer Board members, and the Association's professional property management firm by refusing to grant customary extensions of time for discovery responses and documents to be collected by the Association, rapidly filing motions to compel discovery with little or no attempt to comply with the obligation to confer, service of subpoenas on all manner of third party representatives affiliated with the Association, and demands for the immediate depositions of all Board members and the Community property manager.

12.    In a blatant and bad faith effort to intimidate the Association and its Board to surrender any legal claims they had or may subsequently discover during the transition with due diligence, on January 19, 2017, Defendants filed an Answer with New Matter and Counterclaim against the Association.  In their Counterclaim, Defendants filed baseless claims for abuse of process, tortious interference with contract and tortious interference with prospective business relationships for a Complaint they essentially forced the Association to file at the time it did so.

13.     Defendants and their representatives have refused to withdraw the transparently abusive Counterclaim and have been placed on formal notice of the Association's Dragonetti claims against Defendants and their legal counsel.

## II.     PARTIES

14.     The Association incorporates all prior paragraphs as if fully set forth at length herein.

15.     Plaintiff, Haverford Reserve Community Association, a non-profit corporation, was created pursuant to the Pennsylvania Planned Community Act, 68 Pa. C.S.A. §§ 5101 *et seq.* (the "Act"), on June 28, 2010 ("Plaintiff," "Community," and/or "Association").

16.     Defendant, Haverford Reserve, LP, is a Pennsylvania Corporation having a business address of 350 Sentry Parkway, Building 630, Suite 300, Blue Bell, PA 19422.

17.     Defendant, Haverford Reserve GP, LLC, is a Pennsylvania Corporation having a business address of 350 Sentry Parkway, Building 630, Suite 300, Blue Bell, PA 19422.

18.     Defendant, The Goldenberg Group, Inc. is a Pennsylvania Corporation having a business address of 350 Sentry Parkway, Building 630, Suite 300, Blue Bell, PA 19422.

19.     Defendant, Guidi Homes at Haverford Reserve, LLC, is a Pennsylvania Corporation having a business address of 921 B N. Bethlehem Pike, P.O. Box 826, Spring House, PA 19477.

20.     Defendant, Guidi Homes, Inc., is a Pennsylvania Corporation having a business address of 925 Harvest Drive, Suite 220, Blue Bell, PA 19422.

21.     Defendants, Haverford Reserve, LP, Haverford Reserve GP, LLC, are hereinafter collectively referred to as the "Haverford entities."  The Haverford Entities are essentially shell companies used by the Builders in connection with the development, construction and sale of homes in the Community.

22.     Defendants, The Goldenberg Group, Inc., Guidi Homes at Haverford Reserve, LLC, and Guidi Homes, Inc., the Builders of the Community, are hereinafter collectively referred to as the "Builders."

23.     Defendants, Haverford entities and Builders, are hereinafter collectively referred to as the "Defendants."

### III.           JURISDICTION AND VENUE

24.     The Association incorporates all prior paragraphs as if fully set forth at length herein.

25.     The acts and omissions of Defendants, as described herein, occurred in Delaware County, Pennsylvania, and affected real property located in Delaware County, Pennsylvania.

26.     The Defendants routinely solicit and conduct business within the Commonwealth of Pennsylvania.

27.     The amount in controversy is greater than Fifty Thousand Dollars ($50,000.00).

28.     Pursuant to Pa.R.C.P. Sections 1006(a), 2130(a) and 2179(a), venue is proper in this Court.

Copying Prohibited

## IV.        FACTUAL ALLEGATIONS

### A.        Background

29.    The Association incorporates all prior paragraphs as if fully set forth at length herein.

30.    All construction defects identified throughout this Complaint involve the Defendants' work on the Haverford Reserve which was performed, upon information and belief, solely by subcontractors hired by Defendants to do this work on their behalf, which work was performed negligently.

31.    This case involves Defendants' and/or Defendants' subcontractors failure to comply with applicable building codes, manufacturers specifications, construction plans, and established industry standards in Defendants' design and installation of structural elements of the Units constructed, marketed, and sold by them at the Haverford Reserve Community, including without limitation: exterior façade stucco, stone veneer and cement fiber siding (collectively "cladding"); weep screeds, weather resistant barriers beneath the cladding, and flashing for proper drainage of the moisture beneath Unit cladding; chimney caps, pans, and enclosures with weep screed; windows and flashing; cladding; roofs; deck ledger boards and flashing; entry stoops/porches; frieze board installation; and undersized gutters and downspouts.

32.    On or about June 29, 2010, Haverford Reserve, LP recorded a Declaration with the Recorder of Deeds, Delaware County, Pennsylvania. (A true and correct copy of the Declaration is attached hereto as Exhibit "A" and is incorporated herein by reference.)

33.    The act of recording the Declaration created the Community commonly known as Haverford Reserve Community Association.

34.     The Association is a flexible planned community pursuant to the Act at Sections 5103, 5105, and 5206 *et seq.*

35.     Pursuant to the Public Offering Statement, in Section "I," the Community will have up to 150 single family dwellings. (A true and correct copy of the Public Offering Statement is attached hereto as Exhibit "B" and incorporated herein by reference.)

36.     The Association consists of all the unit owners within the Community.

37.     Most of the Units within the Association are currently owned by individuals who purchased their units from the Defendants primarily for personal, family, or household purposes.

38.     Haverford Reserve, LP is the Declarant of the Association as that term is defined in the Association's Governing Documents and the Act.

39.     The Builders and the Haverford Entities were all actively involved and interchangeably responsible for the creation, planning, development, construction and marketing of the Community and they are all jointly and severally responsible for the claims and damages alleged by the Association herein.

40.     Defendant, Haverford Reserve GP, LLC, is the general partner of Defendant, Haverford Reserve, LP, a limited partnership.

41.     Pursuant to 15 Pa.C.S.A. §8533, a general partner is liable for the debts and obligations of a limited partnership. Accordingly, Defendant, Haverford Reserve GP, LLC, is jointly liable for the debts and obligations of Defendant, Haverford Reserve, LP, with respect to the Association.

42.     Upon information and belief, Defendants, Haverford Reserve, LP, Haverford Reserve GP, LLC, and The Goldenberg Group, Inc. shared common ownership, operated under unified administrative control, and have similar or supplementary business functions.

43.     Upon information and belief, at all relevant times, the Defendants intermingled their affairs with one another and otherwise failed to recognize clear distinctions among one another with respect to development and construction of the entire Community and the marketing and sale of the units therein.

44.     At all relevant times, the Defendants worked in concert and/or provided material support to one another with respect to the acts and omissions set forth in this lawsuit.

45.     Consequently, the Defendants effectively operated as one entity whose acts, omission, and shared leadership effectively makes the decision of one immediately applicable to the other.

46.     The Defendants and the Association are subject to the Act as well as the Governing Documents including the Public Offering Statement, Declaration and Bylaws.

47.     Pursuant to Section 5302 of the Act, the Association has the power to, *inter alia*, institute litigation in its own name on behalf of itself or two or more unit owners on matters affecting the Association.

**B.**     **Defendants' Control of the Association and Transition to Unit Owner Control**

48.     The Association incorporates all prior paragraphs as fully set forth at length herein.

49.     Pursuant to Section 5303(a) of the Act, the Executive Board acts on behalf of the Association and stands in a fiduciary relation to the Association.

50.     As set forth in the Declaration in Section 3.2, the Declarant controlled the Board until the earliest to occur of (i) seven (7) years after the date of the Declaration or (ii) sixty (60) days from the date when 75% of Units have been conveyed by the Declarant. (Exhibit "A" at pg. 4).

51.    The Declaration was created by and/or at the direction of the Defendants.

52.    The Defendants controlled and dominated the Executive Board and the affairs of the Association from the recording of the Declaration on June 29, 2010 through the transition election on or about July 20, 2016.

53.    It was during this time period in which the Defendants controlled the Association through their employees on the Executive Board and stood in a fiduciary relationship to the Association and its members.

54.    As part of the process of transitioning from the Defendants' control of the Association to control by the unit owners, the Association began commissioning comprehensive reports and studies to evaluate the Defendants' design, construction, and operation of the Community.

55.    The structural defects as defined in the Act constitute deficiencies and nonconformities set forth in this Second Amended Complaint are both patent and latent in nature.

56.    The latent defects were not disclosed by the Defendants and/or required the services of skilled professional engineers to locate and identify in homes throughout the Community, including extensive hidden moisture damage behind the stucco and exterior cladding on homes in the Community.

57.    The Association provided information regarding certain structural defects to the Defendants well before the filing of this action to persuade them to conduct repairs discovered to be necessary as part of a joint investigation by the parties of construction defects and later as part of the Association's own investigation by its engineering experts.

58.     Despite numerous requests by the Association, and the discovery of structural defects and moisture damage of increasing severity, the Defendants have refused to address the structural defects, deficiencies and nonconformities identified by the Association promptly and fully.

59.     Pursuant to the Act, the Association is entitled to recover those funds it has expended and will continue to expend to investigate and remediate the defects and deficiencies described herein, and whatever else is necessary to address the acts and omissions of Defendants.

60.     Pursuant to the Act, the Association is entitled to recover any attorney's fees and court costs incurred in seeking redress against the Defendants for the acts and omissions described herein.

61.     Given the willful nature of the violations of the Act, and other conduct described in this Complaint by Defendants, the Association is entitled to punitive damages as provided for under the explicit terms of the Act.

62.     At all relevant times, the Defendants knew, or through the exercise of reasonable care, should have known about the existence of design and construction defects, deficiencies, and nonconformities contained in the homes they and/or their subcontractors built in the Community.

63.     Pursuant to Section 5411(b) of the Act, the Defendants are obligated to warrant against all defects in the Units, Controlled Facilities and Common Elements that are considered structural under the Act.

64.     Pursuant to Section 5103 of the Act, "structural defects" present in the Community refers to defects in any structure which is a component of (1) any unit or common element; or (2) any other portion of a unit or common element constructed, modified, altered or improved by or

on behalf of a declarant; any of which reduce the stability or safety of the structure below accepted standards and require repair, renovation, restoration or replacement.

65.     Additionally, pursuant to Section 5103 of the Act, Controlled Facilities fall under the ambit of areas in the Association protected by Section 5411(b) of the Act relating to Defendants' obligation to warrant against all structural defects in the Units, Controlled Facilities and Common Elements in the Community.

66.     Despite the exercise of reasonable diligence, the Association continues to discover the increasing number, nature and extent of all structural defects as defined in the Act, and other deficiencies and nonconformities in the Community.  Investigations into these structural defects as defined in the Act, and other deficiencies and nonconformities in the Community are ongoing as part of the Association's multi-million dollar Remediation Project to repair homes throughout the Community, and the Association reserves the right to supplement this pleading upon discovery of further latent and patent structural defects as defined in the Act, and other deficiencies and nonconformities in the Community, including the extent of hidden moisture damage beneath exterior stucco, stone veneer, and other cladding. These structural deficiencies caused by Defendants and/or their subcontractors have caused further extensive damage to the homes in the Community.

67.     The structural defects existing throughout all homes in the Community occurred in the Common Elements and Controlled Facilities of the Community.

### C.   Exterior Façade/Cladding Defects throughout the Community

68.   The Association incorporates all prior paragraphs as fully set forth at length herein.

69.   Many of the structural defects as defined in the Act, and other deficiencies and nonconformities discovered to date relate specifically to the exterior facade of the Units in the Community, including the stucco and stone veneer.

70.   These defects were latent in nature because they were hidden behind the exterior façade/cladding of the building and were not discovered until after the drafting and filing of the original Complaint in this matter.

71.   These structural defects are more fully described in multiple reports and correspondence prepared by dC Engineering, Inc. ("dCEI"), and the findings of these reports and letters are fully incorporated into this Second Amended Complaint as structural defects by reference.

72.   The reports and letters regarding the exterior façade/cladding issues, which have been provided to the Defendants in this matter (and incorporated into this Second Amended Complaint), include:

a.   Weep Screed Recommendations dated July 30, 2018 (attached hereto as Exhibit "C");

b.   Letter Report Regarding Moisture Probe Testing dated August 30, 2018 (attached hereto as Exhibit "D");

c.   Invasive Facade Inspection Summary dated October 10, 2018 attached hereto as Exhibit "E");

d.   Interim Facade Testing Report dated December 20, 2018 (attached hereto as Exhibit "F");

e.      Haverford Reserve Facade Investigation Testing and Repair Protocols Revision dated March 28, 2019 (attached hereto as Exhibit "G");

f.      Letter Report Regarding Windowsill Flashing dated April 16, 2019 (attached hereto as Exhibit "H");

g.      Letter Report Regarding 222 Valley Ridge Road Chimney Stucco Evaluation Report dated June 17, 2019 (attached hereto as Exhibit "I");

h.      Haverford Reserve Moisture Probe Testing (Twenty (20) Chimney Enclosures) dated December 2, 2019 (attached hereto as Exhibit "J"); and

i.      Deck Ledger Observations dated September 10, 2019 (attached hereto as Exhibit "K").

j.      Façade Related Defects Report dated September 28, 2020 (attached hereto as Exhibit "L").

### i.    Stone Veneer Foundation Weep Screed and Entry Stoops

73.    The exterior cladding of the Units at or adjacent to the entryways is comprised of a combination of stone veneer with transition points to stucco over weather protective barriers covering wood sheathing.  The results of joint moisture testing by engineering firms retained separately on behalf of Plaintiff and Defendants revealed elevated moisture levels and active water intrusion behind the exterior cladding system, in violation of the warranty against structural defects in the Act.  *See* Exhibit "D."

74.    The Defendants' work on the stone veneer foundation weep screed and entry stoops was performed solely by subcontractors hired by Defendants to do this work on their behalf, which work was performed negligently.   Said negligent work has further damaged the underlying components of the Units in the Community.

Copying Prohibited

75.     The exterior cladding system of the Units has been constructed in a manner that deviates from the applicable building codes, plans filed with Haverford Township and manufacturer's specifications, requiring full removal of stone veneer and stucco cladding, removal and replacement of stone pavers surrounding the entryways, and resulting in damage to the building components underlying the exterior cladding which require replacement. *See* Exhibits "C" and "E."

76.     Exterior cladding systems of the type used throughout Haverford Reserve allow some rainwater and incidental moisture to pass through it.  The internal vapor barrier and  weep screed is part of the system that directs water to the exterior of the structure and prevents water from remaining trapped behind the cladding and causing the stone, building paper, wood and other components to deteriorate. *See* Exhibit "C."

77.     Among the multiple problems with the installation of the exterior cladding systems at or adjacent to the Unit entryways, Defendants failed to properly install weep screed used to facilitate the drainage of moisture from behind the exterior cladding out the bottom of the façade or between transition points between stucco and stone veneer in the façade.  Instead, Defendants and/or their subcontractors negligently failed to install any weep screed or required flashing at the transition points between stucco and stone veneer, and buried foundation weep screed so that moisture is trapped behind the exterior cladding of the building system causing damage. *See* Exhibit "E."

78.     Instead, Defendants and/or their subcontractors buried foundation weep screed installed at the bottom of the stone veneer below ground (at least 4"-6" below grade in many instances), despite building codes, plans filed with Haverford Township, manufacturer specifications and industry standards calling for foundation weep screed installation at no less than

16

4" <u>above</u> grade, effectively trapping moisture within the system and leading to deterioration of the building components. *See* Exhibit "F." Indeed, the design detail for the building plans filed by Defendants with Haverford Township show that foundation weep screed was supposed to be installed at a minimum of 2" above paving or 4" above grade. Instead, the as-built foundation weep screed in the Community is missing or buried from sight.

79.    Moreover, Defendants admitted that they failed to install on the first four Units built in the Community continuous drainage mats behind the exterior cladding to facilitate the draining of moisture behind the façade cladding. Additional testing at other locations in the Community showed a lack of continuity in the drainage mats installed behind cladding on the Units. The predictable result of Defendants' and/or Defendants' subcontractors negligent and defective construction techniques is extensive water damage to the exterior façade components, stone pavers surrounding entryways, and the interior building components, materials, framing, and wood sheathing throughout the Community, as documented in detail by Plaintiff's engineers. *See* Exhibit "F."

80.    As detailed above, despite filing foundation weep screed designs with Haverford Township regarding the Units, Defendants and/or their subcontractors disregarded their own filed design specifications and written reports from unit owners and buried foundation weep screen *below* grade or with less than two (2) inches minimum clearance to paving surfaces.

81.    David Mercuris, an officer and Senior Vice President of The Goldenberg Group, parent company of the special purpose entities formed in connection with developing, constructing, and marketing Haverford Reserve, was the primary point of contact for handling the sale of new Units sold by Defendants in the Community. Indeed, the sales literature for Haverford Reserve used by Defendants, including videos and web materials, bore the name of "Goldenberg

Group," rather than the names of the special purpose entities formed for purposes of development, construction and marketing of the Community. The website for Haverford Reserve marketing the remaining Units for sale in the Community by Defendants identifies "The Goldenberg Group" as the builder. Accordingly, The Goldenberg Group did not observe corporate formalities in its dealings with third parties, including Unit purchasers, and commingled its affairs with the special purpose entities formed by it in connection with Haverford Reserve.

82.     Likewise, the sales literature for Haverford Reserve used by Defendants, including videos and web materials, bore the name of "Guidi Homes" rather than the names of the special purpose entities formed for purposes of development, construction and marketing of the Community. Moreover, the website for Haverford Reserve marketing the remaining Units for sale in the Community by Defendants identifies "Guidi Homes" as the builder. Accordingly, Guidi Homes did not observe corporate formalities in its dealings with third parties, including Unit purchasers, and commingled its affairs with the special purpose entities formed by it in connection with Haverford Reserve.

83.     The defectively and negligently installed entry stoops, cladding systems, and weep screed in the Units have led to failures in the structures of the Units resulting in water and moisture infiltration into the building components and causing extensive damage, the full extent of which is still being uncovered as part of the Remediation Project taking place in the Community.

ii.     **Defectively Installed Chimneys throughout Haverford Reserve**

84.     Investigation of construction defects at Haverford Reserve has also uncovered extensive problems likely common to all chimneys installed in the 100 Units throughout the Community. Moisture probe testing pursuant to an agreed protocol was conducted on twenty (20) exterior chimney enclosures within the Community by Defendants' engineering firm on October

31, 2019 and November 1, 19, and 20, 2019.  Nineteen (19) of the twenty (20) chimney enclosures tested yielded elevated moisture readings or were observed to have "soft" wood sheathing indicative of sustained elevated moisture levels.  *See* Exhibit "J."

      85.    The Defendants' work on the defectively installed chimney caps and enclosures was performed solely by subcontractors hired by Defendants to do this work on their behalf, which work was performed negligently.

      86.    This moisture probe testing of chimney enclosures followed invasive testing at two Units in the Community where inspections revealed manifold as-built construction defects in the chimney enclosures throughout the Community including the following:

    a.   the top surfaces of the chimney chase covers are not sloped to shed water;

    b.   projecting flanges are not provided at the chimney chase skirts;

    c.   the chimney chase seams and fasteners are improperly sealed;

    d.   there is insufficient overlap between chimney chase skirt and the stucco systems;

    e.   drainage mat is not provided behind the architectural trim feature at the top of the chimney enclosures;

    f.   drainage openings are not provided between the horizontal and vertical stucco surfaces;

    g.   there are excessive penetrations through the weather-resistive barrier;

    h.   there are areas of discontinuity of the weather-resistive barrier;

    i.   improper underlayment installed at chimney shoulder; and

    j.   the thermal envelope is discontinuous at the chimney enclosure.

*See* Exhibit "J."

Copying Prohibited

87.     One of the root causes of the structural defects in the chimney enclosures leading to extensive damage from water intrusion is Defendants' and/or Defendants' subcontractors use of galvanized chimney covers fabricated onsite, rather than stainless steel chimney covers measured to fit and fabricated at the distributor/manufacturer facility, resulting in misalignment and leaking into and throughout the enclosure and  placing the entire chimney enclosure system in jeopardy of extensive damage.  In order to pocket a relatively marginal amount of money by using galvanized steel fabricated onsite to protect chimney enclosures on the Units (and dispensing with the time and effort necessary to measure, fabricate at the distributor/manufacturer facility and return to install), Defendants opted for a solution systemically prone to misalignment, leaking and corrosions.  Moreover, the useful life of galvanized steel for this application is a mere ten (10) to twelve (12) years, at most, whereas for stainless steel the useful life for a chimney cover application is thirty (30) years.  Doing so was directly contrary to Defendants' representations that the Units in Haverford Reserve were "low maintenance."

88.     As a result of these multiple defects in the design and construction of the chimney enclosures, one Unit had its entire stucco system removed from the enclosure revealing the building components to be saturated with extensive sheathing damage to the structure.  *See* Exhibit "I."  The damage from the construction defects allowing excessive moisture penetration at the top of the chimney enclosure was compounded by the absence or burial of required foundation weep screed which trapped moisture in the enclosure.

89.     The Remediation Project at Haverford Reserve started on March 1, 2021 reveals the extent of the damage caused by the defective chimney enclosures installed throughout the Community by Defendants.  Thus far, extensive and severe water damage to the wood sheathing and other building components beneath the cladding of the chimney enclosures confirms the likely

necessity many of the chimney enclosures will require a full "rip and strip" of the stucco enclosing the chimneys for an evaluation of water damage and replacement of all damaged building components and installation of weep screed. *See* Exhibits "I" and "J."

90. The defectively installed chimney caps, pans, and enclosures in the Units led to failures in the structures of the chimney enclosures, resulting in water and moisture infiltration into the building components and causing extensive damage.

91. The full scope of remediating the defective chimney enclosures throughout the Community is estimated to cost several million dollars to fix as to this one category of defects alone.

### iii. Deck Ledger Board Improperly Fastened to Units and Lacking Required Flashing

92. The extensive chimney enclosure repair work recounted above required the removal of deck boards which exposed previously concealed portions of the installation of the deck ledger board and fastening of the decks to the Unit structure. Examination of this facet of the Defendants' construction revealed to Plaintiff's engineers that the deck ledger board was attached directly to the "Hardie Board" or stucco siding of the Unit. In some instances, this will permit gaps between the back side of the ledger board and the exterior face of the wall of the Unit, which does not allow the intended clamping action to occur and adequately secure the deck to the Unit structure. *See* Exhibit "K."

93. The Defendants' work on the defectively installed deck ledger boards, including without required flashing, was performed solely by subcontractors hired by Defendants to do this work on their behalf, which work was performed negligently.

94.     Defendants' and/or Defendants' subcontractors defective fastening of the deck ledger board directly to the Hardie Board system also permits water to become trapped between these two components and exposure of the Hardie Board siding to standing water and deterioration. For this reason, Hardie Board is not permitted for structural uses of this type and constitutes a safety hazard. *See* Exhibit "K." Furthermore, Defendants and/or Defendants' subcontractors did not correctly install required deck ledger flashing between the ledger board and the structure to direct moisture away from the Unit. Consequently, moisture probe testing done in the cladding surrounding the removed deck ledger board on the Unit demonstrated elevated moisture levels within the structure at that location.

95.     During discussions between the parties about the deteriorating condition of the deck ledger board and surrounding cladding, Plaintiff's representatives learned that the defective construction techniques for attaching deck ledger boards to the Unit structures, and missing or incorrectly installed deck flashing, exist throughout the Community for all decks without screened porches installed by Defendants. Defendants' admitted that the deck ledger board was attached directly to the cladding in this manner – rather than in the structurally sound and secure manner of attaching it directly to the frames of the Units – so that unit owners had more flexibility in specifying the size of the deck attached to their home during the home sale process.

96.     Due to this situation, Plaintiff is in the process of repairing as part of its Remediation Project all defective deck construction throughout the Community by implementing its engineer's recommended repair protocols including temporary shoring of the decks, removal of existing deck ledger boarding and Hardie Board siding above the finished deck surface and installation of new deck ledger board properly secured to the structure and installed with code-compliant deck ledger flashing. Indeed, Plaintiffs are also in the process of remediating all

moisture related damage beneath the stucco or at prior points of attachments to the underlying building components.

### iv.    Façade Construction Defects

97.    The investigation by the Association's engineering firm continued to uncover multiple construction defects contributing to extensive moisture intrusion and damage to the homes in February and March 2020, as detailed in its report dated as of September 28, 2020, which defects were incorporated into the bidding specifications provided to bidding contractors on the Remediation Project. Exhibit L.

98.    The Defendants' work on the various façade construction defects identified herein was performed solely by subcontractors hired by Defendants to do this work on their behalf, which work was performed negligently.

99.    The Defendants utilized improper construction techniques surrounding roof eaves as it relates to the placement and installation techniques for frieze boards throughout the Community. In short, the as-built conditions of the frieze boards are significantly different from the approved design plans for construction in the Community because the as-built conditions prevent proper shedding of water over successive layers of materials due to defective installation techniques. Exhibit L at 12.

100.    The approved design plans for the Community also provide details on construction at and around roof dormers installed by Defendants. The as-built construction techniques deviate significantly from the approved design plans in that there is discontinuous stucco at dormer barge trim with the weather resistant barrier turned out and the entire installation creating another entry point for water into and throughout the façade elements of the homes. Exhibit L at 12-13.

101.    Moreover, the sealant joints along the interfaces of dissimilar materials in the façade are either discontinuous or non-existent allowing water to readily infiltrate the wall system, including around gutter terminations and areas where Canamold window heads intersect with roof returns, allowing the wall system to become overwhelmed and resulting in failures and water intrusion. Exhibit L at 13-14.

102.    The wall systems of many homes in the Community have discontinuous drainage planes where upper layers of weather resistant barrier do not overlap with lower levels of weather resistant barrier or there is insufficient overlap between consecutive weather resistant barriers or the barriers and the flashing layers. Exhibit L at 14-17.

103.    The Association's engineers also identified numerous design and construction defects relating to the Pembrey Model home. Essentially, the tall tower element of these roofs and channeling effects of the roof design direct large amounts of water against the tower elements. When combined with improper or missing flashing in these areas, moisture is able to penetrate from the roof area and infiltrate throughout the stone veneer and drainage plane of the wall system. Exhibit L at 18.

104.    Likewise, the faulty design and construction methods used for the Pembrey Model roofs is causing moisture penetration above the family rooms of these homes due to the funneling of water to this area, too. Exhibit L at 19.

105.    Contrary to manufacturer specifications and installation instructions, Defendants and/or Defendants' subcontractors also improperly fastened exterior trim boards to many of the homes and improperly flashed the fiber cement siding installed beneath the trim boards, allowing for standing water and premature deterioration of these building components and reduced service life. Exhibit L at 21-22.

106.    The cost to remediate the structural defects caused by moisture infiltration issues behind the exterior building envelope are currently estimated to be in the millions of dollars and growing as more extensive moisture damage than anticipated is uncovered during the Remediation Project as exterior cladding is removed from the homes.

107.    The defectively installed deck ledger boards on the Units led to failures in the structures of the Units, resulting in water and moisture infiltration into the building components and causing extensive damage, the full extent of which is being repaired as part of the Remediation Project.

108.    Despite this situation, Defendants did not at any time take action while they controlled and dominated the Board of Directors of the Association, nor did they take any action whatsoever to inform the Association of the defects, deficiencies, and non-conformities that they knew or should have known of once the Association was turned over to Unit Owner control as required by the Uniform Planned Community Act.

**D.  Remaining Structural Defects in the Community**

109.    The Association incorporates all prior paragraphs as fully set forth at length herein.

110.    The remaining structural defects, as defined in the Act, and other deficiencies and nonconformities discovered to date, relate to non-cladding Common Elements and Controlled Facilities in the Community.

111.    The Defendants' work on the non-cladding Common Elements and Controlled Facilities in the Community was performed solely by subcontractors hired by Defendants to do this work on their behalf, which work was performed negligently.

112.    Like the cladding issues, many of these items were latent in nature as well.

113.    Multiple expert reports commissioned by Plaintiff have outlined the non-cladding/non-building envelope issues in the Community, including the following, which have been provided to Defendants:

      a.    Linn Architects Roofing Analysis Carriage Homes Haverford Reserve dated June 14, 2017;

      b.    dC Engineering Transition Inspection Report dated October 25, 2017; and

      c.    Momenee, Inc. Drainage Evaluation Report dated December 18, 2018.

114.    Many of the structural defects as defined in the Act, and other structural deficiencies and nonconformities discovered to date and as outlined in the reports and letters above, which are incorporated herein by reference, are too voluminous to list without layering this Second Amended Complaint with excessive detail, include, without limitation, the following:

      a.    poor drainage/wet yards between Units;

      b.    driveway depressions, edge cracking and raveling;

      c.    insulation at rim joists;

      d.    improper attic ventilation systems;

      e.    roof sheathing that is not fire retardant;

      f.    deficient roof truss connections;

      g.    missing PVC trim board fasteners to prevent connection failures;

      h.    clearance of Hardie Board in the Community; and

      i.    missing and/or improper window flashing;

115.    For the sake of brevity, all structural defects contained in the attached reports and letters in this section D. are not repeated in the above list, but all structural defects found to date

Copying Prohibited

are referenced in the foregoing reports and letters which are incorporated herein by reference and known to Defendants.

116.   Additionally, many of the structural defects as defined in the Act, and other deficiencies and nonconformities discovered to date relate specifically to roof and gutter Controlled Facilities in the Community (as outlined and incorporated in this report in the various reports and letters to Defendants) and include, but are not limited to, the following:

a.   Water intrusion due to poor and inconsistent design and construction;

b.   Improper design of roof elements;

c.   Creation of trap points for eaves on roofs due to poor and inconsistent design and construction;

d.   Ice damming on roofs due to poor and inconsistent design and construction;

e.   Improper gutter performance due to poor and inconsistent design and construction;

f.   Undersized gutters and downspouts due to poor and inconsistent design and construction, requiring replacement of gutters and downspouts on the Units;

g.   Failure to record the precise location of all underground leaders.

h.   Deficient gutter endcaps and outlet tubes; and

i.   Incorrectly designed gutter slopes;

117.   In many instances while performing its obligations to design, construct, modify, alter, improve and/or repair the Units in the Community, which performance resulted in the structural defects, deficiencies, and non-conformities identified hereinabove, Defendants' work in the Community was performed on their behalf by various third-party contractors, subcontractors, consultants, agents, and/or professionals retained by Defendants to perform work.  These third

parties performed such work in a manner that was defective, deficient, and non-conforming with respect to, among other things, applicable building codes, plans, specifications, and standards.

118.    The construction defects, deficiencies and non-conformities in the Units throughout the Community identified in this Second Amended Complaint were caused by the work performed on Defendants' behalf by various third-party subcontractors.

119.    In other certain instances, work performed by employees and/or affiliates of Defendants was damaged by third-party contractors, subcontractors, consultants, agents, and/or professionals retained by Defendants to perform work on their behalf.  These third parties negligently performed such work in a manner that was defective, deficient, and non-conforming.

120.    Defendants' structurally defective construction as stated above herein has led to the failure of certain Units' cladding systems and building components, resulting in extensive damage to homes, compromise of structural integrity, impairment of Unit values within the Community, infiltration of water reaching behind water resistant barriers into interior building components, moisture penetration, and water entrapment in and through the Unit cladding system, leading to water damage to the Units.

121.    Defendants and their employees, agents, and affiliates consistently failed to comply with their warranty obligations under the Uniform Planned Community Act to deliver Units and Controlled Facilities free from structural defects in that Defendants' work (or work performed on their behalf by third parties) was not performed using modern methods and materials in accordance with applicable building codes, plans, specifications and standards.  As a result, the Units in the Community suffer from the extensive structural defects identified as set forth above herein.

122.    Based upon the conduct, representations, and assurances made by or on behalf of Defendants, Unit Owners and the Association reasonably relied upon Defendants' warranties and representations that the Units were constructed using modern methods and materials and in accordance with applicable building codes, plans, specifications, and standards.

123.    Due to the conduct and representations made by or on behalf of Defendants, Unit Owners and the Association reasonably believed that the Units designed and constructed by Defendants would be built in compliance with all applicable building codes, plans, specifications, and standards when Unit Owners agreed to purchase their Units from Defendants.

124.    Unit Owners who purchased Units with structural deficiencies, as identified above herein, were not cognizant of the numerous defects, deficiencies, and/or non-conformities in their Units at the time they purchased them from Defendants.

125.    Many, if not all, of the structural defects in the Units identified above herein are not readily apparent or noticeable to the Unit Owners, as the damage caused by such structural defects is often hidden and only discovered once cladding or exterior building components are removed (or subject to invasive and destructive inspection methods).

126.    Due to the nature of the structural defects in the Units as set forth above, Owners of the Units and the Association were not aware of the of the defects and damage for years after they purchased Units from Defendants.

127.    Defendants' and/or Defendants' subcontractors structurally defective construction of the Units has caused damages that require Plaintiff and Unit Owners to incur financial costs for investigations, inspections, and repairs, inability to re-sell their Units at full market value for comparable residential housing in the immediate area. At all times hereto, Defendants subcontractors are the agents of Defendants and Defendants are liable for the negligent actions

and/or inactions of said subcontractors.

### Count I –Violation of 68 Pa.C.S.A. §§ 5101 *et seq.*
### (Breach of Warranty, Failure to Complete and Restore)
### The Association v. All Defendants

128.     The Association incorporates all prior paragraphs as if fully set forth at length herein.

129.     The Defendants expressly and impliedly warranted to the Association and its members that the Association was, and would be, constructed in accordance with the building plans, Governing Documents and specifications, and the standards of construction in the Community as prescribed by, *inter alia*, the township codes and ordinances, and that the Community was otherwise constructed in a good and workmanlike manner.

130.     Pursuant to Section 5411(b) of the Act, the Defendants were obligated to warrant against all structural defects as defined in the Act in the Units, Controlled Facilities and Common Elements.

131.     The Defendants surrendered control of the Association to the Unit Owners, with knowledge of the existence of structural defects, deficiencies and nonconformities in the Units, Controlled Facilities and Common Elements.

132.     The structural defects, deficiencies, and nonconformities identified in detail throughout this pleading fall within the applicable warranty period and were not addressed or remedied by the Defendants during the Declarant control period despite the Association's demand that Defendants undertake repairs soon after their discovery.

133.     The nature of the structural defects, deficiencies and nonconformities in the Units, Controlled Facilities, and Common Elements, both those explicitly identified in the Complaint and present in the Community were such that they fall during the applicable warranty period and the

Declarant controlled Board did not enforce the Association's rights at that time.

134. The Association is protected by the discovery rule and adverse domination doctrine for any and all omissions in pursuing its interests for structural defects, deficiencies, and nonconformities in the Units, Controlled Facilities and Common Elements.

135. The Defendants knew, or through the exercise of reasonable diligence, should have known, of the existence of the structural defects, deficiencies, and nonconformities in the Units, Controlled Facilities and Common Elements at all relevant times herein.

136. At all times relevant, the Defendants had a statutory and contractual duty to repair and remediate the structural defects, deficiencies, and nonconformities in the Community and failed to do so.

137. Because the Executive Board of the Association was under the control of the Defendants during the period of Declarant control, the Association was not in a position to enforce its remedies until such time as the Unit Owners gained control of the Executive Board and had the time and opportunity to review and investigate these matters.

138. Any alleged statute of limitations applicable to an action by the Association to enforce the statutory warranty created by Section 5411(b) or any other legal remedy was tolled during the period of Declarant control.

139. Section 5113 of the Act, among other statutes and case law, imposed an obligation of good faith upon the Defendants in the performance of their contractual and statutory warranty obligations.

140. At all times relevant, the Defendants willfully failed to perform their contractual and statutory warranty obligations in good faith.

Copying Prohibited

141.    The Defendants' willful acts, omissions and violations as described herein, also constitute violations of Sections 5411 and 5414 of the Act.

142.    As a direct and proximate result of the foregoing willful acts and omissions, the Association and its members have sustained direct and consequential damages in an amount in excess of $50,000.00, which amount will be determined at trial.

143.    Pursuant to the Act, the Association is entitled to recover those funds it has expended and will expend to investigate and remediate the structural deficiencies described herein and whatever else is necessary to address the acts and omissions of the Defendants.

144.    The Defendants' acts and omissions constitute a knowing, willful and deliberate violation of the Act.

**WHEREFORE**, Plaintiff, Haverford Reserve Community Association, respectfully requests that this Honorable Court enter judgment in its favor against the Defendants in an amount in excess of Fifty Thousand Dollars ($50,000.00), plus statutory damages, punitive damages, attorneys' fees, interest and costs, together with such other relief as this Court deems appropriate.

### Count II – Violation of 68 Pa.C.S.A. §§ 5101 *et seq.*
### (Breach of Fiduciary Duty/Breach of Duty to Act in Good Faith)

### <u>Plaintiff v. All Defendants</u>

145.    Plaintiff incorporates all prior paragraphs as if fully set forth at length herein.

146.    At all times relevant, prior to July 20, 2016, the Defendants exercised control over the Community pursuant to Section 5303(c) of the Act and the Declaration.

147.    During the period of Declarant control, the Defendants exercised, through their control of the Executive Board of the Association, exclusive control over the affairs of the Association.

148.    During the period of Declarant control, the Defendants exercised the unlimited right to select, appoint, remove and replace a voting majority of the members of the Executive Board who managed the Association.

149.    By virtue of its right and ability during the Declarant Control period to appoint, remove, and replace a majority of the Association's Executive Board, the Defendants owed a fiduciary duty to appoint individuals to the Executive Board, and as officers of the Association, who were free of conflicts of interest and who would act only in the best interests of the Association.

150.    Sections 5303 and 5113 of the Act impose an obligation of good faith in the performance of every duty governed by the Act.

151.    Pursuant to Sections 5303 and 5113 of the Act, the Defendants had a statutory duty to act in good faith in the appointment of the members of the Association's Executive Board.

152.    Section 5303 of the Act specifically states that "the executive board shall stand in a fiduciary relation to the association and shall perform their duties…in good faith in a manner they reasonably believe to be in the best interests of the association; and with care, including reasonable inquiry, skill and diligence, as a person of ordinary prudence would use under similar circumstances."

153.    The members of the Association's Executive Board selected and appointed by the Defendants during the period of Declarant control were also employees, principals or closely affiliated individuals with the Defendants.

154.    The Defendants appointed their own employees, principals, or closely affiliated individuals to serve on the Association's Executive Board because its employees, principals, and closely affiliated individuals would take direction from the Defendants and place the Defendants'

Copying Prohibited

interests ahead of the Association's best interests.

155.    At all times relevant, during the period of Declarant control, the Declarant-appointed members of the Association's Executive Board were acting in the best interests of the Defendants.

156.    At all times relevant, during the period of Declarant control the Defendants had the ability to direct and control the actions of its employees, principals, or closely affiliated individuals serving on the Executive Board during the period of Declarant control.

157.    At all times relevant, during the period of Declarant control the Executive Board members affiliated to the Defendants were loyal to the interests of the Defendants.

158.    Because the Executive Board members appointed by the Defendants during the period of Declarant control were loyal to the interests of the Defendants and owed a fiduciary duty to the Association, the Defendants knowingly created a conflict of interest on the Executive Board.

159.    By knowingly creating a conflict of interest on the Executive Board, the Defendants negligently, willfully and/or recklessly breached their fiduciary duty and statutory duty to act in good faith pursuant to Sections 5303 and 5113 of the Act.

160.    The Defendants and the Declarant-appointed officers and members of the Association's Executive Board further breached the fiduciary duty and/or statutory duty of good faith owed to the Association by, without limitation:

> a.    Failing to detect, recognize and respond to the construction defects, deficiencies and nonconformities outlined in this Second Amended Complaint;
>
> b.    Failing to properly maintain, repair and replace the Common Elements as required by Section 5307 of the Act and the Declaration;

Copying Prohibited

34

c.    Failing to disclose the existence of the Joint Management Agreement in the Public Offering Statement or Declaration;

d.    Failing to provide the full budget for maintenance items in the Public Offering Statement; and

e.    Failing to disclose the budgeting and expense responsibilities of all entities with respect to the Association.

161.    As a direct and proximate result of the foregoing described conduct, the Association and its members have sustained direct and consequential damages in an amount in excess of $50,000.00, which amount will be determined at trial.

162.    The foregoing described conduct of the Defendants, its employees and appointed members of the Association's Executive Board also amounted to knowing, deliberate and willful violations of Sections 5303and 5113 of the Act.

163.    Section 5412 of the Act creates a general cause of action in favor of the Association when a Declarant violates the Act, the Declaration or By-Laws of the Community.

164.    Section 5412 of the Act provides a legal basis for a breach of fiduciary duty/breach of duty to act in good faith claim against the Defendants.

165.    Section 5412 of the Act also permits the Association to recover punitive damages as a result of the above described willful violation of Sections 5303 and 5113 of the Act by the Defendants.

**WHEREFORE**, Plaintiff, Haverford Reserve Community Association, respectfully requests that this Honorable Court enter judgment in its favor against the Defendants in an amount in excess of Fifty Thousand Dollars ($50,000.00), plus statutory damages, punitive damages, attorneys' fees, interest and costs, together with such other relief as this Court deems appropriate.

**Count III- Breach of Covenant**

**The Association v. All Defendants**

166.    Plaintiff incorporates all prior paragraphs as if fully set forth at length herein.

167.    By virtue of the Governing Documents including the Declaration, Plan, By-Laws, advertising materials used to market the Community and the Public Offering Statement, the Defendants agreed and covenanted with the Unit Owners as well as the Association that it would install and complete the Units, Controlled Facilities, and Common Elements in accordance with the Governing Documents, including the Declaration and Plan, free from defects and deficiencies.

168.    The Governing Documents, including the Declaration, Plan, By-Laws, advertising materials used to market the Community and the Public Offering Statement, created a covenant between the parties for the Declarant to install and complete the Units, Controlled Facilities and Common Elements in accordance with the Governing Documents, including the Declaration and Plan, free from defects and deficiencies.

169.    The Defendants breached their explicit promises within the Governing Documents including the Declaration, Plan, By-Laws, advertising materials used to market the Community and the Public Offering Statement by not fulfilling their promises.

170.    The Plaintiff suffered financial damage as a result of the breach of covenant.

171.    The Defendants knowingly, deliberately and willfully failed to construct, install and complete the Units and Common Elements in accordance with the Declaration and Plan, free from defects and deficiencies.

172.    Section 5113 of the Act imposed an obligation of good faith upon the Defendants to construct, install and complete the Units and Common Elements all in accordance with the Declaration and Plan and free from defects and deficiencies.

173.   As a direct and proximate result of the foregoing acts and omissions, the Association has sustained direct and consequential damages in an amount in excess of $50,000.00, which amount will be determined at trial.

174.   The Defendants' conduct constituted a deliberate and willful violation of the Act and covenants contained in the Declaration.

**WHEREFORE**, Plaintiff, Haverford Reserve Community Association, respectfully requests that this Honorable Court enter judgment in its favor against the Defendants in an amount in excess of Fifty Thousand Dollars ($50,000.00), plus statutory damages, punitive damages, attorneys' fees, interest and costs, together with such other relief as this Court deems appropriate.

## Count IV – Negligent Construction
### The Association v. All Defendants

175.   Plaintiff incorporates all prior paragraphs as if fully set forth at length herein.

176.   At all times relevant hereto, the Defendants owed a duty to the Association and its members, independent of and supplemental to any contractual or statutory duties, to exercise such reasonable care, technical skill and ability and diligence as are ordinarily required of builders and contractors. The Defendants were careless and negligent in the performance of their duties in connection with the building and construction of the Community by failing to exercise such reasonable care, technical skill, ability and diligence as are ordinarily required of builders, contractors and developers in the course of building and constructing the Community.

177.   Examples of the Defendants' failure to meet the requisite standards of care are set forth in this Second Amended Complaint and the Association is diligently investigating additional latent and patent instances of the same.

178.   As a direct and proximate result of the foregoing acts and omissions, the Association and its members have sustained direct and consequential damages in an amount in excess of $50,000.00, which amount will be determined at trial.

**WHEREFORE**, Plaintiff, Haverford Reserve Community Association, respectfully request that this Honorable Court enter judgment in its favor against all Defendants in an amount in excess of Fifty Thousand Dollars ($50,000.00), plus interest and costs, together with such other relief as this Court deems appropriate.

### Count V - Negligent Supervision

### Plaintiff v. All Defendants

179.   Plaintiff incorporates each of the foregoing paragraphs of this Complaint as though the same were fully set forth at length herein.

180.   Pursuant to Section 5302(a)(4) of the Act, the Association is permitted to institute litigation in its own name on behalf of itself or two (2) or more Unit Owners on matters affecting the Community.

181.   At all times relevant hereto, Defendants, and their agents, as declarant(s), builder(s), developers, general contractors, designers, architects and construction managers, owed a duty to the Association and its members, independent of and supplemental to any contractual duties, to exercise such reasonable care, technical skill and ability, and diligence as are ordinarily required of builders, developers, general contractors, designers, architects, and construction managers in the course of hiring contractors, subcontractors, and suppliers and in supervising and inspecting the work and materials provided to the Community by contractors, subcontractors and suppliers.

182.    Defendants were careless and negligent in the performance of their duties in connection with the hiring of contractors, subcontractors and suppliers, and in their supervision and inspection of the work and materials provided to the Association, by failing to exercise such reasonable care, technical skill and ability, and diligence as are ordinarily required of developers, general contractors, designers, architects, and construction managers in the course of supervising and inspecting the construction of the Community for the protection of persons, including the Association, and its members, who foreseeably, and with reasonable certainty, might be injured by Defendants' failure to do so, resulting in the defects and deficiencies set forth in this Second Amended Complaint, and any other defects or deficiencies, known or unknown, at this time.

183.    Defendants' carelessness and negligence is clearly evidenced in multiple instances of the Defendants' awareness of construction defects and either changing construction techniques and not fixing prior structurally deficient work or being aware of structurally deficient work and continuing to build more Units in a structurally deficient manner notwithstanding this knowledge.

184.    Defendants were careless and negligent by hiring architects, construction managers, designers, contractors and subcontractors who lacked the requisite technical skill and ability and diligence as are ordinarily required of architects, contractors, subcontractors, designers, architects and construction managers.

185.    As a direct and proximate result of Defendants' acts and omissions, including their willful violations of the Act, significant harm has and will result to the Unit Owners and the Association, as the Association has been and will be compelled to expend Association funds to remedy the defects and deficiencies and the costs of such expenditures shall be borne by the Unit Owners in the form of increased Association assessments; the amount of such damages is expected to greatly exceed $50,000.00.

**WHEREFORE,** Plaintiff, Haverford Reserve Community Association, respectfully requests that this Honorable Court enter judgment in its favor against the Defendants in an amount in excess of Fifty Thousand Dollars ($50,000.00), plus statutory damages, attorneys' fees, interest and costs, together with such other relief as this Court deems appropriate.

### Count VI - Violation of the Pennsylvania
### Unfair Trade Practices and Consumer Protection Law

#### Plaintiff v. All Defendants

186.    Plaintiff incorporates each of the foregoing paragraphs of this Complaint as though the same were fully set forth at length herein.

187.    Pursuant to Section 5302(a)(4) of the Act, the Association is permitted to institute litigation in its own name on behalf of itself or two (2) or more Unit Owners on matters affecting the Association.

188.    Pursuant to Section 5411 of the Act, the Defendants represented and warranted to the Association that all the Common Elements and Controlled Facilities in the Community would be free from defects.

189.    The Association brings this statutory claim, both on its own behalf and on behalf of the Unit Owners who purchased the Units and is therefore a "purchaser" for the purposes of the Pennsylvania Unfair Trade Practices and Consumer Protection Law, 73 P.S. §201, et seq. ("UTPCPL").

190.    The Association, as a representative of the Unit Owners who have purchased Units for personal, family and household use, is a person under the UTPCPL and, therefore, is within the class of persons protected by the UTPCPL.

191.    Moreover, the defects and deficiencies outlined in this Second Amended Complaint exist within and affect the Common Elements and Controlled Facilities of the Association, and the Association, not the individual Unit Owners, has the responsibility to maintain those Common Element areas.

192.    The Unit Owners of the Association who purchased Units from the Defendants purchased those units primarily for personal, family or household purposes and, pursuant to Section 5302(a)(4) of the Act, the Association may institute litigation not only on its own behalf, but also in a representative capacity on behalf of its Unit Owner members in regard to matters which affect the Community.

193.    Defendants, as sellers of the Units, are subject to the UTPCPL.

194.    Defendants and their agents, by their acts and omissions as set forth have materially violated the following, *inter alia*, provisions of the UTPCPL:

    a.  Section 201-2(4)(v) – Representing that goods or services have sponsorship, approval, characteristics, ingredients, uses, benefits or quantities that they do not have…;

    b.  Section 201-2(4)(vii) – Representing that goods or services are of a standard, quality or grade…;

    c.  Section 201-2(4)(xiv) – Advertising goods or services with the intent not to sell them as advertised;

    d.  Section 201-2(4)(xvi) – Making repairs, improvements or replacements on tangible, real or personal property, of a nature or quality inferior to or below the standard of that agreed to in writing; and

e.  Section 201-2(4)(xxi) – Engaging in any other fraudulent or deceptive conduct which creates a likelihood of confusion or of misunderstanding.

195.    At all times material hereto, and specifically prior to the Unit Owners' purchase of the Units, Defendants and their agents made express and/or implied representations to the Unit Owners that the Association was reasonably fit for its intended purpose, was free of defects and deficiencies, was built in a workmanlike manner, that the Community buildings, improvements, Common Elements and Limited Common Elements were constructed in accordance with the Plan and specifications for the Community and all applicable building codes and standards.

196.    As set forth in this Second Amended Complaint, these representations were false and were made by Defendants with knowledge of their falsity or, at least, with reckless disregard as to whether they were true or false and for the purpose of misleading the Unit Owners into purchasing their Units.

197.    The Unit Owners justifiably relied upon these representations when they made their decisions to purchase the Units.

198.    Furthermore, upon information and belief, Defendants and their agents have made additional misrepresentations to the Unit Owners and the Association concerning the quality of construction of the Association and the Units, concerning the cause of various defects and deficiencies, along with other material misrepresentations, further evidence of which may be obtained during discovery.

199.    As a direct and proximate result of the Unit Owners' reliance on Defendants' representations and Defendants' violations of the UTPCPL , as set forth above, the Association has been and will be compelled to expend Association funds to investigate and remedy the defects and deficiencies and the costs of such expenditures shall be borne by the Unit Owners in the form of increased  assessments, resulting in significant harm to the Association and its Unit Owner members; the amount of such damages is expected to greatly exceed $50,000.00.

200.    Pursuant to Section 201-9.2(a), the Association is entitled to treble damages and attorneys' fees as a result of Defendants' violations of the UTPCPL.

**WHEREFORE**, Plaintiff, Haverford Reserve Community Association, respectfully requests that this Honorable Court enter judgment in its favor against the defendants in an amount in excess of Fifty Thousand Dollars ($50,000.00), plus statutory damages, treble damages, attorneys' fees, interest and costs, together with such other relief as this Court deems appropriate.

<div align="center">

**Count VII – Negligent Misrepresentation**

**<u>Plaintiff v. All Defendants</u>**

</div>

201.    Plaintiff incorporates each of the foregoing paragraphs of this Complaint as though the same were fully set forth at length herein.

202.    Defendants all participated in making misrepresentations of material facts by assuring the homeowners in the Community that their homes were built in compliance with all applicable codes, designs, plans and specifications despite knowing that homes throughout the Community were riddled with serious construction design and installation defects which were causing hidden moisture damage throughout the Community.

203.    Defendants were either aware for years, or failed to reasonably investigate, during the period of Declarant control and thereafter that their statements seeking to falsely assure residents of the quality of their homes were false, and that construction defects and shoddy construction techniques utilized by Defendants during the construction of homes in the Community rendered them structurally defective and suffering from steadily increasing moisture penetration and damage.

204.    Defendants intended for the Association and its members to rely on their false statements and assurances regarding the lack of construction defects in their homes.

205.    Members in the Association justifiably relied on Defendants' misrepresentations and false statements about the lack of hidden construction defects and moisture damage in the homes.

206.    Defendants owed a duty to the members of the Association at the time they made false statements regarding the lack of construction defects in their homes.

**WHEREFORE**, Plaintiff, Haverford Reserve Community Association, respectfully requests that this Honorable Court enter judgment in its favor against the defendants in an amount in excess of Fifty Thousand Dollars ($50,000.00), plus statutory damages, treble damages, attorneys' fees, interest and costs, together with such other relief as this Court deems appropriate.

### Count VIII - Punitive Damages

### Plaintiff v. All Defendants

207.    Plaintiff incorporates each of the foregoing paragraphs of this Complaint as though the same were fully set forth at length herein.

208.   Pursuant to Section 5302(a)(4) of the Act, the Association is permitted to institute litigation in its own name on behalf of itself or two (2) or more Unit Owners on matters affecting the Community.

209.   Pursuant to Section 5412 of the Act if a declarant or any other person subject to the Act violates any provision of this subpart or any provisions of the declaration or bylaws, any person or class of persons adversely affected by the violation has a claim for appropriate relief.  Punitive damages may be awarded in the case of a willful violation of the Act.

210.   For the sake of clarity, pursuant to Section 5412 of the Act, Defendants' conduct is not required to be proven intentional, wanton, or reckless in order for the Association to be entitled to punitive damages for violation of any subpart of the Act.  Instead, as specified by the statutory language of the Act, Defendants need only be shown to have committed a "willful violation" of the Act in derogation of the Association's rights thereunder.

211.   The Defendant's conduct was willful with respect to the defects and deficiencies in the Community when, after being informed of the defects in the roof and gutter systems, the Defendants did not promptly investigate and remediate all affected roofs.

212.   The Defendants' conduct was willful and/or reckless when the Defendants, with full knowledge of their actions, surrendered control of the Association to the Unit Owners, with defects and deficiencies in the Units and Common Elements as outlined throughout this Second Amended Complaint.

213.   The Defendants' conduct was willful and/or reckless when the Defendants refused to fulfill their good faith obligation to construct, install, and complete the Units and Common Elements all in accordance with the Declaration and Plan and free from defects and deficiencies pursuant to Section 5411 of the Act and as outlined throughout this Second Amended Complaint.

214.    The Defendants' conduct was willful and/or reckless when the Defendants failed to perform its duties in connection with the building and construction of the Community by failing to exercise such reasonable care, technical skill, ability and diligence as are ordinarily required of builders, contractors and developers in the course of building and constructing the Community and as outlined throughout this Second Amended Complaint.

215.    The Defendants' conduct was willful and/or reckless when the Defendants participated in UTPCPL violations when breaching their covenant with the Association and failing to properly construct the Common Elements and Common Facilities as outlined throughout this Second Amended Complaint.

216.    The Defendants' conduct was willful and/or reckless when the Defendants failed to exercise such reasonable care, technical skill and ability, and diligence as are ordinarily required of developers, general contractors, designers, architects and construction managers in the course of supervising and inspecting the construction of the Community for the protection of persons, including the Association, and its members, who foreseeably, and with reasonable certainty, might be injured by Defendants' failure to do so, resulting in the defects and deficiencies set forth above and in this Second Amended Complaint, and any other defects or deficiencies, known or unknown, at this time as outlined throughout this Second Amended Complaint.

217.    The Defendants willfully and/or recklessly violated the Act and the Governing Documents based on the above described conduct.

218.    Punitive damages are therefore applicable to all counts.

**WHEREFORE,** Plaintiff, Haverford Reserve Community Association, respectfully requests that this Honorable Court enter judgment in its favor against the Defendants in an amount in excess of Fifty Thousand Dollars ($50,000.00), plus statutory damages, attorneys' fees, interest and costs, together with such other relief as this Court deems appropriate.

<div align="center">

**RESPECTFULLY SUBMITTED,**

**MARCUS & HOFFMAN, P.C.**

</div>

Date: April 12, 2021

ROBERT J. HOFFMAN, ESQUIRE
JAMES P. McEVILLY, III, ESQUIRE
*Attorneys for the Plaintiff*

Copying Prohibited

## VERIFICATION

I, Robert Brown, hereby state that I the President of the Board of Directors of the Haverford Reserve Community Association, and am authorized to make this verification on its behalf. I hereby verify that the statements set forth in the foregoing Second Amended Complaint are true and correct to the best of my knowledge, information and belief. I further understand that this statement is made subject to penalties of 18 PA. C.S. Section 4904 relating to unsworn falsification to authorities.

Name: Robert Brown
Title: President
On Behalf of:
Haverford Reserve Community Association

Copying Prohibited

# EXHIBIT "B"

Copying Prohibited

# MASTER AGREEMENT

Subcontract No.: MA-ADVANCED                    Date: 12/9/2009

CONTRACTOR:                                    SUBCONTRACTOR:

GUIDI HOMES, INC.                              ADVANCED PLASTERING INC.
925 Harvest Drive, Suite 220                   3108 Greenhill Lane,
Blue Bell, PA  19422                           East Norriton, PA 19401
Telephone No. (215) 641-9280                   Telephone No. (610) 721-4174
Facsimile No. (215) 641-9088

## THE ATTACHED EXHIBIT "A" TERMS AND CONDITIONS ARE PART OF THIS SUBCONTRACT.

A.      Subcontractor's Responsibilities.  The Subcontractor agrees to furnish all materials, labor, supervision, tools, equipment and supplies as necessary to provide your line of Work on various Projects authorized and defined in Subcontract Work Order(s) (hereinafter "Subcontract" or "Work Order") to be issued, executed, and made part of this Master Agreement (hereinafter "Agreement" or "Contract").  All Work shall be performed in accordance with the Contractor's Terms and Conditions, which are attached hereto and form part of this Agreement unless specifically modified by the Work Order(s).  It is understood that in the event that Subcontractor performs Work without a Subcontract Work Order on behalf of Contractor, at Contractor's specific direction, the terms of this Agreement shall be binding upon both parties until such time as these terms are modified or expanded by Work Order.  All work provided for in the above referenced Work Order(s), for and at the Project listed on the Work Order (hereinafter called the Project), shall be performed as shown and described in and in strict accordance with the Plans, Specifications, General Conditions, Special Conditions and Addenda thereto prepared by the Architect listed and with the terms and provisions of the General Contract between Contractor and the Owner (hereinafter "General Contract") listed and in strict accordance with the above-referenced Work Order(s), and the Exhibits annexed hereto and made a part hereof.  Subcontractor also agrees that any modification contained in any Work Order shall only apply to that particular Work Order and shall not apply to any other Work Order.  This Master Agreement, subject to the terms of Exhibit A, carries forward in perpetuity until modified in writing by both parties, even if ownership of either company changes or the assets or liabilities of the company are assigned.  The price and schedule shall be kept and monitored separately for each Work Order, and each Work Order shall have a separate Schedule of Values, Change Order numbering, schedule, start and completion date, warranty requirements, Application for Payment, and retainage.  The language of this Agreement and the Contract Documents in whole shall apply to each Work Order.

B.      Subcontractor's Work.  The Subcontractor's Work shall consist of the scope of Work set forth in the relevant Work Order.  If the Contractor intends to use Subcontractor in the construction of a particular house, a separate Work Order must be issued for each separate house with the possible exception of the first phase of model houses.

C.      Subcontract Price.  The sum to be paid by Contractor, out of funds received from the Owner, to the Subcontractor for the satisfactory performance and completion of the Work and of all of the duties, obligations and responsibilities of the Subcontractor under this Agreement and the other Contract Documents, shall be as stated in the executed Work Order(s) (hereinafter called the Price) and shall be subject to additions and deductions as herein provided.

        The Price includes all Federal, State, County, Municipal and other taxes imposed by law and based upon labor, services, materials, equipment or other items acquired, performed, furnished or used for and in connection with the Work, including but not limited to sales, use and personal property taxes payable by or levied or assessed against the Owner, Contractor or the Subcontractor.  Where the law requires any such taxes to be stated and charged

1 of 2

separately, the total price of all items included in the Work plus the amount of such taxes shall not exceed the Price.

When a price is given by the Subcontractor for the initial houses or model houses in the first phase of this project, those prices shall be held for a non-escalation period of twelve (6) months for that Work Order as well as each subsequent Work Order. The Contractor shall also have the right to demand pricing from the Subcontractor on the basis of a 6 month non-escalation period. Prior to entering into the Work Order for the first phase or any subsequent Work Order, Contractor may elect to use the pricing for a 6 month or 12 month non-escalation period. Once the Work Order has been executed by the Contractor, however, no further escalations will be permitted for any reason on that particular Work Order even if the non-escalation period has elapsed.

D.      Insurance.  Unless modified by the Work Order, Subcontractor shall maintain the insurance policies and in the amounts set forth on Exhibit "C" attached hereto.

E.      Terms and Conditions; Exhibits.  Exhibit "A," the Terms and Conditions attached to this Agreement, are made a part hereof. The Work Orders shall contain separate Exhibits. Exhibits "A" and "B" are attached hereto.

F.      IMPORTANT: THE EXECUTION OF THIS MASTER AGREEMENT DOES NOT OBLIGATE THE CONTRACTOR TO ENTER INTO WORK ORDERS WITH SUBCONTRACTOR ON EVERY PROJECT PERFORMED BY CONTRACTOR. THE CONSIDERATION GIVEN SUBCONTRACTOR BY CONTRACTOR FOR ENTERING THIS MASTER AGREEMENT SHALL BE THE SAME CONSIDERATION AS SET FORTH IN THE WORK ORDER FOR EACH PARTICULAR PROJECT.

IN WITNESS WHEREOF, the parties have executed this Subcontract effective as of the day and year first above written.

_____                          _____
GUIDI HOMES, INC.                                    ADVANCED PLASTERING INC..

Copying Prohibited

2 of 2

<div align="center">

**EXHIBIT "A"**
**TERMS AND CONDITIONS**

</div>

These Terms and Conditions are an extension of the Contract Documents. This document is intended to be generic in nature. All of its provisions are subject to modification or revision in the individual Work Order(s).

Article 1.  Definitions

1.1   The term "Contract" as used herein refers to the Contract between the Owner and the Contractor for construction of the Project.

1.2   The term "Contract Documents" as used herein refers to the "Contract" between the Owner and the Contractor, all plans, drawings, specifications, general conditions, supplemental general conditions, and special conditions, addenda, amendments, and/or instruments of like effect.

1.3   The term "Subcontract" as used herein refers to the Work Order, these Terms and Conditions, the Master Agreement, together with any exhibits, attachments or addenda incorporated herewith and referred to herein.

1.4   The term "Subcontract Documents" as used herein refers jointly and/or severally to the aforesaid Contract, Contract Documents and Subcontract.

Article 2.  Duties of the Subcontractor

2.1   The Subcontractor is bound to the Contractor by the same terms and conditions and to the fullest extent by which Contractor is bound to the Owner under the Contract.  In the event of any inconsistency between the terms and conditions of the Contract (including the General Conditions) and this Subcontract, the more restrictive provisions as applicable to the Subcontractor shall govern.

2.2   When requested to do so by the Contractor, Subcontractor agrees to submit a list of any proposed subsubcontractors, and Subcontractor shall not delegate, or further subcontract to others the performance of any of its obligations or work required or contemplated by this Subcontract without prior written consent of the Contractor, which shall not be unreasonably withheld.

2.2.1   If Subcontractor enters into agreements with any sub-tier subcontractor, it shall require each sub-tier subcontractor to agree in writing to be bound by all provisions of the Subcontract Documents, including the Contract and the General Conditions, applicable to its work.

2.3.1   Subcontractor hereby warrants that he has investigated and familiarized himself with all laws and codes applicable to its work; with the availability, cost and suitability of personnel, materials, equipment, utilities, etc; with the prevailing wage scales, union benefits and working conditions, craft jurisdiction, existing labor agreements (as applicable); all site conditions and restrictions, underground conditions, prevailing weather and climatological conditions; and any other factors which may affect Subcontractor's work.

2.3.2   Subcontractor further agrees that Contractor shall not be liable to Subcontractor on any claim for additional payment or additional time or any claim whatsoever if such claims directly or indirectly result from Subcontractor's failure to investigate and familiarize itself with the conditions under which this Subcontract is to be performed.

2.3.3   Subcontractor warrants it has visited the site and has become familiar with all conditions at the site, including without limitation, the conditions described in the General Conditions.

2.3.4   Generally, the specifications describe Work which cannot be indicated on the drawings and indicate types, qualities and methods of installation of the various materials and equipment required for the work.  It is not intended to mention every item of Work in the specifications which can be adequately shown on the drawings or to show on the drawings all items of Work described or required by the specifications even if they are of such nature that they could have been shown thereon.  All materials or labor for Work which is shown on the drawings or is reasonably inferable therefrom as being necessary to produce a finished job shall be provided by the Subcontractor whether or not the Work is expressly covered in the specifications.

2.3.5   Subcontractor, before proceeding with any work under its Subcontract will accurately check and verify

<div align="center">1 of 19</div>

<div align="right">

_BC_
Subcontractors Initials

</div>

Copyrighted — Copying Prohibited

all previous and surrounding work done by others and determine the correctness of same. The Subcontractor shall field measure all work relating to its work. The failure of the Subcontractor to detect and disclose any existing discrepancies or nonconformities and report same to Contractor., in writing, before commencing its work shall relieve Contractor of any and all responsibility for same, and the Subcontractor shall be responsible and liable for all resulting damages, costs and expenses arising as a result of discrepancies and nonconformities that should have been discovered by the Subcontractor.

2.4     COORDINATION WITH OWNER'S SALES FORCES AND POTENTIAL OR ACTUAL PURCHASERS

2.4.1     Subcontractor hereby agrees for both it and its subcontractors to coordinate with Owner's Sales Forces in both the selection and change order process. Subcontractor and its Subcontractors shall provide samples of all selection materials as well as written materials relating to selections if so requested. They shall also provide to the Owner's Sales Forces pricing of any reasonably requested changes and shall explain such changes to any potential or actual purchasers upon request. All such requests shall be processed through Contractor unless otherwise directed by Contractor in writing.

2.4.2     Subcontractor and its Subcontractors shall also coordinate with purchasers on milestone activities including but not limited to (1) rough-in inspection, (2) electrical outlet placement walk-through, (3) mechanical vent placement walk through, (4) pre-closing final walk-through, (5) punchlist creation walk-through and (6) punchlist completion walk-through. To the extent that other walk-throughs or inspections with purchasers are necessary, such walk-throughs or inspections shall be scheduled through Contractor unless otherwise directed by Contractor in writing.

2.4.3     Subcontractor shall also be directly responsible to purchaser for any warranty obligations set forth in the Owner's Purchase and Sales Agreement unless otherwise detailed in the particular Work Order for that particular house. In addition, in the case of a "spec" or model home, Subcontractor shall also be directly responsible to Owner and any subsequent purchaser for any warranty obligations set forth in the Owner's standard Purchase and Sales Agreement unless otherwise detailed in the particular notice to proceed for that particular house.

Article 3. Integration

3.1     This Subcontract constitutes the entire agreement between the parties and supersedes all proposals, correspondence, and oral agreements between the Subcontractor and Contractor, if any. Except as otherwise provided for herein, no changes, amendments or modifications of the terms hereof shall be valid unless reduced to writing and signed by the parties hereto.

Article 4. Payment

4.1.1     Pursuant to the Contract Documents, Owner is obligated to pay Contractor in accordance with the terms specified in the Work Order.

4.1.2     Subcontractor hereby acknowledges that the Contractor has fully disclosed the Owner's manner of payment pursuant to the Contractor Subcontractor Payment Act, 73 P.S. Section 501, et seq.

4.1.3     Provided Subcontractor's rate of progress and general performance are satisfactory to the Contractor and provided that the Subcontractor is in full compliance with each and every provision of the Subcontract Documents, the Contractor will make partial payments to the Subcontractor on the Contractor pay estimate form in an amount equal to 90% of the estimated value of work and materials incorporated into the Project (and of materials delivered to the Project site and suitably stored by the Subcontractor) and paid to Contractor by Owner, less the aggregate of previous payments, within fourteen (14) days of receipt thereof from the Owner or fourteen (14) days after receipt of Subcontractor's invoice, whichever is later.

4.1.4     PAYMENT FROM THE OWNER TO THE CONTRACTOR IS A CONDITION PRECEDENT TO PAYMENT FROM THE CONTRACTOR TO THE SUBCONTRACTOR PURSUANT TO THIS ARTICLE.

4.1.5     ON PENNSYLVANIA PROJECTS, IN CONSIDERATION FOR CONTRACTOR'S AGREEMENT TO ENTER INTO THE SUBCONTRACT, SUBCONTRACTOR HEREBY AGREES TO WAIVE

Subcontractors Initials

ALL RIGHTS TO INTEREST ABOVE THE LEGAL RATE, PENALTIES AND/OR ATTORNEY'S FEES PROVIDED BY THE CONTRACTOR AND SUBCONTRACTOR PAYMENT ACT, 73 P.S. SECTION 501 ET SEQ.

4.1.6   ON PENNSYLVANIA PROJECTS, SUBCONTRACTOR HEREBY AGREES THAT, IF THE OWNER REQUIRES CONTRACTOR TO WAIVE ANY OR ALL OF ITS RIGHTS UNDER THE CONTRACTOR AND SUBCONTRACTOR PAYMENT ACT, 73 P.S. SECTIONS 501 ET SEQ., SUBCONTRACTOR HEREBY AGREES TO SIMILARLY WAIVE ITS RIGHTS UNDER THE ACT.

4.1.7   Subcontractor acknowledges that in the event payment is not made to Contractor for any reason including, but not limited to, default by the Owner, Subcontractor shall look exclusively to the Owner for payment of any and all funds due under this Subcontract. Subcontractor further agrees that delay in payment for non-payment by the Owner does not create any separate obligation of Contractor to pay regardless of the extent of the delay. Subcontractor has the right to pursue payment from the Owner if the Owner is delinquent in payment per this agreement.

4.1.8   Within ten (10) days of execution, the Subcontractor shall submit to the Contractor a complete and accurate schedule of values of the various parts of its work. This schedule, when approved by the Contractor, shall be used as the basis for making payments.

4.1.9   On a monthly basis, the Subcontractor shall submit a request for partial payment consistent with the schedule of values and representing a true and accurate estimate of the work completed during the immediately preceding pay period. Unless modified by Work Order, Subcontractor's invoice must be received by the Contractor by the 25th of the month for all work completed to date. When required by the Contractor, Subcontractor shall provide an accurate inventory of materials suitably stored at the job site. Each application shall be accompanied by such invoices, vouchers, waivers, releases, certifications and affidavits as may be required by the Owner and/or Contractor. The Subcontractor agrees that any application for payment not in compliance may be held over for processing at the beginning of the pay period following correction of such application, with or without notice to Subcontractor.

4.1.10  No partial payment shall constitute acceptance by the Contractor of the work or material for which the partial payment is made; nor shall any partial payment constitute a waiver of any right to require fulfillment of all the terms of this Subcontract. Contractor shall promptly advise the Subcontractor in writing if the Owner or Contractor disapproves of or is withholding all or any of a Request for Payment, including change orders. Even if Subcontractor disagrees with Contractor's disapproval, Subcontractor shall continue to perform all work under this agreement including that in dispute. The Subcontractor shall also take all reasonable steps necessary to ensure that there will be no work stoppage or delay on account of such disapproval. Both parties agree to endeavor to promptly resolve such disputes on an ongoing basis.

4.1.11  The Subcontractor hereby agrees to reimburse the Contractor in the event of overpayment, together with any costs and expenses including administrative costs and attorney's fees, which the Contractor may incur in securing recovery thereof.

4.2     Contractor expressly reserves the right to issue joint checks to Subcontractor and its materialmen, suppliers or subcontractors, or any of Subcontractor's creditors having potential lien rights and/or claims against the work, for any payments that are, or may become, due and owing by Contractor to Subcontractor under this Agreement.

4.3     The Contractor may deduct from amounts due or to become due to the Subcontractor on this Project any sum due or to become due to Contractor from the Subcontractor whether or not said sums are in any way related to this Subcontract or Project.

4.4     In the event Subcontractor is in default of or breaches or fails to comply with any provision of the Subcontract; or in the event that any person asserts, or threatens to assert, any lien or claim, against the Project, the Owner, the Contractor or any Surety arising from Subcontractor's performance of this Subcontract, the Contractor may, at its option, withhold out of any payments due or to become due to the Subcontractor a sum sufficient to completely protect and indemnify the Contractor and the Owner from all loss, damage and/or expense, including attorney's fees and litigation costs, until the condition

3 of 19



Subcontractors Initials

Copyrighted

requiring such measure has been remedied by the Subcontractor to the satisfaction of the Contractor. If the Contractor is compelled to expend monies in defending, discharging or otherwise disposing of any claim or lien in excess of retained or withheld sums, the Subcontractor shall, upon demand, reimburse the Contractor for the excess amount so expended, including reasonable attorney's fees and costs incurred by Contractor incident to such defense and/or incidental to Contractor's collection from Subcontractor of such excess.

4.5     Notwithstanding anything to the contrary contained in this Subcontract, and without any limitation as to time, Contractor shall not be obligated to make payments to Subcontractor under this Subcontract:

    a)     when such payment will leave a balance which is less then the retained percentage plus an amount adequate to satisfy all obligations of the Subcontractor for labor, materials, tools, etc. furnished or to be furnished by Subcontractor in the performance of its work;

    b)     when Subcontractor is or with reasonable probability (as determined by the Contractor) may become unable to comply with or completely perform this Subcontract;

    c)     whenever the Contractor, in its sole discretion, shall determine that the Project is being or is in danger of being delayed by the Subcontractor;

    d)     pending satisfactory correction, replacement and/or restoration of deficient work, material, or supplies, or of any work rejected if not conforming with this Subcontract or the Subcontract Documents.

4.6     The Subcontractor agrees, as a condition precedent to payment hereunder, to furnish the Contractor with such partial and/or final releases and/or waiver of liens as the Contractor may from time to time request in the form set forth in Exhibit "E-2" hereof.

## Article 5.  Final Payment

5.1     Final payment will be made within thirty (30) days after the Subcontractor's work has been completed to the satisfaction of the Owner and the Contractor, and the Contractor has received from the Owner written acceptance thereof together with payment in full for this portion of the work. Final payment is subject to Contractor's determination that all the requirements of the Subcontract have been met and discharged by Subcontractor.  **PAYMENT FROM THE OWNER TO THE CONTRACTOR IS A CONDITION PRECEDENT TO PAYMENT FROM THE CONTRACTOR TO THE SUBCONTRACTOR PURSUANT TO THIS ARTICLE.**

5.2     No final payment shall constitute acceptance by the Contractor of the work or material for which the final payment is made, nor a waiver of any right to require fulfillment of all the terms of this Subcontract.  The Subcontractor hereby agrees to reimburse the Contractor in the event of overpayment, together with any costs and expenses, including administrative costs and attorney's fees, the Contractor may incur in securing recovery thereof.

## Article 6.  Financial Condition of Subcontractor

6.1     If at any time Contractor in its sole discretion shall determine that the Subcontractor's financial condition has become impaired or unsatisfactory, Subcontractor shall furnish additional security satisfactory to the Contractor within three (3) days after written demand by Contractor.

6.2     The Contractor, Owner's representatives and architect at all times shall have free access to the office, shops and yards of the Subcontractor to verify any information about the work to be performed by the Subcontractor.

## Article 7.  Assignment

7.1.1   The Subcontractor will make no assignment of the proceeds of this Subcontract without the prior written consent of the Contractor, which consent shall not be unreasonably withheld.

7.1.2   The Contractor shall not be obligated to any assignee of the Subcontractor on account of payments at any time made in good faith to the assignor.

7.1.3   The Contractor shall not be liable to any assignee of the Subcontractor for any amount in excess of

Subcontractors Initials

the net sums owing Subcontractor hereunder.

7.1.4  By making an assignment of the proceeds hereof, the Subcontractor waives any claims against Contractor resulting from Contractor's continued payment to assignees or former assignees, not withstanding notification to Contractor of termination of any such assignment.

7.1.5  By making an assignment of the proceeds hereof, Subcontractor agrees to assume full liability for the conveyance to assignees of any payments mistakenly, inadvertently, or otherwise made or addressed to Subcontractor and Subcontractor agrees to defend and hold harmless the Contractor from claim or action of any assignee related to this Subcontract.

7.2  The Subcontractor shall not assign or sublet this Subcontract or any part or interest therein without Contractor's prior written consent.  If Contractor so consents, such assignment is subject and subordinated to all labor preferences and other liabilities, actual or potential, as may be imposed on Contractor due to any obligation or liability of the Subcontractor.

7.3.1  Subcontractor agrees that its Subcontract is assigned by the Contractor to the Owner provided that:
.1  assignment is effective only after termination of the Contract by the Owner for cause and only for those subcontract agreements which the Owner accepts by notifying the Subcontractor and Contractor in writing; and
.2  assignment is subject to the prior rights of the surety, if any, obligated under bond relating to the Contract.

7.3.2  Upon such assignment, the Owner shall be responsible to the Subcontractor for those obligations of the Contractor that accrue subsequent to the Owner's exercise of any rights under this conditional assignment.

Article 8.  Performance Bond and Labor and Material Bond

8.1  The Contractor shall have the right to require any Subcontractor to furnish bonds covering the faithful performance of the Subcontract and the payment of all obligations arising thereunder as well as lien discharge bonds pursuant to Waiver of Liens and Release Article detailed below.  The failure of the Subcontractor to furnish a bond within seven (7) days after having been given notice of such requirements by Contractor shall constitute sufficient cause for termination of this Subcontract without notice.

8.2  The Subcontractor's cost of the bond will be reimbursed by Contractor unless negotiated into the initial Subcontract Work Order amount.  If not, then Contractor will reimburse Subcontractor for proven premium costs without mark-up.

Article 9.  Unit Price Basis

9.1  If the terms of this Subcontract provide for the payment of work performed on a unit price basis, the unit of measurement for payment shall be one for work certified.  Verification of weights or quantities will be furnished at the time of delivery.  In the event the parties fail to agree on the actual quantity performed, Contractor shall have the right to measure the quantity of work in place and make final settlement on the basis of such measurement.  Unit prices shall be the same for both additions and deductions.

Article 10.  Equipment and Facilities

10.1  The Subcontractor shall provide at its own expense whatever tools; machines; equipment; plant; utilities; services' storage sheds; workshops; offices; first aid or emergency treatment facilities and any other facility he may deem necessary for the complete performance of all work required under this Subcontract, and shall remove any such installations and thoroughly clean and restore the site and premises at the completion of the work.

10.2  If the Subcontractor has occasion to utilize any of the facilities of the Contractor, when and if available, Subcontractor shall pay an equitable portion of the cost thereof.  The Contractor shall bear no responsibility for any loss or damage from any cause whatsoever arising from Subcontractor's use of such facilities.

Subcontractors Initials

Article 11.  Submittals

11.1.1   The Subcontractor agrees to submit, in sufficient number, all shop or fabrication drawings, design and performance data, test, samples, operating and/or maintenance manuals for use in the performance of this Subcontract as directed by the Contractor within thirty (30) days after execution of the Subcontract unless directed to do so within a lesser period by the Contractor.

11.1.2   Approval of any of the foregoing by the Contractor, the Owner or the Owner's authorized agent shall under no circumstances alter the requirements of the Subcontract Documents or constitute acceptance by the Contractor of any method, material or equipment not acceptable to the Owner or the Owner's authorized agent.

11.2     The Subcontractor agrees that the cost of any of the foregoing required hereunder is included in the amount of this Subcontract.

Article 12.  Materials Furnished by Contractor

12.1     It is hereby agreed by Subcontractor, if furnishing labor only for the finishing, installation or erection of materials furnished by Contractor, that the following costs, without restriction, are to be fully recovered by Contractor from Subcontractor:

a)      the full cost of material required to replace due to damage by the Subcontractor;

b)      the full cost of removing rejected materials when not properly installed or supplied by Subcontractor; and

c) .    the full cost of altering any work of Subcontractor not accepted by the Owner's authorized agent.

Article 13.  Cutting, Patching and Blocking

13.1     The Subcontractor shall obtain Contractor's approval for and shall do any cutting, patching and blocking necessary to complete this work hereunder, and such work shall be performed to the same standards and shall match any work performed pursuant to the Contract Documents.

Article 14.  Maintenance of Site

14.1.1   Subcontractor agrees to keep the premises and all finished work clean free of dirt, rubbish, debris and any other waste materials at all times and to remove from the site all scrap and waste materials resulting from work under the Subcontract within twenty-four (24) hours after receipt by him from Contractor of written notice to do so.  Subcontractor shall be responsible for the removal and disposal of all receptacles and containers into which same is deposited.  Upon the completion of the various portions of work, the Subcontractor shall broom clean its work area.

14.1.2   The Subcontractor shall properly cover and protect the work of others from damage due to the performance of the work required under this Subcontract, and Subcontractor shall promptly clean, restore, or pay for the replacement of any such work damaged or soiled in the performance of its own work.

14.2     Subcontractor further agrees to furnish protection at all times for its own work and all materials stored for use under this Subcontract and to bear and be solely liable for all loss and/or damage of any kind to or in connection with said work and materials at any time prior to the final completion and acceptance thereof, unless said loss or damage is caused solely by the negligence of the Contractor and is subject to recovery under such applicable insurance policies as may be in effect.

14.3     If the Subcontractor fails to promptly perform such cleaning, protection and/or repair as directed by the Contractor, the Contractor shall have the right to proceed with such cleaning, protection and/or repair, and Subcontractor, on demand therefor, shall repay to the Contractor the actual cost of such work plus a reasonable percentage to cover Contractor's supervision, insurance, tax and overhead.

Article 15.  Payment to Suppliers and Sub-subcontractors

15.1     Prior to performing any Work concerning, relating to, or under this Subcontract and whenever so requested by Contractor, Subcontractor shall disclose, in writing, to Contractor, the names,



Subcontractors Initials

addresses, telephone numbers, a description of the labor and/or material to be provided, the contract amount, payments made and balances due for all sub-subcontractors, materials suppliers and/or other persons and entities that have or will, supply or transport goods, materials, equipment, machinery, fixtures, services or labor under any agreement with Subcontractor for the Subcontractor's Work under this Subcontract. In addition, the Subcontractor may, prior to performing any Work concerning, relating to, or under this Contract, be required by Contractor to provide a copy of all such agreements to Contractor. The disclosures required by this paragraph is a condition precedent to Subcontractor performing any work at the Project, but, in no event, shall the Contractor's failure to enforce this requirement be deemed to be a waiver of Contractor's right to so demand disclosure by Subcontractor.

15.2    Subcontractor shall pay for all materials and supplies furnished and for all work, labor and services performed as required under this Subcontract, shall execute partial and final releases of liens upon demand by the Contractor, and shall indemnify Contractor and Owner against and save them and the premises harmless from any and all claims, demands, liens or suits, for all such material and supplies purchased and for all work, labor and services performed by others, including reimbursement of attorney's fees and any other costs of defense incurred.

15.3    The Subcontractor agrees and covenants that money received for the performance of this Subcontract shall be used solely for the benefit of persons and firms supplying labor, materials, supplies, tools, machines, equipment, plant or services exclusively for this Project in connection with this Subcontract; that money paid to the Subcontractor pursuant to this Subcontract shall immediately become and constitute a trust fund for the benefit of said persons and firms, and shall not in any instance be diverted by Subcontractor to any other purpose until all obligations and claims arising hereunder have been fully discharged.

Article 16. Warranties

16.1    The Subcontractor warrants and guarantees the work and materials which he performs or furnishes under this Subcontract and agrees to make good, at its own expense, any defect in materials or workmanship which may occur or develop prior to Contractor's release from responsibility to the Owner.

16.2    The Subcontractor further agrees to assume, as a direct obligation to the Contractor and/or the Owner, any guarantees or warranties which would otherwise be the responsibility of the Contractor or other subcontractors, when such guarantees or warranties have been cancelled as a result of the Subcontractor's operations in performance of this Subcontract.

16.3    Without limitation of the foregoing or other obligations of the Subcontractor provided for in the Subcontract Documents, immediately upon the Contractor's demand, the Subcontractor, at its own expense, shall repair, replace, restore or rebuild, at the Contractor's option, any work in which defects in materials or workmanship may appear, or which is otherwise not in conformance with the other warranties of the Subcontractor hereunder, or to which damage may occur because of such defects or lack of conformance, within one (1) year or such longer period as required by the Specifications from the date of the Owner's and architect's final acceptance of the project. If the Subcontractor fails to comply, the Contractor may correct such defect or lack of conformance, as the case may be, and the Subcontractor shall immediately reimburse the Contractor thereof.

Article 17. Time of Performance

17.1.1    Time is of the essence.

17.1.2    The Subcontractor agrees to keep himself thoroughly informed as to the overall progress of the Project; to commence and to prosecute the work undertaken hereunder in a prompt and diligent manner whenever such work, or any part of it, becomes available, or at such time or times as the Contractor may direct, so as to promote the general progress of the entire Project; and Subcontractor shall not by delay or otherwise interfere with or hinder the work or progress of the Contractor or any other subcontractor.

17.1.3    Upon Contractor's request, Subcontract shall furnish such evidence as the Contractor may require

7 of 19

Copyright Prohibited

_SC_
Subcontractors Initials

relating to Subcontractor's ability to fully perform this Subcontract in the manner and within the time established as herein provided.

17.1.4   The Subcontractor also shall furnish upon request by the Contractor from time to time cash flow expenditures for labor for its work (which shall include the estimated payroll for each of the trades it will employ by subcontract).

17.1.5   The Contractor exclusively shall control scheduling and coordination of the work, including the periodic updating and re-sequencing thereof, if any and the Subcontractor shall comply therewith.

17.1.6   The Contractor shall have the right to schedule other work at the same time and in the same areas as the Subcontractor's work.

17.1.7   At its sole discretion, the Contractor may schedule work during a time of and from time to time during winter conditions. The determination of when winter conditions exist shall rest exclusively with the Contractor.

17.2     The Subcontractor agrees to notify the Contractor of its objection to, or inability to comply with, any directive, notification, order, schedule or revisions thereof dealing with the time or times of its performance hereof, and to do so within three (3) days of Contractor's issuance thereof.

17.3     Specific requirements as to the time of performance shall take precedence over the more general requirements of this article.

17.4.1   In the event of any failure of Subcontractor to complete its work within the required time, the Subcontractor hereby agrees to reimburse the Contractor for any and all actual and/or liquidated damages that may be assessed against the Contractor by the Owner, which are directly or indirectly attributable to work caused by the Subcontractor's failure to comply fully with the foregoing provision.

17.4.2   Subcontractor also agrees to pay to the Contractor such damages as the Contractor may sustain by reason of any delay, directly or indirectly, attributable to or caused by the Subcontractor, including, but not limited to, recovery of Contractor's overhead and expense related to the managing and supervising of the prime Contract work.

17.5     In the event Subcontractor's performance of this Subcontract is delayed or interfered with by acts of the Owner, Contractor or other Subcontractors, Subcontractor may submit to the Contractor a written request for an extension of time for the performance of same.

17.6     At the request of the Contractor, the Subcontractor shall perform certain parts of the work before other parts, add extra manpower, or order overtime labor in order to comply with the project schedule, all without increase in the Subcontract price, unless otherwise specifically provided in the General Conditions.

17.7     If in order to expedite the final completion of the Work, Contractor requests Subcontractor to work overtime at a time when Subcontractor is not in default in any of the provisions of this contract, Subcontractor agrees to work said overtime and it is understood that Contractor shall pay Subcontractor therefore only the Subcontractor's extra labor costs over the rate for regular time during the period of such overtime, including additional insurance and taxes incurred by Subcontractor with respect thereto. Time slips covering said overtime must be submitted to Contractor's authorized agent for checking and approval. No commissions, fees, overhead, or profit is to be charged by or allowed to Subcontractor for or on account of said overtime. However, if Subcontractor shall at any time be behind in the work herein contemplated, or if in the opinion of the Contractor, Subcontractor is delaying the progress of the work necessary to complete the Project, then and in either such event, if requested by Contractor, Subcontractor shall cause to be performed overtime work as may be necessary to keep abreast with the general progress of the work at the Project, and in either such event the cost and expense of such overtime shall be borne entirely by Subcontractor.

17.8     If the Subcontractor shall be delayed in the prosecution or completion of the Subcontract Work by the act, neglect or default of the Contractor, the Architect, the Owner, or any other subcontractor employed by the Contractor upon the project, or by any damage caused by fire or other casualty for which the Subcontractor is not responsible, or by general strikes or lockouts caused by acts of employees, then the time fixed by the Contractor for the completion of the Subcontract Work shall

Subcontractors Initials

Dec 14 09 09:50a        Tracy                                    4842318069            p.12

be extended for such period of time as shall be determined and fixed by the Contractor as the time lost by reason of any or all of the causes aforesaid. This shall be Subcontractor's sole and exclusive remedy for such delay and in no event shall Contractor be responsible for any increased costs, charges, expenses or damage of any kind resulting from any such delays. No allowance of an extension of time for performance of this Subcontract will be granted, unless a claim therefor is presented to the Contractor in writing and within forty-eight (48) hours of the occurrence of the cause thereof, and then only if the Contractor agrees to such an extension of time in its sole discretion. Time elapsed between Work Orders, phases of the Work or construction of individual houses does not constitute a delay, interruption or suspension.

Article 18.  Changes in Work

18.1    Contractor may at any time, by written order and without notice to surety, make changes in the work herein contracted for and the Subcontractor shall proceed with the work as directed. If said changes cause an increase or decrease in the cost of performance or in the time required for performance an equitable adjustment shall be made and this Subcontract shall be modified in writing accordingly. Nothing herein shall excuse the Subcontractor from proceeding with the prosecution of the work as changed.

18.2    For any adjustments by Change Order, Subcontractor will be permitted to charge ten percent (10%) as a reasonable allowance for a combined overhead and profit mark-up for work not involving Sub-subcontractors and five percent (5%) as a reasonable allowance for a combined overhead and profit mark-up for Work by Sub-subcontractors.

18.3    If Contractor and Subcontractor are unable to agree on the price for the changed work, Contractor shall have the right to order Subcontractor to proceed with the changed work on a time and material basis. When changed work, other than overtime ordered by Contractor, is performed on a time and material basis, unless otherwise limited by the agreement between Owner and Contractor, Subcontractor shall receive: (1) the actual cost of labor including applicable insurance and payroll taxes, based upon the Approved Labor Rates, plus ten percent (10%) for overhead and profit, and (2) the actual cost of material and equipment, plus ten percent (10%) for overhead and profit.  In performing changed work on a time and material basis, if such work requires that Subcontractor use a subcontractor, Subcontractor shall limit its subcontractor as set-forth above and Subcontractor shall be limited to a mark-up of its subcontractor's total of five percent (5%) for Subcontractor's overhead and profit. Whenever changed work is performed on a time and material basis, Contractor shall have the right to audit Subcontractor's books, records, documents and other evidence bearing on the costs and expenses of the Subcontractor for such changed work.

18.4    No extension to Subcontractor's time of performance as a result of changed work shall be allowed under this Subcontract unless authorized by Contractor in writing. The value of the changed work requested by Subcontractor shall include all costs for delay and disruption to Subcontractor's work. Subcontractor shall not be entitled to any additional compensation for delay and disruption caused by the changed work unless such costs are requested and approved by the Owner. In no event, shall Subcontractor be entitled to compensation for the collective impact of changed work.

Article 19.  Claims

19.1    The Subcontractor agrees to make any claims to the Contractor for damages or additional compensation based on alleged extra work, changed conditions or any other grounds within three (3) days of the discovery of the condition causing the need for additional compensation or damages or within sufficient time (48 hours prior to the amount of time set forth in the notice requirement in the Contract between Contractor and Owner for like claims) to permit Contractor to advise the Owner in the manner provided in the Contract Documents for like claims, whichever is shorter. The Contractor will not be liable to the Subcontractor on account of any claim not timely or properly presented or until it is allowed by the Owner. Payment by Owner on any claims by Subcontractor is a condition precedent to payment by Contractor on any claims of Subcontractor.

19.2    The Subcontractor agrees that any liability of the Contractor to the Subcontractor on any claim of

9 of 19

Subcontractors Initials

any sort by the Subcontractor against Contractor arising in whole or in part out of any act, omission, default, order, directive, decision or change by the Owner, or which could be the subject of a claim by the Contractor against the Owner, shall be liquidated and limited to whatever the Contractor actually receives from the Owner, if anything, as a result of the presentation of a claim based thereon to the Owner, and the Subcontractor shall have no other or further claims whatsoever against the Contractor based thereon or in any way related thereto. Any claim prosecuted hereunder shall be subject to the sole direction and control of the Contractor.

19.3    If the Subcontractor encounters any condition which forms the basis of a claim for extra compensation or time, or any other type of claim, including but not limited to those conditions which are (1) subsurface or otherwise concealed physical conditions which differ materially from those indicated in the Contract Documents or (2) unknown physical conditions of an unusual nature, which differ materially from those ordinarily found to exist and generally recognized as inherent in construction activities of the character provided for in the Contract Documents, it shall be its duty to give written notice to the Contractor prior to commencing any work involving said condition and no later than three (3) business days after encountering the condition so the Contractor may inspect said condition and take such steps as Contractor deems necessary. In the absence of such notice to the Contractor, Subcontractor shall be fully liable for any and all expense, loss or damage resulting from said condition. The Contractor will promptly investigate such conditions and, if they differ materially and cause an increase or decrease in the Subcontractor's cost of, or time required for, performance of any part of the Work, will recommend an equitable adjustment in the Subcontract Sum or Subcontract Time, or both. If the Contractor determines that the conditions at the site are not materially different from those indicated in the Contract Documents and that no change in the terms of the Subcontract is justified, the Contractor shall so notify the Subcontractor in writing, stating the reasons.

19.4    It is also agreed that Subcontractor shall not be entitled to any additional payment or compensation under this Subcontract without the express written approval of Contractor. No officer, employee or agent of Contractor is authorized to direct any Extra Work by oral order except minor changes in the work not involving extra cost or time.

Article 20.  Disputes

20.1.1  In the event of any dispute between the Contractor and the Owner which involves the work required to be performed by Subcontractor under this Subcontract, or in the event of any dispute between Contractor and Subcontractor which involves a claim against the Owner for either additional compensation and/or an extension of time under the Contract Documents, Subcontractor agrees to be bound to Contractor and Contractor agrees to be bound to Subcontractor to the same extent that Contractor is bound to the Owner by the terms of the Contract Documents and by all decisions or findings made thereunder by the persons so authorized in the Contract Documents, or by an administrative agency or court of competent jurisdiction, whether or not Subcontractor is a party to the proceedings before said person, agency or court.

20.1.2  If any dispute or claim is prosecuted or defended by the Contractor, and Subcontractor is not directly a party or litigant, Subcontractor agrees to cooperate fully with Contractor and shall pay or reimburse Contractor for all expenses and costs, including reasonable attorney's fees, incurred in connection therewith to the extent of the Subcontractor's interest in such claim or dispute.

20.1.3  It is expressly understood and agreed in connection with the determination of such claim or disputes that Contractor shall never be liable to Subcontractor to any greater extent than Owner is liable to Contractor.

20.2    In the event of any claim or dispute between Contractor and Subcontractor, it is further specifically agreed by the parties hereto that no claim shall interfere with the performance work required to be performed under this Subcontract.

Article 21.  Default

21.1.1  In the event the Subcontractor fails to comply, or becomes unable to comply, or with reasonable

10 of 19

Copyrighted

Subcontractors Initials

probability (as determined solely by Contractor) will become unable to comply, with any of the provisions of this Subcontract; or in the event Subcontractor fails at any time to supply a sufficient number of properly skilled workmen with sufficient materials, equipment or plant of proper quality or fails in any respect to prosecute the work with promptness and diligence; or causes by any action or omission a stoppage of or delay in the work of the Contractor or other subcontractor of Contractor; or in the event Subcontractor abandons its work or any part thereof; and such failure, inability or deficiency (as determined solely by Contractor) is not corrected within one day after written demand by the Contractor to the Subcontractor; the Contractor may, in addition to and without prejudice to any other right or remedy, take over and complete the performance of the Subcontract, at the expense of the Subcontractor; or the Contractor may, without taking over the work, immediately and without notice to Subcontractor, furnish the necessary materials and labor through itself or others, to remedy the situation, all at the expense of the Subcontractor.

21.1.2  The parties hereto further agree that any of the following shall, at the option of the Contractor, constitute inability to comply with the provisions of this Subcontract for purposes of this article:

    a)   the filing of a petition in bankruptcy or a petition for the appointment of a receiver by or against the Subcontractor;

    b)   the insolvency of the Subcontractor or its inability to meet its debts as they mature;

    c)   the establishment of a receivership or any committee of creditors involving Subcontractor's business or assets, or the making of an assignment for the benefit of Subcontractor's creditors; or

    d)   the failure or refusal of Subcontractor to respond to any written order or notice duly issued by the Contractor.

21.1.3  Subcontractor hereby waives any and all defenses, claims or causes of action against Contractor based in whole or in part on the contention that Subcontractor would have been able to comply with the Subcontract.

21.2.1  Upon any action by the Contractor pursuant to this article, the Subcontractor shall not be entitled to further payment on this Subcontract until the work has been completed and accepted by the Owner and payment therefore has been received by the Contractor from the Owner.

21.2.2  If the expense incurred by the Contractor exceeds the unpaid balance due, the Subcontractor agrees to promptly pay the difference to the Contractor together with interest thereon at the rate of the prime rate plus 2% per annum until paid, and the Contractor shall have a lien upon all material, tools, and equipment taken possession of, to secure the payment thereof.

21.2.3  With respect to expenses incurred by the Contractor pursuant to this article, it is hereby agreed that the costs and expenses chargeable to the Subcontractor as herein before provided shall include, without restriction, the cost of materials, labor, subcontracts, purchase orders, transportation, equipment and expense thereon, supplies, services, insurance, taxes, appliances, tools, utilities, power used or consumed, supervision, administration, job overhead, travel, attorney's fees, legal and accounting fees and expenses, Contractor's general overhead as allocated to the work and other costs and expenses incurred or sustained by the Contractor, plus ten percent (10%) profit on the actual cost of the work performed as well as on the amount of claims paid by the Contractor for Subcontractor or for which it deems itself liable.

21.3    In no instance will any action whatsoever taken by the Contractor pursuant to this Subcontract relieve or mitigate Subcontractor's full and absolute responsibility for any and all of the Subcontractor's obligations under this Subcontract.

21.4    In the event the employment of the Subcontractor is terminated by the Contractor for cause under this Article and it is subsequently determined by a court of competent jurisdiction or arbitrator(s) that such termination was without cause, such termination shall thereupon be deemed a Termination for Convenience under Article 22 and the provisions of Section 22.2 shall apply.

Article 22.   Suspension or Termination for Convenience

22.1    The Contractor may, without cause, order the Subcontractor in writing to suspend, delay or

_BC_

Subcontractors Initials

interrupt the Work in whole or in part for such period of time as the Contractor may determine. In such an event, the Contract Sum and Contract Time shall be adjusted for increases in the proven and documented cost and time caused by suspension. Adjustment of the Contract Sum shall not include profit, special or consequential damages. No adjustment shall be made to the extent: (1) that performance is, was or would have been so suspended, delayed or interrupted by another cause for which the Subcontractor is responsible; or (2) that an equitable adjustment is made or denied under another provision of the Contract.

22.2    The Contractor may, at any time, terminate this Subcontract in whole or in part for the Contractor's convenience and without cause. Termination by the Contractor under this Paragraph shall be by notice of termination delivered to the Subcontractor specifying the extent of termination and the effective date of such termination, the Subcontractor shall recover as its sole remedy payment for work properly performed in connection with the terminated portion of the work prior to the effective date of termination and for items properly and timely fabricated off the Project site, delivered and stored in accordance with the Contractor's instructions. The Subcontractor hereby waives and forfeits all other claims for payment and damage, including, without limitation, anticipated profits.

## Article 23.  Coordination

23.1    The Subcontractor agrees to perform the work called for in this Subcontract in such a manner that he will not injure or damage any other work performed by the Contractor or any other subcontractor.

23.2    The Subcontractor further agrees to cooperate with the Contractor and other subcontractors whose work might interfere with the Subcontractor's work and to prepare sketches and drawings as directed, and/or to participate in the preparation of coordinated drawings in areas of congestion, specifically noting and advising the Contractor of any such interference.

23.3.   The Subcontractor agrees to have a representative present at regularly scheduled jobsite coordination meetings. This representative must be a principal of the company or designated project manager who has the authority to comply with all scheduling and other requests of the General Contractor. It is further agreed that the Subcontractor's representative shall appear promptly at the designated meeting time. If the Subcontractor fails to attend these meetings on a timely basis, the Contractor shall have the right to declare the Subcontractor in default of this Subcontract, and seek all legal remedies in accordance with the terms of this Subcontract.

## Article 24.  Indemnification

24.1    To the fullest extent permitted by law, Subcontractor agrees to indemnify, hold harmless and defend Guidi Homes, Inc. and General Contractor, Construction Manager, Prime Contractor, Owner, Architect, Engineer, Partner and Joint Venture and their agents, employees, representatives, officers, directors, stockholders, members, managers and parent, subsidiary and affiliated companies (the "Indemnified Parties") from and against any and all liability for loss, damage or expense for which the Indemnified Parties may be held liable by reason of injury (including death) to any person (including Subcontractor's employees) or damage to any property of whatsoever kind or nature arising out of or in any manner connected with the work to be performed for the Indemnified Parties (including, but not limited to, work performed under this contract, work performed under Change Order, or any such other work performed for or on behalf of the Indemnified Parties, whether performed at the site or not or in any way connected with the use, misuse, erection, maintenance, operation or failure of any machinery or equipment whether or not such machinery or equipment was furnished, rented or loaned by any of the Indemnified Parties, even if for and if caused in whole or in part by any act, omission, or negligence of the Indemnified Parties. It is expressly understood and agreed that the indemnity contained in this paragraph covers claims by Subcontractor's employees and that Subcontractor expressly waives any defense to this indemnification obligation which may arise under the Workers' Compensation Act of any State. In addition, Subcontractor shall defend the Indemnified Parties

12 of 19



Subcontractors Initials

against any claim which may potentially give rise to indemnification of the Indemnified Parties, even if such claim alleges that the Indemnified Parties are wholly or partially at fault for causing the loss. If Indemnification for the Indemnified Parties' sole negligence is expressly prohibited by Law, such defense shall continue until it is conclusively established by a court of competent jurisdiction that: 1) the Indemnified Parties are solely liable for causing the bodily injury or property damage alleged; and 2) that neither Subcontractor nor its employees nor any Subcontractor to Subcontractor is liable; at which time the Indemnified Parties will absorb all costs of defense. It is further expressly agreed that Subcontractor assumes the fullest extent of all obligations to indemnify and defend all parties whom **Guidi Homes, Inc.** is obligated to indemnify and defend in **Guidi Homes, Inc.'s** contract with General Contractor, Construction Manager, Prime Contractor, Owner, Architect, Engineer, Partner and Joint Venture (whether or not such obligations may extend to items beyond those addressed in this Agreement).

If there are any damages or claims of any kind or nature unsettled when the subcontract work is finished, the final payment by Guidi Homes, Inc. shall be deferred until all such claims shall have been adjusted or suitable coverage or indemnity acceptable to Guidi Homes, Inc. is provided by Subcontractor or Subcontractor's insurance carrier.

Subcontractor and Guidi Homes, Inc. further agree that the Laws of the Commonwealth of Pennsylvania shall apply to the construction and application of the Indemnification and Hold Harmless Agreements set forth above

24.2   In the event and to the extent that a claim is made by an employee of Subcontractor against an Indemnified Party hereunder, the intent of this Article is that Subcontractor shall and it hereby agrees to indemnify Owner, Architect, Contractor and their parent, subsidiary, or affiliated companies and each of their agents, officers, directors, employees and assigns to the same extent as if the claim was made by a non-employee of Subcontractor. Accordingly, in addition to the above provisions, and in order to render the parties' intent and this indemnity agreement fully enforceable, Subcontractor, in an indemnification claim hereunder, hereby expressly and without reservation waives any defense or immunity it may have under any applicable Worker's Compensation Laws or any other statute or judicial decision disallowing or limiting such indemnification and consents to a cause of action for indemnity. Said waiver and consent to indemnification is made irrespective of and specifically waiving any defense or immunity under any statute or judicial decision disallowing or limiting such indemnification.

24.3   The Subcontractor shall bear any expense of an Indemnified Party because of any claim or other matter indemnified against hereunder, including reasonable attorney's fees and court costs in the defense of, or preparing for the defense against, any such claim, even if such claim or any lawsuit arising therefrom is groundless, false or fraudulent. If any such claim has not been settled or discharged when the Work is finished, final settlement between the Contractor and the Subcontractor and final payment of the Subcontract Price and the acceptance of the Work shall be deferred until any such claim is paid or settled or the Subcontractor provides a bond, acceptable to the Contractor, in its sole discretion, to satisfy such claim. At the request of any Indemnified Party, Subcontractor shall retain an attorney to represent such Indemnified Party in the defense of any such claim, provided, however, that any attorney employed in such defense must be satisfactory to such Indemnified Party.

24.4   The parties hereby agree that the Contractor shall not be liable for any loss or casualty incurred or caused by the Subcontractor. The Subcontractor shall maintain full and complete insurance on its work until final acceptance of the Work. The Subcontractor assumes all risk of loss for all its work regardless of whether the Subcontractor had previously been paid for same. Contractor is not responsible to provide any service for the Subcontractor's benefit, and is not liable for any loss or damage to the Subcontractor's Work.

24.5   In addition to the above, Subcontractor shall indemnify and hold harmless the Indemnified Parties for all damages, losses, or claims that arise as a result, in whole or in part, of the negligence, errors,

13 of 19

_B C_
Subcontractors Initials

omissions, or failure to perform by the Subcontractor, his employees, his agents or his subcontractors. The Subcontractor shall indemnify and hold harmless the Owner for all damages, losses, or claims, including related attorney fees, that arise as a result, in whole or in part, of the breach of this Agreement or any implied covenants deemed to be applied thereto, intentional acts, omissions, or other failures to perform by the Subcontractor, his employees, his agents or his subcontractors.

Article 25.  Elimination or Reduction of Work

25.1    In the event of elimination or reduction of the work to be performed under this Subcontract by reason of termination or modification of the Subcontract Documents or a change in the work to be done thereunder, either in accordance with the terms of the Contract or the Subcontract Documents or by default by Owner, Subcontractor shall not be entitled to recover from Contractor more than its fair and equitable portion of any sums received by Contractor for work done or materials supplied by this Subcontractor on this Subcontract. The rights and claims of the Contractor, other subcontractors and third parties shall be taken into consideration in determining Subcontractor's fair and equitable share.

Article 26.  Labor Harmony

26.1    The Subcontractor accepts complete responsibility to maintain labor harmony with all trades working on this project during the performance of Subcontractor's Work.

Article 27.  Permits and Compliance with Law

27.1    Subcontractor shall obtain and pay for all permits, licenses and official inspection made necessary by its work and shall comply with all laws, ordinances and regulations bearing on the work required under this Subcontract.

27.2    Without limitation of any other provision hereof, if the Subcontractor performs any Work which is contrary to such laws, ordinances, codes, rules and regulations, he shall make all changes as required to comply therewith and bear all costs arising therefrom without additional reimbursement.

Article 28.  Independent Contractor

28.1    The Subcontractor certifies that he is "an independent Contractor" subject, as an employer, to all applicable statutes and regulations with respect to such status.

Article 29.  Employees

29.1    The Subcontractor shall not employ any person in performance of this Subcontract whose employment might be reasonably objected to by the Contractor or Owner and hereby agrees to promptly remove from the Project any such person or party.

Article 30.  Notice

30.1.1    Written notice, where required by the terms of this Subcontract, may be accomplished by personal delivery of said notice or by use of the United States mail or a facsimile communication. The written notice shall become effective upon the date stated therein, or, if no such date is stated, upon the date upon which delivery is complete.

30.1.2    Personal delivery is complete when the notice is delivered to the Subcontractor or its representative at the Project or at the office address of the Subcontractor appearing in this Subcontract. The Subcontractor shall, at all times during its work on this Project, have a representative authorized to receive written notices present on the Project site during all normal working hours. In the absence of such a representative, personal delivery is complete when the notice is delivered to any of its subcontractors, supervisors or workmen, or in their absence, left in a conspicuous place on the Project site in the area of Subcontractor's work.

30.1.3.   If facsimile is used, completion of the facsimile will have a confirmation notice attached thereto, to

14 of 19

Copying Prohibited

Subcontractors Initials

indicate that the fax has been sent in its entirety, and shall have a date reflected thereon.

30.1.4   When regular or overnight mail is used, delivery is complete for the purposes of paragraph 30.1.1 on the date first occuring among the following: a) on the day the communication is received by Subcontractor evidenced by a return receipt furnished by the United States Post Office Department or by any recognized messenger or delivery service, or b) on the third day after the notice is deposited in the U.S. mail addressed to the Subcontractor at its last known address.

Article 31.  Superintendent

31.1   The Subcontractor shall at all times maintain a qualified and skilled superintendent or foreman at the site of the work who shall be satisfactory to the Owner, the Owner's authorized agent and/or the Contractor. Such superintendent or foreman shall be duly and legally authorized to represent and act for the Subcontractor with respect to all matters in connection with or arising out of work under this Subcontract.

Article 32.  Subcontractor's Dealing with Owner

32.1   It is agreed that all of Subcontractor's dealings with the Owner's authorized agent, the Owner, or any other party named in the Contract Documents shall be through the Contractor.

32.2   The Subcontractor further agrees that he shall not make any agreement with the Owner's authorized agent or with the Owner pertaining to any phase of the performance of this Subcontract.

Article 33.  Owner Right to Reject Subcontract and Third Party Beneficiary Rights

33.1   Subcontractor recognizes that the Owner may reject any proposed subcontractor or supplier for any reason and at its discretion prior to execution of the subcontract.

33.2   Nothing contained in the Subcontract Documents or Contract Documents shall create a contractual relationship between the Owner and any third parties; however, it is understood and agreed that the Owner is an intended third party beneficiary of all subcontracts, purchase orders, and other agreements between the Contractor and third parties.

Article 34.  No Commingling of Materials

34.1   To the extent that the materials or equipment is for a particular Work Order, the materials and equipment must be marked as such and must not be commingled with material or equipment for other portions of the project. No payments will be made for stored materials or equipment unless they are so designated and separate.

Article 35.  Contributions, Taxes and Insurance

35.1   The Subcontractor agrees to and does hereby accept full and exclusive liability for the payment of all contributions, taxes, insurance of any description whatever, now or hereafter imposed by any authority, which are measured by the wages, salaries or other remunerations paid to persons employed by Subcontractor on work performed pursuant to the terms of this Subcontract.

35.2   Subcontractor further agrees to and does hereby accept full and exclusive liability for the payment of all personal property taxes, inventory taxes, sales taxes, use taxes, excise taxes, fuel taxes, transportation taxes, franchise taxes, and all other taxes, and/or tax assessments in any manner whatsoever relating to the materials, supplies, tools, machinery, equipment and plant which may be purchased, acquired, rented or used by Subcontractor relating to all work performed under this Subcontract.

Article 36.  Insurance

36.1.1   Subcontractor shall provide and maintain at all times during the performance of this Subcontract Workmen's Compensation and Employer's Liability insurance for protection of Subcontractor's employees, as required by law; and insurance covering Public Liability, Property Damage and Subcontractor's Contractual Liability hereunder (including but not limited to all work performance and operation of automobiles, trucks and other vehicles, the values of which are itemized in Exhibit "C").

15 of 19

_BC_
Subcontractors Initials

Copy Prohibited

36.1.2   All insurance required hereunder shall be maintained in full force and effect in a company or companies satisfactory to Contractor, at the Subcontractor's expense, and until performance in full hereof has been accomplished and final payment has been issued in evidence thereof. Further, such insurance shall be subject to the requirement that Contractor must be notified by thirty (30) days written notice before cancellation of any such policy. In the event of the threatened cancellation for non-payment of premium, Contractor may pay the same for Subcontractor and deduct the said payment from amounts then or subsequently owing to the Subcontractor hereunder.

36.1.3   Certificates of insurance must be filed with the Contractor within thirty (30) days of the date of execution of this Subcontract or prior to commencement of work, whichever is earlier. No payment shall be considered due and owing hereunder until certificates of insurance satisfactory to the Contractor have been received in its office.

36.1.4   Subcontractors' liability policy shall be the primary policy and must list as additional insured both Contractor and the Owner of the Project as well as any additional entities listed in the relevant Work Order using the following language:
**Guidi Homes, Inc and (Name of Owner if other) are additional insured on the captioned General Liability, Umbrella liability and Automobile Liability Policies on a Primary and Noncontributory basis. A waiver of Subrogation is provided on these policies in favor of Guidi Homes, Inc and Haverford Reserve LP, including workers compensation where permitted by State Law.**

36.1.5   Subcontractor is required to report to Contractor in writing, any job related illness or accident within three (3) business days of illness or accident.

36.2   Subcontractor shall require its Sub-subcontractor to provide and maintain at all times during the performance of the Sub-Subcontractor's Subcontract, Workmen's Compensation and Employer's Liability insurance for protection of the Sub-Subcontractor's employees, as required by law; and insurance covering Public Liability Property Damage and Sub-Subcontractor's Contractual Liability under its Subcontract (including but not limited to all work performance and operation of automobiles, trucks and other vehicles, the values of which are itemized in Exhibit "C"). The insurance provided by the Sub-Subcontractor shall meet all of the requirements of this Subcontract.

36.3   In the event Contractor, in its sole discretion, determines that Subcontractor is not maintaining the insurance required by this Agreement, Contractor shall have the right to immediately terminate this Agreement without any notice to Subcontractor.

36.4   To the fullest extent permitted by applicable law, Subcontractor waives all subrogation rights against Contractor, Owner, and any of their agents and employees: (1) for damages caused by fire or other perils to the extent covered by property insurance provided under the Principal Contract, the Subcontract or other property insurance applicable to the Work, except such rights as they may have to proceeds of such insurance held by Owner or Contractor as fiduciary; and (2) for other claims to the extent arising out of a loss or claim covered by Subcontractor's liability, automobile or worker's compensation insurance. Subcontractor shall require of Subcontractor's sub-subcontractors, agents and employees by appropriate agreements, written where legally required for validity, similar waivers in favor of other parties enumerated herein. The policies shall provide such waivers of subrogation by endorsement or otherwise. A waiver of subrogation shall be effective as to a person or entity even though that person or entity would otherwise have a duty of indemnification, contractual or otherwise, did not pay the insurance premium directly or indirectly, and whether or not the person or entity had an insurable interest in the property damaged.

## Article 37.  Effective Date

37.1   The effective date of this Subcontract is intended by both parties to be the date indicated at the beginning of this Subcontract. The dates appearing by the signatures at the end of this document merely indicate the dates that the signatures were affixed.

## Article 38.  Waiver of Liens and Releases

38.1   If Contractor posts a bond guaranteeing payment for goods, materials, and equipment supplied,

_BC_

Subcontractors Initials

labor or services provided to the Project by Subcontractors, then Subcontractor agrees to waive its right to file a mechanics' lien and that no mechanics' liens, notices, or claims, or materialman's liens, notices, or claims, or any other liens or claims of any kind whatsoever will be filed, enforced, or maintained with respect to the goods, materials, and equipment supplied, labor or services performed pursuant to this Subcontract against the Project for which they are supplied or performed, or against the owner, real property, building, or other improvements of which the Project is a part, or any part or parts thereof or the appurtenances thereto by Subcontractor, its successors and assigns. If the bond posted by Contractor guarantees payment for goods, materials, and equipment supplied, labor or services provided to the Project by sub-subcontractors, suppliers, materialman and other entities pursuant to a contract with Subcontractor, then Subcontractor shall obtain lien waivers from such sub-subcontractors, suppliers, materialman and other any other similarly situated entities, stating that liens may not be filed on the Project and provide written notice of this lien waiver provision to its sub-subcontractors, suppliers, materialman, and all other persons or entities acting by, through, or under it or them, prior to and before any labor or services are performed, or goods, materials, or equipment are supplied to the Project pursuant to this Subcontract.

38.2   If Contractor posts a bond guaranteeing payment for goods, materials, and equipment supplied, or labor or services performed by Subcontractor, then, in the event a mechanics' lien, notice, or claim, or materialman's lien, notice, or claim, or construction lien claim, or lien, or any other lien or claim of any kind whatsoever is filed, enforced, or maintained by Subcontractor and/or any of Subcontractor's sub-subcontractors, suppliers, materialmen, and all other persons or entities acting by, through, or under it or them, then Subcontractor shall defend, indemnify, and hold Contractor harmless from such liens and/or claims, and shall also cause said mechanics' lien, notice, or claim, or materialman's lien, notice, claim, construction lien claim, or other lien of any kind whatsoever, to be discharged in accordance with applicable law. Subcontractor also agrees to pay and reimburse Contractor for all costs, expenses and attorney's fees incurred by Contractor in defending, responding to and/or discharging liens or claims filed by Subcontractor and/or any of Subcontractor's sub-subcontractors, suppliers, materialmen, and all other persons or entities acting by, through, or under it or them whenever a valid lien waiver is in place on a Project.

38.3   As a prerequisite to payment, Subcontractor agrees that it will execute, in a form satisfactory to owner, all documents required by Contractor that evidence, ensure, and guarantee that the Subcontractor has made payment for all Work performed in connection with this Subcontract, including, but not limited to, Releases and Partial Waiver of Liens, in consideration for each and every payment and up the date covered by the payment, whether partial or final. Said Releases and Partial Waiver of Liens shall include, whenever so requested by Contractor, and in a form acceptable to Contractor, Partial Waiver of Liens and Release of claims, costs, expenses, fees, charges, changes, change orders, or change order requests that arise out of or relate to Subcontractor's Work performed from all contractors, suppliers, persons and/or entities that have, or will, provide labor, materials, equipment, machinery, fixtures, services, or labor under any agreement(s) with Subcontractor for the Subcontractor's Work under this Subcontract. A sample Partial Lien Waiver and Release Form is attached hereto as Exhibit "E-2" to this Subcontract. Contractor reserves the right to modify the form of this Partial Lien Waiver and Release.

38.4   The Subcontractor, when required by the Contractor as a condition precedent to the making of final payment hereunder, shall furnish to the Contractor a full and complete release and discharge, in a form satisfactory to the Contractor, of all liens, claims and demands arising out of or relating to the Subcontract work and any and all materials furnished, work done and equipment used in connection therewith. Furthermore, if, prior to final payment, the Owner or any party providing financing for the Project requests a release of liens from the Subcontractor, the Subcontractor shall execute and deliver such release of liens in a form satisfactory to the Owner or such other party. A sample Final Lien Waiver and Release is attached hereto as Exhibit "F-2" to this Subcontract.

Article 39.   Applicable Law

Subcontractors Initials

39.1    The law of the Commonwealth of Pennsylvania, not including choice of law analysis, shall be applicable to this Subcontract and shall be used to decide any dispute related to this Subcontract.

**Article 40.   Determination of Disputes**

40.1.1   Any dispute between the parties related to this Contract shall be determined by the courts of the Commonwealth of Pennsylvania located in Montgomery County or, if the Contractor agrees in writing that the Owner is a party to the dispute, the venue required by the Contract Documents, with the exception noted in Section 40.1.2 below.  The Subcontractor hereby consents to the personal jurisdiction of that Court over it and agrees to accept service of process issuing from that Court.  As part of the consideration given by the parties hereto, the parties mutually agree to waive their respective rights to a jury in any such matter.

40.1.2   If a dispute arising out of or relates to this Subcontract, or breach thereof, and if the dispute cannot be settled through pre-litigation negotiations, the Contractor and Subcontractor agree, at the Contractor's sole election, to subject the dispute to arbitration administered by the American Arbitration Association under its Construction Industry Arbitration Rules whereby a judgment on the award rendered by the Arbitrator(s) may be entered in any Court having jurisdiction thereof.  Under such circumstances, the Arbitrator(s) shall have the exclusive power to determine issues of arbitrability.  Such arbitration shall be final and binding upon the parties.

40.1.3   Pending final resolution of a dispute, except as otherwise agreed in writing, the Subcontractor shall proceed diligently with performance of the Work.

40.1.4   Enforceability of Elections.  If the elections afforded Contractor in Section 40.1.1 or 40.1.2 hereof are not enforceable, then both parties shall be bound to arbitrate all disputes in which the disputed amount is less than Five Hundred Thousand Dollars ($500,000.00) and may litigate any dispute involving a higher amount.

40.1.5   Venue.  Unless the Contractor agrees in writing that the Owner is a party to the dispute, so that the venue will be as required by the Contract Documents, the venue for any mediation, arbitration or litigation proceeding relating to Subcontractor's Work shall be in the county in which Contractor's home office is located.

**Article 41.   Nondiscrimination in Employment**

41.1    UNLESS EXEMPT IN ACCORDANCE WITH EXECUTIVE ORDER 11246 OF SEPTEMBER 24, 1965, DURING THE PERFORMANCE OF THIS SUBCONTRACT, THE SUBCONTRACTOR AGREES AS FOLLOWS:

41.1.1   The Subcontractor will not discriminate against any employee, or applicant for employment because of sex, race, religion, color or national origin.  The Subcontractor will take affirmative action to ensure that applicants are employed and that employees are treated during employment without regard to their age, sex, religion, color or national origin.  The Subcontractor agrees to post in conspicuous places, available to the employees and applicants for employment, notices to be provided setting forth the provisions of the nondiscrimination clause.

41.1.2   The Subcontractor will, in all solicitations or advertisement for employees, placed by or on behalf of the Subcontractor, state that all qualified applicants will receive consideration for employment without regard to sex, race, religion, color or national origin.

41.1.3   If applicable, the Subcontractor will send to each labor union or representative of workers with which he has a collective bargaining agreement or other contract or understanding, a notice advising the said labor union or workers' representative of the Subcontractor's commitments under this section, and shall post copies of the notice in conspicuous places available to employees and applicants for employment.

41.1.4   The Subcontractor will comply with all provisions of Executive Order 11246 of September 24, 1965 and the rules, regulations and relevant orders of the Secretary of Labor.

41.1.5   The Subcontractor will furnish all information and reports required by Executive Order 11246 of September 24, 1965 and by the rules, regulations and orders of the Secretary of Labor, or pursuant thereto, and will permit access of his books, records, and accounts by the administering agency and

18 of 19

Subcontractors Initials

Copyright Prohibited

the Secretary of Labor for purposes of investigation to ascertain compliance with rules, regulations and orders.

41.1.6   In the event the Subcontractor is in non-compliance with the nondiscrimination clauses of the Subcontract Documents or with any of the said rules, regulations or orders, this Subcontract may be canceled, terminated or suspended in whole or in part, and the Subcontractor may be declared ineligible for further government contracts or federally assisted construction contracts in accordance with procedures authorized in Executive Order 11246 of September 24, 1965 and such other sanctions as may be imposed and remedies invoked as provided in the said Executive Order or by rules, regulations or orders of the Secretary of Labor, or as otherwise provided by Law.

41.1.7   The Subcontractors will include the provisions of Paragraph One (1) through Seven (7) in every Sub-Contract or Purchase Order unless exempted by rules, regulations and orders of the Secretary of Labor issued pursuant to Executive Order 11246 of September 24, 1965, so that such provisions will be binding upon each Sub-contractor or Vendor.  The Subcontractor will take such action with respect to any Sub-subcontract or Purchase Order as the administering agency may direct as a means of enforcing such provisions, including sanctions for noncompliance; provided however, that in the event the Subcontractor becomes involved in, or is threatened with, litigation with a Sub-subcontractor or vendor as a result of such direction by the administering agency, the Subcontractor may request the United States to enter into such litigation to protect the interests of the United States.

Subcontractors Initials

## Exhibit "C"
## REQUIRED LINES OF COVERAGE AND MINIMUM INSURANCE REQUIREMENTS

**Commercial General Liability Insurance:** Comprehensive General Liability Insurance including G.H.I.'S Protective Liability and Contractual Liability insurance with and Insurance shall insure the hold harmless and indemnification agreements of the SUBCONTRACTOR running to G.H.I.

    a)    Occurrences Policy Form (including Contractual Liability Coverage)

    b)    Limits of Liability:

| | |
|---|---|
| General Aggregate (per Project) | $2,000,000 |
| Products – Completed Operations Aggregate | $1,000,000 |
| Personal & Advertising Injury | $1,000,000 |
| Each Occurrence | $1,000,000 |
| Fire Legal Liability Coverage | $ 50,000 |

**Workers Compensation and Employers Liability Insurance** complying with the laws of the State in which the work is to be performed, or elsewhere as may be required. Workmen's Compensation including Occupational Disease and Employer's Liability Insurance covering all SUBCONTRACTOR'S employees directly or indirectly engaged in the performance of this Contract.

    a) Workers' Compensation Coverage: Statutory Requirements

    b)    Employers Liability Limit Not Less Than:

| | |
|---|---|
| Bodily Injury by Accident: | $100,000 each accident |
| Bodily Injury by Disease: | $500,000 each accident |
| Bodily Injury by Disease: | $100,000 policy limit |

    c)    U.S. Longshoreman's and Harbor Worker's Coverage should be certified where applicable.

**Business Automobile:**
Owned, Hired and Non-Owned Vehicles Coverage

Bodily Injury and Property Damage Liability Limits - $1,000,000 Per Accident

**Umbrella Excess Liability:**
Minimum Per Project Limit - $5,000,000 Per Occurrence/Aggregate

**Other Insurance** as may be required by law or G.H.I.

**Financial Rating of Insurance Companies**
A.M. Best Rating: A- (Excellent) or Higher
A.M. Best Financial Size Category: Class VII or higher

Subcontractors shall provide a Certificate of Insurance evidencing these coverage's.

The Certificate of Insurance is to name Guidi Homes, Inc., et al and the owner as an "additional insured on a primary basis" using the following language:

Guidi Homes, Inc and Owner are additional insured on the captioned General Liability, Umbrella liability and Automobile Liability Policies on a Primary and Noncontributory basis. A waiver of Subrogation is provided on these policies in favor of Guidi Homes, Inc and Owner, including workers compensation where permitted by State Law.

Moreover, it must provide that, in event of any material changes in your policy or the cancellation or non-renewal of your insurance, thirty (30) days advance written notice must be given to Guidi Homes, Inc., et al.

# EXHIBIT "C"

Copying Prohibited

## MASTER AGREEMENT

Date:   August 1, 2016

CONTRACTOR:                                    SUBCONTRACTOR:

GUIDI HOMES, INC.                              Stucco Code Inc
925 Harvest Drive, Suite 220                   918 Shadeland Avenue
Blue Bell, PA  19422                           Drexel Hill, PA  19026
Telephone No. (215) 641-9280
Facsimile No. (215) 641-9088

### THE ATTACHED EXHIBIT "A" TERMS AND CONDITIONS ARE PART OF THIS SUBCONTRACT.

A.      Subcontractor's Responsibilities.  The Subcontractor agrees to furnish all materials, labor, supervision, tools, equipment and supplies as necessary to provide your line of Work on various Projects authorized and defined in Subcontract Work Order(s) (hereinafter  "Subcontract" or  "Work Order") to be issued, executed, and made part of this Master Agreement (hereinafter "Agreement" or "Contract").  All Work shall be performed in accordance with the Contractor's Terms and Conditions, which are attached hereto and form part of this Agreement unless specifically modified by the Work Order(s).  It is understood that in the event that Subcontractor performs Work without a Subcontract Work Order on behalf of Contractor, at Contractor's specific direction, the terms of this Agreement shall be binding upon both parties until such time as these terms are modified or expanded by Work Order.  All work provided for in the above referenced Work Order(s), for and at the Project listed on the Work Order (hereinafter called the Project), shall be performed as shown and described in and in strict accordance with the Plans, Specifications, General Conditions, Special Conditions and Addenda thereto prepared by the Architect listed and with the terms and provisions of the General Contract between Contractor and the Owner  (hereinafter "General Contract")  listed and in strict accordance with the above-referenced Work Order(s), and the Exhibits annexed hereto and made a part hereof.  Subcontractor also agrees that any modification contained in any Work Order shall only apply to that particular Work Order and shall not apply to any other Work Order. This Master Agreement, subject to the terms of Exhibit A, carries forward in perpetuity until modified in writing by both parties, even if ownership of either company changes or the assets or liabilities of the company are assigned.  The price and schedule shall be kept and monitored separately for each Work Order, and each Work Order shall have a separate Schedule of Values, Change Order numbering, schedule, start and completion date, warranty requirements, Application for Payment, and retainage.  The language of this Agreement and the Contract Documents in whole shall apply to each Work Order.

B.      Subcontractor's Work.  The Subcontractor's Work shall consist of the scope of Work set forth in the relevant Work Order.  If the Contractor intends to use Subcontractor in the construction of a particular house, a separate Work Order must be issued for each separate house with the possible exception of the first phase of model houses.

C.      Subcontract Price.  The sum to be paid by Contractor, out of funds received from the Owner, to the Subcontractor for the satisfactory performance and completion of the Work and of all of the duties, obligations and responsibilities of the Subcontractor under this Agreement and the other Contract Documents, shall be as stated in the executed Work Order(s) (hereinafter called the Price) and shall be subject to additions and deductions as herein provided.

        The Price includes all Federal, State, County, Municipal and other taxes imposed by law and based upon labor, services, materials, equipment or other items acquired, performed, furnished or used for and in connection with the Work, including but not limited to sales, use and personal property taxes payable by or levied or assessed against the Owner, Contractor or the Subcontractor.  Where the law requires any such taxes to be stated and charged separately, the total price of all items included in the Work plus the amount of such taxes shall not exceed the Price.

1 of 2

When a price is given by the Subcontractor for the initial houses or model houses in the first phase of this project, those prices shall be held for a non-escalation period of twelve (6) months for that Work Order as well as each subsequent Work Order.  The Contractor shall also have the right to demand pricing from the Subcontractor on the basis of a 6 month non-escalation period.  Prior to entering into the Work Order for the first phase or any subsequent Work Order, Contractor may elect to use the pricing for a 6 month or 12 month non-escalation period.  Once the Work Order has been executed by the Contractor, however, no further escalations will be permitted for any reason on that particular Work Order even if the non-escalation period has elapsed.

D.      Insurance.  Unless modified by the Work Order, Subcontractor shall maintain the insurance policies and in the amounts set forth on Exhibit "C" attached hereto.

E.      Terms and Conditions; Exhibits.  Exhibit "A," the Terms and Conditions attached to this Agreement, are made a part hereof.  The Work Orders shall contain separate Exhibits.  Exhibits "A" and "B" are attached hereto.

F.   .   IMPORTANT: THE EXECUTION OF THIS MASTER AGREEMENT DOES NOT OBLIGATE THE CONTRACTOR TO ENTER INTO WORK ORDERS WITH SUBCONTRACTOR ON EVERY PROJECT PERFORMED BY CONTRACTOR.  THE CONSIDERATION GIVEN SUBCONTRACTOR BY CONTRACTOR FOR ENTERING THIS MASTER AGREEMENT SHALL BE THE SAME CONSIDERATION AS SET FORTH IN THE WORK ORDER FOR EACH PARTICULAR PROJECT.

IN WITNESS WHEREOF, the parties have executed this Subcontract effective as of the day and year first above written.

_____          _____

GUIDI HOMES, INC.                                         Subcontractor.

Copying Prohibited

2 of 2

August 1, 2016

**Re:     Certificate of Insurance   EXHIBIT "C"**

Dear     Stucco Code Inc

As a subcontractor providing services Guidi Homes, Inc., we require that you provide us with evidence of insurance. Our records indicate that your insurance policies will require renewal soon. Please provide updated certificates with the minimum requirements outlined below:

<u>Commercial General Liability (Occurrence Form)</u>
General Aggregate (other than Prod/Comp Ops Liability)        $ 2,000,000
Products/Completed Operations Aggregate                       $ 2,000,000
Personal & Advertising Injury Liability                       $ 1,000,000
Each Occurrence                                               $ 1,000,000

<u>Commercial Automobile Liability</u>
Combined Single Limit (including Hired/Non-Owned Autos)       $ 1,000,000

<u>Workers Compensation and Employer's Liability</u>
Workers' Compensation                                         State Statutory Limits
Employer's Liability
Bodily Injury by Accident                                     $    100,000 each accident
Bodily Injury by Disease                                      $    500,000 policy limit
Bodily Injury by Disease                                      $    100,000 each employee

<u>Umbrella Liability</u>

Each Occurrence and Aggregate                                 $2,000,000       * * * * * * * * * *

<u>Cancellation Endorsement – 30 Days provided by Insurance Carrier</u>

**DESCRIPTION TO READ**          * * * * * * * * * * * * * * * * *

*"Re: Any & All Projects for Guidi Homes, Inc.*
*Guidi Homes, Inc., Owner & any other party whom the Contractor is required to provide Additional Insured*
*Coverage in their Contract (including agents, employees, representatives, officers, directors, stockholders,*
*members and managers) are included as Additional Insureds on a primary, non-contributory basis with regard to*
*Commercial General, Automobile & Excess Liability as it pertains to the named insured's operations in connection*
*with the above captioned project(s) where required by contract or written agreement. Waiver of subrogation in*
*favor of Additional Insureds applies on all policies."*

*Please address the aforementioned concern(s) and forward your certificate within 10days to Guidi Homes, Inc.*
*Attn: Sally Diver, 925 Harvest Drive, Suite 220, Blue Bell, PA 19422.*

Sincerely,

**Sally Diver**
**Project Manager**

Copying Prohibited

<div align="center">

**EXHIBIT "A"**
**TERMS AND CONDITIONS**

</div>

These Terms and Conditions are an extension of the Contract Documents.  This document is intended to be generic in nature.  All of its provisions are subject to modification or revision in the individual Work Order(s).

Article 1.  Definitions
| | |
|---|---|
| 1.1 | The term "Contract" as used herein refers to the Contract between the Owner and the Contractor for construction of the Project. |
| 1.2 | The term "Contract Documents" as used herein refers to the "Contract" between the Owner and the Contractor, all plans, drawings, specifications, general conditions, supplemental general conditions, and special conditions, addenda, amendments, and/or instruments of like effect. |
| 1.3 | The term "Subcontract" as used herein refers to the Work Order, these Terms and Conditions, the Master Agreement, together with any exhibits, attachments or addenda incorporated herewith and referred to herein. |
| 1.4 | The term "Subcontract Documents" as used herein refers jointly and/or severally to the aforesaid Contract, Contract Documents and Subcontract. |

Article 2.  Duties of the Subcontractor
| | |
|---|---|
| 2.1 | The Subcontractor is bound to the Contractor by the same terms and conditions and to the fullest extent by which Contractor is bound to the Owner under the Contract.  In the event of any inconsistency between the terms and conditions of the Contract (including the General Conditions) and this Subcontract, the more restrictive provisions as applicable to the Subcontractor shall govern. |
| 2.2 | When requested to do so by the Contractor, Subcontractor agrees to submit a list of any proposed sub-subcontractors, and Subcontractor shall not delegate, or further subcontract to others the performance of any of its obligations or work required or contemplated by this Subcontract without prior written consent of the Contractor, which shall not be unreasonably withheld. |
| 2.2.1 | If Subcontractor enters into agreements with any sub-tier subcontractor, it shall require each sub-tier subcontractor to agree in writing to be bound by all provisions of the Subcontract Documents, including the Contract and the General Conditions, applicable to its work. |
| 2.3.1 | Subcontractor hereby warrants that he has investigated and familiarized himself with all laws and codes applicable to its work; with the availability, cost and suitability of personnel, materials, equipment, utilities, etc; with the prevailing wage scales, union benefits and working conditions, craft jurisdiction, existing labor agreements (as applicable); all site conditions and restrictions, underground conditions, prevailing weather and climatological conditions; and any other factors which may affect Subcontractor's work. |
| 2.3.2 | Subcontractor further agrees that Contractor shall not be liable to Subcontractor on any claim for additional payment or additional time or any claim whatsoever if such claims directly or indirectly result from Subcontractor's failure to investigate and familiarize itself with the conditions under which this Subcontract is to be performed. |
| 2.3.3 | Subcontractor warrants it has visited the site and has become familiar with all conditions at the site, including without limitation, the conditions described in the General Conditions. |
| 2.3.4 | Generally, the specifications describe Work which cannot be indicated on the drawings and indicate types, qualities and methods of installation of the various materials and equipment required for the work.  It is not intended to mention every item of Work in the specifications which can be adequately shown on the drawings or to show on the drawings all items of Work described or required by the specifications even if they are of such nature that they could have been shown thereon.  All materials or labor for Work which is shown on the drawings or is reasonably inferable therefrom as being necessary to produce a finished job shall be provided by the Subcontractor whether or not the Work is expressly covered in the specifications. |
| 2.3.5 | Subcontractor, before proceeding with any work under its Subcontract will accurately check and verify |

<div align="center">

1 of 18

</div>

all previous and surrounding work done by others and determine the correctness of same. The Subcontractor shall field measure all work relating to its work. The failure of the Subcontractor to detect and disclose any existing discrepancies or nonconformities and report same to Contractor., in writing, before commencing its work shall relieve Contractor of any and all responsibility for same, and the Subcontractor shall be responsible and liable for all resulting damages, costs and expenses arising as a result of discrepancies and nonconformities that should have been discovered by the Subcontractor.

2.4     COORDINATION WITH OWNER'S SALES FORCES AND POTENTIAL OR ACTUAL PURCHASERS

2.4.1   Subcontractor hereby agrees for both it and its subcontractors to coordinate with Owner's Sales Forces in both the selection and change order process. Subcontractor and its Subcontractors shall provide samples of all selection materials as well as written materials relating to selections if so requested. They shall also provide to the Owner's Sales Forces pricing of any reasonably requested changes and shall explain such changes to any potential or actual purchasers upon request. All such requests shall be processed through Contractor unless otherwise directed by Contractor in writing.

2.4.2   Subcontractor and its Subcontractors shall also coordinate with purchasers on milestone activities including but not limited to (1) rough-in inspection, (2) electrical outlet placement walk-through, (3) mechanical vent placement walk through, (4) pre-closing final walk-through, (5) punchlist creation walk-through and (6) punchlist completion walk-through. To the extent that other walk-throughs or inspections with purchasers are necessary, such walk-throughs or inspections shall be scheduled through Contractor unless otherwise directed by Contractor in writing.

2.4.3   Subcontractor shall also be directly responsible to purchaser for any warranty obligations set forth in the Owner's Purchase and Sales Agreement unless otherwise detailed in the particular Work Order for that particular house. In addition, in the case of a "spec" or model home, Subcontractor shall also be directly responsible to Owner and any subsequent purchaser for any warranty obligations set forth in the Owner's standard Purchase and Sales Agreement unless otherwise detailed in the particular notice to proceed for that particular house.

Article 3.  Integration

3.1     This Subcontract constitutes the entire agreement between the parties and supersedes all proposals, correspondence, and oral agreements between the Subcontractor and Contractor, if any. Except as otherwise provided for herein, no changes, amendments or modifications of the terms hereof shall be valid unless reduced to writing and signed by the parties hereto.

Article 4.  Payment

4.1.1   Pursuant to the Contract Documents, Owner is obligated to pay Contractor in accordance with the terms specified in the Work Order.

4.1.2   Subcontractor hereby acknowledges that the Contractor has fully disclosed the Owner's manner of payment pursuant to the Contractor Subcontractor Payment Act, 73 P.S. Section 501, et seq.

4.1.3   Provided Subcontractor's rate of progress and general performance are satisfactory to the Contractor and provided that the Subcontractor is in full compliance with each and every provision of the Subcontract Documents, the Contractor will make payment to the Subcontractor within forty five (45) days after receipt of Subcontractor's invoice with a stated interest rate for late payments of not greater than Prime Rate as established by Susquehanna Bank.

4.1.4   PAYMENT FROM THE OWNER TO THE CONTRACTOR IS A CONDITION PRECEDENT TO PAYMENT FROM THE CONTRACTOR TO THE SUBCONTRACTOR PURSUANT TO THIS ARTICLE.

4.1.5   ON PENNSYLVANIA PROJECTS, IN CONSIDERATION FOR CONTRACTOR'S AGREEMENT TO ENTER INTO THE SUBCONTRACT, SUBCONTRACTOR HEREBY AGREES TO WAIVE ALL RIGHTS TO INTEREST ABOVE THE LEGAL RATE, PENALTIES AND/OR ATTORNEY'S FEES PROVIDED BY THE CONTRACTOR AND SUBCONTRACTOR PAYMENT ACT, 73 P.S. SECTION 501 ET SEQ.

4.1.6    ON PENNSYLVANIA PROJECTS, SUBCONTRACTOR HEREBY AGREES THAT, IF THE OWNER REQUIRES CONTRACTOR TO WAIVE ANY OR ALL OF ITS RIGHTS UNDER THE CONTRACTOR AND SUBCONTRACTOR PAYMENT ACT, 73 P.S. SECTIONS 501 ET SEQ., SUBCONTRACTOR HEREBY AGREES TO SIMILARLY WAIVE ITS RIGHTS UNDER THE ACT.

4.1.7    Subcontractor acknowledges that in the event payment is not made to Contractor for any reason including, but not limited to, default by the Owner, Subcontractor shall look exclusively to the Owner for payment of any and all funds due under this Subcontract. Subcontractor further agrees that delay in payment for non-payment by the Owner does not create any separate obligation of Contractor to pay regardless of the extent of the delay. Subcontractor has the right to pursue payment from the Owner if the Owner is delinquent in payment per this agreement.

4.1.8    Within ten (10) days of execution, the Subcontractor shall submit to the Contractor a complete and accurate schedule of values of the various parts of its work. This schedule, when approved by the Contractor, shall be used as the basis for making payments.

4.1.9    On a monthly basis, the Subcontractor shall submit a request for partial payment consistent with the schedule of values and representing a true and accurate estimate of the work completed during the immediately preceding pay period. Unless modified by Work Order, Subcontractor's invoice must be received by the Contractor by the 25th of the month for all work completed to date. When required by the Contractor, Subcontractor shall provide an accurate inventory of materials suitably stored at the job site. Each application shall be accompanied by such invoices, vouchers, waivers, releases, certifications and affidavits as may be required by the Owner and/or Contractor. The Subcontractor agrees that any application for payment not in compliance may be held over for processing at the beginning of the pay period following correction of such application, with or without notice to Subcontractor.

4.1.10   No partial payment shall constitute acceptance by the Contractor of the work or material for which the partial payment is made; nor shall any partial payment constitute a waiver of any right to require fulfillment of all the terms of this Subcontract. Contractor shall promptly advise the Subcontractor in writing if the Owner or Contractor disapproves of or is withholding all or any of a Request for Payment, including change orders. Even if Subcontractor disagrees with Contractor's disapproval, Subcontractor shall continue to perform all work under this agreement including that in dispute. The Subcontractor shall also take all reasonable steps necessary to ensure that there will be no work stoppage or delay on account of such disapproval. Both parties agree to endeavor to promptly resolve such disputes on an ongoing basis.

4.1.11   The Subcontractor hereby agrees to reimburse the Contractor in the event of overpayment, together with any costs and expenses including administrative costs and attorney's fees, which the Contractor may incur in securing recovery thereof.

4.2      Contractor expressly reserves the right to issue joint checks to Subcontractor and its materialmen, suppliers or subcontractors, or any of Subcontractor's creditors having potential lien rights and/or claims against the work, for any payments that are, or may become, due and owing by Contractor to Subcontractor under this Agreement.

4.3      The Contractor may deduct from amounts due or to become due to the Subcontractor on this Project any sum due or to become due to Contractor from the Subcontractor whether or not said sums are in any way related to this Subcontract or Project.

4.4      In the event Subcontractor is in default of or breaches or fails to comply with any provision of the Subcontract; or in the event that any person asserts, or threatens to assert, any lien or claim, against the Project, the Owner, the Contractor or any Surety arising from Subcontractor's performance of this Subcontract, the Contractor may, at its option, withhold out of any payments due or to become due to the Subcontractor a sum sufficient to completely protect and indemnify the Contractor and the Owner from all loss, damage and/or expense, including attorney's fees and litigation costs, until the condition requiring such measure has been remedied by the Subcontractor to the satisfaction of the Contractor. If the Contractor is compelled to expend monies in defending, discharging or otherwise disposing of any claim or lien in excess of retained or withheld sums, the Subcontractor shall, upon demand,

3 of 18

reimburse the Contractor for the excess amount so expended, including reasonable attorney's fees and costs incurred by Contractor incident to such defense and/or incidental to Contractor's collection from Subcontractor of such excess.

4.5     Notwithstanding anything to the contrary contained in this Subcontract, and without any limitation as to time, Contractor shall not be obligated to make payments to Subcontractor under this Subcontract: 

       a)    when such payment will leave a balance which is less then the retained percentage plus an amount adequate to satisfy all obligations of the Subcontractor for labor, materials, tools, etc. furnished or to be furnished by Subcontractor in the performance of its work;

       b)    when Subcontractor is or with reasonable probability (as determined by the Contractor) may become unable to comply with or completely perform this Subcontract;

       c)    whenever the Contractor, in its sole discretion, shall determine that the Project is being or is in danger of being delayed by the Subcontractor;

       d)    pending satisfactory correction, replacement and/or restoration of deficient work, material, or supplies, or of any work rejected if not conforming with this Subcontract or the Subcontract Documents.

4.6     The Subcontractor agrees, as a condition precedent to payment hereunder, to furnish the Contractor with such partial and/or final releases and/or waiver of liens as the Contractor may from time to time request in the form set forth in Exhibit "E-2" hereof.

## Article 5.  Final Payment

5.1     Final payment will be made within forty five (45) days after the Subcontractor's work has been completed to the satisfaction of the ~~Owner~~ and the Contractor, and the Contractor has received from the ~~Owner~~ written acceptance thereof together with payment in full for this portion of the work.  Final payment is subject to Contractor's determination that all the requirements of the Subcontract have been met and discharged by Subcontractor. PAYMENT FROM THE OWNER TO THE CONTRACTOR IS A CONDITION PRECEDENT TO PAYMENT FROM THE CONTRACTOR TO THE SUBCONTRACTOR PURSUANT TO THIS ARTICLE. 

5.2     No final payment shall constitute acceptance by the Contractor of the work or material for which the final payment is made, nor a waiver of any right to require fulfillment of all the terms of this Subcontract.  The Subcontractor hereby agrees to reimburse the Contractor in the event of overpayment, together with any costs and expenses, including administrative costs and attorney's fees, the Contractor may incur in securing recovery thereof.

## Article 6.  Financial Condition of Subcontractor

6.1     If at any time Contractor in its sole discretion shall determine that the Subcontractor's financial condition has become impaired or unsatisfactory, Subcontractor shall furnish additional security satisfactory to the Contractor within three (3) days after written demand by Contractor.

6.2     The Contractor, Owner's representatives and architect at all times shall have free access to the office, shops and yards of the Subcontractor to verify any information about the work to be performed by the Subcontractor.

## Article 7.  Assignment

7.1.1    The Subcontractor will make no assignment of the proceeds of this Subcontract without the prior written consent of the Contractor, which consent shall not be unreasonably withheld.

7.1.2    The Contractor shall not be obligated to any assignee of the Subcontractor on account of payments at any time made in good faith to the assignor.

7.1.3    The Contractor shall not be liable to any assignee of the Subcontractor for any amount in excess of the net sums owing Subcontractor hereunder.

7.1.4    By making an assignment of the proceeds hereof, the Subcontractor waives any claims against Contractor resulting from Contractor's continued payment to assignees or former assignees, not

Copying Prohibited

withstanding notification to Contractor of termination of any such assignment.

7.1.5   By making an assignment of the proceeds hereof, Subcontractor agrees to assume full liability for the conveyance to assignees of any payments mistakenly, inadvertently, or otherwise made or addressed to Subcontractor and Subcontractor agrees to defend and hold harmless the Contractor from claim or action of any assignee related to this Subcontract.

7.2     The Subcontractor shall not assign or sublet this Subcontract or any part or interest therein without Contractor's prior written consent.   If Contractor so consents, such assignment is subject and subordinated to all labor preferences and other liabilities, actual or potential, as may be imposed on Contractor due to any obligation or liability of the Subcontractor.

7.3.1   Subcontractor agrees that its Subcontract is assigned by the Contractor to the Owner provided that:
.1      assignment is effective only after termination of the Contract by the Owner for cause and only for those subcontract agreements which the Owner accepts by notifying the Subcontractor and Contractor in writing; and
.2      assignment is subject to the prior rights of the surety, if any, obligated under bond relating to the Contract.

7.3.2   Upon such assignment, the Owner shall be responsible to the Subcontractor for those obligations of the Contractor that accrue subsequent to the Owner's exercise of any rights under this conditional assignment.

## Article 8.  Performance Bond and Labor and Material Bond

8.1     The Contractor shall have the right to require any Subcontractor to furnish bonds covering the faithful performance of the Subcontract and the payment of all obligations arising thereunder as well as lien discharge bonds pursuant to Waiver of Liens and Release Article detailed below.   The failure of the Subcontractor to furnish a bond within seven (7) days after having been given notice of such requirements by Contractor shall constitute sufficient cause for termination of this Subcontract without notice.

8.2     The Subcontractor's cost of the bond will be reimbursed by Contractor unless negotiated into the initial Subcontract Work Order amount.   If not, then Contractor will reimburse Subcontractor for proven premium costs without mark-up.

## Article 9.  Unit Price Basis

9.1     If the terms of this Subcontract provide for the payment of work performed on a unit price basis, the unit of measurement for payment shall be one for work certified.   Verification of weights or quantities will be furnished at the time of delivery.   In the event the parties fail to agree on the actual quantity performed, Contractor shall have the right to measure the quantity of work in place and make final settlement on the basis of such measurement.   Unit prices shall be the same for both additions and deductions.

## Article 10.  Equipment and Facilities

10.1    The Subcontractor shall provide at its own expense whatever tools; machines; equipment; plant; utilities; services' storage sheds; workshops; offices; first aid or emergency treatment facilities and any other facility he may deem necessary for the complete performance of all work required under this Subcontract, and shall remove any such installations and thoroughly clean and restore the site and premises at the completion of the work.

10.2    If the Subcontractor has occasion to utilize any of the facilities of the Contractor, when and if available, Subcontractor shall pay an equitable portion of the cost thereof.   The Contractor shall bear no responsibility for any loss or damage from any cause whatsoever arising from Subcontractor's use of such facilities.

## Article 11.  Submittals

11.1.1  The Subcontractor agrees to submit, in sufficient number, all shop or fabrication drawings, design and performance data, test, samples, operating and/or maintenance manuals for use in the

performance of this Subcontract as directed by the Contractor within thirty (30) days after execution of the Subcontract unless directed to do so within a lesser period by the Contractor.

11.1.2   Approval of any of the foregoing by the Contractor, the Owner or the Owner's authorized agent shall under no circumstances alter the requirements of the Subcontract Documents or constitute acceptance by the Contractor of any method, material or equipment not acceptable to the Owner or the Owner's authorized agent.

11.2   The Subcontractor agrees that the cost of any of the foregoing required hereunder is included in the amount of this Subcontract.

Article 12.  Materials Furnished by Contractor

12.1   It is hereby agreed by Subcontractor, if furnishing labor only for the finishing, installation or erection of materials furnished by Contractor, that the following costs, without restriction, are to be fully recovered by Contractor from Subcontractor:

a)   the full cost of material required to replace due to damage by the Subcontractor;

b)   the full cost of removing rejected materials when not properly installed or supplied by Subcontractor; and

c)   the full cost of altering any work of Subcontractor not accepted by the Owner's authorized agent.

Article 13.  Cutting, Patching and Blocking

13.1   The Subcontractor shall obtain Contractor's approval for and shall do any cutting, patching and blocking necessary to complete this work hereunder, and such work shall be performed to the same standards and shall match any work performed pursuant to the Contract Documents.

Article 14.  Maintenance of Site

14.1.1   Subcontractor agrees to keep the premises and all finished work clean free of dirt, rubbish, debris and any other waste materials at all times and to remove from the site all scrap and waste materials resulting from work under the Subcontract within twenty-four (24) hours after receipt by him from Contractor of written notice to do so. Subcontractor shall be responsible for the removal and disposal of all receptacles and containers into which same is deposited. Upon the completion of the various portions of work, the Subcontractor shall broom clean its work area.

14.1.2   The Subcontractor shall properly cover and protect the work of others from damage due to the performance of the work required under this Subcontract, and Subcontractor shall promptly clean, restore, or pay for the replacement of any such work damaged or soiled in the performance of its own work.

14.2   Subcontractor further agrees to furnish protection at all times for its own work and all materials stored for use under this Subcontract and to bear and be solely liable for all loss and/or damage of any kind to or in connection with said work and materials at any time prior to the final completion and acceptance thereof, unless said loss or damage is caused solely by the negligence of the Contractor and is subject to recovery under such applicable insurance policies as may be in effect.

14.3   If the Subcontractor fails to promptly perform such cleaning, protection and/or repair as directed by the Contractor, the Contractor shall have the right to proceed with such cleaning, protection and/or repair, and Subcontractor, on demand therefor, shall repay to the Contractor the actual cost of such work plus a reasonable percentage to cover Contractor's supervision, insurance, tax and overhead.

Article 15.  Payment to Suppliers and Sub-subcontractors

15.1   Prior to performing any Work concerning, relating to, or under this Subcontract and whenever so requested by Contractor, Subcontractor shall disclose, in writing, to Contractor, the names, addresses, telephone numbers, a description of the labor and/or material to be provided, the contract amount, payments made and balances due for all sub-subcontractors, materials suppliers and/or other persons and entities that have or will, supply or transport goods, materials, equipment,

Copy Prohibited

machinery, fixtures, services or labor under any agreement with Subcontractor for the Subcontractor's Work under this Subcontract. In addition, the Subcontractor may, prior to performing any Work concerning, relating to, or under this Contract, be required by Contractor to provide a copy of all such agreements to Contractor. The disclosures required by this paragraph is a condition precedent to Subcontractor performing any work at the Project, but, in no event, shall the Contractor's failure to enforce this requirement be deemed to be a waiver of Contractor's right to so demand disclosure by Subcontractor.

15.2   Subcontractor shall pay for all materials and supplies furnished and for all work, labor and services performed as required under this Subcontract, shall execute partial and final releases of liens upon demand by the Contractor, and shall indemnify Contractor and Owner against and save them and the premises harmless from any and all claims, demands, liens or suits, for all such material and supplies purchased and for all work, labor and services performed by others, including reimbursement of attorney's fees and any other costs of defense incurred.

15.3   The Subcontractor agrees and covenants that money received for the performance of this Subcontract shall be used solely for the benefit of persons and firms supplying labor, materials, supplies, tools, machines, equipment, plant or services exclusively for this Project in connection with this Subcontract; that money paid to the Subcontractor pursuant to this Subcontract shall immediately become and constitute a trust fund for the benefit of said persons and firms, and shall not in any instance be diverted by Subcontractor to any other purpose until all obligations and claims arising hereunder have been fully discharged.

Article 16.  Warranties

16.1   The Subcontractor warrants and guarantees the work and materials which he performs or furnishes under this Subcontract and agrees to make good, at its own expense, any defect in materials or workmanship which may occur or develop prior to Contractor's release from responsibility to the Owner.

16.2   The Subcontractor further agrees to assume, as a direct obligation to the Contractor and/or the Owner, any guarantees or warranties which would otherwise be the responsibility of the Contractor or other subcontractors, when such guarantees or warranties have been cancelled as a result of the Subcontractor's operations in performance of this Subcontract.

16.3   Without limitation of the foregoing or other obligations of the Subcontractor provided for in the Subcontract Documents, immediately upon the Contractor's demand, the Subcontractor, at its own expense, shall repair, replace, restore or rebuild, at the Contractor's option, any work in which defects in materials or workmanship may appear, or which is otherwise not in conformance with the other warranties of the Subcontractor hereunder, or to which damage may occur because of such defects or lack of conformance, within one (1) year or such longer period as required by the Specifications from the date of the Owner's and architect's final acceptance of the project. If the Subcontractor fails to comply, the Contractor may correct such defect or lack of conformance, as the case may be, and the Subcontractor shall immediately reimburse the Contractor thereof.

Article 17.  Time of Performance

17.1.1   Time is of the essence.

17.1.2   The Subcontractor agrees to keep himself thoroughly informed as to the overall progress of the Project; to commence and to prosecute the work undertaken hereunder in a prompt and diligent manner whenever such work, or any part of it, becomes available, or at such time or times as the Contractor may direct, so as to promote the general progress of the entire Project; and Subcontractor shall not by delay or otherwise interfere with or hinder the work or progress of the Contractor or any other subcontractor.

17.1.3   Upon Contractor's request, Subcontract shall furnish such evidence as the Contractor may require relating to Subcontractor's ability to fully perform this Subcontract in the manner and within the time established as herein provided.

17.1.4   The Subcontractor also shall furnish upon request by the Contractor from time to time cash flow



expenditures for labor for its work (which shall include the estimated payroll for each of the trades it will employ by subcontract).

17.1.5    The Contractor exclusively shall control scheduling and coordination of the work, including the periodic updating and re-sequencing thereof, if any and the Subcontractor shall comply therewith.

17.1.6    The Contractor shall have the right to schedule other work at the same time and in the same areas as the Subcontractor's work.

17.1.7    At its sole discretion, the Contractor may schedule work during a time of and from time to time during winter conditions. The determination of when winter conditions exist shall rest exclusively with the Contractor.

17.2    The Subcontractor agrees to notify the Contractor of its objection to, or inability to comply with, any directive, notification, order, schedule or revisions thereof dealing with the time or times of its performance hereof, and to do so within three (3) days of Contractor's issuance thereof.

17.3    Specific requirements as to the time of performance shall take precedence over the more general requirements of this article.

17.4.1    In the event of any failure of Subcontractor to complete its work within the required time, the Subcontractor hereby agrees to reimburse the Contractor for any and all actual and/or liquidated damages that may be assessed against the Contractor by the Owner, which are directly or indirectly attributable to work caused by the Subcontractor's failure to comply fully with the foregoing provision.

17.4.2    Subcontractor also agrees to pay to the Contractor such damages as the Contractor may sustain by reason of any delay, directly or indirectly, attributable to or caused by the Subcontractor, including, but not limited to, recovery of Contractor's overhead and expense related to the managing and supervising of the prime Contract work.

17.5    In the event Subcontractor's performance of this Subcontract is delayed or interfered with by acts of the Owner, Contractor or other Subcontractors, Subcontractor may submit to the Contractor a written request for an extension of time for the performance of same.

17.6    At the request of the Contractor, the Subcontractor shall perform certain parts of the work before other parts, add extra manpower, or order overtime labor in order to comply with the project schedule, all without increase in the Subcontract price, unless otherwise specifically provided in the General Conditions.

17.7    If in order to expedite the final completion of the Work, Contractor requests Subcontractor to work overtime at a time when Subcontractor is not in default in any of the provisions of this contract, Subcontractor agrees to work said overtime and it is understood that Contractor shall pay Subcontractor therefore only the Subcontractor's extra labor costs over the rate for regular time during the period of such overtime, including additional insurance and taxes incurred by Subcontractor with respect thereto. Time slips covering said overtime must be submitted to Contractor's authorized agent for checking and approval. No commissions, fees, overhead, or profit is to be charged by or allowed to Subcontractor for or on account of said overtime. However, if Subcontractor shall at any time be behind in the work herein contemplated, or if in the opinion of the Contractor, Subcontractor is delaying the progress of the work necessary to complete the Project, then and in either such event, if requested by Contractor, Subcontractor shall cause to be performed overtime work as may be necessary to keep abreast with the general progress of the work at the Project, and in either such event the cost and expense of such overtime shall be borne entirely by Subcontractor.

17.8    If the Subcontractor shall be delayed in the prosecution or completion of the Subcontract Work by the act, neglect or default of the Contractor, the Architect, the Owner, or any other subcontractor employed by the Contractor upon the project, or by any damage caused by fire or other casualty for which the Subcontractor is not responsible, or by general strikes or lockouts caused by acts of employees, then the time fixed by the Contractor for the completion of the Subcontract Work shall be extended for such period of time as shall be determined and fixed by the Contractor as the time lost by reason of any or all of the causes aforesaid. This shall be Subcontractor's sole and exclusive remedy for such delay and in no event shall Contractor be responsible for any increased

*[handwritten annotation in left margin: will not install stucco in cold weather]*

*[handwritten annotations in right margin: "?"]*

Copying Prohibited

costs, charges, expenses or damage of any kind resulting from any such delays. No allowance of an extension of time for performance of this Subcontract will be granted, unless a claim therefor is presented to the Contractor in writing and within forty-eight (48) hours of the occurrence of the cause thereof, and then only if the Contractor agrees to such an extension of time in its sole discretion. Time elapsed between Work Orders, phases of the Work or construction of individual houses does not constitute a delay, interruption or suspension.

Article 18. Changes in Work

18.1    Contractor may at any time, by written order and without notice to surety, make changes in the work herein contracted for and the Subcontractor shall proceed with the work as directed. If said changes cause an increase or decrease in the cost of performance or in the time required for performance an equitable adjustment shall be made and this Subcontract shall be modified in writing accordingly. Nothing herein shall excuse the Subcontractor from proceeding with the prosecution of the work as changed.

18.2    For any adjustments by Change Order, Subcontractor will be permitted to charge ten percent (10%) as a reasonable allowance for a combined overhead and profit mark-up for work not involving Sub-subcontractors and five percent (5%) as a reasonable allowance for a combined overhead and profit mark-up for Work by Sub-subcontractors.

18.3    If Contractor and Subcontractor are unable to agree on the price for the changed work, Contractor shall have the right to order Subcontractor to proceed with the changed work on a time and material basis. When changed work, other than overtime ordered by Contractor, is performed on a time and material basis, unless otherwise limited by the agreement between Owner and Contractor, Subcontractor shall receive: (1) the actual cost of labor including applicable insurance and payroll taxes, based upon the Approved Labor Rates, plus ten percent (10%) for overhead and profit, and (2) the actual cost of material and equipment, plus ten percent (10%) for overhead and profit. In performing changed work on a time and material basis, if such work requires that Subcontractor use a subcontractor, Subcontractor shall limit its subcontractor as set-forth above and Subcontractor shall be limited to a mark-up of its subcontractor's total of five percent (5%) for Subcontractor's overhead and profit. Whenever changed work is performed on a time and material basis, Contractor shall have the right to audit Subcontractor's books, records, documents and other evidence bearing on the costs and expenses of the Subcontractor for such changed work.

18.4    No extension to Subcontractor's time of performance as a result of changed work shall be allowed under this Subcontract unless authorized by Contractor in writing. The value of the changed work requested by Subcontractor shall include all costs for delay and disruption to Subcontractor's work. Subcontractor shall not be entitled to any additional compensation for delay and disruption caused by the changed work unless such costs are requested and approved by the Owner. In no event, shall Subcontractor be entitled to compensation for the collective impact of changed work.

Article 19. Claims

19.1    The Subcontractor agrees to make any claims to the Contractor for damages or additional compensation based on alleged extra work, changed conditions or any other grounds within three (3) days of the discovery of the condition causing the need for additional compensation or damages or within sufficient time (48 hours prior to the amount of time set forth in the notice requirement in the Contract between Contractor and Owner for like claims) to permit Contractor to advise the Owner in the manner provided in the Contract Documents for like claims, whichever is shorter. The Contractor will not be liable to the Subcontractor on account of any claim not timely or properly presented or until it is allowed by the Owner. Payment by Owner on any claims by Subcontractor is a condition precedent to payment by Contractor on any claims of Subcontractor.

19.2    The Subcontractor agrees that any liability of the Contractor to the Subcontractor on any claim of any sort by the Subcontractor against Contractor arising in whole or in part out of any act, omission, default, order, directive, decision or change by the Owner, or which could be the subject of a claim by the Contractor against the Owner, shall be liquidated and limited to whatever the

Contractor actually receives from the Owner, if anything, as a result of the presentation of a claim based thereon to the Owner, and the Subcontractor shall have no other or further claims whatsoever against the Contractor based thereon or in any way related thereto. Any claim prosecuted hereunder shall be subject to the sole direction and control of the Contractor.

19.3    If the Subcontractor encounters any condition which forms the basis of a claim for extra compensation or time, or any other type of claim, including but not limited to those conditions which are (1) subsurface or otherwise concealed physical conditions which differ materially from those indicated in the Contract Documents or (2) unknown physical conditions of an unusual nature, which differ materially from those ordinarily found to exist and generally recognized as inherent in construction activities of the character provided for in the Contract Documents, it shall be its duty to give written notice to the Contractor prior to commencing any work involving said condition and no later than three (3) business days after encountering the condition so the Contractor may inspect said condition and take such steps as Contractor deems necessary. In the absence of such notice to the Contractor, Subcontractor shall be fully liable for any and all expense, loss or damage resulting from said condition. The Contractor will promptly investigate such conditions and, if they differ materially and cause an increase or decrease in the Subcontractor's cost of, or time required for, performance of any part of the Work, will recommend an equitable adjustment in the Subcontract Sum or Subcontract Time, or both. If the Contractor determines that the conditions at the site are not materially different from those indicated in the Contract Documents and that no change in the terms of the Subcontract is justified, the Contractor shall so notify the Subcontractor in writing, stating the reasons.

19.4    It is also agreed that Subcontractor shall not be entitled to any additional payment or compensation under this Subcontract without the express written approval or Contractor. No officer, employee or agent of Contractor is authorized to direct any Extra Work by oral order except minor changes in the work not involving extra cost or time.

Article 20.  Disputes

20.1.1    In the event of any dispute between the Contractor and the Owner which involves the work required to be performed by Subcontractor under this Subcontract, or in the event of any dispute between Contractor and Subcontractor which involves a claim against the Owner for either additional compensation and/or an extension of time under the Contract Documents, Subcontractor agrees to be bound to Contractor and Contractor agrees to be bound to Subcontractor to the same extent that Contractor is bound to the Owner by the terms of the Contract Documents and by all decisions or findings made thereunder by the persons so authorized in the Contract Documents, or by an administrative agency or court of competent jurisdiction, whether or not Subcontractor is a party to the proceedings before said person, agency or court.

20.1.2    If any dispute or claim is prosecuted or defended by the Contractor, and Subcontractor is not directly a party or litigant, Subcontractor agrees to cooperate fully with Contractor and shall pay or reimburse Contractor for all expenses and costs, including reasonable attorney's fees, incurred in connection therewith to the extent of the Subcontractor's interest in such claim or dispute.

20.1.3    It is expressly understood and agreed in connection with the determination of such claim or disputes that Contractor shall never be liable to Subcontractor to any greater extent than Owner is liable to Contractor.

20.2    In the event of any claim or dispute between Contractor and Subcontractor, it is further specifically agreed by the parties hereto that no claim shall interfere with the performance work required to be performed under this Subcontract.

Article 21.  Default

21.1.1    In the event the Subcontractor fails to comply, or becomes unable to comply, or with reasonable probability (as determined solely by Contractor) will become unable to comply, with any of the provisions of this Subcontract; or in the event Subcontractor fails at any time to supply a sufficient number of properly skilled workmen with sufficient materials, equipment or plant of proper quality

or fails in any respect to prosecute the work with promptness and diligence; or causes by any action or omission a stoppage of or delay in the work of the Contractor or other subcontractor of Contractor; or in the event Subcontractor abandons its work or any part thereof; and such failure, inability or deficiency (as determined solely by Contractor) is not corrected within one day after written demand by the Contractor to the Subcontractor; the Contractor may, in addition to and without prejudice to any other right or remedy, take over and complete the performance of the Subcontract, at the expense of the Subcontractor; or the Contractor may, without taking over the work, immediately and without notice to Subcontractor, furnish the necessary materials and labor through itself or others, to remedy the situation, all at the expense of the Subcontractor.

21.1.2   The parties hereto further agree that any of the following shall, at the option of the Contractor, constitute inability to comply with the provisions of this Subcontract for purposes of this article:

    a)    the filing of a petition in bankruptcy or a petition for the appointment of a receiver by or against the Subcontractor;

    b)    the insolvency of the Subcontractor or its inability to meet its debts as they mature;

    c)    the establishment of a receivership or any committee of creditors involving Subcontractor's business or assets, or the making of an assignment for the benefit of Subcontractor's creditors; or

    d)    the failure or refusal of Subcontractor to respond to any written order or notice duly issued by the Contractor.

21.1.3   Subcontractor hereby waives any and all defenses, claims or causes of action against Contractor based in whole or in part on the contention that Subcontractor would have been able to comply with the Subcontract.

21.2.1   Upon any action by the Contractor pursuant to this article, the Subcontractor shall not be entitled to further payment on this Subcontract until the work has been completed and accepted by the Owner and payment therefore has been received by the Contractor from the Owner.

21.2.2   If the expense incurred by the Contractor exceeds the unpaid balance due, the Subcontractor agrees to promptly pay the difference to the Contractor together with interest thereon at the rate of the prime rate plus 2% per annum until paid, and the Contractor shall have a lien upon all material, tools, and equipment taken possession of to secure the payment thereof.

21.2.3   With respect to expenses incurred by the Contractor pursuant to this article, it is hereby agreed that the costs and expenses chargeable to the Subcontractor as herein before provided shall include, without restriction, the cost of materials, labor, subcontracts, purchase orders, transportation, equipment and expense thereon, supplies, services, insurance, taxes, appliances, tools, utilities, power used or consumed, supervision, administration, job overhead, travel, attorney's fees, legal and accounting fees and expenses, Contractor's general overhead as allocated to the work and other costs and expenses incurred or sustained by the Contractor, plus ten percent (10%) profit on the actual cost of the work performed as well as on the amount of claims paid by the Contractor for Subcontractor or for which it deems itself liable.

21.3   In no instance will any action whatsoever taken by the Contractor pursuant to this Subcontract relieve or mitigate Subcontractor's full and absolute responsibility for any and all of the Subcontractor's obligations under this Subcontract.

21.4   In the event the employment of the Subcontractor is terminated by the Contractor for cause under this Article and it is subsequently determined by a court of competent jurisdiction or arbitrator(s) that such termination was without cause, such termination shall thereupon be deemed a Termination for Convenience under Article 22 and the provisions of Section 22.2 shall apply.

Article 22.   Suspension or Termination for Convenience

22.1   The Contractor may, without cause, order the Subcontractor in writing to suspend, delay or interrupt the Work in whole or in part for such period of time as the Contractor may determine. In such an event, the Contract Sum and Contract Time shall be adjusted for increases in the proven and documented cost and time caused by suspension. Adjustment of the Contract Sum shall not

include profit, special or consequential damages. No adjustment shall be made to the extent: (1) that performance is, was or would have been so suspended, delayed or interrupted by another cause for which the Subcontractor is responsible; or (2) that an equitable adjustment is made or denied under another provision of the Contract.

22.2    The Contractor may, at any time, terminate this Subcontract in whole or in part for the Contractor's convenience and without cause. Termination by the Contractor under this Paragraph shall be by notice of termination delivered to the Subcontractor specifying the extent of termination and the effective date of such termination, the Subcontractor shall recover as its sole remedy payment for work properly performed in connection with the terminated portion of the work prior to the effective date of termination and for items properly and timely fabricated off the Project site, delivered and stored in accordance with the Contractor's instructions. The Subcontractor hereby waives and forfeits all other claims for payment and damage, including, without limitation, anticipated profits.

Article 23.  Coordination
23.1    The Subcontractor agrees to perform the work called for in this Subcontract in such a manner that he will not injure or damage any other work performed by the Contractor or any other subcontractor.

23.2    The Subcontractor further agrees to cooperate with the Contractor and other subcontractors whose work might interfere with the Subcontractor's work and to prepare sketches and drawings as directed, and/or to participate in the preparation of coordinated drawings in areas of congestion, specifically noting and advising the Contractor of any such interference.

23.3.   The Subcontractor agrees to have a representative present at regularly scheduled jobsite coordination meetings. This representative must be a principal of the company or designated project manager who has the authority to comply with all scheduling and other requests of the General Contractor. It is further agreed that the Subcontractor's representative shall appear promptly at the designated meeting time. If the Subcontractor fails to attend these meetings on a timely basis, the Contractor shall have the right to declare the Subcontractor in default of this Subcontract, and seek all legal remedies in accordance with the terms of this Subcontract.

Article 24.  Indemnification
24.1    To the fullest extent permitted by law, Subcontractor agrees to indemnify, hold harmless and defend **Guidi Homes, Inc. and General Contractor, Construction Manager, Prime Contractor, Owner, Architect, Engineer, Partner and Joint Venture** and their agents, employees, representatives, officers, directors, stockholders, members, managers and parent, subsidiary and affiliated companies (the "Indemnified Parties") from and against any and all liability for loss, damage or expense for which the Indemnified Parties may be held liable by reason of injury (including death) to any person (including Subcontractor's employees) or damage to any property of whatsoever kind or nature arising out of or in any manner connected with the work to be performed for the Indemnified Parties (including, but not limited to, work performed under this contract, work performed under Change Order, or any such other work performed for or on behalf of the Indemnified Parties, whether performed at the site or not or in any way connected with the use, misuse, erection, maintenance, operation or failure of any machinery or equipment whether or not such machinery or equipment was furnished, rented or loaned by any of the Indemnified Parties, even for and if caused in whole or in part by any act, omission, or negligence of the Indemnified Parties. It is expressly understood and agreed that the indemnity contained in this paragraph covers claims by Subcontractor's employees and that Subcontractor expressly waives any defense to this indemnification obligation which may arise under the Workers' Compensation Act of any State. In addition, Subcontractor shall defend the Indemnified Parties against any claim which may potentially give rise to indemnification of the Indemnified Parties, even if such claim alleges that the Indemnified Parties are wholly or partially at fault for causing the loss. If Indemnification for the Indemnified Parties' sole negligence is expressly prohibited by

Law, such defense shall continue until it is conclusively established by a court of competent jurisdiction that: 1) the Indemnified Parties are solely liable for causing the bodily injury or property damage alleged; and 2) that neither Subcontractor nor its employees nor any Subcontractor to Subcontractor is liable; at which time the Indemnified Parties will absorb all costs of defense. It is further expressly agreed that Subcontractor assumes the fullest extent of all obligations to indemnify and defend all parties whom **Guidi Homes, Inc.** is obligated to indemnify and defend in **Guidi Homes, Inc.'s** contract with General Contractor, Construction Manager, Prime Contractor, Owner, Architect, Engineer, Partner and Joint Venture (whether or not such obligations may extend to items beyond those addressed in this Agreement).

If there are any damages or claims of any kind or nature unsettled when the subcontract work is finished, the final payment by **Guidi Homes, Inc.** shall be deferred until all such claims shall have been adjusted or suitable coverage or indemnity acceptable to Guidi Homes, Inc. is provided by Subcontractor or Subcontractor's insurance carrier.

Subcontractor and **Guidi Homes, Inc.** further agree that the Laws of the Commonwealth of Pennsylvania shall apply to the construction and application of the Indemnification and Hold Harmless Agreements set forth above

24.2    In the event and to the extent that a claim is made by an employee of Subcontractor against an Indemnified Party hereunder, the intent of this Article is that Subcontractor shall and it hereby agrees to indemnify Owner, Architect, Contractor and their parent, subsidiary, or affiliated companies and each of their agents, officers, directors, employees and assigns to the same extent as if the claim was made by a non-employee of Subcontractor. Accordingly, in addition to the above provisions, and in order to render the parties' intent and this indemnity agreement fully enforceable, Subcontractor, in an indemnification claim hereunder, hereby expressly and without reservation waives any defense or immunity it may have under any applicable Worker's Compensation Laws or any other statute or judicial decision disallowing or limiting such indemnification and consents to a cause of action for indemnity. Said waiver and consent to indemnification is made irrespective of and specifically waiving any defense or immunity under any statute or judicial decision disallowing or limiting such indemnification.

24.3    The Subcontractor shall bear any expense of an Indemnified Party because of any claim or other matter indemnified against hereunder, including reasonable attorney's fees and court costs in the defense of, or preparing for the defense against, any such claim, even if such claim or any lawsuit arising therefrom is groundless, false or fraudulent. If any such claim has not been settled or discharged when the Work is finished, final settlement between the Contractor and the Subcontractor and final payment of the Subcontract Price and the acceptance of the Work shall be deferred until any such claim is paid or settled or the Subcontractor provides a bond, acceptable to the Contractor, in its sole discretion, to satisfy such claim. At the request of any Indemnified Party, Subcontractor shall retain an attorney to represent such Indemnified Party in the defense of any such claim, provided, however, that any attorney employed in such defense must be satisfactory to such Indemnified Party.

24.4    The parties hereby agree that the Contractor shall not be liable for any loss or casualty incurred or caused by the Subcontractor. The Subcontractor shall maintain full and complete insurance on its work until final acceptance of the Work. The Subcontractor assumes all risk of loss for all its work regardless of whether the Subcontractor had previously been paid for same. Contractor is not responsible to provide any service for the Subcontractor's benefit, and is not liable for any loss or damage to the Subcontractor's Work.

24.5    In addition to the above, Subcontractor shall indemnify and hold harmless the Indemnified Parties for all damages, losses, or claims that arise as a result, in whole or in part, of the negligence, errors, omissions, or failure to perform by the Subcontractor, his employees, his agents or his subcontractors. The Subcontractor shall indemnify and hold harmless the Owner for all damages, losses, or claims, including related attorney fees, that arise as a result, in whole or in part, of the

breach of this Agreement or any implied covenants deemed to be applied thereto, intentional acts, omissions, or other failures to perform by the Subcontractor, his employees, his agents or his subcontractors.

Article 25.  Elimination or Reduction of Work
25.1    In the event of elimination or reduction of the work to be performed under this Subcontract by reason of termination or modification of the Subcontract Documents or a change in the work to be done thereunder, either in accordance with the terms of the Contract or the Subcontract Documents or by default by Owner, Subcontractor shall not be entitled to recover from Contractor more than its fair and equitable portion of any sums received by Contractor for work done or materials supplied by this Subcontractor on this Subcontract. The rights and claims of the Contractor, other subcontractors and third parties shall be taken into consideration in determining Subcontractor's fair and equitable share.

Article 26.  Labor Harmony
26.1    The Subcontractor accepts complete responsibility to maintain labor harmony with all trades working on this project during the performance of Subcontractor's Work.

Article 27.  Permits and Compliance with Law
27.1    Subcontractor shall obtain and pay for all permits, licenses and official inspection made necessary by its work and shall comply with all laws, ordinances and regulations bearing on the work required under this Subcontract.
27.2    Without limitation of any other provision hereof, if the Subcontractor performs any Work which is contrary to such laws, ordinances, codes, rules and regulations, he shall make all changes as required to comply therewith and bear all costs arising therefrom without additional reimbursement.

Article 28.  Independent Contractor
28.1    The Subcontractor certifies that he is "an independent Contractor" subject, as an employer, to all applicable statutes and regulations with respect to such status.

Article 29.  Employees.
29.1    The Subcontractor shall not employ any person in performance of this Subcontract whose employment might be reasonably objected to by the Contractor or Owner and hereby agrees to promptly remove from the Project any such person or party.

Article 30.  Notice
30.1.1   Written notice, where required by the terms of this Subcontract, may be accomplished by personal delivery of said notice or by use of the United States mail or a facsimile communication. The written notice shall become effective upon the date stated therein, or, if no such date is stated, upon the date upon which delivery is complete.
30.1.2   Personal delivery is complete when the notice is delivered to the Subcontractor or its representative at the Project or at the office address of the Subcontractor appearing in this Subcontract. The Subcontractor shall, at all times during its work on this Project, have a representative authorized to receive written notices present on the Project site during all normal working hours. In the absence of such a representative, personal delivery is complete when the notice is delivered to any of its subcontractors, supervisors or workmen, or in their absence, left in a conspicuous place on the Project site in the area of Subcontractor's work.
30.1.3.  If facsimile is used, completion of the facsimile will have a confirmation notice attached thereto, to indicate that the fax has been sent in its entirety, and shall have a date reflected thereon.
30.1.4   When regular or overnight mail is used, delivery is complete for the purposes of paragraph 30.1.1 on the date first occurring among the following: a) on the day the communication is received by

Subcontractor evidenced by a return receipt furnished by the United States Post Office Department or by any recognized messenger or delivery service, or b) on the third day after the notice is deposited in the U.S. mail addressed to the Subcontractor at its last known address.

Article 31. Superintendent

31.1 The Subcontractor shall at all times maintain a qualified and skilled superintendent or foreman at the site of the work who shall be satisfactory to the Owner, the Owner's authorized agent and/or the Contractor. Such superintendent or foreman shall be duly and legally authorized to represent and act for the Subcontractor with respect to all matters in connection with or arising out of work under this Subcontract.

Article 32. Subcontractor's Dealing with Owner

32.1 It is agreed that all of Subcontractor's dealings with the Owner's authorized agent, the Owner, or any other party named in the Contract Documents shall be through the Contractor.

32.2 The Subcontractor further agrees that he shall not make any agreement with the Owner's authorized agent or with the Owner pertaining to any phase of the performance of this Subcontract.

Article 33. Owner Right to Reject Subcontract and Third Party Beneficiary Rights

33.1 Subcontractor recognizes that the Owner may reject any proposed subcontractor or supplier for any reason and at its discretion prior to execution of the subcontract.

33.2 Nothing contained in the Subcontract Documents or Contract Documents shall create a contractual relationship between the Owner and any third parties; however, it is understood and agreed that the Owner is an intended third party beneficiary of all subcontracts, purchase orders, and other agreements between the Contractor and third parties.

Article 34. No Commingling of Materials

34.1 To the extent that the materials or equipment is for a particular Work Order, the materials and equipment must be marked as such and must not be commingled with material or equipment for other portions of the project. No payments will be made for stored materials or equipment unless they are so designated and separate.

Article 35. Contributions, Taxes and Insurance

35.1 The Subcontractor agrees to and does hereby accept full and exclusive liability for the payment of all contributions, taxes, insurance of any description whatever, now or hereafter imposed by any authority, which are measured by the wages, salaries or other remunerations paid to persons employed by Subcontractor on work performed pursuant to the terms of this Subcontract.

35.2 Subcontractor further agrees to and does hereby accept full and exclusive liability for the payment of all personal property taxes, inventory taxes, sales taxes, use taxes, excise taxes, fuel taxes, transportation taxes, franchise taxes, and all other taxes, and/or tax assessments in any manner whatsoever relating to the materials, supplies, tools, machinery, equipment and plant which may be purchased, acquired, rented or used by Subcontractor relating to all work performed under this Subcontract.

Article 36. Insurance

36.1.1 Subcontractor shall provide and maintain at all times during the performance of this Subcontract Workmen's Compensation and Employer's Liability insurance for protection of Subcontractor's employees, as required by law; and insurance covering Public Liability, Property Damage and Subcontractor's Contractual Liability hereunder (including but not limited to all work performance and operation of automobiles, trucks and other vehicles, the values of which are itemized in Exhibit "C").

36.1.2 All insurance required hereunder shall be maintained in full force and effect in a company or companies satisfactory to Contractor, at the Subcontractor's expense, and until performance in full hereof has been accomplished and final payment has been issued in evidence thereof. Further,

15 of 18

such insurance shall be subject to the requirement that Contractor must be notified by thirty (30) days written notice before cancellation of any such policy. In the event of the threatened cancellation for non-payment of premium, Contractor may pay the same for Subcontractor and deduct the said payment from amounts then or subsequently owing to the Subcontractor hereunder.

36.1.3   Certificates of insurance must be filed with the Contractor within thirty (30) days of the date of execution of this Subcontract or prior to commencement of work, whichever is earlier. No payment shall be considered due and owing hereunder until certificates of insurance satisfactory to the Contractor have been received in its office.

36.1.4   Subcontractors' liability policy shall be the primary policy and must list as additional insured both Contractor and the Owner of the Project as well as any additional entities listed in the relevant Work Order using the following language:
**Guidi Homes, Inc and (Name of Owner if other) are additional insured on the captioned General Liability, Umbrella liability and Automobile Liability Policies on a Primary and Noncontributory basis. A waiver of Subrogation is provided on these policies in favor of Guidi Homes, Inc, including workers compensation where permitted by State Law.**

36.1.5   Subcontractor is required to report to Contractor in writing, any job related illness or accident within three (3) business days of illness or accident.

36.2    Subcontractor shall require its Sub-subcontractor to provide and maintain at all times during the performance of the Sub-Subcontractor's Subcontract, Workmen's Compensation and Employer's Liability Insurance for protection of the Sub-Subcontractor's employees, as required by law; and insurance covering Public Liability Property Damage and Sub-Subcontractor's Contractual Liability under its Subcontract (including but not limited to all work performance and operation of automobiles, trucks and other vehicles, the values of which are itemized in Exhibit "C"). The insurance provided by the Sub-Subcontractor shall meet all of the requirements of this Subcontract.

36.3    In the event Contractor, in its sole discretion, determines that Subcontractor is not maintaining the insurance required by this Agreement, Contractor shall have the right to immediately terminate this Agreement without any notice to Subcontractor.

36.4    To the fullest extent permitted by applicable law, Subcontractor waives all subrogation rights against Contractor, Owner, and any of their agents and employees: (1) for damages caused by fire or other perils to the extent covered by property insurance provided under the Principal Contract, the Subcontract or other property insurance applicable to the Work, except such rights as they may have to proceeds of such insurance held by Owner or Contractor as fiduciary; and (2) for other claims to the extent arising out of a loss or claim covered by Subcontractor's liability, automobile or worker's compensation insurance. Subcontractor shall require of Subcontractor's sub-subcontractors, agents and employees by appropriate agreements, written where legally required for validity, similar waivers in favor of other parties enumerated herein. The policies shall provide such waivers of subrogation by endorsement or otherwise. A waiver of subrogation shall be effective as to a person or entity even though that person or entity would otherwise have a duty of indemnification, contractual or otherwise, did not pay the insurance premium directly or indirectly, and whether or not the person or entity had an insurable interest in the property damaged.

## Article 37. Effective Date

37.1    The effective date of this Subcontract is intended by both parties to be the date indicated at the beginning of this Subcontract. The dates appearing by the signatures at the end of this document merely indicate the dates that the signatures were affixed.

## Article 38. Waiver of Liens and Releases

38.1    If Contractor posts a bond guaranteeing payment for goods, materials, and equipment supplied, labor or services provided to the Project by Subcontractors, then Subcontractor agrees to waive its right to file a mechanics' lien and that no mechanics' liens, notices, or claims, or materialman's liens, notices, or claims, or any other liens or claims of any kind whatsoever will be filed, enforced, or maintained with respect to the goods, materials, and equipment supplied, labor or services

performed pursuant to this Subcontract against the Project for which they are supplied or performed, or against the owner, real property, building, or other improvements of which the Project is a part, or any part or parts thereof or the appurtenances thereto by Subcontractor, its successors and assigns. If the bond posted by Contractor guarantees payment for goods, materials, and equipment supplied, labor or services provided to the Project by sub-subcontractors, suppliers, materialman and other entities pursuant to a contract with Subcontractor, then Subcontractor shall obtain lien waivers from such sub-subcontractors, suppliers, materialman and other any other similarly situated entities, stating that liens may not be filed on the Project and provide written notice of this lien waiver provision to its sub-subcontractors, suppliers, materialman, and all other persons or entities acting by, through, or under it or them, prior to and before any labor or services are performed, or goods, materials, or equipment are supplied to the Project pursuant to this Subcontract.

38.2    If Contractor posts a bond guaranteeing payment for goods, materials, and equipment supplied, or labor or services performed by Subcontractor, then, in the event a mechanics' lien, notice, or claim, or materialman's lien, notice, or claim, or construction lien claim, or lien, or any other lien or claim of any kind whatsoever is filed, enforced, or maintained by Subcontractor and/or any of Subcontractor's sub-subcontractors, suppliers, materialmen, and all other persons or entities acting by, through, or under it or them, then Subcontractor shall defend, indemnify, and hold Contractor harmless from such liens and/or claims, and shall also cause said mechanics' lien, notice, or claim, or materialman's lien, notice, claim, construction lien claim, or other lien of any kind whatsoever, to be discharged in accordance with applicable law. Subcontractor also agrees to pay and reimburse Contractor for all costs, expenses and attorney's fees incurred by Contractor in defending, responding to and/or discharging liens or claims filed by Subcontractor and/or any of Subcontractor's sub-subcontractors, suppliers, materialmen, and all other persons or entities acting by, through, or under it or them whenever a valid lien waiver is in place on a Project.

38.3    As a prerequisite to payment, Subcontractor agrees that it will execute, in a form satisfactory to owner, all documents required by Contractor that evidence, ensure, and guarantee that the Subcontractor has made payment for all Work performed in connection with this Subcontract, including, but not limited to, Releases and Partial Waiver of Liens, in consideration for each and every payment and up the date covered by the payment, whether partial or final. Said Releases and Partial Waiver of Liens shall include, whenever so requested by Contractor, and in a form acceptable to Contractor, Partial Waiver of Liens and Release of claims, costs, expenses, fees, charges, changes, change orders, or change order requests that arise out of or relate to Subcontractor's Work performed from all contractors, suppliers, persons and/or entities that have, or will, provide labor, materials, equipment, machinery, fixtures, services, or labor under any agreement(s) with Subcontractor for the Subcontractor's Work under this Subcontract. A sample Partial Lien Waiver and Release Form is attached hereto as Exhibit "E-2" to this Subcontract. Contractor reserves the right to modify the form of this Partial Lien Waiver and Release.

38.4    The Subcontractor, when required by the Contractor as a condition precedent to the making of final payment hereunder, shall furnish to the Contractor a full and complete release and discharge, in a form satisfactory to the Contractor, of all liens, claims and demands arising out of or relating to the Subcontract work and any and all materials furnished, work done and equipment used in connection therewith. Furthermore, if, prior to final payment, the Owner or any party providing financing for the Project requests a release of liens from the Subcontractor, the Subcontractor shall execute and deliver such release of liens in a form satisfactory to the Owner or such other party. A sample Final Lien Waiver and Release is attached hereto as Exhibit "F-2" to this Subcontract.

Article 39. Applicable Law

39.1    The law of the Commonwealth of Pennsylvania, not including choice of law analysis, shall be applicable to this Subcontract and shall be used to decide any dispute related to this Subcontract.

Article 40. Determination of Disputes

17 of 18

40.1.1   Any dispute between the parties related to this Contract shall be determined by the courts of the Commonwealth of Pennsylvania located in Montgomery County or, if the Contractor agrees in writing that the Owner is a party to the dispute, the venue required by the Contract Documents, with the exception noted in Section 40.1.2 below. The Subcontractor hereby consents to the personal jurisdiction of that Court over it and agrees to accept service of process issuing from that Court. As part of the consideration given by the parties hereto, the parties mutually agree to waive their respective rights to a jury in any such matter.

40.1.2   If a dispute arising out of or relates to this Subcontract, or breach thereof, and if the dispute cannot be settled through pre-litigation negotiations, the Contractor and Subcontractor agree, at the Contractor's sole election, to subject the dispute to arbitration administered by the American Arbitration Association under its Construction Industry Arbitration Rules whereby a judgment on the award rendered by the Arbitrator(s) may be entered in any Court having jurisdiction thereof. Under such circumstances, the Arbitrator(s) shall have the exclusive power to determine issues of arbitrability. Such arbitration shall be final and binding upon the parties.

40.1.3   Pending final resolution of a dispute, except as otherwise agreed in writing, the Subcontractor shall proceed diligently with performance of the Work.

40.1.4   Enforceability of Elections. If the elections afforded Contractor in Section 40.1.1 or 40.1.2 hereof are not enforceable, then both parties shall be bound to arbitrate all disputes in which the disputed amount is less than Five Hundred Thousand Dollars ($500,000.00) and may litigate any dispute involving a higher amount.

40.1.5   Venue. Unless the Contractor agrees in writing that the Owner is a party to the dispute, so that the venue will be as required by the Contract Documents, the venue for any mediation, arbitration or litigation proceeding relating to Subcontractor's Work shall be in the county in which Contractor's home office is located.

Article 41.  Nondiscrimination in Employment

41.1   UNLESS EXEMPT IN ACCORDANCE WITH EXECUTIVE ORDER 11246 OF SEPTEMBER 24, 1965; DURING THE PERFORMANCE OF THIS SUBCONTRACT, THE SUBCONTRACTOR AGREES AS FOLLOWS:

41.1.1   The Subcontractor will not discriminate against any employee, or applicant for employment because of sex, race, religion, color or national origin. The Subcontractor will take affirmative action to ensure that applicants are employed and that employees are treated during employment without regard to their age, sex, religion, color or national origin. The Subcontractor agrees to post in conspicuous places, available to the employees and applicants for employment, notices to be provided setting forth the provisions of the nondiscrimination clause.

41.1.2   The Subcontractor will, in all solicitations or advertisement for employees, placed by or on behalf of the Subcontractor, state that all qualified applicants will receive consideration for employment without regard to sex, race, religion, color or national origin.

41.1.3   If applicable, the Subcontractor will send to each labor union or representative of workers with which he has a collective bargaining agreement or other contract or understanding, a notice advising the said labor union or workers' representative of the Subcontractor's commitments under this section, and shall post copies of the notice in conspicuous places available to employees and applicants for employment.

41.1.4   The Subcontractor will comply with all provisions of Executive Order 11246 of September 24, 1965 and the rules, regulations and relevant orders of the Secretary of Labor.

41.1.5   The Subcontractor will furnish all information and reports required by Executive Order 11246 of September 24, 1965 and by the rules, regulations and orders of the Secretary of Labor, or pursuant thereto, and will permit access of his books, records, and accounts by the administering agency and the Secretary of Labor for purposes of investigation to ascertain compliance with rules, regulations and orders.

41.1.6   In the event the Subcontractor is in non-compliance with the nondiscrimination clauses of the Subcontract Documents or with any of the said rules, regulations or orders, this Subcontract may

be canceled, terminated or suspended in whole or in part, and the Subcontractor may be declared ineligible for further government contracts or federally assisted construction contracts in accordance with procedures authorized in Executive Order 11246 of September 24, 1965 and such other sanctions as may be imposed and remedies invoked as provided in the said Executive Order or by rules, regulations or orders of the Secretary of Labor, or as otherwise provided by Law.

41.1.7   The Subcontractors will include the provisions of Paragraph One (1) through Seven (7) in every Sub-Contract or Purchase Order unless exempted by rules, regulations and orders of the Secretary of Labor issued pursuant to Executive Order 1 1246 of September 24, 1965, so that such provisions will be binding upon each Sub-contractor or Vendor. The Subcontractor will take such action with respect to any Sub-subcontract or Purchase Order as the administering agency may direct as a means of enforcing such provisions, including sanctions for noncompliance; provided however, that in the event the Subcontractor becomes involved in, or is threatened with, litigation with a Sub-subcontractor or vendor as a result of such direction by the administering agency, the Subcontractor may request the United States to enter into such litigation to protect the interests of the United States.

42.1.8   Subcontractor shall be given the opportunity to measure individual lots 3 weeks prior to starting for exact measurements of offset's, exposed basement's, and any changes made by contractor or homeowener from the plan's. Before a p.o is issued.

Copying Prohibited

1 9

# EXHIBIT "D"

Copying Prohibited

## MASTER AGREEMENT

Date: January 2, 2013

CONTRACTOR:

GUIDI HOMES, INC.
925 Harvest Drive, Suite 220
Blue Bell, PA  19422
Telephone No. (215) 641-9280
Facsimile No. (215) 641-9088

SUBCONTRACTOR:

Guerrero Brothers
3 Pinetown Road
Audubon, PA  19407
610-650-0162

### THE ATTACHED EXHIBIT "A" TERMS AND CONDITIONS ARE PART OF THIS SUBCONTRACT.

A.      Subcontractor's Responsibilities.  The Subcontractor agrees to furnish all materials, labor, supervision, tools, equipment and supplies as necessary to provide your line of Work on various Projects authorized and defined in Subcontract Work Order(s) (hereinafter "Subcontract" or "Work Order") to be issued, executed, and made part of this Master Agreement (hereinafter "Agreement" or "Contract").  All Work shall be performed in accordance with the Contractor's Terms and Conditions, which are attached hereto and form part of this Agreement unless specifically modified by the Work Order(s).  It is understood that in the event that Subcontractor performs Work without a Subcontract Work Order on behalf of Contractor, at Contractor's specific direction, the terms of this Agreement shall be binding upon both parties until such time as these terms are modified or expanded by Work Order.  All work provided for in the above referenced Work Order(s), for and at the Project listed on the Work Order (hereinafter called the Project), shall be performed as shown and described in and in strict accordance with the Plans, Specifications, General Conditions, Special Conditions and Addenda thereto prepared by the Architect listed and with the terms and provisions of the General Contract between Contractor and the Owner (hereinafter "General Contract") listed and in strict accordance with the above-referenced Work Order(s), and the Exhibits annexed hereto and made a part hereof.  Subcontractor also agrees that any modification contained in any Work Order shall only apply to that particular Work Order and shall not apply to any other Work Order.  This Master Agreement, subject to the terms of Exhibit A, carries forward in perpetuity until modified in writing by both parties, even if ownership of either company changes or the assets or liabilities of the company are assigned. The price and schedule shall be kept and monitored separately for each Work Order, and each Work Order shall have a separate Schedule of Values, Change Order numbering, schedule, start and completion date, warranty requirements, Application for Payment, and retainage. The language of this Agreement and the Contract Documents in whole shall apply to each Work Order.

B.      Subcontractor's Work.  The Subcontractor's Work shall consist of the scope of Work set forth in the relevant Work Order.  If the Contractor intends to use Subcontractor in the construction of a particular house, a separate Work Order must be issued for each separate house with the possible exception of the first phase of model houses.

C.      Subcontract Price.  The sum to be paid by Contractor, out of funds received from the Owner, to the Subcontractor for the satisfactory performance and completion of the Work and of all of the duties, obligations and responsibilities of the Subcontractor under this Agreement and the other Contract Documents, shall be as stated in the executed Work Order(s) (hereinafter called the Price) and shall be subject to additions and deductions as herein provided.

The Price includes all Federal, State, County, Municipal and other taxes imposed by law and based upon labor, services, materials, equipment or other items acquired, performed, furnished or used for and in connection with the Work, including but not limited to sales, use and personal property taxes payable by or levied or assessed against the Owner, Contractor or the Subcontractor.  Where the law requires any such taxes to be stated and charged separately, the total price of all items included in the Work plus the amount of such taxes shall not exceed the Price.

When a price is given by the Subcontractor for the initial houses or model houses in the first phase of this project, those prices shall be held for a non-escalation period of twelve (6) months for that Work Order as well as each subsequent Work Order. The Contractor shall also have the right to demand pricing from the Subcontractor on the basis of a 6 month non-escalation period. Prior to entering into the Work Order for the first phase or any subsequent Work Order, Contractor may elect to use the pricing for a 6 month or 12 month non-escalation period. Once the Work Order has been executed by the Contractor, however, no further escalations will be permitted for any reason on that particular Work Order even if the non-escalation period has elapsed.

D.      Insurance.  Unless modified by the Work Order, Subcontractor shall maintain the insurance policies and in the amounts set forth on Exhibit "C" attached hereto.

E.      Terms and Conditions; Exhibits.  Exhibit "A," the Terms and Conditions attached to this Agreement, are made a part hereof.  The Work Orders shall contain separate Exhibits.  Exhibits "A" and "B" are attached hereto.

F.      IMPORTANT: THE EXECUTION OF THIS MASTER AGREEMENT DOES NOT OBLIGATE THE CONTRACTOR TO ENTER INTO WORK ORDERS WITH SUBCONTRACTOR ON EVERY PROJECT PERFORMED BY CONTRACTOR.  THE CONSIDERATION GIVEN SUBCONTRACTOR BY CONTRACTOR FOR ENTERING THIS MASTER AGREEMENT SHALL BE THE SAME CONSIDERATION AS SET FORTH IN THE WORK ORDER FOR EACH PARTICULAR PROJECT.

IN WITNESS WHEREOF, the parties have executed this Subcontract effective as of the day and year first above written.

_____          _____
GUIDI HOMES, INC.                         Subcontractor.

Copying Prohibited

EXHIBIT "A"
TERMS AND CONDITIONS

These Terms and Conditions are an extension of the Contract Documents.  This document is intended to be generic in nature.  All of its provisions are subject to modification or revision in the individual Work Order(s).

Article 1.  Definitions
1.1      The term "Contract" as used herein refers to the Contract between the Owner and the Contractor for construction of the Project.
1.2      The term "Contract Documents" as used herein refers to the "Contract" between the Owner and the Contractor, all plans, drawings, specifications, general conditions, supplemental general conditions, and special conditions, addenda, amendments, and/or instruments of like effect.
1.3      The term "Subcontract" as used herein refers to the Work Order, these Terms and Conditions, the Master Agreement, together with any exhibits, attachments or addenda incorporated herewith and referred to herein.
1.4      The term "Subcontract Documents" as used herein refers jointly and/or severally to the aforesaid Contract, Contract Documents and Subcontract.

Article 2.  Duties of the Subcontractor
2.1      The Subcontractor is bound to the Contractor by the same terms and conditions and to the fullest extent by which Contractor is bound to the Owner under the Contract.  In the event of any inconsistency between the terms and conditions of the Contract (including the General Conditions) and this Subcontract, the more restrictive provisions as applicable to the Subcontractor shall govern.
2.2      When requested to do so by the Contractor, Subcontractor agrees to submit a list of any proposed sub-subcontractors, and Subcontractor shall not delegate, or further subcontract to others the performance of any of its obligations or work required or contemplated by this Subcontract without prior written consent of the Contractor, which shall not be unreasonably withheld.
2.2.1    If Subcontractor enters into agreements with any sub-tier subcontractor, it shall require each sub-tier subcontractor to agree in writing to be bound by all provisions of the Subcontract Documents, including the Contract and the General Conditions, applicable to its work.
2.3.1    Subcontractor hereby warrants that he has investigated and familiarized himself with all laws and codes applicable to its work; with the availability, cost and suitability of personnel, materials, equipment, utilities, etc; with the prevailing wage scales, union benefits and working conditions, craft jurisdiction, existing labor agreements (as applicable); all site conditions and restrictions, underground conditions, prevailing weather and climatological conditions; and any other factors which may affect Subcontractor's work.
2.3.2    Subcontractor further agrees that Contractor shall not be liable to Subcontractor on any claim for additional payment or additional time or any claim whatsoever if such claims directly or indirectly result from Subcontractor's failure to investigate and familiarize itself with the conditions under which this Subcontract is to be performed.
2.3.3    Subcontractor warrants it has visited the site and has become familiar with all conditions at the site, including without limitation, the conditions described in the General Conditions.
2.3.4    Generally, the specifications describe Work which cannot be indicated on the drawings and indicate types, qualities and methods of installation of the various materials and equipment required for the work.  It is not intended to mention every item of Work in the specifications which can be adequately shown on the drawings or to show on the drawings all items of Work described or required by the specifications even if they are of such nature that they could have been shown thereon.  All materials or labor for Work which is shown on the drawings or is reasonably inferable therefrom as being necessary to produce a finished job shall be provided by the Subcontractor whether or not the Work is expressly covered in the specifications.
2.3.5    Subcontractor, before proceeding with any work under its Subcontract will accurately check and verify

1 of 18

all previous and surrounding work done by others and determine the correctness of same. The Subcontractor shall field measure all work relating to its work. The failure of the Subcontractor to detect and disclose any existing discrepancies or nonconformities and report same to Contractor., in writing, before commencing its work shall relieve Contractor of any and all responsibility for same, and the Subcontractor shall be responsible and liable for all resulting damages, costs and expenses arising as a result of discrepancies and nonconformities that should have been discovered by the Subcontractor.

2.4 COORDINATION WITH OWNER'S SALES FORCES AND POTENTIAL OR ACTUAL PURCHASERS

2.4.1 Subcontractor hereby agrees for both it and its subcontractors to coordinate with Owner's Sales Forces in both the selection and change order process. Subcontractor and its Subcontractors shall provide samples of all selection materials as well as written materials relating to selections if so requested. They shall also provide to the Owner's Sales Forces pricing of any reasonably requested changes and shall explain such changes to any potential or actual purchasers upon request. All such requests shall be processed through Contractor unless otherwise directed by Contractor in writing.

2.4.2 Subcontractor and its Subcontractors shall also coordinate with purchasers on milestone activities including but not limited to (1) rough-in inspection, (2) electrical outlet placement walk-through, (3) mechanical vent placement walk through, (4) pre-closing final walk-through, (5) punchlist creation walk-through and (6) punchlist completion walk-through. To the extent that other walk-throughs or inspections with purchasers are necessary, such walk-throughs or inspections shall be scheduled through Contractor unless otherwise directed by Contractor in writing.

2.4.3 Subcontractor shall also be directly responsible to purchaser for any warranty obligations set forth in the Owner's Purchase and Sales Agreement unless otherwise detailed in the particular Work Order for that particular house. In addition, in the case of a "spec" or model home, Subcontractor shall also be directly responsible to Owner and any subsequent purchaser for any warranty obligations set forth in the Owner's standard Purchase and Sales Agreement unless otherwise detailed in the particular notice to proceed for that particular house.

**Article 3. Integration**

3.1 This Subcontract constitutes the entire agreement between the parties and supersedes all proposals, correspondence, and oral agreements between the Subcontractor and Contractor, if any. Except as otherwise provided for herein, no changes, amendments or modifications of the terms hereof shall be valid unless reduced to writing and signed by the parties hereto.

**Article 4. Payment**

4.1.1 Pursuant to the Contract Documents, Owner is obligated to pay Contractor in accordance with the terms specified in the Work Order.

4.1.2 Subcontractor hereby acknowledges that the Contractor has fully disclosed the Owner's manner of payment pursuant to the Contractor Subcontractor Payment Act, 73 P.S. Section 501, et seq.

4.1.3 Provided Subcontractor's rate of progress and general performance are satisfactory to the Contractor and provided that the Subcontractor is in full compliance with each and every provision of the Subcontract Documents, the Contractor will make payment to the Subcontractor within forty five (45) days after receipt of Subcontractor's invoice with a stated interest rate for late payments of not greater than Prime Rate as established by Susquehanna Bank.

4.1.4 PAYMENT FROM THE OWNER TO THE CONTRACTOR IS A CONDITION PRECEDENT TO PAYMENT FROM THE CONTRACTOR TO THE SUBCONTRACTOR PURSUANT TO THIS ARTICLE.

4.1.5 ON PENNSYLVANIA PROJECTS, IN CONSIDERATION FOR CONTRACTOR'S AGREEMENT TO ENTER INTO THE SUBCONTRACT, SUBCONTRACTOR HEREBY AGREES TO WAIVE ALL RIGHTS TO INTEREST ABOVE THE LEGAL RATE, PENALTIES AND/OR ATTORNEY'S FEES PROVIDED BY THE CONTRACTOR AND SUBCONTRACTOR PAYMENT ACT, 73 P.S. SECTION 501 ET SEQ.

Copyright Protected

4.1.6    ON PENNSYLVANIA PROJECTS, SUBCONTRACTOR HEREBY AGREES THAT, IF THE OWNER REQUIRES CONTRACTOR TO WAIVE ANY OR ALL OF ITS RIGHTS UNDER THE CONTRACTOR AND SUBCONTRACTOR PAYMENT ACT, 73 P.S. SECTIONS 501 ET SEQ., SUBCONTRACTOR HEREBY AGREES TO SIMILARLY WAIVE ITS RIGHTS UNDER THE ACT.

4.1.7    Subcontractor acknowledges that in the event payment is not made to Contractor for any reason including, but not limited to, default by the Owner, Subcontractor shall look exclusively to the Owner for payment of any and all funds due under this Subcontract.  Subcontractor further agrees that delay in payment for non-payment by the Owner does not create any separate obligation of Contractor to pay regardless of the extent of the delay.  Subcontractor has the right to pursue payment from the Owner if the Owner is delinquent in payment per this agreement.

4.1.8    Within ten (10) days of execution, the Subcontractor shall submit to the Contractor a complete and accurate schedule of values of the various parts of its work.  This schedule, when approved by the Contractor, shall be used as the basis for making payments.

4.1.9    On a monthly basis, the Subcontractor shall submit a request for partial payment consistent with the schedule of values and representing a true and accurate estimate of the work completed during the immediately preceding pay period.  Unless modified by Work Order, Subcontractor's invoice must be received by the Contractor by the 25th of the month for all work completed to date.  When required by the Contractor, Subcontractor shall provide an accurate inventory of materials suitably stored at the job site.   Each application shall be accompanied by such invoices, vouchers, waivers, releases, certifications and affidavits as may be required by the Owner and/or Contractor.  The Subcontractor agrees that any application for payment not in compliance may be held over for processing at the beginning of the pay period following correction of such application, with or without notice to Subcontractor.

4.1.10   No partial payment shall constitute acceptance by the Contractor of the work or material for which the partial payment is made; nor shall any partial payment constitute a waiver of any right to require fulfillment of all the terms of this Subcontract.  Contractor shall promptly advise the Subcontractor in writing if the Owner or Contractor disapproves of or is withholding all or any of a Request for Payment, including change orders.  Even if Subcontractor disagrees with Contractor's disapproval, Subcontractor shall continue to perform all work under this agreement including that in dispute.  The Subcontractor shall also take all reasonable steps necessary to ensure that there will be no work stoppage or delay on account of such disapproval.  Both parties agree to endeavor to promptly resolve such disputes on an ongoing basis.

4.1.11   The Subcontractor hereby agrees to reimburse the Contractor in the event of overpayment, together with any costs and expenses including administrative costs and attorney's fees, which the Contractor may incur in securing recovery thereof.

4.2      Contractor expressly reserves the right to issue joint checks to Subcontractor and its materialmen, suppliers or subcontractors, or any of Subcontractor's creditors having potential lien rights and/or claims against the work, for any payments that are, or may become, due and owing by Contractor to Subcontractor under this Agreement.

4.3      The Contractor may deduct from amounts due or to become due to the Subcontractor on this Project any sum due or to become due to Contractor from the Subcontractor whether or not said sums are in any way related to this Subcontract or Project.

4.4      In the event Subcontractor is in default of or breaches or fails to comply with any provision of the Subcontract; or in the event that any person asserts, or threatens to assert, any lien or claim, against the Project, the Owner, the Contractor or any Surety arising from Subcontractor's performance of this Subcontract, the Contractor may, at its option, withhold out of any payments due or to become due to the Subcontractor a sum sufficient to completely protect and indemnify the Contractor and the Owner from all loss, damage and/or expense, including attorney's fees and litigation costs, until the condition requiring such measure has been remedied by the Subcontractor to the satisfaction of the Contractor.  If the Contractor is compelled to expend monies in defending, discharging or otherwise disposing of any claim or lien in excess of retained or withheld sums, the Subcontractor shall, upon demand,

JG

reimburse the Contractor for the excess amount so expended, including reasonable attorney's fees and costs incurred by Contractor incident to such defense and/or incidental to Contractor's collection from Subcontractor of such excess.

4.5    Notwithstanding anything to the contrary contained in this Subcontract, and without any limitation as to time, Contractor shall not be obligated to make payments to Subcontractor under this Subcontract:

    a)    when such payment will leave then the retained percentage plus an amount adequate to satisfy all obligations of the Subcontractor for labor, materials, tools, etc. furnished or to be furnished by Subcontractor in the performance of its work;

    b)    when Subcontractor is or with reasonable probability (as determined by the Contractor) may become unable to comply with or completely perform this Subcontract;

    c)    whenever the Contractor, in its sole discretion, shall determine that the Project is being or is in danger of being delayed by the Subcontractor;

    d)    pending satisfactory correction, replacement and/or restoration of deficient work, material, or supplies, or of any work rejected if not conforming with this Subcontract or the Subcontract Documents.

4.6    The Subcontractor agrees, as a condition precedent to payment hereunder, to furnish the Contractor with such partial and/or final releases and/or waiver of liens as the Contractor may from time to time request in the form set forth in Exhibit "E-2" hereof.

## Article 5.  Final Payment

5.1    Final payment will be made within forty five (45) days after the Subcontractor's work has been completed to the satisfaction of the Owner and the Contractor, and the Contractor has received from the Owner written acceptance thereof together with payment in full for this portion of the work.  Final payment is subject to Contractor's determination that all the requirements of the Subcontract have been met and discharged by Subcontractor.  PAYMENT FROM THE OWNER TO THE CONTRACTOR IS A CONDITION PRECEDENT TO PAYMENT FROM THE CONTRACTOR TO THE SUBCONTRACTOR PURSUANT TO THIS ARTICLE.

5.2    No final payment shall constitute acceptance by the Contractor of the work or material for which the final payment is made, nor a waiver of any right to require fulfillment of all the terms of this Subcontract.  The Subcontractor hereby agrees to reimburse the Contractor in the event of overpayment, together with any costs and expenses, including administrative costs and attorney's fees, the Contractor may incur in securing recovery thereof.

## Article 6.  Financial Condition of Subcontractor

6.1    If at any time Contractor in its sole discretion shall determine that the Subcontractor's financial condition has become impaired or unsatisfactory, Subcontractor shall furnish additional security satisfactory to the Contractor within three (3) days after written demand by Contractor.

6.2    The Contractor, Owner's representatives and architect at all times shall have free access to the office, shops and yards of the Subcontractor to verify any information about the work to be performed by the Subcontractor.

## Article 7.  Assignment

7.1.1    The Subcontractor will make no assignment of the proceeds of this Subcontract without the prior written consent of the Contractor, which consent shall not be unreasonably withheld.

7.1.2    The Contractor shall not be obligated to any assignee of the Subcontractor on account of payments at any time made in good faith to the assignor.

7.1.3    The Contractor shall not be liable to any assignee of the Subcontractor for any amount in excess of the net sums owing Subcontractor hereunder.

7.1.4    By making an assignment of the proceeds hereof, the Subcontractor waives any claims against Contractor resulting from Contractor's continued payment to assignees or former assignees, not

withstanding notification to Contractor of termination of any such assignment.

7.1.5    By making an assignment of the proceeds hereof, Subcontractor agrees to assume full liability for the conveyance to assignees of any payments mistakenly, inadvertently, or otherwise made or addressed to Subcontractor and Subcontractor agrees to defend and hold harmless the Contractor from claim or action of any assignee related to this Subcontract.

7.2    The Subcontractor shall not assign or sublet this Subcontract or any part or interest therein without Contractor's prior written consent. If Contractor so consents, such assignment is subject and subordinated to all labor preferences and other liabilities, actual or potential, as may be imposed on Contractor due to any obligation or liability of the Subcontractor.

7.3.1    Subcontractor agrees that its Subcontract is assigned by the Contractor to the Owner provided that:
    .1    assignment is effective only after termination of the Contract by the Owner for cause and only for those subcontract agreements which the Owner accepts by notifying the Subcontractor and Contractor in writing; and
    .2    assignment is subject to the prior rights of the surety, if any, obligated under bond relating to the Contract.

7.3.2    Upon such assignment, the Owner shall be responsible to the Subcontractor for those obligations of the Contractor that accrue subsequent to the Owner's exercise of any rights under this conditional assignment.

Article 8.  Performance Bond and Labor and Material Bond

8.1    The Contractor shall have the right to require any Subcontractor to furnish bonds covering the faithful performance of the Subcontract and the payment of all obligations arising thereunder as well as lien discharge bonds pursuant to Waiver of Liens and Release Article detailed below. The failure of the Subcontractor to furnish a bond within seven (7) days after having been given notice of such requirements by Contractor shall constitute sufficient cause for termination of this Subcontract without notice.

8.2    The Subcontractor's cost of the bond will be reimbursed by Contractor unless negotiated into the initial Subcontract Work Order amount. If not, then Contractor will reimburse Subcontractor for proven premium costs without mark-up.

Article 9.  Unit Price Basis

9.1    If the terms of this Subcontract provide for the payment of work performed on a unit price basis, the unit of measurement for payment shall be one for work certified. Verification of weights or quantities will be furnished at the time of delivery. In the event the parties fail to agree on the actual quantity performed, Contractor shall have the right to measure the quantity of work in place and make final settlement on the basis of such measurement. Unit prices shall be the same for both additions and deductions.

Article 10.  Equipment and Facilities

10.1    The Subcontractor shall provide at its own expense whatever tools; machines; equipment; plant; utilities; services' storage sheds; workshops; offices; first aid or emergency treatment facilities and any other facility he may deem necessary for the complete performance of all work required under this Subcontract, and shall remove any such installations and thoroughly clean and restore the site and premises at the completion of the work.

10.2    If the Subcontractor has occasion to utilize any of the facilities of the Contractor, when and if available, Subcontractor shall pay an equitable portion of the cost thereof. The Contractor shall bear no responsibility for any loss or damage from any cause whatsoever arising from Subcontractor's use of such facilities.

Article 11.  Submittals

11.1.1    The Subcontractor agrees to submit, in sufficient number, all shop or fabrication drawings, design and performance data, test, samples, operating and/or maintenance manuals for use in the

JG

performance of this Subcontract as directed by the Contractor within thirty (30) days after execution of the Subcontract unless directed to do so within a lesser period by the Contractor.

11.1.2   Approval of any of the foregoing by the Contractor, the Owner or the Owner's authorized agent shall under no circumstances alter the requirements of the Subcontract Documents or constitute acceptance by the Contractor of any method, material or equipment not acceptable to the Owner or the Owner's authorized agent.

11.2   The Subcontractor agrees that the cost of any of the foregoing required hereunder is included in the amount of this Subcontract.

Article 12.   Materials Furnished by Contractor

12.1   It is hereby agreed by Subcontractor, if furnishing labor only for the finishing, installation or erection of materials furnished by Contractor, that the following costs, without restriction, are to be fully recovered by Contractor from Subcontractor:

a)   the full cost of material required to replace due to damage by the Subcontractor;

b)   the full cost of removing rejected materials when not properly installed or supplied by Subcontractor; and

c)   the full cost of altering any work of Subcontractor not accepted by the Owner's authorized agent.

Article 13.   Cutting, Patching and Blocking

13.1   The Subcontractor shall obtain Contractor's approval for and shall do any cutting, patching and blocking necessary to complete this work hereunder, and such work shall be performed to the same standards and shall match any work performed pursuant to the Contract Documents.

Article 14.   Maintenance of Site

14.1.1   Subcontractor agrees to keep the premises and all finished work clean free of dirt, rubbish, debris and any other waste materials at all times and to remove from the site all scrap and waste materials resulting from work under the Subcontract within twenty-four (24) hours after receipt by him from Contractor of written notice to do so.  Subcontractor shall be responsible for the removal and disposal of all receptacles and containers into which same is deposited.  Upon the completion of the various portions of work, the Subcontractor shall broom clean its work area.

14.1.2   The Subcontractor shall properly cover and protect the work of others from damage due to the performance of the work required under this Subcontract, and Subcontractor shall promptly clean, restore, or pay for the replacement of any such work damaged or soiled in the performance of its own work.

14.2   Subcontractor further agrees to furnish protection at all times for its own work and all materials stored for use under this Subcontract and to bear and be solely liable for all loss and/or damage of any kind to or in connection with said work and materials at any time prior to the final completion and acceptance thereof, unless said loss or damage is caused solely by the negligence of the Contractor and is subject to recovery under such applicable insurance policies as may be in effect.

14.3   If the Subcontractor fails to promptly perform such cleaning, protection and/or repair as directed by the Contractor, the Contractor shall have the right to proceed with such cleaning, protection and/or repair, and Subcontractor, on demand therefor, shall repay to the Contractor the actual cost of such work plus a reasonable percentage to cover Contractor's supervision, insurance, tax and overhead.

Article 15.   Payment to Suppliers and Sub-subcontractors

15.1   Prior to performing any Work concerning, relating to, or under this Subcontract and whenever so requested by Contractor, Subcontractor shall disclose, in writing, to Contractor, the names, addresses, telephone numbers, a description of the labor and/or material to be provided, the contract amount, payments made and balances due for all sub-subcontractors, materials suppliers and/or other persons and entities that have or will, supply or transport goods, materials, equipment,

machinery, fixtures, services or labor under any agreement with Subcontractor for the Subcontractor's Work under this Subcontract. In addition, the Subcontractor may, prior to performing any Work concerning, relating to, or under this Contract, be required by Contractor to provide a copy of all such agreements to Contractor. The disclosures required by this paragraph is a condition precedent to Subcontractor performing any work at the Project, but, in no event, shall the Contractor's failure to enforce this requirement be deemed to be a waiver of Contractor's right to so demand disclosure by Subcontractor.

15.2    Subcontractor shall pay for all materials and supplies furnished and for all work, labor and services performed as required under this Subcontract, shall execute partial and final releases of liens upon demand by the Contractor, and shall indemnify Contractor and Owner against and save them and the premises harmless from any and all claims, demands, liens or suits, for all such material and supplies purchased and for all work, labor and services performed by others, including reimbursement of attorney's fees and any other costs of defense incurred.

15.3    The Subcontractor agrees and covenants that money received for the performance of this Subcontract shall be used solely for the benefit of persons and firms supplying labor, materials, supplies, tools, machines, equipment, plant or services exclusively for this Project in connection with this Subcontract; that money paid to the Subcontractor pursuant to this Subcontract shall immediately become and constitute a trust fund for the benefit of said persons and firms, and shall not in any instance be diverted by Subcontractor to any other purpose until all obligations and claims arising hereunder have been fully discharged.

Article 16.  Warranties

16.1    The Subcontractor warrants and guarantees the work and materials which he performs or furnishes under this Subcontract and agrees to make good, at its own expense, any defect in materials or workmanship which may occur or develop prior to Contractor's release from responsibility to the Owner.

16.2    The Subcontractor further agrees to assume, as a direct obligation to the Contractor and/or the Owner, any guarantees or warranties which would otherwise be the responsibility of the Contractor or other subcontractors, when such guarantees or warranties have been cancelled as a result of the Subcontractor's operations in performance of this Subcontract.

16.3    Without limitation of the foregoing or other obligations of the Subcontractor provided for in the Subcontract Documents, immediately upon the Contractor's demand, the Subcontractor, at its own expense, shall repair, replace, restore or rebuild, at the Contractor's option, any work in which defects in materials or workmanship may appear, or which is otherwise not in conformance with the other warranties of the Subcontractor hereunder, or to which damage may occur because of such defects or lack of conformance, within one (1) year or such longer period as required by the Specifications from the date of the Owner's and architect's final acceptance of the project. If the Subcontractor fails to comply, the Contractor may correct such defect or lack of conformance, as the case may be, and the Subcontractor shall immediately reimburse the Contractor thereof.

Article 17.  Time of Performance

17.1.1    Time is of the essence.

17.1.2    The Subcontractor agrees to keep himself thoroughly informed as to the overall progress of the Project; to commence and to prosecute the work undertaken hereunder in a prompt and diligent manner whenever such work, or any part of it, becomes available, or at such time or times as the Contractor may direct, so as to promote the general progress of the entire Project; and Subcontractor shall not by delay or otherwise interfere with or hinder the work or progress of the Contractor or any other subcontractor.

17.1.3    Upon Contractor's request, Subcontract shall furnish such evidence as the Contractor may require relating to Subcontractor's ability to fully perform this Subcontract in the manner and within the time established as herein provided.

17.1.4    The Subcontractor also shall furnish upon request by the Contractor from time to time cash flow

Copy - Distribution Prohibited

expenditures for labor for its work (which shall include the estimated payroll for each of the trades it will employ by subcontract).

17.1.5 The Contractor exclusively shall control scheduling and coordination of the work, including the periodic updating and re-sequencing thereof, if any and the Subcontractor shall comply therewith.

17.1.6 The Contractor shall have the right to schedule other work at the same time and in the same areas as the Subcontractor's work.

17.1.7 At its sole discretion, the Contractor may schedule work during a time of and from time to time during winter conditions. The determination of when winter conditions exist shall rest exclusively with the Contractor.

17.2 The Subcontractor agrees to notify the Contractor of its objection to, or inability to comply with, any directive, notification, order, schedule or revisions thereof dealing with the time or times of its performance hereof, and to do so within three (3) days of Contractor's issuance thereof.

17.3 Specific requirements as to the time of performance shall take precedence over the more general requirements of this article.

17.4.1 In the event of any failure of Subcontractor to complete its work within the required time, the Subcontractor hereby agrees to reimburse the Contractor for any and all actual and/or liquidated damages that may be assessed against the Contractor by the Owner, which are directly or indirectly attributable to work caused by the Subcontractor's failure to comply fully with the foregoing provision.

17.4.2 Subcontractor also agrees to pay to the Contractor such damages as the Contractor may sustain by reason of any delay, directly or indirectly, attributable to or caused by the Subcontractor, including, but not limited to, recovery of Contractor's overhead and expense related to the managing and supervising of the prime Contract work.

17.5 In the event Subcontractor's performance of this Subcontract is delayed or interfered with by acts of the Owner, Contractor or other Subcontractors, Subcontractor may submit to the Contractor a written request for an extension of time for the performance of same.

17.6 At the request of the Contractor, the Subcontractor shall perform certain parts of the work before other parts, add extra manpower, or order overtime labor in order to comply with the project schedule, all without increase in the Subcontract price, unless otherwise specifically provided in the General Conditions.

17.7 If in order to expedite the final completion of the Work, Contractor requests Subcontractor to work overtime at a time when Subcontractor is not in default in any of the provisions of this contract, Subcontractor agrees to work said overtime and it is understood that Contractor shall pay Subcontractor therefore only the Subcontractor's extra labor costs over the rate for regular time during the period of such overtime, including additional insurance and taxes incurred by Subcontractor with respect thereto. Time slips covering said overtime must be submitted to Contractor's authorized agent for checking and approval. No commissions, fees, overhead, or profit is to be charged by or allowed to Subcontractor for or on account of said overtime. However, if Subcontractor shall at any time be behind in the work herein contemplated, or if in the opinion of the Contractor, Subcontractor is delaying the progress of the work necessary to complete the Project, then and in either such event, if requested by Contractor, Subcontractor shall cause to be performed overtime work as may be necessary to keep abreast with the general progress of the work at the Project, and in either such event the cost and expense of such overtime shall be borne entirely by Subcontractor.

17.8 If the Subcontractor shall be delayed in the prosecution or completion of the Subcontract Work by the act, neglect or default of the Contractor, the Architect, the Owner, or any other subcontractor employed by the Contractor upon the project, or by any damage caused by fire or other casualty for which the Subcontractor is not responsible, or by general strikes or lockouts caused by acts of employees, then the time fixed by the Contractor for the completion of the Subcontract Work shall be extended for such period of time as shall be determined and fixed by the Contractor as the time lost by reason of any or all of the causes aforesaid. This shall be Subcontractor's sole and exclusive remedy for such delay and in no event shall Contractor be responsible for any increased

JG

costs, charges, expenses or damage of any kind resulting from any such delays.  No allowance of an extension of time for performance of this Subcontract will be granted, unless a claim therefor is presented to the Contractor in writing and within forty-eight (48) hours of the occurrence of the cause thereof, and then only if the Contractor agrees to such an extension of time in its sole discretion. Time elapsed between Work Orders, phases of the Work or construction of individual houses does not constitute a delay, interruption or suspension.

Article 18.  Changes in Work

18.1    Contractor may at any time, by written order and without notice to surety, make changes in the work herein contracted for and the Subcontractor shall proceed with the work as directed.  If said changes cause an increase or decrease in the cost of performance or in the time required for performance an equitable adjustment shall be made and this Subcontract shall be modified in writing accordingly.  Nothing herein shall excuse the Subcontractor from proceeding with the prosecution of the work as changed.

18.2    For any adjustments by Change Order, Subcontractor will be permitted to charge ten percent (10%) as a reasonable allowance for a combined overhead and profit mark-up for work not involving Sub-subcontractors and five percent (5%) as a reasonable allowance for a combined overhead and profit mark-up for Work by Sub-subcontractors.

18.3    If Contractor and Subcontractor are unable to agree on the price for the changed work, Contractor shall have the right to order Subcontractor to proceed with the changed work on a time and material basis.  When changed work, other than overtime ordered by Contractor, is performed on a time and material basis, unless otherwise limited by the agreement between Owner and Contractor, Subcontractor shall receive: (1) the actual cost of labor including applicable insurance and payroll taxes, based upon the Approved Labor Rates, plus ten percent (10%) for overhead and profit, and (2) the actual cost of material and equipment, plus ten percent (10%) for overhead and profit.  In performing changed work on a time and material basis, if such work requires that Subcontractor use a subcontractor, Subcontractor shall limit its subcontractor as set-forth above and Subcontractor shall be limited to a mark-up of its subcontractor's total of five percent (5%) for Subcontractor's overhead and profit.  Whenever changed work is performed on a time and material basis, Contractor shall have the right to audit Subcontractor's books, records, documents and other evidence bearing on the costs and expenses of the Subcontractor for such changed work.

18.4    No extension to Subcontractor's time of performance as a result of changed work shall be allowed under this Subcontract unless authorized by Contractor in writing.  The value of the changed work requested by Subcontractor shall include all costs for delay and disruption to Subcontractor's work.  Subcontractor shall not be entitled to any additional compensation for delay and disruption caused by the changed work unless such costs are requested and approved by the Owner.  In no event, shall Subcontractor be entitled to compensation for the collective impact of changed work.

Article 19.  Claims

19.1    The Subcontractor agrees to make any claims to the Contractor for damages or additional compensation based on alleged extra work, changed conditions or any other grounds within three (3) days of the discovery of the condition causing the need for additional compensation or damages or within sufficient time (48 hours prior to the amount of time set forth in the notice requirement in the Contract between Contractor and Owner for like claims) to permit Contractor to advise the Owner in the manner provided in the Contract Documents for like claims, whichever is shorter.  The Contractor will not be liable to the Subcontractor on account of any claim not timely or properly presented or until it is allowed by the Owner.  Payment by Owner on any claims by Subcontractor is a condition precedent to payment by Contractor on any claims of Subcontractor.

19.2    The Subcontractor agrees that any liability of the Contractor to the Subcontractor on any claim of any sort by the Subcontractor against Contractor arising in whole or in part out of any act, omission, default, order, directive, decision or change by the Owner, or which could be the subject of a claim by the Contractor against the Owner, shall be liquidated and limited to whatever the

Contractor actually receives from the Owner, if anything, as a result of the presentation of a claim based thereon to the Owner, and the Subcontractor shall have no other or further claims whatsoever against the Contractor based thereon or in any way related thereto. Any claim prosecuted hereunder shall be subject to the sole direction and control of the Contractor.

19.3   If the Subcontractor encounters any condition which forms the basis of a claim for extra compensation or time, or any other type of claim, including but not limited to those conditions which are (1) subsurface or otherwise concealed physical conditions which differ materially from those indicated in the Contract Documents or (2) unknown physical conditions of an unusual nature, which differ materially from those ordinarily found to exist and generally recognized as inherent in construction activities of the character provided for in the Contract Documents, it shall be its duty to give written notice to the Contractor prior to commencing any work involving said condition and no later than three (3) business days after encountering the condition so the Contractor may inspect said condition and take such steps as Contractor deems necessary. In the absence of such notice to the Contractor, Subcontractor shall be fully liable for any and all expense, loss or damage resulting from said condition. The Contractor will promptly investigate such conditions and, if they differ materially and cause an increase or decrease in the Subcontractor's cost of, or time required for, performance of any part of the Work, will recommend an equitable adjustment in the Subcontract Sum or Subcontract Time, or both. If the Contractor determines that the conditions at the site are not materially different from those indicated in the Contract Documents and that no change in the terms of the Subcontract is justified, the Contractor shall so notify the Subcontractor in writing, stating the reasons.

19.4   It is also agreed that Subcontractor shall not be entitled to any additional payment or compensation under this Subcontract without the express written approval or Contractor. No officer, employee or agent of Contractor is authorized to direct any Extra Work by oral order except minor changes in the work not involving extra cost or time.

Article 20.  Disputes

20.1.1   In the event of any dispute between the Contractor and the Owner which involves the work required to be performed by Subcontractor under this Subcontract, or in the event of any dispute between Contractor and Subcontractor which involves a claim against the Owner for either additional compensation and/or an extension of time under the Contract Documents, Subcontractor agrees to be bound to Contractor and Contractor agrees to be bound to Subcontractor to the same extent that Contractor is bound to the Owner by the terms of the Contract Documents and by all decisions or findings made thereunder by the persons so authorized in the Contract Documents, or by an administrative agency or court of competent jurisdiction, whether or not Subcontractor is a party to the proceedings before said person, agency or court.

20.1.2   If any dispute or claim is prosecuted or defended by the Contractor, and Subcontractor is not directly a party or litigant, Subcontractor agrees to cooperate fully with Contractor and shall pay or reimburse Contractor for all expenses and costs, including reasonable attorney's fees, incurred in connection therewith to the extent of the Subcontractor's interest in such claim or dispute.

20.1.3   It is expressly understood and agreed in connection with the determination of such claim or disputes that Contractor shall never be liable to Subcontractor to any greater extent than Owner is liable to Contractor.

20.2   In the event of any claim or dispute between Contractor and Subcontractor, it is further specifically agreed by the parties hereto that no claim shall interfere with the performance work required to be performed under this Subcontract.

Article 21.  Default

21.1.1   In the event the Subcontractor fails to comply, or becomes unable to comply, or with reasonable probability (as determined solely by Contractor) will become unable to comply, with any of the provisions of this Subcontract; or in the event Subcontractor fails at any time to supply a sufficient number of properly skilled workmen with sufficient materials, equipment or plant of proper quality

JG

or fails in any respect to prosecute the work with promptness and diligence; or causes by any action or omission a stoppage of or delay in the work of the Contractor or other subcontractor of Contractor; or in the event Subcontractor abandons its work or any part thereof; and such failure, inability or deficiency (as determined solely by Contractor) is not corrected within one day after written demand by the Contractor to the Subcontractor; the Contractor may, in addition to and without prejudice to any other right or remedy, take over and complete the performance of the Subcontract, at the expense of the Subcontractor; or the Contractor may, without taking over the work, immediately and without notice to Subcontractor, furnish the necessary materials and labor through itself or others, to remedy the situation, all at the expense of the Subcontractor.

21.1.2   The parties hereto further agree that any of the following shall, at the option of the Contractor, constitute inability to comply with the provisions of this Subcontract for purposes of this article:

    a)    the filing of a petition in bankruptcy or a petition for the appointment of a receiver by or against the Subcontractor;

    b)    the insolvency of the Subcontractor or its inability to meet its debts as they mature;

    c)    the establishment of a receivership or any committee of creditors involving Subcontractor's business or assets, or the making of an assignment for the benefit of Subcontractor's creditors; or

    d)    the failure or refusal of Subcontractor to respond to any written order or notice duly issued by the Contractor.

21.1.3   Subcontractor hereby waives any and all defenses, claims or causes of action against Contractor based in whole or in part on the contention that Subcontractor would have been able to comply with the Subcontract.

21.2.1   Upon any action by the Contractor pursuant to this article, the Subcontractor shall not be entitled to further payment on this Subcontract until the work has been completed and accepted by the Owner and payment therefore has been received by the Contractor from the Owner.

21.2.2   If the expense incurred by the Contractor exceeds the unpaid balance due, the Subcontractor agrees to promptly pay the difference to the Contractor together with interest thereon at the rate of the prime rate plus 2% per annum until paid, and the Contractor shall have a lien upon all material, tools, and equipment taken possession of to secure the payment thereof.

21.2.3   With respect to expenses incurred by the Contractor pursuant to this article, it is hereby agreed that the costs and expenses chargeable to the Subcontractor as herein before provided shall include, without restriction, the cost of materials, labor, subcontracts, purchase orders, transportation, equipment and expense thereon, supplies, services, insurance, taxes, appliances, tools, utilities, power used or consumed, supervision, administration, job overhead, travel, attorney's fees, legal and accounting fees and expenses, Contractor's general overhead as allocated to the work and other costs and expenses incurred or sustained by the Contractor, plus ten percent (10%) profit on the actual cost of the work performed as well as on the amount of claims paid by the Contractor for Subcontractor or for which it deems itself liable.

21.3   In no instance will any action whatsoever taken by the Contractor pursuant to this Subcontract relieve or mitigate Subcontractor's full and absolute responsibility for any and all of the Subcontractor's obligations under this Subcontract.

21.4   In the event the employment of the Subcontractor is terminated by the Contractor for cause under this Article and it is subsequently determined by a court of competent jurisdiction or arbitrator(s) that such termination was without cause, such termination shall thereupon be deemed a Termination for Convenience under Article 22 and the provisions of Section 22.2 shall apply.

Article 22.   Suspension or Termination for Convenience

22.1   The Contractor may, without cause, order the Subcontractor in writing to suspend, delay or interrupt the Work in whole or in part for such period of time as the Contractor may determine. In such an event, the Contract Sum and Contract Time shall be adjusted for increases in the proven and documented cost and time caused by suspension. Adjustment of the Contract Sum shall not

include profit, special or consequential damages. No adjustment shall be made to the extent: (1) that performance is, was or would have been so suspended, delayed or interrupted by another cause for which the Subcontractor is responsible; or (2) that an equitable adjustment is made or denied under another provision of the Contract.

22.2    The Contractor may, at any time, terminate this Subcontract in whole or in part for the Contractor's convenience and without cause. Termination by the Contractor under this Paragraph shall be by notice of termination delivered to the Subcontractor specifying the extent of termination and the effective date of such termination, the Subcontractor shall recover as its sole remedy payment for work properly performed in connection with the terminated portion of the work prior to the effective date of termination and for items properly and timely fabricated off the Project site, delivered and stored in accordance with the Contractor's instructions. The Subcontractor hereby waives and forfeits all other claims for payment and damage, including, without limitation, anticipated profits.

**Article 23. Coordination**

23.1    The Subcontractor agrees to perform the work called for in this Subcontract in such a manner that he will not injure or damage any other work performed by the Contractor or any other subcontractor.

23.2    The Subcontractor further agrees to cooperate with the Contractor and other subcontractors whose work might interfere with the Subcontractor's work and to prepare sketches and drawings as directed, and/or to participate in the preparation of coordinated drawings in areas of congestion, specifically noting and advising the Contractor of any such interference.

23.3.   The Subcontractor agrees to have a representative present at regularly scheduled jobsite coordination meetings. This representative must be a principal of the company or designated project manager who has the authority to comply with all scheduling and other requests of the General Contractor. It is further agreed that the Subcontractor's representative shall appear promptly at the designated meeting time. If the Subcontractor fails to attend these meetings on a timely basis, the Contractor shall have the right to declare the Subcontractor in default of this Subcontract, and seek all legal remedies in accordance with the terms of this Subcontract.

**Article 24. Indemnification**

24.1    To the fullest extent permitted by law, Subcontractor agrees to indemnify, hold harmless and defend **Guidi Homes, Inc. and General Contractor, Construction Manager, Prime Contractor, Owner, Architect, Engineer, Partner and Joint Venture** and their agents, employees, representatives, officers, directors, stockholders, members, managers and parent, subsidiary and affiliated companies (the "Indemnified Parties") from and against any and all liability for loss, damage or expense for which the Indemnified Parties may be held liable by reason of injury (including death) to any person (including Subcontractor's employees) or damage to any property of whatsoever kind or nature arising out of or in any manner connected with the work to be performed for the Indemnified Parties (including, but not limited to, work performed under this contract, work performed under Change Order, or any such other work performed for or on behalf of the Indemnified Parties, whether performed at the site or not or in any way connected with the use, misuse, erection, maintenance, operation or failure of any machinery or equipment whether or not such machinery or equipment was furnished, rented or loaned by any of the Indemnified Parties, even for and if caused in whole or in part by any act, omission, or negligence of the Indemnified Parties. It is expressly understood and agreed that the indemnity contained in this paragraph covers claims by Subcontractor's employees and that Subcontractor expressly waives any defense to this indemnification obligation which may arise under the Workers' Compensation Act of any State. In addition, Subcontractor shall defend the Indemnified Parties against any claim which may potentially give rise to indemnification of the Indemnified Parties, even if such claim alleges that the Indemnified Parties are wholly or partially at fault for causing the loss. If Indemnification for the Indemnified Parties' sole negligence is expressly prohibited by

Law, such defense shall continue until it is conclusively established by a court of competent jurisdiction that: 1) the Indemnified Parties are solely liable for causing the bodily injury or property damage alleged; and 2) that neither Subcontractor nor its employees nor any Subcontractor to Subcontractor is liable; at which time the Indemnified Parties will absorb all costs of defense.  It is further expressly agreed that Subcontractor assumes the fullest extent of all obligations to indemnify and defend all parties whom **Guidi Homes, Inc.** is obligated to indemnify and defend in **Guidi Homes, Inc.'s** contract with General Contractor, Construction Manager, Prime Contractor, Owner, Architect, Engineer, Partner and Joint Venture (whether or not such obligations may extend to items beyond those addressed in this Agreement).

If there are any damages or claims of any kind or nature unsettled when the subcontract work is finished, the final payment by **Guidi Homes, Inc.** shall be deferred until all such claims shall have been adjusted or suitable coverage or indemnity acceptable to Guidi Homes, Inc. is provided by Subcontractor or Subcontractor's insurance carrier.

Subcontractor and **Guidi Homes, Inc.** further agree that the Laws of the Commonwealth of Pennsylvania shall apply to the construction and application of the Indemnification and Hold Harmless Agreements set forth above

24.2     In the event and to the extent that a claim is made by an employee of Subcontractor against an Indemnified Party hereunder, the intent of this Article is that Subcontractor shall and it hereby agrees to indemnify Owner, Architect, Contractor and their parent, subsidiary, or affiliated companies and each of their agents, officers, directors, employees and assigns to the same extent as if the claim was made by a non-employee of Subcontractor.  Accordingly, in addition to the above provisions, and in order to render the parties' intent and this indemnity agreement fully enforceable, Subcontractor, in an indemnification claim hereunder, hereby expressly and without reservation waives any defense or immunity it may have under any applicable Worker's Compensation Laws or any other statute or judicial decision disallowing or limiting such indemnification and consents to a cause of action for indemnity.  Said waiver and consent to indemnification is made irrespective of and specifically waiving any defense or immunity under any statute or judicial decision disallowing or limiting such indemnification.

24.3     The Subcontractor shall bear any expense of an Indemnified Party because of any claim or other matter indemnified against hereunder, including reasonable attorney's fees and court costs in the defense of, or preparing for the defense against, any such claim, even if such claim or any lawsuit arising therefrom is groundless, false or fraudulent.  If any such claim has not been settled or discharged when the Work is finished, final settlement between the Contractor and the Subcontractor and final payment of the Subcontract Price and the acceptance of the Work shall be deferred until any such claim is paid or settled or the Subcontractor provides a bond, acceptable to the Contractor, in its sole discretion, to satisfy such claim.  At the request of any Indemnified Party, Subcontractor shall retain an attorney to represent such Indemnified Party in the defense of any such claim, provided, however, that any attorney employed in such defense must be satisfactory to such Indemnified Party.

24.4     The parties hereby agree that the Contractor shall not be liable for any loss or casualty incurred or caused by the Subcontractor.  The Subcontractor shall maintain full and complete insurance on its work until final acceptance of the Work.  The Subcontractor assumes all risk of loss for all its work regardless of whether the Subcontractor had previously been paid for same.  Contractor is not responsible to provide any service for the Subcontractor's benefit, and is not liable for any loss or damage to the Subcontractor's Work.

24.5     In addition to the above, Subcontractor shall indemnify and hold harmless the Indemnified Parties for all damages, losses, or claims that arise as a result, in whole or in part, of the negligence, errors, omissions, or failure to perform by the Subcontractor, his employees, his agents or his subcontractors.  The Subcontractor shall indemnify and hold harmless the Owner for all damages, losses, or claims, including related attorney fees, that arise as a result, in whole or in part, of the

breach of this Agreement or any implied covenants deemed to be applied thereto, intentional acts, omissions, or other failures to perform by the Subcontractor, his employees, his agents or his subcontractors.

Article 25.  Elimination or Reduction of Work

    25.1    In the event of elimination or reduction of the work to be performed under this Subcontract by reason of termination or modification of the Subcontract Documents or a change in the work to be done thereunder, either in accordance with the terms of the Contract or the Subcontract Documents or by default by Owner, Subcontractor shall not be entitled to recover from Contractor more than its fair and equitable portion of any sums received by Contractor for work done or materials supplied by this Subcontractor on this Subcontract.  The rights and claims of the Contractor, other subcontractors and third parties shall be taken into consideration in determining Subcontractor's fair and equitable share.

Article 26.  Labor Harmony

    26.1    The Subcontractor accepts complete responsibility to maintain labor harmony with all trades working on this project during the performance of Subcontractor's Work.

Article 27.  Permits and Compliance with Law

    27.1    Subcontractor shall obtain and pay for all permits, licenses and official inspection made necessary by its work and shall comply with all laws, ordinances and regulations bearing on the work required under this Subcontract.

    27.2    Without limitation of any other provision hereof, if the Subcontractor performs any Work which is contrary to such laws, ordinances, codes, rules and regulations, he shall make all changes as required to comply therewith and bear all costs arising therefrom without additional reimbursement.

Article 28.  Independent Contractor

    28.1    The Subcontractor certifies that he is "an independent Contractor" subject, as an employer, to all applicable statutes and regulations with respect to such status.

Article 29.  Employees

    29.1    The Subcontractor shall not employ any person in performance of this Subcontract whose employment might be reasonably objected to by the Contractor or Owner and hereby agrees to promptly remove from the Project any such person or party.

Article 30.  Notice

    30.1.1    Written notice, where required by the terms of this Subcontract, may be accomplished by personal delivery of said notice or by use of the United States mail or a facsimile communication.  The written notice shall become effective upon the date stated therein, or, if no such date is stated, upon the date upon which delivery is complete.

    30.1.2    Personal delivery is complete when the notice is delivered to the Subcontractor or its representative at the Project or at the office address of the Subcontractor appearing in this Subcontract.  The Subcontractor shall, at all times during its work on this Project, have a representative authorized to receive written notices present on the Project site during all normal working hours.  In the absence of such a representative, personal delivery is complete when the notice is delivered to any of its subcontractors, supervisors or workmen, or in their absence, left in a conspicuous place on the Project site in the area of Subcontractor's work.

    30.1.3.    If facsimile is used, completion of the facsimile will have a confirmation notice attached thereto, to indicate that the fax has been sent in its entirety, and shall have a date reflected thereon.

    30.1.4    When regular or overnight mail is used, delivery is complete for the purposes of paragraph 30.1.1 on the date first occurring among the following: a) on the day the communication is received by

Copying Prohibited

Subcontractor evidenced by a return receipt furnished by the United States Post Office Department or by any recognized messenger or delivery service, or b) on the third day after the notice is deposited in the U.S. mail addressed to the Subcontractor at its last known address.

Article 31.  Superintendent

31.1    The Subcontractor shall at all times maintain a qualified and skilled superintendent or foreman at the site of the work who shall be satisfactory to the Owner, the Owner's authorized agent and/or the Contractor.  Such superintendent or foreman shall be duly and legally authorized to represent and act for the Subcontractor with respect to all matters in connection with or arising out of work under this Subcontract.

Article 32.  Subcontractor's Dealing with Owner

32.1    It is agreed that all of Subcontractor's dealings with the Owner's authorized agent, the Owner, or any other party named in the Contract Documents shall be through the Contractor.

32.2    The Subcontractor further agrees that he shall not make any agreement with the Owner's authorized agent or with the Owner pertaining to any phase of the performance of this Subcontract.

Article 33.  Owner Right to Reject Subcontract and Third Party Beneficiary Rights

33.1    The Subcontractor recognizes that the Owner may reject any proposed subcontractor or supplier for any reason and at its discretion prior to execution of the subcontract.

33.2    Nothing contained in the Subcontract Documents or Contract Documents shall create a contractual relationship between the Owner and any third parties; however, it is understood and agreed that the Owner is an intended third party beneficiary of all subcontracts, purchase orders, and other agreements between the Contractor and third parties.

Article 34.  No Commingling of Materials

34.1    To the extent that the materials or equipment is for a particular Work Order, the materials and equipment must be marked as such and must not be commingled with material or equipment for other portions of the project. No payments will be made for stored materials or equipment unless they are so designated and separate.

Article 35.  Contributions, Taxes and Insurance

35.1    The Subcontractor agrees to and does hereby accept full and exclusive liability for the payment of all contributions, taxes, insurance of any description whatever, now or hereafter imposed by any authority, which are measured by the wages, salaries or other remunerations paid to persons employed by Subcontractor on work performed pursuant to the terms of this Subcontract.

35.2    Subcontractor further agrees to and does hereby accept full and exclusive liability for the payment of all personal property taxes, inventory taxes, sales taxes, use taxes, excise taxes, fuel taxes, transportation taxes, franchise taxes, and all other taxes, and/or tax assessments in any manner whatsoever relating to the materials, supplies, tools, machinery, equipment and plant which may be purchased, acquired, rented or used by Subcontractor relating to all work performed under this Subcontract.

Article 36.  Insurance

36.1.1    Subcontractor shall provide and maintain at all times during the performance of this Subcontract Workmen's Compensation and Employer's Liability insurance for protection of Subcontractor's employees, as required by law; and insurance covering Public Liability, Property Damage and Subcontractor's Contractual Liability hereunder (including but not limited to all work performance and operation of automobiles, trucks and other vehicles, the values of which are itemized in Exhibit "C").

36.1.2    All insurance required hereunder shall be maintained in full force and effect in a company or companies satisfactory to Contractor, at the Subcontractor's expense, and until performance in full hereof has been accomplished and final payment has been issued in evidence thereof.  Further,



such insurance shall be subject to the requirement that Contractor must be notified by thirty (30) days written notice before cancellation of any such policy. In the event of the threatened cancellation for non-payment of premium, Contractor may pay the same for Subcontractor and deduct the said payment from amounts then or subsequently owing to the Subcontractor hereunder.

36.1.3   Certificates of insurance must be filed with the Contractor within thirty (30) days of the date of execution of this Subcontract or prior to commencement of work, whichever is earlier. No payment shall be considered due and owing hereunder until certificates of insurance satisfactory to the Contractor have been received in its office.

36.1.4   Subcontractors' liability policy shall be the primary policy and must list **Guidi Homes, Inc.** as additional insured, both Contractor and the Owner of the Project, as well as any additional entities listed in the relevant Work Order using the following language:

36.1.5   Subcontractor is required to report to Contractor in writing, any job related illness or accident within three (3) business days of illness or accident.

36.2   Subcontractor shall require its Sub-subcontractor to provide and maintain at all times during the performance of the Sub-Subcontractor's Subcontract, Workmen's Compensation and Employer's Liability insurance for protection of the Sub-Subcontractor's employees, as required by law; and insurance covering Public Liability Property Damage and Sub-Subcontractor's Contractual Liability under its Subcontract (including but not limited to all work performance and operation of automobiles, trucks and other vehicles, the values of which are itemized in Exhibit "C"). The insurance provided by the Sub-Subcontractor shall meet all of the requirements of this Subcontract.

36.3   In the event Contractor, in its sole discretion, determines that Subcontractor is not maintaining the insurance required by this Agreement, Contractor shall have the right to immediately terminate this Agreement without any notice to Subcontractor.

36.4   To the fullest extent permitted by applicable law, Subcontractor waives all subrogation rights against Contractor, Owner, and any of their agents and employees: (1) for damages caused by fire or other perils to the extent covered by property insurance provided under the Principal Contract, the Subcontract or other property insurance applicable to the Work, except such rights as they may have to proceeds of such insurance held by Owner or Contractor as fiduciary; and (2) for other claims to the extent arising out of a loss or claim covered by Subcontractor's liability, automobile or worker's compensation insurance. Subcontractor shall require of Subcontractor's sub-subcontractors, agents and employees by appropriate agreements, written where legally required for validity, similar waivers in favor of other parties enumerated herein. The policies shall provide such waivers of subrogation by endorsement or otherwise. A waiver of subrogation shall be effective as to a person or entity even though that person or entity would otherwise have a duty of indemnification, contractual or otherwise, did not pay the insurance premium directly or indirectly, and whether or not the person or entity had an insurable interest in the property damaged.

## Article 37.   Effective Date

37.1   The effective date of this Subcontract is intended by both parties to be the date indicated at the beginning of this Subcontract. The dates appearing by the signatures at the end of this document merely indicate the dates that the signatures were affixed.

## Article 38.   Waiver of Liens and Releases

38.1   If Contractor posts a bond guaranteeing payment for goods, materials, and equipment supplied, labor or services provided to the Project by Subcontractors, then Subcontractor agrees to waive its right to file a mechanics' lien and that no mechanics' liens, notices, or claims, or materialman's liens, notices, or claims, or any other liens or claims of any kind whatsoever will be filed, enforced, or maintained with respect to the goods, materials, and equipment supplied, labor or services performed pursuant to this Subcontract against the Project for which they are supplied or performed, or against the owner, real property, building, or other improvements of which the Project is a part, or any part or parts thereof or the appurtenances thereto by Subcontractor, its successors and assigns. If the bond posted by Contractor guarantees payment for goods, materials,



and equipment supplied, labor or services provided to the Project by sub-subcontractors, suppliers, materialman and other entities pursuant to a contract with Subcontractor, then Subcontractor shall obtain lien waivers from such sub-subcontractors, suppliers, materialman and other any other similarly situated entities, stating that liens may not be filed on the Project and provide written notice of this lien waiver provision to its sub-subcontractors, suppliers, materialman, and all other persons or entities acting by, through, or under it or them, prior to and before any labor or services are performed, or goods, materials, or equipment are supplied to the Project pursuant to this Subcontract.

38.2    If Contractor posts a bond guaranteeing payment for goods, materials, and equipment supplied, or labor or services performed by Subcontractor, then, in the event a mechanics' lien, notice, or claim, or materialman's lien, notice, or claim, or construction lien claim, or lien, or any other lien or claim of any kind whatsoever is filed, enforced, or maintained by Subcontractor and/or any of Subcontractor's sub-subcontractors, suppliers, materialmen, and all other persons or entities acting by, through, or under it or them, then Subcontractor shall defend, indemnify, and hold Contractor harmless from such liens and/or claims, and shall also cause said mechanics' lien, notice, or claim, or materialman's lien, notice, claim, construction lien claim, or other lien of any kind whatsoever, to be discharged in accordance with applicable law.  Subcontractor also agrees to pay and reimburse Contractor for all costs, expenses and attorney's fees incurred by Contractor in defending, responding to and/or discharging liens or claims filed by Subcontractor and/or any of Subcontractor's sub-subcontractors, suppliers, materialmen, and all other persons or entities acting by, through, or under it or them whenever a valid lien waiver is in place on a Project.

38.3    As a prerequisite to payment, Subcontractor agrees that it will execute, in a form satisfactory to owner, all documents required by Contractor that evidence, ensure, and guarantee that the Subcontractor has made payment for all Work performed in connection with this Subcontract, including, but not limited to, Releases and Partial Waiver of Liens, in consideration for each and every payment and up the date covered by the payment, whether partial or final.  Said Releases and Partial Waiver of Liens shall include, whenever so requested by Contractor, and in a form acceptable to Contractor, Partial Waiver of Liens and Release of claims, costs, expenses, fees, charges, changes, change orders, or change order requests that arise out of or relate to Subcontractor's Work performed from all contractors, suppliers, persons and/or entities that have, or will, provide labor, materials, equipment, machinery, fixtures, services, or labor under any agreement(s) with Subcontractor for the Subcontractor's Work under this Subcontract.  A sample Partial Lien Waiver and Release Form is attached hereto as Exhibit "E-2" to this Subcontract. Contractor reserves the right to modify the form of this Partial Lien Waiver and Release.

38.4    The Subcontractor, when required by the Contractor as a condition precedent to the making of final payment hereunder, shall furnish to the Contractor a full and complete release and discharge, in a form satisfactory to the Contractor, of all liens, claims and demands arising out of or relating to the Subcontract work and any and all materials furnished, work done and equipment used in connection therewith.  Furthermore, if, prior to final payment, the Owner or any party providing financing for the Project requests a release of liens from the Subcontractor, the Subcontractor shall execute and deliver such release of liens in a form satisfactory to the Owner or such other party.  A sample Final Lien Waiver and Release is attached hereto as Exhibit "F-2" to this Subcontract.

Article 39.  Applicable Law

39.1    The law of the Commonwealth of Pennsylvania, not including choice of law analysis, shall be applicable to this Subcontract and shall be used to decide any dispute related to this Subcontract.

Article 40.  Determination of Disputes

40.1.1    Any dispute between the parties related to this Contract shall be determined by the courts of the Commonwealth of Pennsylvania located in Montgomery County or, if the Contractor agrees in writing that the Owner is a party to the dispute, the venue required by the Contract Documents, with the exception noted in Section 40.1.2 below.  The Subcontractor hereby consents to the

JG

personal jurisdiction of that Court over it and agrees to accept service of process issuing from that Court. As part of the consideration given by the parties hereto, the parties mutually agree to waive their respective rights to a jury in any such matter.

40.1.2   If a dispute arising out of or relates to this Subcontract, or breach thereof, and if the dispute cannot be settled through pre-litigation negotiations, the Contractor and Subcontractor agree, at the Contractor's sole election, to subject the dispute to arbitration administered by the American Arbitration Association under its Construction Industry Arbitration Rules whereby a judgment on the award rendered by the Arbitrator(s) may be entered in any Court having jurisdiction thereof. Under such circumstances, the Arbitrator(s) shall have the exclusive power to determine issues of arbitrability. Such arbitration shall be final and binding upon the parties.

40.1.3   Pending final resolution of a dispute, except as otherwise agreed in writing, the Subcontractor shall proceed diligently with performance of the Work.

40.1.4   <u>Enforceability of Elections.</u> If the elections afforded Contractor in Section 40.1.1 or 40.1.2 hereof are not enforceable, then both parties shall be bound to arbitrate all disputes in which the disputed amount is less than Five Hundred Thousand Dollars ($500,000.00) and may litigate any dispute involving a higher amount.

40.1.5   <u>Venue.</u> Unless the Contractor agrees in writing that the Owner is a party to the dispute, so that the venue will be as required by the Contract Documents, the venue for any mediation, arbitration or litigation proceeding relating to Subcontractor's Work shall be in the county in which Contractor's home office is located.

Article 41. <u>Nondiscrimination in Employment</u>

41.1   UNLESS EXEMPT IN ACCORDANCE WITH EXECUTIVE ORDER 11246 OF SEPTEMBER 24, 1965, DURING THE PERFORMANCE OF THIS SUBCONTRACT, THE SUBCONTRACTOR AGREES AS FOLLOWS:

41.1.1   The Subcontractor will not discriminate against any employee, or applicant for employment because of sex, race, religion, color or national origin. The Subcontractor will take affirmative action to ensure that applicants are employed and that employees are treated during employment without regard to their age, sex, religion, color or national origin. The Subcontractor agrees to post in conspicuous places, available to the employees and applicants for employment, notices to be provided setting forth the provisions of the nondiscrimination clause.

41.1.2   The Subcontractor will, in all solicitations or advertisement for employees, placed by or on behalf of the Subcontractor, state that all qualified applicants will receive consideration for employment without regard to sex, race, religion, color or national origin.

41.1.3   If applicable, the Subcontractor will send to each labor union or representative of workers with which he has a collective bargaining agreement or other contract or understanding, a notice advising the said labor union or workers' representative of the Subcontractor's commitments under this section, and shall post copies of the notice in conspicuous places available to employees and applicants for employment.

41.1.4   The Subcontractor will comply with all provisions of Executive Order 11246 of September 24, 1965 and the rules, regulations and relevant orders of the Secretary of Labor.

41.1.5   The Subcontractor will furnish all information and reports required by Executive Order 11246 of September 24, 1965 and by the rules, regulations and orders of the Secretary of Labor, or pursuant thereto, and will permit access of his books, records, and accounts by the administering agency and the Secretary of Labor for purposes of investigation to ascertain compliance with rules, regulations and orders.

41.1.6   In the event the Subcontractor is in non-compliance with the nondiscrimination clauses of the Subcontract Documents or with any of the said rules, regulations or orders, this Subcontract may be canceled, terminated or suspended in whole or in part, and the Subcontractor may be declared ineligible for further government contracts or federally assisted construction contracts in accordance with procedures authorized in Executive Order 11246 of September 24, 1965 and such other sanctions as may be imposed and remedies invoked as provided in the said Executive Order

18 of 18



or by rules, regulations or orders of the Secretary of Labor, or as otherwise provided by Law.

41.1.7    The Subcontractors will include the provisions of Paragraph One (1) through Seven (7) in every Sub-Contract or Purchase Order unless exempted by rules, regulations and orders of the Secretary of Labor issued pursuant to Executive Order 11246 of September 24, 1965, so that such provisions will be binding upon each Sub-contractor or Vendor.  The Subcontractor will take such action with respect to any Sub-subcontract or Purchase Order as the administering agency may direct as a means of enforcing such provisions, including sanctions for noncompliance; provided however, that in the event the Subcontractor becomes involved in, or is threatened with, litigation with a Sub-subcontractor or vendor as a result of such direction by the administering agency, the Subcontractor may request the United States to enter into such litigation to protect the interests of the United States.

Copying Prohibited

# EXHIBIT "E"

Copying Prohibited

## MASTER AGREEMENT

Subcontract No:          Date:    1/1/13

CONTRACTOR:                                    SUBCONTRACTOR:

GUIDI HOMES, INC.                              J L Horgan Services LLC
925 Harvest Drive, Suite 220                   1213 Patty Circle
Blue Bell, PA  19422                           Lansdale, PA  19446
Telephone No. (215) 641-9280
Facsimile No. (215) 641-9088

### THE ATTACHED EXHIBIT "A" TERMS AND CONDITIONS ARE PART OF THIS SUBCONTRACT.

A.      Subcontractor's Responsibilities. The Subcontractor agrees to furnish all materials, labor, supervision, tools, equipment and supplies as necessary to provide your line of Work on various Projects authorized and defined in Subcontract Work Order(s) (hereinafter "Subcontract" or "Work Order") to be issued, executed, and made part of this Master Agreement (hereinafter "Agreement" or "Contract"). All Work shall be performed in accordance with the Contractor's Terms and Conditions, which are attached hereto and form part of this Agreement unless specifically modified by the Work Order(s). It is understood that in the event that Subcontractor performs Work without a Subcontract Work Order on behalf of Contractor, at Contractor's specific direction, the terms of this Agreement shall be binding upon both parties until such time as these terms are modified or expanded by Work Order. All work provided for in the above referenced Work Order(s), for and at the Project listed on the Work Order (hereinafter called the Project), shall be performed as shown and described in and in strict accordance with the Plans, Specifications, General Conditions, Special Conditions and Addenda thereto prepared by the Architect listed and with the terms and provisions of the General Contract between Contractor and the Owner  (hereinafter "General Contract") listed and in strict accordance with the above-referenced Work Order(s), and the Exhibits annexed hereto and made a part hereof. Subcontractor also agrees that any modification contained in any Work Order shall only apply to that particular Work Order and shall not apply to any other Work Order. This Master Agreement, subject to the terms of Exhibit A, carries forward in perpetuity until modified in writing by both parties, even if ownership of either company changes or the assets or liabilities of the company are assigned. The price and schedule shall be kept and monitored separately for each Work Order, and each Work Order shall have a separate Schedule of Values, Change Order numbering, schedule, start and completion date, warranty requirements, Application for Payment, and retainage. The language of this Agreement and the Contract Documents in whole shall apply to each Work Order.

B.      Subcontractor's Work. The Subcontractor's Work shall consist of the scope of Work set forth in the relevant Work Order. If the Contractor intends to use Subcontractor in the construction of a particular house, a separate Work Order must be issued for each separate house with the possible exception of the first phase of model houses.

C.      Subcontract Price. The sum to be paid by Contractor, out of funds received from the Owner, to the Subcontractor for the satisfactory performance and completion of the Work and of all of the duties, obligations and responsibilities of the Subcontractor under this Agreement and the other Contract Documents, shall be as stated in the executed Work Order(s) (hereinafter called the Price) and shall be subject to additions and deductions as herein provided.

        The Price includes all Federal, State, County, Municipal and other taxes imposed by law and based upon labor, services, materials, equipment or other items acquired, performed, furnished or used for and in connection with the Work, including but not limited to sales, use and personal property taxes payable by or levied or assessed against the Owner, Contractor or the Subcontractor. Where the law requires any such taxes to be stated and charged separately, the total price of all items included in the Work plus the amount of such taxes shall not exceed the Price.

1 of 2

When a price is given by the Subcontractor for the initial houses or model houses in the first phase of this project, those prices shall be held for a non-escalation period of twelve (6) months for that Work Order as well as each subsequent Work Order. The Contractor shall also have the right to demand pricing from the Subcontractor on the basis of a 6 month non-escalation period. Prior to entering into the Work Order for the first phase or any subsequent Work Order, Contractor may elect to use the pricing for a 6 month or 12 month non-escalation period. Once the Work Order has been executed by the Contractor, however, no further escalations will be permitted for any reason on that particular Work Order even if the non-escalation period has elapsed.

D.    <u>Insurance</u>. Unless modified by the Work Order, Subcontractor shall maintain the insurance policies and in the amounts set forth on Exhibit "C" attached hereto.

E.    <u>Terms and Conditions; Exhibits</u>. Exhibit "A," the Terms and Conditions attached to this Agreement, are made a part hereof. The Work Orders shall contain separate Exhibits. Exhibits "A" and "B" are attached hereto.

F.    IMPORTANT: THE EXECUTION OF THIS MASTER AGREEMENT DOES NOT OBLIGATE THE CONTRACTOR TO ENTER INTO WORK ORDERS WITH SUBCONTRACTOR ON EVERY PROJECT PERFORMED BY CONTRACTOR. THE CONSIDERATION GIVEN SUBCONTRACTOR BY CONTRACTOR FOR ENTERING THIS MASTER AGREEMENT SHALL BE THE SAME CONSIDERATION AS SET FORTH IN THE WORK ORDER FOR EACH PARTICULAR PROJECT.

IN WITNESS WHEREOF, the parties have executed this Subcontract effective as of the day and year first above written.

_____          _____
GUIDI HOMES, INC.                          (Subcontractor)

Copying Prohibited

<div align="center">

**EXHIBIT "A"**
**TERMS AND CONDITIONS**

</div>

These Terms and Conditions are an extension of the Contract Documents. This document is intended to be generic in nature. All of its provisions are subject to modification or revision in the individual Work Order(s).

Article 1. Definitions

1.1    The term "Contract" as used herein refers to the Contract between the Owner and the Contractor for construction of the Project.

1.2    The term "Contract Documents" as used herein refers to the "Contract" between the Owner and the Contractor, all plans, drawings, specifications, general conditions, supplemental general conditions, and special conditions, addenda, amendments, and/or instruments of like effect.

1.3    The term "Subcontract" as used herein refers to the Work Order, these Terms and Conditions, the Master Agreement, together with any exhibits, attachments or addenda incorporated herewith and referred to herein.

1.4    The term "Subcontract Documents" as used herein refers jointly and/or severally to the aforesaid Contract, Contract Documents and Subcontract.

Article 2. Duties of the Subcontractor

2.1    The Subcontractor is bound to the Contractor by the same terms and conditions and to the fullest extent by which Contractor is bound to the Owner under the Contract. In the event of any inconsistency between the terms and conditions of the Contract (including the General Conditions) and this Subcontract, the more restrictive provisions as applicable to the Subcontractor shall govern.

2.2    When requested to do so by the Contractor, Subcontractor agrees to submit a list of any proposed sub-subcontractors, and Subcontractor shall not delegate, or further subcontract to others the performance of any of its obligations or work required or contemplated by this Subcontract without prior written consent of the Contractor, which shall not be unreasonably withheld.

2.2.1  If Subcontractor enters into agreements with any sub-tier subcontractor, it shall require each sub-tier subcontractor to agree in writing to be bound by all provisions of the Subcontract Documents, including the Contract and the General Conditions, applicable to its work.

2.3.1  Subcontractor hereby warrants that he has investigated and familiarized himself with all laws and codes applicable to its work; with the availability, cost and suitability of personnel, materials, equipment, utilities, etc; with the prevailing wage scales, union benefits and working conditions, craft jurisdiction, existing labor agreements (as applicable); all site conditions and restrictions, underground conditions, prevailing weather and climatological conditions; and any other factors which may affect Subcontractor's work.

2.3.2  Subcontractor further agrees that Contractor shall not be liable to Subcontractor on any claim for additional payment or additional time or any claim whatsoever if such claims directly or indirectly result from Subcontractor's failure to investigate and familiarize itself with the conditions under which this Subcontract is to be performed.

2.3.3  Subcontractor warrants it has visited the site and has become familiar with all conditions at the site, including without limitation, the conditions described in the General Conditions.

2.3.4  Generally, the specifications describe Work which cannot be indicated on the drawings and indicate types, qualities and methods of installation of the various materials and equipment required for the work. It is not intended to mention every item of Work in the specifications which can be adequately shown on the drawings or to show on the drawings all items of Work described or required by the specifications even if they are of such nature that they could have been shown thereon. All materials or labor for Work which is shown on the drawings or is reasonably inferable therefrom as being necessary to produce a finished job shall be provided by the Subcontractor whether or not the Work is expressly covered in the specifications.

2.3.5  Subcontractor, before proceeding with any work under its Subcontract will accurately check and verify

<div align="center">1 of 18</div>

all previous and surrounding work done by others and determine the correctness of same. The Subcontractor shall field measure all work relating to its work. The failure of the Subcontractor to detect and disclose any existing discrepancies or nonconformities and report same to Contractor., in writing, before commencing its work shall relieve Contractor of any and all responsibility for same, and the Subcontractor shall be responsible and liable for all resulting damages, costs and expenses arising as a result of discrepancies and nonconformities that should have been discovered by the Subcontractor.

2.4   COORDINATION WITH OWNER'S SALES FORCES AND POTENTIAL OR ACTUAL PURCHASERS

2.4.1   Subcontractor hereby agrees for both it and its subcontractors to coordinate with Owner's Sales Forces in both the selection and change order process. Subcontractor and its Subcontractors shall provide samples of all selection materials as well as written materials relating to selections if so requested. They shall also provide to the Owner's Sales Forces pricing of any reasonably requested changes and shall explain such changes to any potential or actual purchasers upon request. All such requests shall be processed through Contractor unless otherwise directed by Contractor in writing.

2.4.2   Subcontractor and its Subcontractors shall also coordinate with purchasers on milestone activities including but not limited to (1) rough-in inspection, (2) electrical outlet placement walk-through, (3) mechanical vent placement walk through, (4) pre-closing final walk-through, (5) punchlist creation walk-through and (6) punchlist completion walk-through. To the extent that other walk-throughs or inspections with purchasers are necessary, such walk-throughs or inspections shall be scheduled through Contractor unless otherwise directed by Contractor in writing.

2.4.3   Subcontractor shall also be directly responsible to purchaser for any warranty obligations set forth in the Owner's Purchase and Sales Agreement unless otherwise detailed in the particular Work Order for that particular house. In addition, in the case of a "spec" or model home, Subcontractor shall also be directly responsible to Owner and any subsequent purchaser for any warranty obligations set forth in the Owner's standard Purchase and Sales Agreement unless otherwise detailed in the particular notice to proceed for that particular house.

Article 3.  Integration

3.1   This Subcontract constitutes the entire agreement between the parties and supersedes all proposals, correspondence, and oral agreements between the Subcontractor and Contractor, if any. Except as otherwise provided for herein, no changes, amendments or modifications of the terms hereof shall be valid unless reduced to writing and signed by the parties hereto.

Article 4.  Payment

4.1.1   Pursuant to the Contract Documents, Owner is obligated to pay Contractor in accordance with the terms specified in the Work Order.

4.1.2   Subcontractor hereby acknowledges that the Contractor has fully disclosed the Owner's manner of payment pursuant to the Contractor Subcontractor Payment Act, 73 P.S. Section 501, et seq.

4.1.3   Provided Subcontractor's rate of progress and general performance are satisfactory to the Contractor and provided that the Subcontractor is in full compliance with each and every provision of the Subcontract Documents, the Contractor will make payment to the Subcontractor within thirty (30) days after receipt of Subcontractor's invoice with a stated interest rate for late payments of not greater than Prime Rate as established by Commerce Bank.

4.1.4   PAYMENT FROM THE OWNER TO THE CONTRACTOR IS A CONDITION PRECEDENT TO PAYMENT FROM THE CONTRACTOR TO THE SUBCONTRACTOR PURSUANT TO THIS ARTICLE.

4.1.5   ON PENNSYLVANIA PROJECTS, IN CONSIDERATION FOR CONTRACTOR'S AGREEMENT TO ENTER INTO THE SUBCONTRACT, SUBCONTRACTOR HEREBY AGREES TO WAIVE ALL RIGHTS TO INTEREST ABOVE THE LEGAL RATE, PENALTIES AND/OR ATTORNEY'S FEES PROVIDED BY THE CONTRACTOR AND SUBCONTRACTOR PAYMENT ACT, 73 P.S. SECTION 501 ET SEQ.

Copy of Printed

4.1.6    ON PENNSYLVANIA PROJECTS, SUBCONTRACTOR HEREBY AGREES THAT, IF THE OWNER REQUIRES CONTRACTOR TO WAIVE ANY OR ALL OF ITS RIGHTS UNDER THE CONTRACTOR AND SUBCONTRACTOR PAYMENT ACT, 73 P.S. SECTIONS 501 ET SEQ., SUBCONTRACTOR HEREBY AGREES TO SIMILARLY WAIVE ITS RIGHTS UNDER THE ACT.

4.1.7    Subcontractor acknowledges that in the event payment is not made to Contractor for any reason including, but not limited to, default by the Owner, Subcontractor shall look exclusively to the Owner for payment of any and all funds due under this Subcontract. Subcontractor further agrees that delay in payment for non-payment by the Owner does not create any separate obligation of Contractor to pay regardless of the extent of the delay. Subcontractor has the right to pursue payment from the Owner if the Owner is delinquent in payment per this agreement.

4.1.8    Within ten (10) days of execution, the Subcontractor shall submit to the Contractor a complete and accurate schedule of values of the various parts of its work. This schedule, when approved by the Contractor, shall be used as the basis for making payments.

4.1.9    On a monthly basis, the Subcontractor shall submit a request for partial payment consistent with the schedule of values and representing a true and accurate estimate of the work completed during the immediately preceding pay period. Unless modified by Work Order, Subcontractor's invoice must be received by the Contractor by the 25th of the month for all work completed to date. When required by the Contractor, Subcontractor shall provide an accurate inventory of materials suitably stored at the job site. Each application shall be accompanied by such invoices, vouchers, waivers, releases, certifications and affidavits as may be required by the Owner and/or Contractor. The Subcontractor agrees that any application for payment not in compliance may be held over for processing at the beginning of the pay period following correction of such application, with or without notice to Subcontractor.

4.1.10   No partial payment shall constitute acceptance by the Contractor of the work or material for which the partial payment is made; nor shall any partial payment constitute a waiver of any right to require fulfillment of all the terms of this Subcontract. Contractor shall promptly advise the Subcontractor in writing if the Owner or Contractor disapproves of or is withholding all or any of a Request for Payment, including change orders. Even if Subcontractor disagrees with Contractor's disapproval, Subcontractor shall continue to perform all work under this agreement including that in dispute. The Subcontractor shall also take all reasonable steps necessary to ensure that there will be no work stoppage or delay on account of such disapproval. Both parties agree to endeavor to promptly resolve such disputes on an ongoing basis.

4.1.11   The Subcontractor hereby agrees to reimburse the Contractor in the event of overpayment, together with any costs and expenses including administrative costs and attorney's fees, which the Contractor may incur in securing recovery thereof.

4.2    Contractor expressly reserves the right to issue joint checks to Subcontractor and its materialmen, suppliers or subcontractors, or any of Subcontractor's creditors having potential lien rights and/or claims against the work, for any payments that are, or may become, due and owing by Contractor to Subcontractor under this Agreement.

4.3    The Contractor may deduct from amounts due or to become due to the Subcontractor on this Project any sum due or to become due to Contractor from the Subcontractor whether or not said sums are in any way related to this Subcontract or Project.

4.4    In the event Subcontractor is in default of or breaches or fails to comply with any provision of the Subcontract; or in the event that any person asserts, or threatens to assert, any lien or claim, against the Project, the Owner, the Contractor or any Surety arising from Subcontractor's performance of this Subcontract, the Contractor may, at its option, withhold out of any payments due or to become due to the Subcontractor a sum sufficient to completely protect and indemnify the Contractor and the Owner from all loss, damage and/or expense, including attorney's fees and litigation costs, until the condition requiring such measure has been remedied by the Subcontractor to the satisfaction of the Contractor. If the Contractor is compelled to expend monies in defending, discharging or otherwise disposing of any claim or lien in excess of retained or withheld sums, the Subcontractor shall, upon demand,

reimburse the Contractor for the excess amount so expended, including reasonable attorney's fees and costs incurred by Contractor incident to such defense and/or incidental to Contractor's collection from Subcontractor of such excess.

4.5     Notwithstanding anything to the contrary contained in this Subcontract, and without any limitation as to time, Contractor shall not be obligated to make payments to Subcontractor under this Subcontract:

      a)     when such payment will leave a balance which is less then the retained percentage plus an amount adequate to satisfy all obligations of the Subcontractor for labor, materials, tools, etc. furnished or to be furnished by Subcontractor in the performance of its work;

      b)     when Subcontractor is or with reasonable probability (as determined by the Contractor) may become unable to comply with or completely perform this Subcontract;

      c)     whenever the Contractor, in its sole discretion, shall determine that the Project is being or is in danger of being delayed by the Subcontractor;

      d)     pending satisfactory correction, replacement and/or restoration of deficient work, material, or supplies, or of any work rejected if not conforming with this Subcontract or the Subcontract Documents.

4.6     The Subcontractor agrees, as a condition precedent to payment hereunder, to furnish the Contractor with such partial and/or final releases and/or waiver of liens as the Contractor may from time to time request in the form set forth in Exhibit "E-2" hereof.

### Article 5. Final Payment

5.1     Final payment will be made within thirty (30) days after the Subcontractor's work has been completed to the satisfaction of the Owner and the Contractor, and the Contractor has received from the Owner written acceptance thereof together with payment in full for this portion of the work. Final payment is subject to Contractor's determination that all the requirements of the Subcontract have been met and discharged by Subcontractor. PAYMENT FROM THE OWNER TO THE CONTRACTOR IS A CONDITION PRECEDENT TO PAYMENT FROM THE CONTRACTOR TO THE SUBCONTRACTOR PURSUANT TO THIS ARTICLE.

5.2     No final payment shall constitute acceptance by the Contractor of the work or material for which the final payment is made, nor a waiver of any right to require fulfillment of all the terms of this Subcontract. The Subcontractor hereby agrees to reimburse the Contractor in the event of overpayment, together with any costs and expenses, including administrative costs and attorney's fees, the Contractor may incur in securing recovery thereof.

### Article 6. Financial Condition of Subcontractor

6.1     If at any time Contractor in its sole discretion shall determine that the Subcontractor's financial condition has become impaired or unsatisfactory, Subcontractor shall furnish additional security satisfactory to the Contractor within three (3) days after written demand by Contractor.

6.2     The Contractor, Owner's representatives and architect at all times shall have free access to the office, shops and yards of the Subcontractor to verify any information about the work to be performed by the Subcontractor.

### Article 7. Assignment

7.1.1     The Subcontractor will make no assignment of the proceeds of this Subcontract without the prior written consent of the Contractor, which consent shall not be unreasonably withheld.

7.1.2     The Contractor shall not be obligated to any assignee of the Subcontractor on account of payments at any time made in good faith to the assignor.

7.1.3     The Contractor shall not be liable to any assignee of the Subcontractor for any amount in excess of the net sums owing Subcontractor hereunder.

7.1.4     By making an assignment of the proceeds hereof, the Subcontractor waives any claims against Contractor resulting from Contractor's continued payment to assignees or former assignees, not

Copy ... hibited

withstanding notification to Contractor of termination of any such assignment.

7.1.5   By making an assignment of the proceeds hereof, Subcontractor agrees to assume full liability for the conveyance to assignees of any payments mistakenly, inadvertently, or otherwise made or addressed to Subcontractor and Subcontractor agrees to defend and hold harmless the Contractor from claim or action of any assignee related to this Subcontract.

7.2   The Subcontractor shall not assign or sublet this Subcontract or any part or interest therein without Contractor's prior written consent.  If Contractor so consents, such assignment is subject and subordinated to all labor preferences and other liabilities, actual or potential, as may be imposed on Contractor due to any obligation or liability of the Subcontractor.

7.3.1   Subcontractor agrees that its Subcontract is assigned by the Contractor to the Owner provided that:
  .1   assignment is effective only after termination of the Contract by the Owner for cause and only for those subcontract agreements which the Owner accepts by notifying the Subcontractor and Contractor in writing; and
  .2   assignment is subject to the prior rights of the surety, if any, obligated under bond relating to the Contract.

7.3.2   Upon such assignment, the Owner shall be responsible to the Subcontractor for those obligations of the Contractor that accrue subsequent to the Owner's exercise of any rights under this conditional assignment.

## Article 8.  Performance Bond and Labor and Material Bond

8.1   The Contractor shall have the right to require any Subcontractor to furnish bonds covering the faithful performance of the Subcontract and the payment of all obligations arising thereunder as well as lien discharge bonds pursuant to Waiver of Liens and Release Article detailed below.  The failure of the Subcontractor to furnish a bond within seven (7) days after having been given notice of such requirements by Contractor shall constitute sufficient cause for termination of this Subcontract without notice.

8.2   The Subcontractor's cost of the bond will be reimbursed by Contractor unless negotiated into the initial Subcontract Work Order amount.  If not, then Contractor will reimburse Subcontractor for proven premium costs without mark-up.

## Article 9.  Unit Price Basis

9.1   If the terms of this Subcontract provide for the payment of work performed on a unit price basis, the unit of measurement for payment shall be one for work certified.  Verification of weights or quantities will be furnished at the time of delivery.  In the event the parties fail to agree on the actual quantity performed, Contractor shall have the right to measure the quantity of work in place and make final settlement on the basis of such measurement.  Unit prices shall be the same for both additions and deductions.

## Article 10.  Equipment and Facilities

10.1   The Subcontractor shall provide at its own expense whatever tools; machines; equipment; plant; utilities; services' storage sheds; workshops; offices; first aid or emergency treatment facilities and any other facility he may deem necessary for the complete performance of all work required under this Subcontract, and shall remove any such installations and thoroughly clean and restore the site and premises at the completion of the work.

10.2   If the Subcontractor has occasion to utilize any of the facilities of the Contractor, when and if available, Subcontractor shall pay an equitable portion of the cost thereof.  The Contractor shall bear no responsibility for any loss or damage from any cause whatsoever arising from Subcontractor's use of such facilities.

## Article 11.  Submittals

11.1.1   The Subcontractor agrees to submit, in sufficient number, all shop or fabrication drawings, design and performance data, test, samples, operating and/or maintenance manuals for use in the

performance of this Subcontract as directed by the Contractor within thirty (30) days after execution of the Subcontract unless directed to do so within a lesser period by the Contractor.

11.1.2   Approval of any of the foregoing by the Contractor, the Owner or the Owner's authorized agent shall under no circumstances alter the requirements of the Subcontract Documents or constitute acceptance by the Contractor of any method, material or equipment not acceptable to the Owner or the Owner's authorized agent.

11.2   The Subcontractor agrees that the cost of any of the foregoing required hereunder is included in the amount of this Subcontract.

## Article 12. Materials Furnished by Contractor

12.1   It is hereby agreed by Subcontractor, if furnishing labor only for the finishing, installation or erection of materials furnished by Contractor, that the following costs, without restriction, are to be fully recovered by Contractor from Subcontractor:

a)   the full cost of material required to replace due to damage by the Subcontractor;

b)   the full cost of removing rejected materials when not properly installed or supplied by Subcontractor; and

c)   the full cost of altering any work of Subcontractor not accepted by the Owner's authorized agent.

## Article 13. Cutting, Patching and Blocking

13.1   The Subcontractor shall obtain Contractor's approval for and shall do any cutting, patching and blocking necessary to complete this work hereunder, and such work shall be performed to the same standards and shall match any work performed pursuant to the Contract Documents.

## Article 14. Maintenance of Site

14.1.1   Subcontractor agrees to keep the premises and all finished work clean free of dirt, rubbish, debris and any other waste materials at all times and to remove from the site all scrap and waste materials resulting from work under the Subcontract within twenty-four (24) hours after receipt by him from Contractor of written notice to do so. Subcontractor shall be responsible for the removal and disposal of all receptacles and containers into which same is deposited. Upon the completion of the various portions of work, the Subcontractor shall broom clean its work area.

14.1.2   The Subcontractor shall properly cover and protect the work of others from damage due to the performance of the work required under this Subcontract, and Subcontractor shall promptly clean, restore, or pay for the replacement of any such work damaged or soiled in the performance of its own work.

14.2   Subcontractor further agrees to furnish protection at all times for its own work and all materials stored for use under this Subcontract and to bear and be solely liable for all loss and/or damage of any kind to or in connection with said work and materials at any time prior to the final completion and acceptance thereof, unless said loss or damage is caused solely by the negligence of the Contractor and is subject to recovery under such applicable insurance policies as may be in effect.

14.3   If the Subcontractor fails to promptly perform such cleaning, protection and/or repair as directed by the Contractor, the Contractor shall have the right to proceed with such cleaning, protection and/or repair, and Subcontractor, on demand therefor, shall repay to the Contractor the actual cost of such work plus a reasonable percentage to cover Contractor's supervision, insurance, tax and overhead.

## Article 15. Payment to Suppliers and Sub-subcontractors

15.1   Prior to performing any Work concerning, relating to, or under this Subcontract and whenever so requested by Contractor, Subcontractor shall disclose, in writing, to Contractor, the names, addresses, telephone numbers, a description of the labor and/or material to be provided, the contract amount, payments made and balances due for all sub-subcontractors, materials suppliers and/or other persons and entities that have or will, supply or transport goods, materials, equipment,

<div style="padding-left:2em">

machinery, fixtures, services or labor under any agreement with Subcontractor for the Subcontractor's Work under this Subcontract. In addition, the Subcontractor may, prior to performing any Work concerning, relating to, or under this Contract, be required by Contractor to provide a copy of all such agreements to Contractor. The disclosures required by this paragraph is a condition precedent to Subcontractor performing any work at the Project, but, in no event, shall the Contractor's failure to enforce this requirement be deemed to be a waiver of Contractor's right to so demand disclosure by Subcontractor.

15.2   Subcontractor shall pay for all materials and supplies furnished and for all work, labor and services performed as required under this Subcontract, shall execute partial and final releases of liens upon demand by the Contractor, and shall indemnify Contractor and Owner against and save them and the premises harmless from any and all claims, demands, liens or suits, for all such material and supplies purchased and for all work, labor and services performed by others, including reimbursement of attorney's fees and any other costs of defense incurred.

15.3   The Subcontractor agrees and covenants that money received for the performance of this Subcontract shall be used solely for the benefit of persons and firms supplying labor, materials, supplies, tools, machines, equipment, plant or services exclusively for this Project in connection with this Subcontract; that money paid to the Subcontractor pursuant to this Subcontract shall immediately become and constitute a trust fund for the benefit of said persons and firms, and shall not in any instance be diverted by Subcontractor to any other purpose until all obligations and claims arising hereunder have been fully discharged.

</div>

Article 16.  Warranties

<div style="padding-left:2em">

16.1   The Subcontractor warrants and guarantees the work and materials which he performs or furnishes under this Subcontract and agrees to make good, at its own expense, any defect in materials or workmanship which may occur or develop prior to Contractor's release from responsibility to the Owner.

16.2   The Subcontractor further agrees to assume, as a direct obligation to the Contractor and/or the Owner, any guarantees or warranties which would otherwise be the responsibility of the Contractor or other subcontractors, when such guarantees or warranties have been cancelled as a result of the Subcontractor's operations in performance of this Subcontract.

16.3   Without limitation of the foregoing or other obligations of the Subcontractor provided for in the Subcontract Documents, immediately upon the Contractor's demand, the Subcontractor, at its own expense, shall repair, replace, restore or rebuild, at the Contractor's option, any work in which defects in materials or workmanship may appear, or which is otherwise not in conformance with the other warranties of the Subcontractor hereunder, or to which damage may occur because of such defects or lack of conformance, within one (1) year or such longer period as required by the Specifications from the date of the Owner's and architect's final acceptance of the project. If the Subcontractor fails to comply, the Contractor may correct such defect or lack of conformance, as the case may be, and the Subcontractor shall immediately reimburse the Contractor thereof.

</div>

Article 17.  Time of Performance

<div style="padding-left:2em">

17.1.1   Time is of the essence.

17.1.2   The Subcontractor agrees to keep himself thoroughly informed as to the overall progress of the Project; to commence and to prosecute the work undertaken hereunder in a prompt and diligent manner whenever such work, or any part of it, becomes available, or at such time or times as the Contractor may direct, so as to promote the general progress of the entire Project; and Subcontractor shall not by delay or otherwise interfere with or hinder the work or progress of the Contractor or any other subcontractor.

17.1.3   Upon Contractor's request, Subcontract shall furnish such evidence as the Contractor may require relating to Subcontractor's ability to fully perform this Subcontract in the manner and within the time established as herein provided.

17.1.4   The Subcontractor also shall furnish upon request by the Contractor from time to time cash flow

</div>

expenditures for labor for its work (which shall include the estimated payroll for each of the trades it will employ by subcontract).

17.1.5   The Contractor exclusively shall control scheduling and coordination of the work, including the periodic updating and re-sequencing thereof, if any and the Subcontractor shall comply therewith.

17.1.6   The Contractor shall have the right to schedule other work at the same time and in the same areas as the Subcontractor's work.

17.1.7   At its sole discretion, the Contractor may schedule work during a time of and from time to time during winter conditions.  The determination of when winter conditions exist shall rest exclusively with the Contractor.

17.2   The Subcontractor agrees to notify the Contractor of its objection to, or inability to comply with, any directive, notification, order, schedule or revisions thereof dealing with the time or times of its performance hereof, and to do so within three (3) days of Contractor's issuance thereof.

17.3   Specific requirements as to the time of performance shall take precedence over the more general requirements of this article.

17.4.1   In the event of any failure of Subcontractor to complete its work within the required time, the Subcontractor hereby agrees to reimburse the Contractor for any and all actual and/or liquidated damages that may be assessed against the Contractor by the Owner, which are directly or indirectly attributable to work caused by the Subcontractor's failure to comply fully with the foregoing provision.

17.4.2   Subcontractor also agrees to pay to the Contractor such damages as the Contractor may sustain by reason of any delay, directly or indirectly, attributable to or caused by the Subcontractor, including,  but not limited to, recovery of Contractor's overhead and expense related to the managing and supervising of the prime Contract work.

17.5   In the event Subcontractor's performance of this Subcontract is delayed or interfered with by acts of the Owner, Contractor or other Subcontractors, Subcontractor may submit to the Contractor a written request for an extension of time for the performance of same.

17.6   At the request of the Contractor, the Subcontractor shall perform certain parts of the work before other parts, add extra manpower, or order overtime labor in order to comply with the project schedule, all without increase in the Subcontract price, unless otherwise specifically provided in the General Conditions.

17.7   If in order to expedite the final completion of the Work, Contractor requests Subcontractor to work overtime at a time when Subcontractor is not in default in any of the provisions of this contract, Subcontractor agrees to work said overtime and it is understood that Contractor shall pay Subcontractor therefore only the Subcontractor's extra labor costs over the rate for regular time during the period of such overtime, including additional insurance and taxes incurred by Subcontractor with respect thereto.  Time slips covering said overtime must be submitted to Contractor's authorized agent for checking and approval.  No commissions, fees, overhead, or profit is to be charged by or allowed to Subcontractor for or on account of said overtime.  However, if Subcontractor shall at any time be behind in the work herein contemplated, or if in the opinion of the Contractor, Subcontractor is delaying the progress of the work necessary to complete the Project, then and in either such event, if requested by Contractor, Subcontractor shall cause to be performed overtime work as may be necessary to keep abreast with the general progress of the work at the Project, and in either such event the cost and expense of such overtime shall be borne entirely by Subcontractor.

17.8   If the Subcontractor shall be delayed in the prosecution or completion of the Subcontract Work by the act, neglect or default of the Contractor, the Architect, the Owner, or any other subcontractor employed by the Contractor upon the project, or by any damage caused by fire or other casualty for which the Subcontractor is not responsible, or by general strikes or lockouts caused by acts of employees, then the time fixed by the Contractor for the completion of the Subcontract Work shall be extended for such period of time as shall be determined and fixed by the Contractor as the time lost by reason of any or all of the causes aforesaid.  This shall be Subcontractor's sole and exclusive remedy for such delay and in no event shall Contractor be responsible for any increased

costs, charges, expenses or damage of any kind resulting from any such delays. No allowance of an extension of time for performance of this Subcontract will be granted, unless a claim therefor is presented to the Contractor in writing and within forty-eight (48) hours of the occurrence of the cause thereof, and then only if the Contractor agrees to such an extension of time in its sole discretion. Time elapsed between Work Orders, phases of the Work or construction of individual houses does not constitute a delay, interruption or suspension.

Article 18.  Changes in Work

18.1     Contractor may at any time, by written order and without notice to surety, make changes in the work herein contracted for and the Subcontractor shall proceed with the work as directed. If said changes cause an increase or decrease in the cost of performance or in the time required for performance an equitable adjustment shall be made and this Subcontract shall be modified in writing accordingly. Nothing herein shall excuse the Subcontractor from proceeding with the prosecution of the work as changed.

18.2     For any adjustments by Change Order, Subcontractor will be permitted to charge ten percent (10%) as a reasonable allowance for a combined overhead and profit mark-up for work not involving Sub-subcontractors and five percent (5%) as a reasonable allowance for a combined overhead and profit mark-up for Work by Sub-subcontractors.

18.3     If Contractor and Subcontractor are unable to agree on the price for the changed work, Contractor shall have the right to order Subcontractor to proceed with the changed work on a time and material basis. When changed work, other than overtime ordered by Contractor, is performed on a time and material basis, unless otherwise limited by the agreement between Owner and Contractor, Subcontractor shall receive: (1) the actual cost of labor including applicable insurance and payroll taxes, based upon the Approved Labor Rates, plus ten percent (10%) for overhead and profit, and (2) the actual cost of material and equipment, plus ten percent (10%) for overhead and profit. In performing changed work on a time and material basis, if such work requires that Subcontractor use a subcontractor, Subcontractor shall limit its subcontractor as set-forth above and Subcontractor shall be limited to a mark-up of its subcontractor's total of five percent (5%) for Subcontractor's overhead and profit. Whenever changed work is performed on a time and material basis, Contractor shall have the right to audit Subcontractor's books, records, documents and other evidence bearing on the costs and expenses of the Subcontractor for such changed work.

18.4     No extension to Subcontractor's time of performance as a result of changed work shall be allowed under this Subcontract unless authorized by Contractor in writing. The value of the changed work requested by Subcontractor shall include all costs for delay and disruption to Subcontractor's work. Subcontractor shall not be entitled to any additional compensation for delay and disruption caused by the changed work unless such costs are requested and approved by the Owner. In no event, shall Subcontractor be entitled to compensation for the collective impact of changed work.

Article 19.  Claims

19.1     The Subcontractor agrees to make any claims to the Contractor for damages or additional compensation based on alleged extra work, changed conditions or any other grounds within three (3) days of the discovery of the condition causing the need for additional compensation or damages or within sufficient time (48 hours prior to the amount of time set forth in the notice requirement in the Contract between Contractor and Owner for like claims) to permit Contractor to advise the Owner in the manner provided in the Contract Documents for like claims, whichever is shorter. The Contractor will not be liable to the Subcontractor on account of any claim not timely or properly presented or until it is allowed by the Owner. Payment by Owner on any claims by Subcontractor is a condition precedent to payment by Contractor on any claims of Subcontractor.

19.2     The Subcontractor agrees that any liability of the Contractor to the Subcontractor on any claim of any sort by the Subcontractor against Contractor arising in whole or in part out of any act, omission, default, order, directive, decision or change by the Owner, or which could be the subject of a claim by the Contractor against the Owner, shall be liquidated and limited to whatever the

9 of 18

Contractor actually receives from the Owner, if anything, as a result of the presentation of a claim based thereon to the Owner, and the Subcontractor shall have no other or further claims whatsoever against the Contractor based thereon or in any way related thereto. Any claim prosecuted hereunder shall be subject to the sole direction and control of the Contractor.

19.3    If the Subcontractor encounters any condition which forms the basis of a claim for extra compensation or time, or any other type of claim, including but not limited to those conditions which are (1) subsurface or otherwise concealed physical conditions which differ materially from those indicated in the Contract Documents or (2) unknown physical conditions of an unusual nature, which differ materially from those ordinarily found to exist and generally recognized as inherent in construction activities of the character provided for in the Contract Documents, it shall be its duty to give written notice to the Contractor prior to commencing any work involving said condition and no later than three (3) business days after encountering the condition so the Contractor may inspect said condition and take such steps as Contractor deems necessary. In the absence of such notice to the Contractor, Subcontractor shall be fully liable for any and all expense, loss or damage resulting from said condition. The Contractor will promptly investigate such conditions and, if they differ materially and cause an increase or decrease in the Subcontractor's cost of, or time required for, performance of any part of the Work, will recommend an equitable adjustment in the Subcontract Sum or Subcontract Time, or both. If the Contractor determines that the conditions at the site are not materially different from those indicated in the Contract Documents and that no change in the terms of the Subcontract is justified, the Contractor shall so notify the Subcontractor in writing, stating the reasons.

19.4    It is also agreed that Subcontractor shall not be entitled to any additional payment or compensation under this Subcontract without the express written approval or Contractor. No officer, employee or agent of Contractor is authorized to direct any Extra Work by oral order except minor changes in the work not involving extra cost or time.

## Article 20. Disputes

20.1.1    In the event of any dispute between the Contractor and the Owner which involves the work required to be performed by Subcontractor under this Subcontract, or in the event of any dispute between Contractor and Subcontractor which involves a claim against the Owner for either additional compensation and/or an extension of time under the Contract Documents, Subcontractor agrees to be bound to Contractor and Contractor agrees to be bound to Subcontractor to the same extent that Contractor is bound to the Owner by the terms of the Contract Documents and by all decisions or findings made thereunder by the persons so authorized in the Contract Documents, or by an administrative agency or court of competent jurisdiction, whether or not Subcontractor is a party to the proceedings before said person, agency or court.

20.1.2    If any dispute or claim is prosecuted or defended by the Contractor, and Subcontractor is not directly a party or litigant, Subcontractor agrees to cooperate fully with Contractor and shall pay or reimburse Contractor for all expenses and costs, including reasonable attorney's fees, incurred in connection therewith to the extent of the Subcontractor's interest in such claim or dispute.

20.1.3    It is expressly understood and agreed in connection with the determination of such claim or disputes that Contractor shall never be liable to Subcontractor to any greater extent than Owner is liable to Contractor.

20.2    In the event of any claim or dispute between Contractor and Subcontractor, it is further specifically agreed by the parties hereto that no claim shall interfere with the performance work required to be performed under this Subcontract.

## Article 21. Default

21.1.1    In the event the Subcontractor fails to comply, or becomes unable to comply, or with reasonable probability (as determined solely by Contractor) will become unable to comply, with any of the provisions of this Subcontract; or in the event Subcontractor fails at any time to supply a sufficient number of properly skilled workmen with sufficient materials, equipment or plant of proper quality

or fails in any respect to prosecute the work with promptness and diligence; or causes by any action or omission a stoppage of or delay in the work of the Contractor or other subcontractor of Contractor; or in the event Subcontractor abandons its work or any part thereof; and such failure, inability or deficiency (as determined solely by Contractor) is not corrected within one day after written demand by the Contractor to the Subcontractor; the Contractor may, in addition to and without prejudice to any other right or remedy, take over and complete the performance of the Subcontract, at the expense of the Subcontractor; or the Contractor may, without taking over the work, immediately and without notice to Subcontractor, furnish the necessary materials and labor through itself or others, to remedy the situation, all at the expense of the Subcontractor.

21.1.2  The parties hereto further agree that any of the following shall, at the option of the Contractor, constitute inability to comply with the provisions of this Subcontract for purposes of this article:

a)  the filing of a petition in bankruptcy or a petition for the appointment of a receiver by or against the Subcontractor;

b)  the insolvency of the Subcontractor or its inability to meet its debts as they mature;

c)  the establishment of a receivership or any committee of creditors involving Subcontractor's business or assets, or the making of an assignment for the benefit of Subcontractor's creditors; or

d)  the failure or refusal of Subcontractor to respond to any written order or notice duly issued by the Contractor.

21.1.3  Subcontractor hereby waives any and all defenses, claims or causes of action against Contractor based in whole or in part on the contention that Subcontractor would have been able to comply with the Subcontract.

21.2.1  Upon any action by the Contractor pursuant to this article, the Subcontractor shall not be entitled to further payment on this Subcontract until the work has been completed and accepted by the Owner and payment therefore has been received by the Contractor from the Owner.

21.2.2  If the expense incurred by the Contractor exceeds the unpaid balance due, the Subcontractor agrees to promptly pay the difference to the Contractor together with interest thereon at the rate of the prime rate plus 2% per annum until paid, and the Contractor shall have a lien upon all material, tools, and equipment taken possession of to secure the payment thereof.

21.2.3  With respect to expenses incurred by the Contractor pursuant to this article, it is hereby agreed that the costs and expenses chargeable to the Subcontractor as herein before provided shall include, without restriction, the cost of materials, labor, subcontracts, purchase orders, transportation, equipment and expense thereon, supplies, services, insurance, taxes, appliances, tools, utilities, power used or consumed, supervision, administration, job overhead, travel, attorney's fees, legal and accounting fees and expenses, Contractor's general overhead as allocated to the work and other costs and expenses incurred or sustained by the Contractor, plus ten percent (10%) profit on the actual cost of the work performed as well as on the amount of claims paid by the Contractor for Subcontractor or for which it deems itself liable.

21.3  In no instance will any action whatsoever taken by the Contractor pursuant to this Subcontract relieve or mitigate Subcontractor's full and absolute responsibility for any and all of the Subcontractor's obligations under this Subcontract.

21.4  In the event the employment of the Subcontractor is terminated by the Contractor for cause under this Article and it is subsequently determined by a court of competent jurisdiction or arbitrator(s) that such termination was without cause, such termination shall thereupon be deemed a Termination for Convenience under Article 22 and the provisions of Section 22.2 shall apply.

Article 22.  <u>Suspension or Termination for Convenience</u>

22.1  The Contractor may, without cause, order the Subcontractor in writing to suspend, delay or interrupt the Work in whole or in part for such period of time as the Contractor may determine. In such an event, the Contract Sum and Contract Time shall be adjusted for increases in the proven and documented cost and time caused by suspension. Adjustment of the Contract Sum shall not

include profit, special or consequential damages. No adjustment shall be made to the extent: (1) that performance is, was or would have been so suspended, delayed or interrupted by another cause for which the Subcontractor is responsible; or (2) that an equitable adjustment is made or denied under another provision of the Contract.

22.2    The Contractor may, at any time, terminate this Subcontract in whole or in part for the Contractor's convenience and without cause. Termination by the Contractor under this Paragraph shall be by notice of termination delivered to the Subcontractor specifying the extent of termination and the effective date of such termination, the Subcontractor shall recover as its sole remedy payment for work properly performed in connection with the terminated portion of the work prior to the effective date of termination and for items properly and timely fabricated off the Project site, delivered and stored in accordance with the Contractor's instructions. The Subcontractor hereby waives and forfeits all other claims for payment and damage, including, without limitation, anticipated profits.

## Article 23. Coordination

23.1    The Subcontractor agrees to perform the work called for in this Subcontract in such a manner that he will not injure or damage any other work performed by the Contractor or any other subcontractor.

23.2    The Subcontractor further agrees to cooperate with the Contractor and other subcontractors whose work might interfere with the Subcontractor's work and to prepare sketches and drawings as directed, and/or to participate in the preparation of coordinated drawings in areas of congestion, specifically noting and advising the Contractor of any such interference.

23.3.    The Subcontractor agrees to have a representative present at regularly scheduled jobsite coordination meetings. This representative must be a principal of the company or designated project manager who has the authority to comply with all scheduling and other requests of the General Contractor. It is further agreed that the Subcontractor's representative shall appear promptly at the designated meeting time. If the Subcontractor fails to attend these meetings on a timely basis, the Contractor shall have the right to declare the Subcontractor in default of this Subcontract, and seek all legal remedies in accordance with the terms of this Subcontract.

## Article 24. Indemnification

24.1    To the fullest extent permitted by law, Subcontractor agrees to indemnify, hold harmless and defend **Guidi Homes, Inc. and General Contractor, Construction Manager, Prime Contractor, Owner, Architect, Engineer, Partner and Joint Venture** and their agents, employees, representatives, officers, directors, stockholders, members, managers and parent, subsidiary and affiliated companies (the "Indemnified Parties") from and against any and all liability for loss, damage or expense for which the Indemnified Parties may be held liable by reason of injury (including death) to any person (including Subcontractor's employees) or damage to any property of whatsoever kind or nature arising out of or in any manner connected with the work to be performed for the Indemnified Parties (including, but not limited to, work performed under this contract, work performed under Change Order, or any such other work performed for or on behalf of the Indemnified Parties, whether performed at the site or not or in any way connected with the use, misuse, erection, maintenance, operation or failure of any machinery or equipment whether or not such machinery or equipment was furnished, rented or loaned by any of the Indemnified Parties, even for and if caused in whole or in part by any act, omission, or negligence of the Indemnified Parties. It is expressly understood and agreed that the indemnity contained in this paragraph covers claims by Subcontractor's employees and that Subcontractor expressly waives any defense to this indemnification obligation which may arise under the Workers' Compensation Act of any State. In addition, Subcontractor shall defend the Indemnified Parties against any claim which may potentially give rise to indemnification of the Indemnified Parties, even if such claim alleges that the Indemnified Parties are wholly or partially at fault for causing the loss. If Indemnification for the Indemnified Parties' sole negligence is expressly prohibited by

Law, such defense shall continue until it is conclusively established by a court of competent jurisdiction that: 1) the Indemnified Parties are solely liable for causing the bodily injury or property damage alleged; and 2) that neither Subcontractor nor its employees nor any Subcontractor to Subcontractor is liable; at which time the Indemnified Parties will absorb all costs of defense. It is further expressly agreed that Subcontractor assumes the fullest extent of all obligations to indemnify and defend all parties whom **Guidi Homes, Inc.** is obligated to indemnify and defend in **Guidi Homes, Inc.'s** contract with General Contractor, Construction Manager, Prime Contractor, Owner, Architect, Engineer, Partner and Joint Venture (whether or not such obligations may extend to items beyond those addressed in this Agreement).

If there are any damages or claims of any kind or nature unsettled when the subcontract work is finished, the final payment by **Guidi Homes, Inc.** shall be deferred until all such claims shall have been adjusted or suitable coverage or indemnity acceptable to Guidi Homes, Inc. is provided by Subcontractor or Subcontractor's insurance carrier.

Subcontractor and **Guidi Homes, Inc.** further agree that the Laws of the Commonwealth of Pennsylvania shall apply to the construction and application of the Indemnification and Hold Harmless Agreements set forth above

24.2    In the event and to the extent that a claim is made by an employee of Subcontractor against an Indemnified Party hereunder, the intent of this Article is that Subcontractor shall and it hereby agrees to indemnify Owner, Architect, Contractor and their parent, subsidiary, or affiliated companies and each of their agents, officers, directors, employees and assigns to the same extent as if the claim was made by a non-employee of Subcontractor. Accordingly, in addition to the above provisions, and in order to render the parties' intent and this indemnity agreement fully enforceable, Subcontractor, in an indemnification claim hereunder, hereby expressly and without reservation waives any defense or immunity it may have under any applicable Worker's Compensation Laws or any other statute or judicial decision disallowing or limiting such indemnification and consents to a cause of action for indemnity. Said waiver and consent to indemnification is made irrespective of and specifically waiving any defense or immunity under any statute or judicial decision disallowing or limiting such indemnification.

24.3    The Subcontractor shall bear any expense of an Indemnified Party because of any claim or other matter indemnified against hereunder, including reasonable attorney's fees and court costs in the defense of, or preparing for the defense against, any such claim, even if such claim or any lawsuit arising therefrom is groundless, false or fraudulent. If any such claim has not been settled or discharged when the Work is finished, final settlement between the Contractor and the Subcontractor and final payment of the Subcontract Price and the acceptance of the Work shall be deferred until any such claim is paid or settled or the Subcontractor provides a bond, acceptable to the Contractor, in its sole discretion, to satisfy such claim. At the request of any Indemnified Party, Subcontractor shall retain an attorney to represent such Indemnified Party in the defense of any such claim, provided, however, that any attorney employed in such defense must be satisfactory to such Indemnified Party.

24.4    The parties hereby agree that the Contractor shall not be liable for any loss or casualty incurred or caused by the Subcontractor. The Subcontractor shall maintain full and complete insurance on its work until final acceptance of the Work. The Subcontractor assumes all risk of loss for all its work regardless of whether the Subcontractor had previously been paid for same. Contractor is not responsible to provide any service for the Subcontractor's benefit, and is not liable for any loss or damage to the Subcontractor's Work.

24.5    In addition to the above, Subcontractor shall indemnify and hold harmless the Indemnified Parties for all damages, losses, or claims that arise as a result, in whole or in part, of the negligence, errors, omissions, or failure to perform by the Subcontractor, his employees, his agents or his subcontractors. The Subcontractor shall indemnify and hold harmless the Owner for all damages, losses, or claims, including related attorney fees, that arise as a result, in whole or in part, of the

breach of this Agreement or any implied covenants deemed to be applied thereto, intentional acts, omissions, or other failures to perform by the Subcontractor, his employees, his agents or his subcontractors.

Article 25.  Elimination or Reduction of Work

25.1    In the event of elimination or reduction of the work to be performed under this Subcontract by reason of termination or modification of the Subcontract Documents or a change in the work to be done thereunder, either in accordance with the terms of the Contract or the Subcontract Documents or by default by Owner, Subcontractor shall not be entitled to recover from Contractor more than its fair and equitable portion of any sums received by Contractor for work done or materials supplied by this Subcontractor on this Subcontract.  The rights and claims of the Contractor, other subcontractors and third parties shall be taken into consideration in determining Subcontractor's fair and equitable share.

Article 26.  Labor Harmony

26.1    The Subcontractor accepts complete responsibility to maintain labor harmony with all trades working on this project during the performance of Subcontractor's Work.

Article 27.  Permits and Compliance with Law

27.1    Subcontractor shall obtain and pay for all permits, licenses and official inspection made necessary by its work and shall comply with all laws, ordinances and regulations bearing on the work required under this Subcontract.

27.2    Without limitation of any other provision hereof, if the Subcontractor performs any Work which is contrary to such laws, ordinances, codes, rules and regulations, he shall make all changes as required to comply therewith and bear all costs arising therefrom without additional reimbursement.

Article 28.  Independent Contractor

28.1    The Subcontractor certifies that he is "an independent Contractor" subject, as an employer, to all applicable statutes and regulations with respect to such status.

Article 29.  Employees

29.1    The Subcontractor shall not employ any person in performance of this Subcontract whose employment might be reasonably objected to by the Contractor or Owner and hereby agrees to promptly remove from the Project any such person or party.

Article 30.  Notice

30.1.1    Written notice, where required by the terms of this Subcontract, may be accomplished by personal delivery of said notice or by use of the United States mail or a facsimile communication.  The written notice shall become effective upon the date stated therein, or, if no such date is stated, upon the date upon which delivery is complete.

30.1.2    Personal delivery is complete when the notice is delivered to the Subcontractor or its representative at the Project or at the office address of the Subcontractor appearing in this Subcontract.  The Subcontractor shall, at all times during its work on this Project, have a representative authorized to receive written notices present on the Project site during all normal working hours.  In the absence of such a representative, personal delivery is complete when the notice is delivered to any of its subcontractors, supervisors or workmen, or in their absence, left in a conspicuous place on the Project site in the area of Subcontractor's work.

30.1.3.   If facsimile is used, completion of the facsimile will have a confirmation notice attached thereto, to indicate that the fax has been sent in its entirety, and shall have a date reflected thereon.

30.1.4    When regular or overnight mail is used, delivery is complete for the purposes of paragraph 30.1.1 on the date first occurring among the following: a) on the day the communication is received by

Subcontractor evidenced by a return receipt furnished by the United States Post Office Department or by any recognized messenger or delivery service, or b) on the third day after the notice is deposited in the U.S. mail addressed to the Subcontractor at its last known address.

Article 31.  Superintendent

31.1   The Subcontractor shall at all times maintain a qualified and skilled superintendent or foreman at the site of the work who shall be satisfactory to the Owner, the Owner's authorized agent and/or the Contractor.  Such superintendent or foreman shall be duly and legally authorized to represent and act for the Subcontractor with respect to all matters in connection with or arising out of work under this Subcontract.

Article 32.  Subcontractor's Dealing with Owner

32.1   It is agreed that all of Subcontractor's dealings with the Owner's authorized agent, the Owner, or any other party named in the Contract Documents shall be through the Contractor.

32.2   The Subcontractor further agrees that he shall not make any agreement with the Owner's authorized agent or with the Owner pertaining to any phase of the performance of this Subcontract.

Article 33.  Owner Right to Reject Subcontract and Third Party Beneficiary Rights

33.1   Subcontractor recognizes that the Owner may reject any proposed subcontractor or supplier for any reason and at its discretion prior to execution of the subcontract.

33.2   Nothing contained in the Subcontract Documents or Contract Documents shall create a contractual relationship between the Owner and any third parties; however, it is understood and agreed that the Owner is an intended third party beneficiary of all subcontracts, purchase orders, and other agreements between the Contractor and third parties.

Article 34.  No Commingling of Materials

34.1   To the extent that the materials or equipment is for a particular Work Order, the materials and equipment must be marked as such and must not be commingled with material or equipment for other portions of the project. No payments will be made for stored materials or equipment unless they are so designated and separate.

Article 35.  Contributions, Taxes and Insurance

35.1   The Subcontractor agrees to and does hereby accept full and exclusive liability for the payment of all contributions, taxes, insurance of any description whatever, now or hereafter imposed by any authority, which are measured by the wages, salaries or other remunerations paid to persons employed by Subcontractor on work performed pursuant to the terms of this Subcontract.

35.2   Subcontractor further agrees to and does hereby accept full and exclusive liability for the payment of all personal property taxes, inventory taxes, sales taxes, use taxes, excise taxes, fuel taxes, transportation taxes, franchise taxes, and all other taxes, and/or tax assessments in any manner whatsoever relating to the materials, supplies, tools, machinery, equipment and plant which may be purchased, acquired, rented or used by Subcontractor relating to all work performed under this Subcontract.

Article 36.  Insurance

36.1.1   Subcontractor shall provide and maintain at all times during the performance of this Subcontract Workmen's Compensation and Employer's Liability insurance for protection of Subcontractor's employees, as required by law; and insurance covering Public Liability, Property Damage and Subcontractor's Contractual Liability hereunder (including but not limited to all work performance and operation of automobiles, trucks and other vehicles, the values of which are itemized in Exhibit "C").

36.1.2   All insurance required hereunder shall be maintained in full force and effect in a company or companies satisfactory to Contractor, at the Subcontractor's expense, and until performance in full hereof has been accomplished and final payment has been issued in evidence thereof.  Further,

such insurance shall be subject to the requirement that Contractor must be notified by thirty (30) days written notice before cancellation of any such policy. In the event of the threatened cancellation for non-payment of premium, Contractor may pay the same for Subcontractor and deduct the said payment from amounts then or subsequently owing to the Subcontractor hereunder.

36.1.3   Certificates of insurance must be filed with the Contractor within thirty (30) days of the date of execution of this Subcontract or prior to commencement of work, whichever is earlier. No payment shall be considered due and owing hereunder until certificates of insurance satisfactory to the Contractor have been received in its office.

36.1.4   Subcontractors' liability policy shall be the primary policy and must list as additional insured both Contractor and the Owner of the Project as well as any additional entities listed in the relevant Work Order using the following language:

**Guidi Homes, Inc and (Name of Owner if other) are additional insured on the captioned General Liability, Umbrella liability and Automobile Liability Policies on a Primary and Noncontributory basis. A waiver of Subrogation is provided on these policies in favor of Guidi Homes, Inc, including workers compensation where permitted by State Law.**

36.1.5   Subcontractor is required to report to Contractor in writing, any job related illness or accident within three (3) business days of illness or accident.

36.2     Subcontractor shall require its Sub-subcontractor to provide and maintain at all times during the performance of the Sub-Subcontractor's Subcontract, Workmen's Compensation and Employer's Liability insurance for protection of the Sub-Subcontractor's employees, as required by law; and insurance covering Public Liability Property Damage and Sub-Subcontractor's Contractual Liability under its Subcontract (including but not limited to all work performance and operation of automobiles, trucks and other vehicles, the values of which are itemized in Exhibit "C"). The insurance provided by the Sub-Subcontractor shall meet all of the requirements of this Subcontract.

36.3     In the event Contractor, in its sole discretion, determines that Subcontractor is not maintaining the insurance required by this Agreement, Contractor shall have the right to immediately terminate this Agreement without any notice to Subcontractor.

36.4     To the fullest extent permitted by applicable law, Subcontractor waives all subrogation rights against Contractor, Owner, and any of their agents and employees: (1) for damages caused by fire or other perils to the extent covered by property insurance provided under the Principal Contract, the Subcontract or other property insurance applicable to the Work, except such rights as they may have to proceeds of such insurance held by Owner or Contractor as fiduciary; and (2) for other claims to the extent arising out of a loss or claim covered by Subcontractor's liability, automobile or worker's compensation insurance. Subcontractor shall require of Subcontractor's sub-subcontractors, agents and employees by appropriate agreements, written where legally required for validity, similar waivers in favor of other parties enumerated herein. The policies shall provide such waivers of subrogation by endorsement or otherwise. A waiver of subrogation shall be effective as to a person or entity even though that person or entity would otherwise have a duty of indemnification, contractual or otherwise, did not pay the insurance premium directly or indirectly, and whether or not the person or entity had an insurable interest in the property damaged.

Article 37. Effective Date

37.1     The effective date of this Subcontract is intended by both parties to be the date indicated at the beginning of this Subcontract. The dates appearing by the signatures at the end of this document merely indicate the dates that the signatures were affixed.

Article 38. Waiver of Liens and Releases

38.1     If Contractor posts a bond guaranteeing payment for goods, materials, and equipment supplied, labor or services provided to the Project by Subcontractors, then Subcontractor agrees to waive its right to file a mechanics' lien and that no mechanics' liens, notices, or claims, or materialman's liens, notices, or claims, or any other liens or claims of any kind whatsoever will be filed, enforced, or maintained with respect to the goods, materials, and equipment supplied, labor or services

performed pursuant to this Subcontract against the Project for which they are supplied or performed, or against the owner, real property, building, or other improvements of which the Project is a part, or any part or parts thereof or the appurtenances thereto by Subcontractor, its successors and assigns. If the bond posted by Contractor guarantees payment for goods, materials, and equipment supplied, labor or services provided to the Project by sub-subcontractors, suppliers, materialman and other entities pursuant to a contract with Subcontractor, then Subcontractor shall obtain lien waivers from such sub-subcontractors, suppliers, materialman and other any other similarly situated entities, stating that liens may not be filed on the Project and provide written notice of this lien waiver provision to its sub-subcontractors, suppliers, materialman, and all other persons or entities acting by, through, or under it or them, prior to and before any labor or services are performed, or goods, materials, or equipment are supplied to the Project pursuant to this Subcontract.

38.2   If Contractor posts a bond guaranteeing payment for goods, materials, and equipment supplied, or labor or services performed by Subcontractor, then, in the event a mechanics' lien, notice, or claim, or materialman's lien, notice, or claim, or construction lien claim, or lien, or any other lien or claim of any kind whatsoever is filed, enforced, or maintained by Subcontractor and/or any of Subcontractor's sub-subcontractors, suppliers, materialmen, and all other persons or entities acting by, through, or under it or them, then Subcontractor shall defend, indemnify, and hold Contractor harmless from such liens and/or claims, and shall also cause said mechanics' lien, notice, or claim, or materialman's lien, notice, claim, construction lien claim, or other lien of any kind whatsoever, to be discharged in accordance with applicable law. Subcontractor also agrees to pay and reimburse Contractor for all costs, expenses and attorney's fees incurred by Contractor in defending, responding to and/or discharging liens or claims filed by Subcontractor and/or any of Subcontractor's sub-subcontractors, suppliers, materialmen, and all other persons or entities acting by, through, or under it or them whenever a valid lien waiver is in place on a Project.

38.3   As a prerequisite to payment, Subcontractor agrees that it will execute, in a form satisfactory to owner, all documents required by Contractor that evidence, ensure, and guarantee that the Subcontractor has made payment for all Work performed in connection with this Subcontract, including, but not limited to, Releases and Partial Waiver of Liens, in consideration for each and every payment and up the date covered by the payment, whether partial or final. Said Releases and Partial Waiver of Liens shall include, whenever so requested by Contractor, and in a form acceptable to Contractor, Partial Waiver of Liens and Release of claims, costs, expenses, fees, charges, changes, change orders, or change order requests that arise out of or relate to Subcontractor's Work performed from all contractors, suppliers, persons and/or entities that have, or will, provide labor, materials, equipment, machinery, fixtures, services, or labor under any agreement(s) with Subcontractor for the Subcontractor's Work under this Subcontract. A sample Partial Lien Waiver and Release Form is attached hereto as Exhibit "E-2" to this Subcontract. Contractor reserves the right to modify the form of this Partial Lien Waiver and Release.

38.4   The Subcontractor, when required by the Contractor as a condition precedent to the making of final payment hereunder, shall furnish to the Contractor a full and complete release and discharge, in a form satisfactory to the Contractor, of all liens, claims and demands arising out of or relating to the Subcontract work and any and all materials furnished, work done and equipment used in connection therewith. Furthermore, if, prior to final payment, the Owner or any party providing financing for the Project requests a release of liens from the Subcontractor, the Subcontractor shall execute and deliver such release of liens in a form satisfactory to the Owner or such other party. A sample Final Lien Waiver and Release is attached hereto as Exhibit "F-2" to this Subcontract.

Article 39.   Applicable Law
39.1   The law of the Commonwealth of Pennsylvania, not including choice of law analysis, shall be applicable to this Subcontract and shall be used to decide any dispute related to this Subcontract.

Article 40.   Determination of Disputes

40.1.1   Any dispute between the parties related to this Contract shall be determined by the courts of the Commonwealth of Pennsylvania located in Montgomery County or, if the Contractor agrees in writing that the Owner is a party to the dispute, the venue required by the Contract Documents, with the exception noted in Section 40.1.2 below. The Subcontractor hereby consents to the personal jurisdiction of that Court over it and agrees to accept service of process issuing from that Court. As part of the consideration given by the parties hereto, the parties mutually agree to waive their respective rights to a jury in any such matter.

40.1.2   If a dispute arising out of or relates to this Subcontract, or breach thereof, and if the dispute cannot be settled through pre-litigation negotiations, the Contractor and Subcontractor agree, at the Contractor's sole election, to subject the dispute to arbitration administered by the American Arbitration Association under its Construction Industry Arbitration Rules whereby a judgment on the award rendered by the Arbitrator(s) may be entered in any Court having jurisdiction thereof. Under such circumstances, the Arbitrator(s) shall have the exclusive power to determine issues of arbitrability. Such arbitration shall be final and binding upon the parties.

40.1.3   Pending final resolution of a dispute, except as otherwise agreed in writing, the Subcontractor shall proceed diligently with performance of the Work.

40.1.4   Enforceability of Elections.  If the elections afforded Contractor in Section 40.1.1 or 40.1.2 hereof are not enforceable, then both parties shall be bound to arbitrate all disputes in which the disputed amount is less than Five Hundred Thousand Dollars ($500,000.00) and may litigate any dispute involving a higher amount.

40.1.5   Venue.  Unless the Contractor agrees in writing that the Owner is a party to the dispute, so that the venue will be as required by the Contract Documents, the venue for any mediation, arbitration or litigation proceeding relating to Subcontractor's Work shall be in the county in which Contractor's home office is located.

Article 41.   Nondiscrimination in Employment

41.1     UNLESS EXEMPT IN ACCORDANCE WITH EXECUTIVE ORDER 11246 OF SEPTEMBER 24, 1965, DURING THE PERFORMANCE OF THIS SUBCONTRACT, THE SUBCONTRACTOR AGREES AS FOLLOWS:

41.1.1   The Subcontractor will not discriminate against any employee, or applicant for employment because of sex, race, religion, color or national origin. The Subcontractor will take affirmative action to ensure that applicants are employed and that employees are treated during employment without regard to their age, sex, religion, color or national origin. The Subcontractor agrees to post in conspicuous places, available to the employees and applicants for employment, notices to be provided setting forth the provisions of the nondiscrimination clause.

41.1.2   The Subcontractor will, in all solicitations or advertisement for employees, placed by or on behalf of the Subcontractor, state that all qualified applicants will receive consideration for employment without regard to sex, race, religion, color or national origin.

41.1.3   If applicable, the Subcontractor will send to each labor union or representative of workers with which he has a collective bargaining agreement or other contract or understanding, a notice advising the said labor union or workers' representative of the Subcontractor's commitments under this section, and shall post copies of the notice in conspicuous places available to employees and applicants for employment.

41.1.4   The Subcontractor will comply with all provisions of Executive Order 11246 of September 24, 1965 and the rules, regulations and relevant orders of the Secretary of Labor.

41.1.5   The Subcontractor will furnish all information and reports required by Executive Order 11246 of September 24, 1965 and by the rules, regulations and orders of the Secretary of Labor, or pursuant thereto, and will permit access of his books, records, and accounts by the administering agency and the Secretary of Labor for purposes of investigation to ascertain compliance with rules, regulations and orders.

41.1.6   In the event the Subcontractor is in non-compliance with the nondiscrimination clauses of the Subcontract Documents or with any of the said rules, regulations or orders, this Subcontract may

be canceled, terminated or suspended in whole or in part, and the Subcontractor may be declared ineligible for further government contracts or federally assisted construction contracts in accordance with procedures authorized in Executive Order 11246 of September 24, 1965 and such other sanctions as may be imposed and remedies invoked as provided in the said Executive Order or by rules, regulations or orders of the Secretary of Labor, or as otherwise provided by Law.

41.1.7    The Subcontractors will include the provisions of Paragraph One (1) through Seven (7) in every Sub-Contract or Purchase Order unless exempted by rules, regulations and orders of the Secretary of Labor issued pursuant to Executive Order 11246 of September 24, 1965, so that such provisions will be binding upon each Sub-contractor or Vendor.  The Subcontractor will take such action with respect to any Sub-subcontract or Purchase Order as the administering agency may direct as a means of enforcing such provisions, including sanctions for noncompliance; provided however, that in the event the Subcontractor becomes involved in, or is threatened with, litigation with a Sub-subcontractor or vendor as a result of such direction by the administering agency, the Subcontractor may request the United States to enter into such litigation to protect the interests of the United States.

Copying Prohibited

FILED
05-03-2021 04:00 PM
OFFICE OF JUDICIAL SUPPORT
DELAWARE COUNTY, PA

# EXHIBIT "F"

Copying Prohibited

# MASTER AGREEMENT

Date:    8/28/13

CONTRACTOR:                                           SUBCONTRACTOR:

GUIDI HOMES, INC.                                     Dream Maker Construction Services, LLC
925 Harvest Drive, Suite 220                          5284 Clymer Road
Blue Bell, PA  19422                                  Quakertown, PA 18951
Telephone No. (215) 641-9280
Facsimile No. (215) 641-9088

## THE ATTACHED EXHIBIT "A" TERMS AND CONDITIONS ARE PART OF THIS SUBCONTRACT.

A.    Subcontractor's Responsibilities.  The Subcontractor agrees to furnish all materials, labor, supervision, tools, equipment and supplies as necessary to provide your line of Work on various Projects authorized and defined in Subcontract Work Order(s) (hereinafter "Subcontract" or "Work Order") to be issued, executed, and made part of this Master Agreement (hereinafter "Agreement" or "Contract").  All Work shall be performed in accordance with the Contractor's Terms and Conditions, which are attached hereto and form part of this Agreement unless specifically modified by the Work Order(s).  It is understood that in the event that Subcontractor performs Work without a Subcontract Work Order on behalf of Contractor, at Contractor's specific direction, the terms of this Agreement shall be binding upon both parties until such time as these terms are modified or expanded by Work Order.  All work provided for in the above referenced Work Order(s), for and at the Project listed on the Work Order (hereinafter called the Project), shall be performed as shown and described in and in strict accordance with the Plans, Specifications, General Conditions, Special Conditions and Addenda thereto prepared by the Architect listed and with the terms and provisions of the General Contract between Contractor and the Owner (hereinafter "General Contract") listed and in strict accordance with the above-referenced Work Order(s), and the Exhibits annexed hereto and made a part hereof.  Subcontractor also agrees that any modification contained in any Work Order shall only apply to that particular Work Order and shall not apply to any other Work Order. This Master Agreement, subject to the terms of Exhibit A, carries forward in perpetuity until modified in writing by both parties, even if ownership of either company changes or the assets or liabilities of the company are assigned. The price and schedule shall be kept and monitored separately for each Work Order, and each Work Order shall have a separate Schedule of Values, Change Order numbering, schedule, start and completion date, warranty requirements, Application for Payment, and retainage. The language of this Agreement and the Contract Documents in whole shall apply to each Work Order.

B.    Subcontractor's Work.  The Subcontractor's Work shall consist of the scope of Work set forth in the relevant Work Order.  If the Contractor intends to use Subcontractor in the construction of a particular house, a separate Work Order must be issued for each separate house with the possible exception of the first phase of model houses.

C.    Subcontract Price.  The sum to be paid by Contractor, out of funds received from the Owner, to the Subcontractor for the satisfactory performance and completion of the Work and of all of the duties, obligations and responsibilities of the Subcontractor under this Agreement and the other Contract Documents, shall be as stated in the executed Work Order(s) (hereinafter called the Price) and shall be subject to additions and deductions as herein provided.

       The Price includes all Federal, State, County, Municipal and other taxes imposed by law and based upon labor, services, materials, equipment or other items acquired, performed, furnished or used for and in connection with the Work, including but not limited to sales, use and personal property taxes payable by or levied or assessed against the Owner, Contractor or the Subcontractor.  Where the law requires any such taxes to be stated and charged separately, the total price of all items included in the Work plus the amount of such taxes shall not exceed the Price.

1 of 2

Copyrighted

When a price is given by the Subcontractor for the initial houses or model houses in the first phase of this project, those prices shall be held for a non-escalation period of twelve (6) months for that Work Order as well as each subsequent Work Order.  The Contractor shall also have the right to demand pricing from the Subcontractor on the basis of a 6 month non-escalation period.  Prior to entering into the Work Order for the first phase or any subsequent Work Order, Contractor may elect to use the pricing for a 6 month or 12 month non-escalation period.  Once the Work Order has been executed by the Contractor, however, no further escalations will be permitted for any reason on that particular Work Order even if the non-escalation period has elapsed.

D.      <u>Insurance</u>.  Unless modified by the Work Order, Subcontractor shall maintain the insurance policies and in the amounts set forth on Exhibit "C" attached hereto.

E.      <u>Terms and Conditions; Exhibits</u>.  Exhibit "A," the Terms and Conditions attached to this Agreement, are made a part hereof.  The Work Orders shall contain separate Exhibits.  Exhibits "A" and "B" are attached hereto.

F.      IMPORTANT: THE EXECUTION OF THIS MASTER AGREEMENT DOES NOT OBLIGATE THE CONTRACTOR TO ENTER INTO WORK ORDERS WITH SUBCONTRACTOR ON EVERY PROJECT PERFORMED BY CONTRACTOR.  THE CONSIDERATION GIVEN SUBCONTRACTOR BY CONTRACTOR FOR ENTERING THIS MASTER AGREEMENT SHALL BE THE SAME CONSIDERATION AS SET FORTH IN THE WORK ORDER FOR EACH PARTICULAR PROJECT.

IN WITNESS WHEREOF, the parties have executed this Subcontract effective as of the day and year first above written.

GUIDI HOMES, INC.                                          Subcontractor

Copying Prohibited

2 of 2

**Re:      Certificate of Insurance   EXHIBIT "C"**

Dear

As a subcontractor providing services Guidi Homes, Inc., we require that you provide us with evidence of insurance.  Please provide updated certificates with the minimum requirements outlined below:

**Commercial General Liability (Occurrence Form)**

| | |
|---|---|
| General Aggregate (other than Prod/Comp Ops Liability) | $ 2,000,000 |
| Products/Completed Operations Aggregate | $ 2,000,000 |
| Personal & Advertising Injury Liability | $ 1,000,000 |
| Each Occurrence | $ 1,000,000 |

**Commercial Automobile Liability**

| | |
|---|---|
| Combined Single Limit (including Hired/Non-Owned Autos) | $ 1,000,000 |

**Workers Compensation and Employer's Liability**

| | |
|---|---|
| Workers' Compensation | State Statutory Limits |
| Employer's Liability | |
| Bodily Injury by Accident | $   100,000 each accident |
| Bodily Injury by Disease | $   500,000 policy limit |
| Bodily Injury by Disease | $   100,000 each employee |

**Umbrella Liability**

| | | |
|---|---|---|
| Each Occurrence and Aggregate | $1,000,000 | * * * * * * * * * * |

**Cancellation Endorsement – 30 Days provided by Insurance Carrier**

**DESCRIPTION TO READ**          * * * * * * * * * * * * * * * * * *

"Re: Any & All Projects for Guidi Homes, Inc.
Guidi Homes, Inc., Owner & any other party whom the Contractor is required to provide Additional Insured Coverage in their Contract (including agents, employees, representatives, officers, directors, stockholders, members and managers) are included as Additional Insureds on a primary, non-contributory basis with regard to Commercial General, Automobile & Excess Liability as it pertains to the named insured's operations in connection with the above captioned project(s) where required by contract or written agreement. Waiver of subrogation in favor of Additional Insureds applies on all policies."

*Please address the aforementioned concern(s) and forward your certificate within 10days to Guidi Homes, Inc.
Attn: Sally Diver, 925 Harvest Drive, Suite 220, Blue Bell, PA 19422.*

Sincerely,

**Sally Diver
Project Manager**

**EXHIBIT "A"**
**TERMS AND CONDITIONS**

These Terms and Conditions are an extension of the Contract Documents.  This document is intended to be generic in nature.  All of its provisions are subject to modification or revision in the individual Work Order(s).

Article 1.  Definitions
1.1     The term "Contract" as used herein refers to the Contract between the Owner and the Contractor for construction of the Project.
1.2     The term "Contract Documents" as used herein refers to the "Contract" between the Owner and the Contractor, all plans, drawings, specifications, general conditions, supplemental general conditions, and special conditions, addenda, amendments, and/or instruments of like effect.
1.3     The term "Subcontract" as used herein refers to the Work Order, these Terms and Conditions, the Master Agreement, together with any exhibits, attachments or addenda incorporated herewith and referred to herein.
1.4     The term "Subcontract Documents" as used herein refers jointly and/or severally to the aforesaid Contract, Contract Documents and Subcontract.

Article 2.  Duties of the Subcontractor
2.1     The Subcontractor is bound to the Contractor by the same terms and conditions and to the fullest extent by which Contractor is bound to the Owner under the Contract.  In the event of any inconsistency between the terms and conditions of the Contract (including the General Conditions) and this Subcontract, the more restrictive provisions as applicable to the Subcontractor shall govern.
2.2     When requested to do so by the Contractor, Subcontractor agrees to submit a list of any proposed sub-subcontractors, and Subcontractor shall not delegate, or further subcontract to others the performance of any of its obligations or work required or contemplated by this Subcontract without prior written consent of the Contractor, which shall not be unreasonably withheld.
2.2.1   If Subcontractor enters into agreements with any sub-tier subcontractor, it shall require each sub-tier subcontractor to agree in writing to be bound by all provisions of the Subcontract Documents, including the Contract and the General Conditions, applicable to its work.
2.3.1   Subcontractor hereby warrants that he has investigated and familiarized himself with all laws and codes applicable to its work; with the availability, cost and suitability of personnel, materials, equipment, utilities, etc; with the prevailing wage scales, union benefits and working conditions, craft jurisdiction, existing labor agreements (as applicable); all site conditions and restrictions, underground conditions, prevailing weather and climatological conditions; and any other factors which may affect Subcontractor's work.
2.3.2   Subcontractor further agrees that Contractor shall not be liable to Subcontractor on any claim for additional payment or additional time or any claim whatsoever if such claims directly or indirectly result from Subcontractor's failure to investigate and familiarize itself with the conditions under which this Subcontract is to be performed.
2.3.3   Subcontractor warrants it has visited the site and has become familiar with all conditions at the site, including without limitation, the conditions described in the General Conditions.
2.3.4   Generally, the specifications describe Work which cannot be indicated on the drawings and indicate types, qualities and methods of installation of the various materials and equipment required for the work.  It is not intended to mention every item of Work in the specifications which can be adequately shown on the drawings or to show on the drawings all items of Work described or required by the specifications even if they are of such nature that they could have been shown thereon.  All materials or labor for Work which is shown on the drawings or is reasonably inferable therefrom as being necessary to produce a finished job shall be provided by the Subcontractor whether or not the Work is expressly covered in the specifications.
2.3.5   Subcontractor, before proceeding with any work under its Subcontract will accurately check and verify

all previous and surrounding work done by others and determine the correctness of same. The Subcontractor shall field measure all work relating to its work. The failure of the Subcontractor to detect and disclose any existing discrepancies or nonconformities and report same to Contractor., in writing, before commencing its work shall relieve Contractor of any and all responsibility for same, and the Subcontractor shall be responsible and liable for all resulting damages, costs and expenses arising as a result of discrepancies and nonconformities that should have been discovered by the Subcontractor.

2.4      COORDINATION WITH OWNER'S SALES FORCES AND POTENTIAL OR ACTUAL PURCHASERS

2.4.1    Subcontractor hereby agrees for both it and its subcontractors to coordinate with Owner's Sales Forces in both the selection and change order process. Subcontractor and its Subcontractors shall provide samples of all selection materials as well as written materials relating to selections if so requested. They shall also provide to the Owner's Sales Forces pricing of any reasonably requested changes and shall explain such changes to any potential or actual purchasers upon request. All such requests shall be processed through Contractor unless otherwise directed by Contractor in writing.

2.4.2    Subcontractor and its Subcontractors shall also coordinate with purchasers on milestone activities including but not limited to (1) rough-in inspection, (2) electrical outlet placement walk-through, (3) mechanical vent placement walk through, (4) pre-closing final walk-through, (5) punchlist creation walk-through and (6) punchlist completion walk-through. To the extent that other walk-throughs or inspections with purchasers are necessary, such walk-throughs or inspections shall be scheduled through Contractor unless otherwise directed by Contractor in writing.

2.4.3    Subcontractor shall also be directly responsible to purchaser for any warranty obligations set forth in the Owner's Purchase and Sales Agreement unless otherwise detailed in the particular Work Order for that particular house. In addition, in the case of a "spec" or model home, Subcontractor shall also be directly responsible to Owner and any subsequent purchaser for any warranty obligations set forth in the Owner's standard Purchase and Sales Agreement unless otherwise detailed in the particular notice to proceed for that particular house.

Article 3.  Integration

3.1      This Subcontract constitutes the entire agreement between the parties and supersedes all proposals, correspondence, and oral agreements between the Subcontractor and Contractor, if any.  Except as otherwise provided for herein, no changes, amendments or modifications of the terms hereof shall be valid unless reduced to writing and signed by the parties hereto.

Article 4.  Payment

4.1.1    Pursuant to the Contract Documents, Owner is obligated to pay Contractor in accordance with the terms specified in the Work Order.

4.1.2    Subcontractor hereby acknowledges that the Contractor has fully disclosed the Owner's manner of payment pursuant to the Contractor Subcontractor Payment Act, 73 P.S. Section 501, et seq.

4.1.3    Provided Subcontractor's rate of progress and general performance are satisfactory to the Contractor and provided that the Subcontractor is in full compliance with each and every provision of the Subcontract Documents, the Contractor will make payment to the Subcontractor within forty five (45) days after receipt of Subcontractor's invoice with a stated interest rate for late payments of not greater than Prime Rate as established by Susquehanna Bank.

4.1.4    PAYMENT FROM THE OWNER TO THE CONTRACTOR IS A CONDITION PRECEDENT TO PAYMENT FROM THE CONTRACTOR TO THE SUBCONTRACTOR PURSUANT TO THIS ARTICLE.

4.1.5    ON PENNSYLVANIA PROJECTS, IN CONSIDERATION FOR CONTRACTOR'S AGREEMENT TO ENTER INTO THE SUBCONTRACT, SUBCONTRACTOR HEREBY AGREES TO WAIVE ALL RIGHTS TO INTEREST ABOVE THE LEGAL RATE, PENALTIES AND/OR ATTORNEY'S FEES PROVIDED BY THE CONTRACTOR AND SUBCONTRACTOR PAYMENT ACT, 73 P.S. SECTION 501 ET SEQ.

2 of 18

4.1.6      ON PENNSYLVANIA PROJECTS, SUBCONTRACTOR HEREBY AGREES THAT, IF THE OWNER REQUIRES CONTRACTOR TO WAIVE ANY OR ALL OF ITS RIGHTS UNDER THE CONTRACTOR AND SUBCONTRACTOR PAYMENT ACT, 73 P.S. SECTIONS 501 ET SEQ., SUBCONTRACTOR HEREBY AGREES TO SIMILARLY WAIVE ITS RIGHTS UNDER THE ACT.

4.1.7      Subcontractor acknowledges that in the event payment is not made to Contractor for any reason including, but not limited to, default by the Owner, Subcontractor shall look exclusively to the Owner for payment of any and all funds due under this Subcontract. Subcontractor further agrees that delay in payment for non-payment by the Owner does not create any separate obligation of Contractor to pay regardless of the extent of the delay. Subcontractor has the right to pursue payment from the Owner if the Owner is delinquent in payment per this agreement.

4.1.8      Within ten (10) days of execution, the Subcontractor shall submit to the Contractor a complete and accurate schedule of values of the various parts of its work. This schedule, when approved by the Contractor, shall be used as the basis for making payments.

4.1.9      On a monthly basis, the Subcontractor shall submit a request for partial payment consistent with the schedule of values and representing a true and accurate estimate of the work completed during the immediately preceding pay period. Unless modified by Work Order, Subcontractor's invoice must be received by the Contractor by the 25th of the month for all work completed to date. When required by the Contractor, Subcontractor shall provide an accurate inventory of materials suitably stored at the job site. Each application shall be accompanied by such invoices, vouchers, waivers, releases, certifications and affidavits as may be required by the Owner and/or Contractor. The Subcontractor agrees that any application for payment not in compliance may be held over for processing at the beginning of the pay period following correction of such application, with or without notice to Subcontractor.

4.1.10      No partial payment shall constitute acceptance by the Contractor of the work or material for which the partial payment is made; nor shall any partial payment constitute a waiver of any right to require fulfillment of all the terms of this Subcontract. Contractor shall promptly advise the Subcontractor in writing if the Owner or Contractor disapproves of or is withholding all or any of a Request for Payment, including change orders. Even if Subcontractor disagrees with Contractor's disapproval, Subcontractor shall continue to perform all work under this agreement including that in dispute. The Subcontractor shall also take all reasonable steps necessary to ensure that there will be no work stoppage or delay on account of such disapproval. Both parties agree to endeavor to promptly resolve such disputes on an ongoing basis.

4.1.11      The Subcontractor hereby agrees to reimburse the Contractor in the event of overpayment, together with any costs and expenses including administrative costs and attorney's fees, which the Contractor may incur in securing recovery thereof.

4.2      Contractor expressly reserves the right to issue joint checks to Subcontractor and its materialmen, suppliers or subcontractors, or any of Subcontractor's creditors having potential lien rights and/or claims against the work, for any payments that are, or may become, due and owing by Contractor to Subcontractor under this Agreement.

4.3      The Contractor may deduct from amounts due or to become due to the Subcontractor on this Project any sum due or to become due to Contractor from the Subcontractor whether or not said sums are in any way related to this Subcontract or Project.

4.4      In the event Subcontractor is in default of or breaches or fails to comply with any provision of the Subcontract; or in the event that any person asserts, or threatens to assert, any lien or claim, against the Project, the Owner, the Contractor or any Surety arising from Subcontractor's performance of this Subcontract, the Contractor may, at its option, withhold out of any payments due or to become due to the Subcontractor a sum sufficient to completely protect and indemnify the Contractor and the Owner from all loss, damage and/or expense, including attorney's fees and litigation costs, until the condition requiring such measure has been remedied by the Subcontractor to the satisfaction of the Contractor. If the Contractor is compelled to expend monies in defending, discharging or otherwise disposing of any claim or lien in excess of retained or withheld sums, the Subcontractor shall, upon demand,

reimburse the Contractor for the excess amount so expended, including reasonable attorney's fees and costs incurred by Contractor incident to such defense and/or incidental to Contractor's collection from Subcontractor of such excess.

4.5 Notwithstanding anything to the contrary contained in this Subcontract, and without any limitation as to time, Contractor shall not be obligated to make payments to Subcontractor under this Subcontract:

      a)    when such payment will leave a balance which is less then the retained percentage plus an amount adequate to satisfy all obligations of the Subcontractor for labor, materials, tools, etc. furnished or to be furnished by Subcontractor in the performance of its work;

      b)    when Subcontractor is or with reasonable probability (as determined by the Contractor) may become unable to comply with or completely perform this Subcontract;

      c)    whenever the Contractor, in its sole discretion, shall determine that the Project is being or is in danger of being delayed by the Subcontractor;

      d)    pending satisfactory correction, replacement and/or restoration of deficient work, material, or supplies, or of any work rejected if not conforming with this Subcontract or the Subcontract Documents.

4.6 The Subcontractor agrees, as a condition precedent to payment hereunder, to furnish the Contractor with such partial and/or final releases and/or waiver of liens as the Contractor may from time to time request in the form set forth in Exhibit "E-2" hereof.

Article 5. Final Payment

5.1 Final payment will be made within forty five (45) days after the Subcontractor's work has been completed to the satisfaction of the Owner and the Contractor, and the Contractor has received from the Owner written acceptance thereof together with payment in full for this portion of the work. Final payment is subject to Contractor's determination that all the requirements of the Subcontract have been met and discharged by Subcontractor. PAYMENT FROM THE OWNER TO THE CONTRACTOR IS A CONDITION PRECEDENT TO PAYMENT FROM THE CONTRACTOR TO THE SUBCONTRACTOR PURSUANT TO THIS ARTICLE.

5.2 No final payment shall constitute acceptance by the Contractor of the work or material for which the final payment is made, nor a waiver of any right to require fulfillment of all the terms of this Subcontract. The Subcontractor hereby agrees to reimburse the Contractor in the event of overpayment, together with any costs and expenses, including administrative costs and attorney's fees, the Contractor may incur in securing recovery thereof.

Article 6. Financial Condition of Subcontractor

6.1 If at any time Contractor in its sole discretion shall determine that the Subcontractor's financial condition has become impaired or unsatisfactory, Subcontractor shall furnish additional security satisfactory to the Contractor within three (3) days after written demand by Contractor.

6.2 The Contractor, Owner's representatives and architect at all times shall have free access to the office, shops and yards of the Subcontractor to verify any information about the work to be performed by the Subcontractor.

Article 7. Assignment

7.1.1 The Subcontractor will make no assignment of the proceeds of this Subcontract without the prior written consent of the Contractor, which consent shall not be unreasonably withheld.

7.1.2 The Contractor shall not be obligated to any assignee of the Subcontractor on account of payments at any time made in good faith to the assignor.

7.1.3 The Contractor shall not be liable to any assignee of the Subcontractor for any amount in excess of the net sums owing Subcontractor hereunder.

7.1.4 By making an assignment of the proceeds hereof, the Subcontractor waives any claims against Contractor resulting from Contractor's continued payment to assignees or former assignees, not

withstanding notification to Contractor of termination of any such assignment.

7.1.5    By making an assignment of the proceeds hereof, Subcontractor agrees to assume full liability for the conveyance to assignees of any payments mistakenly, inadvertently, or otherwise made or addressed to Subcontractor and Subcontractor agrees to defend and hold harmless the Contractor from claim or action of any assignee related to this Subcontract.

7.2    The Subcontractor shall not assign or sublet this Subcontract or any part or interest therein without Contractor's prior written consent. If Contractor so consents, such assignment is subject and subordinated to all labor preferences and other liabilities, actual or potential, as may be imposed on Contractor due to any obligation or liability of the Subcontractor.

7.3.1    Subcontractor agrees that its Subcontract is assigned by the Contractor to the Owner provided that:
.1    assignment is effective only after termination of the Contract by the Owner for cause and only for those subcontract agreements which the Owner accepts by notifying the Subcontractor and Contractor in writing; and
.2    assignment is subject to the prior rights of the surety, if any, obligated under bond relating to the Contract.

7.3.2    Upon such assignment, the Owner shall be responsible to the Subcontractor for those obligations of the Contractor that accrue subsequent to the Owner's exercise of any rights under this conditional assignment.

Article 8.  Performance Bond and Labor and Material Bond

8.1    The Contractor shall have the right to require any Subcontractor to furnish bonds covering the faithful performance of the Subcontract and the payment of all obligations arising thereunder as well as lien discharge bonds pursuant to Waiver of Liens and Release Article detailed below. The failure of the Subcontractor to furnish a bond within seven (7) days after having been given notice of such requirements by Contractor shall constitute sufficient cause for termination of this Subcontract without notice.

8.2    The Subcontractor's cost of the bond will be reimbursed by Contractor unless negotiated into the initial Subcontract Work Order amount. If not, then Contractor will reimburse Subcontractor for proven premium costs without mark-up.

Article 9.  Unit Price Basis

9.1    If the terms of this Subcontract provide for the payment of work performed on a unit price basis, the unit of measurement for payment shall be one for work certified. Verification of weights or quantities will be furnished at the time of delivery. In the event the parties fail to agree on the actual quantity performed, Contractor shall have the right to measure the quantity of work in place and make final settlement on the basis of such measurement. Unit prices shall be the same for both additions and deductions.

Article 10.  Equipment and Facilities

10.1    The Subcontractor shall provide at its own expense whatever tools; machines; equipment; plant; utilities; services' storage sheds; workshops; offices; first aid or emergency treatment facilities and any other facility he may deem necessary for the complete performance of all work required under this Subcontract, and shall remove any such installations and thoroughly clean and restore the site and premises at the completion of the work.

10.2    If the Subcontractor has occasion to utilize any of the facilities of the Contractor, when and if available, Subcontractor shall pay an equitable portion of the cost thereof. The Contractor shall bear no responsibility for any loss or damage from any cause whatsoever arising from Subcontractor's use of such facilities.

Article 11.  Submittals

11.1.1    The Subcontractor agrees to submit, in sufficient number, all shop or fabrication drawings, design and performance data, test, samples, operating and/or maintenance manuals for use in the

performance of this Subcontract as directed by the Contractor within thirty (30) days after execution of the Subcontract unless directed to do so within a lesser period by the Contractor.

11.1.2    Approval of any of the foregoing by the Contractor, the Owner or the Owner's authorized agent shall  under no circumstances alter the requirements of the Subcontract Documents or constitute acceptance by the Contractor of any method, material or equipment not acceptable to the Owner or the Owner's authorized agent.

11.2      The Subcontractor agrees that the cost of any of the foregoing required hereunder is included in the amount of this Subcontract.

## Article 12.  Materials Furnished by Contractor

12.1      It is hereby agreed by Subcontractor, if furnishing labor only for the finishing, installation or erection of materials furnished by Contractor, that the following costs, without restriction, are to be fully recovered by Contractor from Subcontractor:

a)        the full cost of material required to replace due to damage by the Subcontractor;

b)        the full cost of removing rejected materials when not properly installed or supplied by Subcontractor; and

c)        the full cost of altering any work of Subcontractor not accepted by the Owner's authorized agent.

## Article 13.  Cutting, Patching and Blocking

13.1      The Subcontractor shall obtain Contractor's approval for and shall do any cutting, patching and blocking necessary to complete this work hereunder, and such work shall be performed to the same standards and shall match any work performed pursuant to the Contract Documents.

## Article 14.  Maintenance of Site

14.1.1    Subcontractor agrees to keep the premises and all finished work clean free of dirt, rubbish, debris and any other waste materials at all times and to remove from the site all scrap and waste materials resulting from work under the Subcontract within twenty-four (24) hours after receipt by him from Contractor of written notice to do so.  Subcontractor shall be responsible for the removal and disposal of all receptacles and containers into which same is deposited.  Upon the completion of the various portions of work, the Subcontractor shall broom clean its work area.

14.1.2    The Subcontractor shall properly cover and protect the work of others from damage due to the performance of the work required under this Subcontract, and Subcontractor shall promptly clean, restore, or pay for the replacement of any such work damaged or soiled in the performance of its own work.

14.2      Subcontractor further agrees to furnish protection at all times for its own work and all materials stored for use under this Subcontract and to bear and be solely liable for all loss and/or damage of any kind to or in connection with said work and materials at any time prior to the final completion and acceptance thereof, unless said loss or damage is caused solely by the negligence of the Contractor and is subject to recovery under such applicable insurance policies as may be in effect.

14.3      If the Subcontractor fails to promptly perform such cleaning, protection and/or repair as directed by the Contractor, the Contractor shall have the right to proceed with such cleaning, protection and/or repair, and Subcontractor, on demand therefor, shall repay to the Contractor the actual cost of such work plus a reasonable percentage to cover Contractor's supervision, insurance, tax and overhead.

## Article 15.  Payment to Suppliers and Sub-subcontractors

15.1      Prior to performing any Work concerning, relating to, or under this Subcontract and whenever so requested by Contractor, Subcontractor shall disclose, in writing, to Contractor, the names, addresses, telephone numbers, a description of the labor and/or material to be provided, the contract amount, payments made and balances due for all sub-subcontractors, materials suppliers and/or other persons and entities that have or will, supply or transport goods, materials, equipment,

machinery, fixtures, services or labor under any agreement with Subcontractor for the Subcontractor's Work under this Subcontract.  In addition, the Subcontractor may, prior to performing any Work concerning, relating to, or under this Contract, be required by Contractor to provide a copy of all such agreements to Contractor.  The disclosures required by this paragraph is a condition precedent to Subcontractor performing any work at the Project, but, in no event, shall the Contractor's failure to enforce this requirement be deemed to be a waiver of Contractor's right to so demand disclosure by Subcontractor.

15.2   Subcontractor shall pay for all materials and supplies furnished and for all work, labor and services performed as required under this Subcontract, shall execute partial and final releases of liens upon demand by the Contractor, and shall indemnify Contractor and Owner against and save them and the premises harmless from any and all claims, demands, liens or suits, for all such material and supplies purchased and for all work, labor and services performed by others, including reimbursement of attorney's fees and any other costs of defense incurred.

15.3   The Subcontractor agrees and covenants that money received for the performance of this Subcontract shall be used solely for the benefit of persons and firms supplying labor, materials, supplies, tools, machines, equipment, plant or services exclusively for this Project in connection with this Subcontract; that money paid to the Subcontractor pursuant to this Subcontract shall immediately become and constitute a trust fund for the benefit of said persons and firms, and shall not in any instance be diverted by Subcontractor to any other purpose until all obligations and claims arising hereunder have been fully discharged.

Article 16.  Warranties

16.1   The Subcontractor warrants and guarantees the work and materials which he performs or furnishes under this Subcontract and agrees to make good, at its own expense, any defect in materials or workmanship which may occur or develop prior to Contractor's release from responsibility to the Owner.

16.2   The Subcontractor further agrees to assume, as a direct obligation to the Contractor and/or the Owner, any guarantees or warranties which would otherwise be the responsibility of the Contractor or other subcontractors, when such guarantees or warranties have been cancelled as a result of the Subcontractor's operations in performance of this Subcontract.

16.3   Without limitation of the foregoing or other obligations of the Subcontractor provided for in the Subcontract Documents, immediately upon the Contractor's demand, the Subcontractor, at its own expense, shall repair, replace, restore or rebuild, at the Contractor's option, any work in which defects in materials or workmanship may appear, or which is otherwise not in conformance with the other warranties of the Subcontractor hereunder, or to which damage may occur because of such defects or lack of conformance, within one (1) year or such longer period as required by the Specifications from the date of the Owner's and architect's final acceptance of the project.  If the Subcontractor fails to comply, the Contractor may correct such defect or lack of conformance, as the case may be, and the Subcontractor shall immediately reimburse the Contractor thereof.

Article 17.  Time of Performance

17.1.1   Time is of the essence.

17.1.2   The Subcontractor agrees to keep himself thoroughly informed as to the overall progress of the Project; to commence and to prosecute the work undertaken hereunder in a prompt and diligent manner whenever such work, or any part of it, becomes available, or at such time or times as the Contractor may direct, so as to promote the general progress of the entire Project; and Subcontractor shall not by delay or otherwise interfere with or hinder the work or progress of the Contractor or any other subcontractor.

17.1.3   Upon Contractor's request, Subcontract shall furnish such evidence as the Contractor may require relating to Subcontractor's ability to fully perform this Subcontract in the manner and within the time established as herein provided.

17.1.4   The Subcontractor also shall furnish upon request by the Contractor from time to time cash flow

expenditures for labor for its work (which shall include the estimated payroll for each of the trades it will employ by subcontract).

17.1.5    The Contractor exclusively shall control scheduling and coordination of the work, including the periodic updating and re-sequencing thereof, if any and the Subcontractor shall comply therewith.

17.1.6    The Contractor shall have the right to schedule other work at the same time and in the same areas as the Subcontractor's work.

17.1.7    At its sole discretion, the Contractor may schedule work during a time of and from time to time during winter conditions. The determination of when winter conditions exist shall rest exclusively with the Contractor.

17.2    The Subcontractor agrees to notify the Contractor of its objection to, or inability to comply with, any directive, notification, order, schedule or revisions thereof dealing with the time or times of its performance hereof, and to do so within three (3) days of Contractor's issuance thereof.

17.3    Specific requirements as to the time of performance shall take precedence over the more general requirements of this article.

17.4.1    In the event of any failure of Subcontractor to complete its work within the required time, the Subcontractor hereby agrees to reimburse the Contractor for any and all actual and/or liquidated damages that may be assessed against the Contractor by the Owner, which are directly or indirectly attributable to work caused by the Subcontractor's failure to comply fully with the foregoing provision.

17.4.2    Subcontractor also agrees to pay to the Contractor such damages as the Contractor may sustain by reason of any delay, directly or indirectly, attributable to or caused by the Subcontractor, including, but not limited to, recovery of Contractor's overhead and expense related to the managing and supervising of the prime Contract work.

17.5    In the event Subcontractor's performance of this Subcontract is delayed or interfered with by acts of the Owner, Contractor or other Subcontractors, Subcontractor may submit to the Contractor a written request for an extension of time for the performance of same.

17.6    At the request of the Contractor, the Subcontractor shall perform certain parts of the work before other parts, add extra manpower, or order overtime labor in order to comply with the project schedule, all without increase in the Subcontract price, unless otherwise specifically provided in the General Conditions.

17.7    If in order to expedite the final completion of the Work, Contractor requests Subcontractor to work overtime at a time when Subcontractor is not in default in any of the provisions of this contract, Subcontractor agrees to work said overtime and it is understood that Contractor shall pay Subcontractor therefore only the Subcontractor's extra labor costs over the rate for regular time during the period of such overtime, including additional insurance and taxes incurred by Subcontractor with respect thereto. Time slips covering said overtime must be submitted to Contractor's authorized agent for checking and approval. No commissions, fees, overhead, or profit is to be charged by or allowed to Subcontractor for or on account of said overtime. However, if Subcontractor shall at any time be behind in the work herein contemplated, or if in the opinion of the Contractor, Subcontractor is delaying the progress of the work necessary to complete the Project, then and in either such event, if requested by Contractor, Subcontractor shall cause to be performed overtime work as may be necessary to keep abreast with the general progress of the work at the Project, and in either such event the cost and expense of such overtime shall be borne entirely by Subcontractor.

17.8    If the Subcontractor shall be delayed in the prosecution or completion of the Subcontract Work by the act, neglect or default of the Contractor, the Architect, the Owner, or any other subcontractor employed by the Contractor upon the project, or by any damage caused by fire or other casualty for which the Subcontractor is not responsible, or by general strikes or lockouts caused by acts of employees, then the time fixed by the Contractor for the completion of the Subcontract Work shall be extended for such period of time as shall be determined and fixed by the Contractor as the time lost by reason of any or all of the causes aforesaid. This shall be Subcontractor's sole and exclusive remedy for such delay and in no event shall Contractor be responsible for any increased

costs, charges, expenses or damage of any kind resulting from any such delays.  No allowance of an extension of time for performance of this Subcontract will be granted, unless a claim therefor is presented to the Contractor in writing and within forty-eight (48) hours of the occurrence of the cause thereof, and then only if the Contractor agrees to such an extension of time in its sole discretion. Time elapsed between Work Orders, phases of the Work or construction of individual houses does not constitute a delay, interruption or suspension.

Article 18.  Changes in Work

18.1    Contractor may at any time, by written order and without notice to surety, make changes in the work herein contracted for and the Subcontractor shall proceed with the work as directed.  If said changes cause an increase or decrease in the cost of performance or in the time required for performance an equitable adjustment shall be made and this Subcontract shall be modified in writing accordingly.  Nothing herein shall excuse the Subcontractor from proceeding with the prosecution of the work as changed.

18.2    For any adjustments by Change Order, Subcontractor will be permitted to charge ten percent (10%) as a reasonable allowance for a combined overhead and profit mark-up for work not involving Sub-subcontractors and five percent (5%) as a reasonable allowance for a combined overhead and profit mark-up for Work by Sub-subcontractors.

18.3    If Contractor and Subcontractor are unable to agree on the price for the changed work, Contractor shall have the right to order Subcontractor to proceed with the changed work on a time and material basis.  When changed work, other than overtime ordered by Contractor, is performed on a time and material basis, unless otherwise limited by the agreement between Owner and Contractor, Subcontractor shall receive: (1) the actual cost of labor including applicable insurance and payroll taxes, based upon the Approved Labor Rates, plus ten percent (10%) for overhead and profit, and (2) the actual cost of material and equipment, plus ten percent (10%) for overhead and profit.  In performing changed work on a time and material basis, if such work requires that Subcontractor use a subcontractor, Subcontractor shall limit its subcontractor as set-forth above and Subcontractor shall be limited to a mark-up of its subcontractor's total of five percent (5%) for Subcontractor's overhead and profit.  Whenever changed work is performed on a time and material basis, Contractor shall have the right to audit Subcontractor's books, records, documents and other evidence bearing on the costs and expenses of the Subcontractor for such changed work.

18.4    No extension to Subcontractor's time of performance as a result of changed work shall be allowed under this Subcontract unless authorized by Contractor in writing.  The value of the changed work requested by Subcontractor shall include all costs for delay and disruption to Subcontractor's work.  Subcontractor shall not be entitled to any additional compensation for delay and disruption caused by the changed work unless such costs are requested and approved by the Owner.  In no event, shall Subcontractor be entitled to compensation for the collective impact of changed work.

Article 19.  Claims

19.1    The Subcontractor agrees to make any claims to the Contractor for damages or additional compensation based on alleged extra work, changed conditions or any other grounds within three (3) days of the discovery of the condition causing the need for additional compensation or damages or within sufficient time (48 hours prior to the amount of time set forth in the notice requirement in the Contract between Contractor and Owner for like claims) to permit Contractor to advise the Owner in the manner provided in the Contract Documents for like claims, whichever is shorter.  The Contractor will not be liable to the Subcontractor on account of any claim not timely or properly presented or until it is allowed by the Owner.  Payment by Owner on any claims by Subcontractor is a condition precedent to payment by Contractor on any claims of Subcontractor.

19.2    The Subcontractor agrees that any liability of the Contractor to the Subcontractor on any claim of any sort by the Subcontractor against Contractor arising in whole or in part out of any act, omission, default, order, directive, decision or change by the Owner, or which could be the subject of a claim by the Contractor against the Owner, shall be liquidated and limited to whatever the

9 of 18

Contractor actually receives from the Owner, if anything, as a result of the presentation of a claim based thereon to the Owner, and the Subcontractor shall have no other or further claims whatsoever against the Contractor based thereon or in any way related thereto. Any claim prosecuted hereunder shall be subject to the sole direction and control of the Contractor.

19.3    If the Subcontractor encounters any condition which forms the basis of a claim for extra compensation or time, or any other type of claim, including but not limited to those conditions which are (1) subsurface or otherwise concealed physical conditions which differ materially from those indicated in the Contract Documents or (2) unknown physical conditions of an unusual nature, which differ materially from those ordinarily found to exist and generally recognized as inherent in construction activities of the character provided for in the Contract Documents, it shall be its duty to give written notice to the Contractor prior to commencing any work involving said condition and no later than three (3) business days after encountering the condition so the Contractor may inspect said condition and take such steps as Contractor deems necessary. In the absence of such notice to the Contractor, Subcontractor shall be fully liable for any and all expense, loss or damage resulting from said condition. The Contractor will promptly investigate such conditions and, if they differ materially and cause an increase or decrease in the Subcontractor's cost of, or time required for, performance of any part of the Work, will recommend an equitable adjustment in the Subcontract Sum or Subcontract Time, or both. If the Contractor determines that the conditions at the site are not materially different from those indicated in the Contract Documents and that no change in the terms of the Subcontract is justified, the Contractor shall so notify the Subcontractor in writing, stating the reasons.

19.4    It is also agreed that Subcontractor shall not be entitled to any additional payment or compensation under this Subcontract without the express written approval or Contractor. No officer, employee or agent of Contractor is authorized to direct any Extra Work by oral order except minor changes in the work not involving extra cost or time.

Article 20.  Disputes

20.1.1    In the event of any dispute between the Contractor and the Owner which involves the work required to be performed by Subcontractor under this Subcontract, or in the event of any dispute between Contractor and Subcontractor which involves a claim against the Owner for either additional compensation and/or an extension of time under the Contract Documents, Subcontractor agrees to be bound to Contractor and Contractor agrees to be bound to Subcontractor to the same extent that Contractor is bound to the Owner by the terms of the Contract Documents and by all decisions or findings made thereunder by the persons so authorized in the Contract Documents, or by an administrative agency or court of competent jurisdiction, whether or not Subcontractor is a party to the proceedings before said person, agency or court.

20.1.2    If any dispute or claim is prosecuted or defended by the Contractor, and Subcontractor is not directly a party or litigant, Subcontractor agrees to cooperate fully with Contractor and shall pay or reimburse Contractor for all expenses and costs, including reasonable attorney's fees, incurred in connection therewith to the extent of the Subcontractor's interest in such claim or dispute.

20.1.3    It is expressly understood and agreed in connection with the determination of such claim or disputes that Contractor shall never be liable to Subcontractor to any greater extent than Owner is liable to Contractor.

20.2    In the event of any claim or dispute between Contractor and Subcontractor, it is further specifically agreed by the parties hereto that no claim shall interfere with the performance work required to be performed under this Subcontract.

Article 21.  Default

21.1.1    In the event the Subcontractor fails to comply, or becomes unable to comply, or with reasonable probability (as determined solely by Contractor) will become unable to comply, with any of the provisions of this Subcontract; or in the event Subcontractor fails at any time to supply a sufficient number of properly skilled workmen with sufficient materials, equipment or plant of proper quality

or fails in any respect to prosecute the work with promptness and diligence; or causes by any action or omission a stoppage of or delay in the work of the Contractor or other subcontractor of Contractor; or in the event Subcontractor abandons its work or any part thereof; and such failure, inability or deficiency (as determined solely by Contractor) is not corrected within one day after written demand by the Contractor to the Subcontractor; the Contractor may, in addition to and without prejudice to any other right or remedy, take over and complete the performance of the Subcontract, at the expense of the Subcontractor; or the Contractor may, without taking over the work, immediately and without notice to Subcontractor, furnish the necessary materials and labor through itself or others, to remedy the situation, all at the expense of the Subcontractor.

21.1.2   The parties hereto further agree that any of the following shall, at the option of the Contractor, constitute inability to comply with the provisions of this Subcontract for purposes of this article:

    a)   the filing of a petition in bankruptcy or a petition for the appointment of a receiver by or against the Subcontractor;

    b)   the insolvency of the Subcontractor or its inability to meet its debts as they mature;

    c)   the establishment of a receivership or any committee of creditors involving Subcontractor's business or assets, or the making of an assignment for the benefit of Subcontractor's creditors; or

    d)   the failure or refusal of Subcontractor to respond to any written order or notice duly issued by the Contractor.

21.1.3   Subcontractor hereby waives any and all defenses, claims or causes of action against Contractor based in whole or in part on the contention that Subcontractor would have been able to comply with the Subcontract.

21.2.1   Upon any action by the Contractor pursuant to this article, the Subcontractor shall not be entitled to further payment on this Subcontract until the work has been completed and accepted by the Owner and payment therefore has been received by the Contractor from the Owner.

21.2.2   If the expense incurred by the Contractor exceeds the unpaid balance due, the Subcontractor agrees to promptly pay the difference to the Contractor together with interest thereon at the rate of the prime rate plus 2% per annum until paid, and the Contractor shall have a lien upon all material, tools, and equipment taken possession of to secure the payment thereof.

21.2.3   With respect to expenses incurred by the Contractor pursuant to this article, it is hereby agreed that the costs and expenses chargeable to the Subcontractor as herein before provided shall include, without restriction, the cost of materials, labor, subcontracts, purchase orders, transportation, equipment and expense thereon, supplies, services, insurance, taxes, appliances, tools, utilities, power used or consumed, supervision, administration, job overhead, travel, attorney's fees, legal and accounting fees and expenses, Contractor's general overhead as allocated to the work and other costs and expenses incurred or sustained by the Contractor, plus ten percent (10%) profit on the actual cost of the work performed as well as on the amount of claims paid by the Contractor for Subcontractor or for which it deems itself liable.

21.3   In no instance will any action whatsoever taken by the Contractor pursuant to this Subcontract relieve or mitigate Subcontractor's full and absolute responsibility for any and all of the Subcontractor's obligations under this Subcontract.

21.4   In the event the employment of the Subcontractor is terminated by the Contractor for cause under this Article and it is subsequently determined by a court of competent jurisdiction or arbitrator(s) that such termination was without cause, such termination shall thereupon be deemed a Termination for Convenience under Article 22 and the provisions of Section 22.2 shall apply.

Article 22.   Suspension or Termination for Convenience

22.1   The Contractor may, without cause, order the Subcontractor in writing to suspend, delay or interrupt the Work in whole or in part for such period of time as the Contractor may determine. In such an event, the Contract Sum and Contract Time shall be adjusted for increases in the proven and documented cost and time caused by suspension. Adjustment of the Contract Sum shall not

include profit, special or consequential damages. No adjustment shall be made to the extent: (1) that performance is, was or would have been so suspended, delayed or interrupted by another cause for which the Subcontractor is responsible; or (2) that an equitable adjustment is made or denied under another provision of the Contract.

22.2     The Contractor may, at any time, terminate this Subcontract in whole or in part for the Contractor's convenience and without cause. Termination by the Contractor under this Paragraph shall be by notice of termination delivered to the Subcontractor specifying the extent of termination and the effective date of such termination. The Subcontractor shall recover as its sole remedy payment for work properly performed in connection with the terminated portion of the work prior to the effective date of termination and for items properly and timely fabricated off the Project site, delivered and stored in accordance with the Contractor's instructions. The Subcontractor hereby waives and forfeits all other claims for payment and damage, including, without limitation, anticipated profits.

## Article 23.  Coordination

23.1     The Subcontractor agrees to perform the work called for in this Subcontract in such a manner that he will not injure or damage any other work performed by the Contractor or any other subcontractor.

23.2     The Subcontractor further agrees to cooperate with the Contractor and other subcontractors whose work might interfere with the Subcontractor's work and to prepare sketches and drawings as directed, and/or to participate in the preparation of coordinated drawings in areas of congestion, specifically noting and advising the Contractor of any such interference.

23.3.     The Subcontractor agrees to have a representative present at regularly scheduled jobsite coordination meetings. This representative must be a principal of the company or designated project manager who has the authority to comply with all scheduling and other requests of the General Contractor. It is further agreed that the Subcontractor's representative shall appear promptly at the designated meeting time. If the Subcontractor fails to attend these meetings on a timely basis, the Contractor shall have the right to declare the Subcontractor in default of this Subcontract, and seek all legal remedies in accordance with the terms of this Subcontract.

## Article 24.  Indemnification

24.1     To the fullest extent permitted by law, Subcontractor agrees to indemnify, hold harmless and defend **Guidi Homes, Inc.  and General Contractor, Construction Manager, Prime Contractor, Owner, Architect, Engineer, Partner and Joint Venture** and their agents, employees, representatives, officers, directors, stockholders, members, managers and parent, subsidiary and affiliated companies (the "Indemnified Parties") from and against any and all liability for loss, damage or expense for which the Indemnified Parties may be held liable by reason of injury (including death) to any person (including Subcontractor's employees) or damage to any property of whatsoever kind or nature arising out of or in any manner connected with the work to be performed for the Indemnified Parties (including, but not limited to, work performed under this contract, work performed under Change Order, or any such other work performed for or on behalf of the Indemnified Parties, whether performed at the site or not or in any way connected with the use, misuse, erection, maintenance, operation or failure of any machinery or equipment whether or not such machinery or equipment was furnished, rented or loaned by any of the Indemnified Parties, even for and if caused in whole or in part by any act, omission, or negligence of the Indemnified Parties. It is expressly understood and agreed that the indemnity contained in this paragraph covers claims by Subcontractor's employees and that Subcontractor expressly waives any defense to this indemnification obligation which may arise under the Workers' Compensation Act of any State. In addition, Subcontractor shall defend the Indemnified Parties against any claim which may potentially give rise to indemnification of the Indemnified Parties, even if such claim alleges that the Indemnified Parties are wholly or partially at fault for causing the loss. If Indemnification for the Indemnified Parties' sole negligence is expressly prohibited by

Law, such defense shall continue until it is conclusively established by a court of competent jurisdiction that: 1) the Indemnified Parties are solely liable for causing the bodily injury or property damage alleged; and 2) that neither Subcontractor nor its employees nor any Subcontractor to Subcontractor is liable; at which time the Indemnified Parties will absorb all costs of defense. It is further expressly agreed that Subcontractor assumes the fullest extent of all obligations to indemnify and defend all parties whom **Guidi Homes, Inc.** is obligated to indemnify and defend in **Guidi Homes, Inc.'s** contract with General Contractor, Construction Manager, Prime Contractor, Owner, Architect, Engineer, Partner and Joint Venture (whether or not such obligations may extend to items beyond those addressed in this Agreement).

If there are any damages or claims of any kind or nature unsettled when the subcontract work is finished, the final payment by **Guidi Homes, Inc.** shall be deferred until all such claims shall have been adjusted or suitable coverage or indemnity acceptable to Guidi Homes, Inc. is provided by Subcontractor or Subcontractor's insurance carrier.

Subcontractor and **Guidi Homes, Inc.** further agree that the Laws of the Commonwealth of Pennsylvania shall apply to the construction and application of the Indemnification and Hold Harmless Agreements set forth above

24.2    In the event and to the extent that a claim is made by an employee of Subcontractor against an Indemnified Party hereunder, the intent of this Article is that Subcontractor shall and it hereby agrees to indemnify Owner, Architect, Contractor and their parent, subsidiary, or affiliated companies and each of their agents, officers, directors, employees and assigns to the same extent as if the claim was made by a non-employee of Subcontractor. Accordingly, in addition to the above provisions, and in order to render the parties' intent and this indemnity agreement fully enforceable, Subcontractor, in an indemnification claim hereunder, hereby expressly and without reservation waives any defense or immunity it may have under any applicable Worker's Compensation Laws or any other statute or judicial decision disallowing or limiting such indemnification and consents to a cause of action for indemnity. Said waiver and consent to indemnification is made irrespective of and specifically waiving any defense or immunity under any statute or judicial decision disallowing or limiting such indemnification.

24.3    The Subcontractor shall bear any expense of an Indemnified Party because of any claim or other matter indemnified against hereunder, including reasonable attorney's fees and court costs in the defense of, or preparing for the defense against, any such claim, even if such claim or any lawsuit arising therefrom is groundless, false or fraudulent. If any such claim has not been settled or discharged when the Work is finished, final settlement between the Contractor and the Subcontractor and final payment of the Subcontract Price and the acceptance of the Work shall be deferred until any such claim is paid or settled or the Subcontractor provides a bond, acceptable to the Contractor, in its sole discretion, to satisfy such claim. At the request of any Indemnified Party, Subcontractor shall retain an attorney to represent such Indemnified Party in the defense of any such claim, provided, however, that any attorney employed in such defense must be satisfactory to such Indemnified Party.

24.4    The parties hereby agree that the Contractor shall not be liable for any loss or casualty incurred or caused by the Subcontractor. The Subcontractor shall maintain full and complete insurance on its work until final acceptance of the Work. The Subcontractor assumes all risk of loss for all its work regardless of whether the Subcontractor had previously been paid for same. Contractor is not responsible to provide any service for the Subcontractor's benefit, and is not liable for any loss or damage to the Subcontractor's Work.

24.5    In addition to the above, Subcontractor shall indemnify and hold harmless the Indemnified Parties for all damages, losses, or claims that arise as a result, in whole or in part, of the negligence, errors, omissions, or failure to perform by the Subcontractor, his employees, his agents or his subcontractors. The Subcontractor shall indemnify and hold harmless the Owner for all damages, losses, or claims, including related attorney fees, that arise as a result, in whole or in part, of the

13 of 18

breach of this Agreement or any implied covenants deemed to be applied thereto, intentional acts, omissions, or other failures to perform by the Subcontractor, his employees, his agents or his subcontractors.

**Article 25. Elimination or Reduction of Work**

25.1    In the event of elimination or reduction of the work to be performed under this Subcontract by reason of termination or modification of the Subcontract Documents or a change in the work to be done thereunder, either in accordance with the terms of the Contract or the Subcontract Documents or by default by Owner, Subcontractor shall not be entitled to recover from Contractor more than its fair and equitable portion of any sums received by Contractor for work done or materials supplied by this Subcontractor on this Subcontract. The rights and claims of the Contractor, other subcontractors and third parties shall be taken into consideration in determining Subcontractor's fair and equitable share.

**Article 26. Labor Harmony**

26.1    The Subcontractor accepts complete responsibility to maintain labor harmony with all trades working on this project during the performance of Subcontractor's Work.

**Article 27. Permits and Compliance with Law**

27.1    Subcontractor shall obtain and pay for all permits, licenses and official inspection made necessary by its work and shall comply with all laws, ordinances and regulations bearing on the work required under this Subcontract.

27.2    Without limitation of any other provision hereof, if the Subcontractor performs any Work which is contrary to such laws, ordinances, codes, rules and regulations, he shall make all changes as required to comply therewith and bear all costs arising therefrom without additional reimbursement.

**Article 28. Independent Contractor**

28.1    The Subcontractor certifies that he is "an independent Contractor" subject, as an employer, to all applicable statutes and regulations with respect to such status.

**Article 29. Employees**

29.1    The Subcontractor shall not employ any person in performance of this Subcontract whose employment might be reasonably objected to by the Contractor or Owner and hereby agrees to promptly remove from the Project any such person or party.

**Article 30. Notice**

30.1.1    Written notice, where required by the terms of this Subcontract, may be accomplished by personal delivery of said notice or by use of the United States mail or a facsimile communication. The written notice shall become effective upon the date stated therein, or, if no such date is stated, upon the date upon which delivery is complete.

30.1.2    Personal delivery is complete when the notice is delivered to the Subcontractor or its representative at the Project or at the office address of the Subcontractor appearing in this Subcontract. The Subcontractor shall, at all times during its work on this Project, have a representative authorized to receive written notices present on the Project site during all normal working hours. In the absence of such a representative, personal delivery is complete when the notice is delivered to any of its subcontractors, supervisors or workmen, or in their absence, left in a conspicuous place on the Project site in the area of Subcontractor's work.

30.1.3.    If facsimile is used, completion of the facsimile will have a confirmation notice attached thereto, to indicate that the fax has been sent in its entirety, and shall have a date reflected thereon.

30.1.4    When regular or overnight mail is used, delivery is complete for the purposes of paragraph 30.1.1 on the date first occurring among the following: a) on the day the communication is received by

Subcontractor evidenced by a return receipt furnished by the United States Post Office Department or by any recognized messenger or delivery service, or b) on the third day after the notice is deposited in the U.S. mail addressed to the Subcontractor at its last known address.

Article 31.   Superintendent

31.1   The Subcontractor shall at all times maintain a qualified and skilled superintendent or foreman at the site of the work who shall be satisfactory to the Owner, the Owner's authorized agent and/or the Contractor.  Such superintendent or foreman shall be duly and legally authorized to represent and act for the Subcontractor with respect to all matters in connection with or arising out of work under this Subcontract.

Article 32.   Subcontractor's Dealing with Owner

32.1   It is agreed that all of Subcontractor's dealings with the Owner's authorized agent, the Owner, or any other party named in the Contract Documents shall be through the Contractor.

32.2   The Subcontractor further agrees that he shall not make any agreement with the Owner's authorized agent or with the Owner pertaining to any phase of the performance of this Subcontract.

Article 33.   Owner Right to Reject Subcontract and Third Party Beneficiary Rights

33.1   Subcontractor recognizes that the Owner may reject any proposed subcontractor or supplier for any reason and at its discretion prior to execution of the subcontract.

33.2   Nothing contained in the Subcontract Documents or Contract Documents shall create a contractual relationship between the Owner and any third parties; however, it is understood and agreed that the Owner is an intended third party beneficiary of all subcontracts, purchase orders, and other agreements between the Contractor and third parties.

Article 34.   No Commingling of Materials

34.1   To the extent that the materials or equipment is for a particular Work Order, the materials and equipment must be marked as such and must not be commingled with material or equipment for other portions of the project. No payments will be made for stored materials or equipment unless they are so designated and separate.

Article 35.   Contributions, Taxes and Insurance

35.1   The Subcontractor agrees to and does hereby accept full and exclusive liability for the payment of all contributions, taxes, insurance of any description whatever, now or hereafter imposed by any authority, which are measured by the wages, salaries or other remunerations paid to persons employed by Subcontractor on work performed pursuant to the terms of this Subcontract.

35.2   Subcontractor further agrees to and does hereby accept full and exclusive liability for the payment of all personal property taxes, inventory taxes, sales taxes, use taxes, excise taxes, fuel taxes, transportation taxes, franchise taxes, and all other taxes, and/or tax assessments in any manner whatsoever relating to the materials, supplies, tools, machinery, equipment and plant which may be purchased, acquired, rented or used by Subcontractor relating to all work performed under this Subcontract.

Article 36.   Insurance

36.1.1   Subcontractor shall provide and maintain at all times during the performance of this Subcontract Workmen's Compensation and Employer's Liability insurance for protection of Subcontractor's employees, as required by law; and insurance covering Public Liability, Property Damage and Subcontractor's Contractual Liability hereunder (including but not limited to all work performance and operation of automobiles, trucks and other vehicles, the values of which are itemized in Exhibit "C").

36.1.2   All insurance required hereunder shall be maintained in full force and effect in a company or companies satisfactory to Contractor, at the Subcontractor's expense, and until performance in full hereof has been accomplished and final payment has been issued in evidence thereof.  Further,

such insurance shall be subject to the requirement that Contractor must be notified by thirty (30) days written notice before cancellation of any such policy. In the event of the threatened cancellation for non-payment of premium, Contractor may pay the same for Subcontractor and deduct the said payment from amounts then or subsequently owing to the Subcontractor hereunder.

36.1.3   Certificates of insurance must be filed with the Contractor within thirty (30) days of the date of execution of this Subcontract or prior to commencement of work, whichever is earlier. No payment shall be considered due and owing hereunder until certificates of insurance satisfactory to the Contractor have been received in its office.

36.1.4   Subcontractors' liability policy shall be the primary policy and must list as additional insured both Contractor and the Owner of the Project as well as any additional entities listed in the relevant Work Order using the following language:

**Guidi Homes, Inc and (Name of Owner if other) are additional insured on the captioned General Liability, Umbrella liability and Automobile Liability Policies on a Primary and Noncontributory basis. A waiver of Subrogation is provided on these policies in favor of Guidi Homes, Inc, including workers compensation where permitted by State Law.**

36.1.5   Subcontractor is required to report to Contractor in writing, any job related illness or accident within three (3) business days of illness or accident.

36.2   Subcontractor shall require its Sub-subcontractor to provide and maintain at all times during the performance of the Sub-subcontractor's Subcontract, Workmen's Compensation and Employer's Liability insurance for protection of the Sub-Subcontractor's employees, as required by law; and insurance covering Public Liability Property Damage and Sub-Subcontractor's Contractual Liability under its Subcontract (including but not limited to all work performance and operation of automobiles, trucks and other vehicles, the values of which are itemized in Exhibit "C"). The insurance provided by the Sub-Subcontractor shall meet all of the requirements of this Subcontract.

36.3   In the event Contractor, in its sole discretion, determines that Subcontractor is not maintaining the insurance required by this Agreement, Contractor shall have the right to immediately terminate this Agreement without any notice to Subcontractor.

36.4   To the fullest extent permitted by applicable law, Subcontractor waives all subrogation rights against Contractor, Owner, and any of their agents and employees: (1) for damages caused by fire or other perils to the extent covered by property insurance provided under the Principal Contract, the Subcontract or other property insurance applicable to the Work, except such rights as they may have to proceeds of such insurance held by Owner or Contractor as fiduciary; and (2) for other claims to the extent arising out of a loss or claim covered by Subcontractor's liability, automobile or worker's compensation insurance. Subcontractor shall require Subcontractor's sub-subcontractors, agents and employees by appropriate agreements, written where legally required for validity, similar waivers in favor of other parties enumerated herein. The policies shall provide such waivers of subrogation by endorsement or otherwise. A waiver of subrogation shall be effective as to a person or entity even though that person or entity would otherwise have a duty of indemnification, contractual or otherwise, did not pay the insurance premium directly or indirectly, and whether or not the person or entity had an insurable interest in the property damaged.

## Article 37.   Effective Date

37.1   The effective date of this Subcontract is intended by both parties to be the date indicated at the beginning of this Subcontract. The dates appearing by the signatures at the end of this document merely indicate the dates that the signatures were affixed.

## Article 38.   Waiver of Liens and Releases

38.1   If Contractor posts a bond guaranteeing payment for goods, materials, and equipment supplied, labor or services provided to the Project by Subcontractors, then Subcontractor agrees to waive its right to file a mechanics' lien and that no mechanics' liens, notices, or claims, or materialman's liens, notices, or claims, or any other liens or claims of any kind whatsoever will be filed, enforced, or maintained with respect to the goods, materials, and equipment supplied, labor or services

performed pursuant to this Subcontract against the Project for which they are supplied or performed, or against the owner, real property, building, or other improvements of which the Project is a part, or any part or parts thereof or the appurtenances thereto by Subcontractor, its successors and assigns. If the bond posted by Contractor guarantees payment for goods, materials, and equipment supplied, labor or services provided to the Project by sub-subcontractors, suppliers, materialman and other entities pursuant to a contract with Subcontractor, then Subcontractor shall obtain lien waivers from such sub-subcontractors, suppliers, materialman and other any other similarly situated entities, stating that liens may not be filed on the Project and provide written notice of this lien waiver provision to its sub-subcontractors, suppliers, materialman, and all other persons or entities acting by, through, or under it or them, prior to and before any labor or services are performed, or goods, materials, or equipment are supplied to the Project pursuant to this Subcontract.

38.2   If Contractor posts a bond guaranteeing payment for goods, materials, and equipment supplied, or labor or services performed by Subcontractor, then, in the event a mechanics' lien, notice, or claim, or materialman's lien, notice, or claim, or construction lien claim, or lien, or any other lien or claim of any kind whatsoever is filed, enforced, or maintained by Subcontractor and/or any of Subcontractor's sub-subcontractors, suppliers, materialmen, and all other persons or entities acting by, through, or under it or them, then Subcontractor shall defend, indemnify, and hold Contractor harmless from such liens and/or claims, and shall also cause said mechanics' lien, notice, or claim, or materialman's lien, notice, claim, construction lien claim, or other lien of any kind whatsoever, to be discharged in accordance with applicable law. Subcontractor also agrees to pay and reimburse Contractor for all costs, expenses and attorney's fees incurred by Contractor in defending, responding to and/or discharging liens or claims filed by Subcontractor and/or any of Subcontractor's sub-subcontractors, suppliers, materialmen, and all other persons or entities acting by, through, or under it or them whenever a valid lien waiver is in place on a Project.

38.3   As a prerequisite to payment, Subcontractor agrees that it will execute, in a form satisfactory to owner, all documents required by Contractor that evidence, ensure, and guarantee that the Subcontractor has made payment for all Work performed in connection with this Subcontract, including, but not limited to, Releases and Partial Waiver of Liens, in consideration for each and every payment and up the date covered by the payment, whether partial or final. Said Releases and Partial Waiver of Liens shall include, whenever so requested by Contractor, and in a form acceptable to Contractor, Partial Waiver of Liens and Release of claims, costs, expenses, fees, charges, changes, change orders, or change order requests that arise out of or relate to Subcontractor's Work performed from all contractors, suppliers, persons and/or entities that have, or will, provide labor, materials, equipment, machinery, fixtures, services, or labor under any agreement(s) with Subcontractor for the Subcontractor's Work under this Subcontract. A sample Partial Lien Waiver and Release Form is attached hereto as Exhibit "E-2" to this Subcontract. Contractor reserves the right to modify the form of this Partial Lien Waiver and Release.

38.4   The Subcontractor, when required by the Contractor as a condition precedent to the making of final payment hereunder, shall furnish to the Contractor a full and complete release and discharge, in a form satisfactory to the Contractor, of all liens, claims and demands arising out of or relating to the Subcontract work and any and all materials furnished, work done and equipment used in connection therewith. Furthermore, if, prior to final payment, the Owner or any party providing financing for the Project requests a release of liens from the Subcontractor, the Subcontractor shall execute and deliver such release of liens in a form satisfactory to the Owner or such other party. A sample Final Lien Waiver and Release is attached hereto as Exhibit "F-2" to this Subcontract.

Article 39.  Applicable Law

39.1   The law of the Commonwealth of Pennsylvania, not including choice of law analysis, shall be applicable to this Subcontract and shall be used to decide any dispute related to this Subcontract.

Article 40.  Determination of Disputes

40.1.1   Any dispute between the parties related to this Contract shall be determined by the courts of the Commonwealth of Pennsylvania located in Montgomery County or, if the Contractor agrees in writing that the Owner is a party to the dispute, the venue required by the Contract Documents, with the exception noted in Section 40.1.2 below.  The Subcontractor hereby consents to the personal jurisdiction of that Court over it and agrees to accept service of process issuing from that Court.  As part of the consideration given by the parties hereto, the parties mutually agree to waive their respective rights to a jury in any such matter.

40.1.2   If a dispute arising out of or relates to this Subcontract, or breach thereof, and if the dispute cannot be settled through pre-litigation negotiations, the Contractor and Subcontractor agree, at the Contractor's sole election, to subject the dispute to arbitration administered by the American Arbitration Association under its Construction Industry Arbitration Rules whereby a judgment on the award rendered by the Arbitrator(s) may be entered in any Court having jurisdiction thereof.  Under such circumstances, the Arbitrator(s) shall have the exclusive power to determine issues of arbitrability.  Such arbitration shall be final and binding upon the parties.

40.1.3   Pending final resolution of a dispute, except as otherwise agreed in writing, the Subcontractor shall proceed diligently with performance of the Work.

40.1.4   Enforceability of Elections.  If the elections afforded Contractor in Section 40.1.1 or 40.1.2 hereof are not enforceable, then both parties shall be bound to arbitrate all disputes in which the disputed amount is less than Five Hundred Thousand Dollars ($500,000.00) and may litigate any dispute involving a higher amount.

40.1.5   Venue.  Unless the Contractor agrees in writing that the Owner is a party to the dispute, so that the venue will be as required by the Contract Documents, the venue for any mediation, arbitration or litigation proceeding relating to Subcontractor's Work shall be in the county in which Contractor's home office is located.

Article 41.  Nondiscrimination in Employment

41.1   UNLESS EXEMPT IN ACCORDANCE WITH EXECUTIVE ORDER 11246 OF SEPTEMBER 24, 1965, DURING THE PERFORMANCE OF THIS SUBCONTRACT, THE SUBCONTRACTOR AGREES AS FOLLOWS:

41.1.1   The Subcontractor will not discriminate against any employee, or applicant for employment because of sex, race, religion, color or national origin.  The Subcontractor will take affirmative action to ensure that applicants are employed and that employees are treated during employment without regard to their age, sex, religion, color or national origin.  The Subcontractor agrees to post in conspicuous places, available to the employees and applicants for employment, notices to be provided setting forth the provisions of the nondiscrimination clause.

41.1.2   The Subcontractor will, in all solicitations or advertisement for employees, placed by or on behalf of the Subcontractor, state that all qualified applicants will receive consideration for employment without regard to sex, race, religion, color or national origin.

41.1.3   If applicable, the Subcontractor will send to each labor union or representative of workers with which he has a collective bargaining agreement or other contract or understanding, a notice advising the said labor union or workers' representative of the Subcontractor's commitments under this section, and shall post copies of the notice in conspicuous places available to employees and applicants for employment.

41.1.4   The Subcontractor will comply with all provisions of Executive Order 11246 of September 24, 1965 and the rules, regulations and relevant orders of the Secretary of Labor.

41.1.5   The Subcontractor will furnish all information and reports required by Executive Order 11246 of September 24, 1965 and by the rules, regulations and orders of the Secretary of Labor, or pursuant thereto, and will permit access of his books, records, and accounts by the administering agency and the Secretary of Labor for purposes of investigation to ascertain compliance with rules, regulations and orders.

41.1.6   In the event the Subcontractor is in non-compliance with the nondiscrimination clauses of the Subcontract Documents or with any of the said rules, regulations or orders, this Subcontract may

be canceled, terminated or suspended in whole or in part, and the Subcontractor may be declared ineligible for further government contracts or federally assisted construction contracts in accordance with procedures authorized in Executive Order 11246 of September 24, 1965 and such other sanctions as may be imposed and remedies invoked as provided in the said Executive Order or by rules, regulations or orders of the Secretary of Labor, or as otherwise provided by Law.

41.1.7    The Subcontractors will include the provisions of Paragraph One (1) through Seven (7) in every Sub-Contract or Purchase Order unless exempted by rules, regulations and orders of the Secretary of Labor issued pursuant to Executive Order 11246 of September 24, 1965, so that such provisions will be binding upon each Sub-contractor or Vendor. The Subcontractor will take such action with respect to any Sub-subcontract or Purchase Order as the administering agency may direct as a means of enforcing such provisions, including sanctions for noncompliance; provided however, that in the event the Subcontractor becomes involved in, or is threatened with, litigation with a Sub-subcontractor or vendor as a result of such direction by the administering agency, the Subcontractor may request the United States to enter into such litigation to protect the interests of the United States.

## SUBCONTRACT WORK ORDER

This Subcontract, made this \_\_\_\_1\_\_\_\_\_ day of \_\_January_____, 2011\_\_ by and between_____ hereinafter designated the Subcontractor, and GUIDI HOMES, INC., P.O. Box 827, 921 B. North Bethlehem Pike, Spring House, PA 19477, hereinafter designated the Contractor.

### WITNESSETH:

That for and in consideration of the mutual promises and covenants herein contained, the Subcontractor and the Contractor agree as follows:

**Section A.**     The Subcontractor covenants, promises and agrees to furnish all material and personal property of every description, and to diligently and fully perform all work hereinafter described for the construction of _____Haverford Reserve_____ hereinafter called the Project, to be located at Haverford, PA for \_\_Haverford Reserve_____ hereinafter designated the Owner; in strict accordance with the Contract between the Contractor and the Owner entered into _____ and hereby made a part of this Subcontract by reference.

The term "Contract" as used herein refers to the Contract between the Owner and the Contractor for construction of the Project. The term "Contract Documents" as used herein refers to the "Contract" between the Owner and the Contractor, all plans, drawings, specifications, general conditions, supplemental general conditions, and special conditions, addenda, amendments, and/or instruments of like effect. The term "Subcontract" or "Work Order" as used herein refers to this Subcontract Work Order, the Master Agreement, together with any exhibits, attachments or addenda incorporated herewith and referred to herein. The term "Subcontract Documents" as used herein refers jointly and/or severally to the aforesaid Contract, Contract Documents and Subcontract. The term "Master Agreement" shall mean the Master Agreement between Contractor and Subcontractor dated _____1/1/2011_____ and all exhibits thereto. To the extent that the work Order conflicts with the Master Agreement, the Work Order shall control.

**Section B.**     The Subcontractor agrees to furnish all necessary management, supervision, labor, materials, machinery, tools, scaffolding, equipment, engineering, testing ,all transportation, cartage, handling, hoisting, patterns, models, surveys, field measurement, shop drawings, protection of work and labor for winter conditions, and/or any other act or thing required to diligently and fully perform and complete those portions of the work  in such time and duration as described in Exhibit "1," attached hereto and hereby made a part of this Subcontract.

**Section C.**     The Contractor agrees to pay the Subcontractor for the full and complete performance of this Subcontract the sum of $_____ (which price is firm and not subject to escalation) and which includes all applicable federal, state and municipal taxes; and further agrees to make all partial and final payments on account thereof and in accordance with the terms and provisions of the Subcontract Documents.

Pursuant to the Contract Documents, Owner is obligated to pay Contractor in the following manner: On or before the twenty-fifth (25th) day of the month immediately preceding a month in which the Construction Manager will submit an Application for Payment, the Owner, the Architect, and the Construction Manager shall meet to review a preliminary draft of such Application for Payment (hereinafter referred to as a "Pencil Draw") prepared by the Construction Manager. The Construction Manager shall revise the Pencil Draw in accordance with any good-faith objection or recommendation of either the Owner or the Architect that is consistent with the requirements of the Contract Documents. Such revised Pencil Draw shall be resubmitted by the Construction Manager to the Owner as the Application for Payment due on the first (1st) day of the month immediately following the month in which the Pencil Draw was first submitted. The Construction Manager shall also submit with each Application for Payment a

<div align="center">1 of 2</div>

_____
Subcontractors Initials

written narrative describing the basis for any item set forth in the Application for Payment that does not conform to instructions of the Owner or the Architect in connection with any applicable Pencil Draw.  Provided an Application for Payment is received by the Architect not later than the first day of a month, the Owner shall make payment to the Construction Manager not later than the 30 days of the same month later contingent upon the approval of the Architect, Lender and the Township, if necessary. An information copy, including all backup and supporting detail shall be provided to the Owner concurrently with the Architect. If an Application for Payment is received by the Architect after the application date fixed above, payment shall be made by the Owner not later than   thirty (30) days after the Architect receives the Application for Payment subject to the approval of the Architect, Lender and the Township, if necessary.

Provided Subcontractor's rate of progress and general performance are satisfactory to the Contractor and provided that the Subcontractor is in full compliance with each and every provision of the Subcontract Documents, the Contractor will make partial payments to the Subcontractor on the Contractor pay estimate form in an amount equal to 90% of the estimated value of work and materials  incorporated into the Project (and of materials delivered to the Project site and suitably stored by the Subcontractor) and paid to Contractor by Owner, less the aggregate of previous payments, within fourteen (14) days of receipt thereof from the Owner or fourteen (14) days after receipt of Subcontractor's invoice, whichever is later.

PAYMENT FROM THE OWNER TO THE CONTRACTOR IS A CONDITION PRECEDENT TO PAYMENT FROM THE CONTRACTOR TO THE SUBCONTRACTOR PURSUANT TO THIS ARTICLE. Subcontractor acknowledges that it has considered the Owner's financial capacity in deciding to enter into this Subcontract and agrees to take the risk associated with the Owner's non-payment.

**Section D.  Scope of Work:**  All work included in the Contract shall be done under the direction of Contractor.  Said work shall be performed in strict accord with the Contract Documents.  The work to be performed by the Subcontractor includes that work specifically set forth in this Contract, as well as any and all other work incident or related thereto, including but not limited to that work reasonably necessary for a complete and proper Project, or which is necessary to have a properly working and totally acceptable system and Project.  All work covered by this Contract shall be performed in a skillful and workmanlike manner with material, equipment, etc. being both new and of the best kind and grade for the purpose intended.  The Subcontractor shall provide, at its own expense, shop and working drawings, tests, samples, models, guarantees, permits, licenses, unloading facilities and services, temporary utilities, etc. unless noted otherwise, and all other items necessary for the proper performance of this Contract and acceptance of the Project.  The Subcontractor shall pay for all inspection fees, royalties, and license fees.

**Section E.**       Time is of the Essence.  The Subcontractor expressly agrees and commits that it will complete its scope of work and achieve Final Completion by_____ for the sum agreed upon in Section C herein.

GUIDI HOMES, INC.

_____          _____
Witness                                                     By                                          Date

                                                               Subcontractor

_____          _____
Witness                                                     By                                          Date

                                                               _____
                                                               Subcontractors Initials

Copyright Prohibited

## ADDENDUM TO MASTER AGREEMENT

THIS ADDENDUM TO MASTER AGREEMENT ("Addendum") is made effective as of the 28th day of August, 2013, by and among **GUIDI HOMES, INC.** (the "Company"), and Dream Maker Construction Services, LLC ("Subcontractor") and shall be considered an amendment to the Master Agreement (the "Agreement") between the parties dated 8/28/13.

In consideration of the mutual promises herein contained and contained in Work Orders entered into by the parties, the parties, intending legally to be bound, agree as follows:

1.    The Agreement is revised as follows:

    1.1   A new paragraph G is hereby added to the Agreement as follows:

        G.    Subcontractor agrees that Contractor may assign its rights in the Agreement, including the terms and conditions, on a Work Order by Work Order basis to other entities.  By accepting the relevant Work Order, Subcontractor is accepting this assignment and shall be bound by the term of this Agreement as if the new entity is listed as the "Contractor" in the Master Agreement. If the Contractor assigns the Agreement to another contractor or other entity, Contractor shall have no legally responsibility for any of the assignee contractor's obligations under the Agreement.

2.    The Terms and Conditions of the Agreement are revised as follows:

    2.1   Article 4.1.3 is hereby deleted and replaced with the following:

        4.1.3   Provided Subcontractor's rate of progress and general performance are satisfactory to the Contractor and provided that the Subcontractor is in full compliance with each and every provision of the Subcontract Documents, the Contractor will make payment to the Subcontractor within forty-five (45) days after receipt of Subcontractor's invoice with a stated interest rate for late payments of not greater than Prime Rate as established by Commerce Bank.

    2.2   A new Article 42 is hereby added to the Agreement as follows:

        Article 42. <u>Employment by Owner.</u>  Subcontractor acknowledges that Contractor incurs substantial expenses for marketing and relationship building with its clients including but not limited to owners and developers of real estate, and Subcontractor agrees to perform services for Owner only through a Work Order with the Contractor.  Subcontractor further agrees as part of the consideration for the Work Order that it shall not directly be hired or retained by the Owner in any manner without the written consent of the Contractor for one (1) year after the completion of the Subcontractor's work under the Work Order relating to that Owner.

Copying Prohibited

3.    AMENDMENT OF AGREEMENT.  This Addendum may not be amended, modified or changed, except by a writing signed by all of the parties.

4.    MISCELLANEOUS.

4.1    This Agreement may be executed in counterparts and as so executed shall constitute one agreement binding on all parties, notwithstanding the fact that all parties have not signed the original or the same counterpart.

4.2    The terms and provisions hereof shall be binding upon and shall inure to the benefit of the parties, and their respective heirs, personal representatives, successors, and assigns.

4.3    The captions used herein are for convenience of reference only, and shall not be deemed to modify or construe any of the terms or provisions hereof.

4.4    This Addendum shall be governed and construed in accordance with the laws of Pennsylvania.

4.5    IMPORTANT: THE EXECUTION OF THIS ADDENDUM TO MASTER AGREEMENT DOES NOT OBLIGATE THE CONTRACTOR TO ENTER INTO WORK ORDERS WITH SUBCONTRACTOR ON EVERY PROJECT PERFORMED BY CONTRACTOR.  THE CONSIDERATION GIVEN SUBCONTRACTOR BY CONTRACTOR FOR ENTERING THIS ADDENDUM TO MASTER AGREEMENT SHALL BE THE SAME CONSIDERATION AS SET FORTH IN THE WORK ORDER FOR EACH PARTICULAR PROJECT.

IN WITNESS WHEREOF, the parties have affixed their hands and seals as of the date first written above.

_____
GUIDI HOMES, INC.

_____
Subcontractor

Copying Prohibited

2 of 2

# EXHIBIT "G"

Copying Prohibited

**MASTER AGREEMENT**

Subcontract No.: DREIFUSS                          Date: 1/27/2010

CONTRACTOR:                                        SUBCONTRACTOR:

GUIDI HOMES, INC.                                  Dreifuss Pre-bilt, Inc
925 Harvest Drive, Suite 220                       6610 Hasbrook Avenue
Blue Bell, PA 19422                                Philadelphia, PA 19111
Telephone No. (215) 641-9280                       Telephone No. (215) 924-3500
Facsimile No. (215) 641-9088

**THE ATTACHED EXHIBIT "A" TERMS AND CONDITIONS ARE PART OF THIS SUBCONTRACT.**

A.      Subcontractor's Responsibilities. The Subcontractor agrees to furnish all materials, labor, supervision, tools, equipment and supplies as necessary to provide your line of Work on various Projects authorized and defined in Subcontract Work Order(s) (hereinafter "Subcontract" or "Work Order") to be issued, executed, and made part of this Master Agreement (hereinafter "Agreement" or "Contract"). All Work shall be performed in accordance with the Contractor's Terms and Conditions, which are attached hereto and form part of this Agreement unless specifically modified by the Work Order(s). It is understood that in the event that Subcontractor performs Work without a Subcontract Work Order on behalf of Contractor, at Contractor's specific direction, the terms of this Agreement shall be binding upon both parties until such time as these terms are modified or expanded by Work Order. All work provided for in the above referenced Work Order(s), for and at the Project listed on the Work Order (hereinafter called the Project), shall be performed as shown and described in and strict accordance with the Plans, Specifications, General Conditions, Special Conditions and Addenda thereto prepared by the Architect listed and with the terms and provisions of the General Contract between Contractor and the Owner (hereinafter "General Contract") listed and in strict accordance with the above-referenced Work Order(s), and the Exhibits annexed hereto and made a part hereof. Subcontractor also agrees that any modification contained in any Work Order shall only apply to that particular Work Order and shall not apply to any other Work Order. This Master Agreement, subject to the terms of Exhibit A, carries forward in perpetuity until modified in writing by both parties, even if ownership of either company changes or the assets or liabilities of the company are assigned. The price and schedule shall be kept and monitored separately for each Work Order, and each Work Order shall have a separate Schedule of Values, Change Order numbering, schedule, start and completion date, warranty requirements, Application for Payment, and retainage. The language of this Agreement and the Contract Documents in whole shall apply to each Work Order.

B.      Subcontractor's Work. The Subcontractor's Work shall consist of the scope of Work set forth in the relevant Work Order. If the Contractor intends to use Subcontractor in the construction of a particular house, a separate Work Order must be issued for each separate house with the possible exception of the first phase of model houses.

C.      Subcontract Price. The sum to be paid by Contractor, out of funds received from the Owner, to the Subcontractor for the satisfactory performance and completion of the Work and of all of the duties, obligations and responsibilities of the Subcontractor under this Agreement and the other Contract Documents, shall be as stated in the executed Work Order(s) (hereinafter called the Price) and shall be subject to additions and deductions as herein provided.

        The Price includes all Federal, State, County, Municipal and other taxes imposed by law and based upon labor, services, materials, equipment or other items acquired, performed, furnished or used for and in connection with the Work, including but not limited to sales, use and personal property taxes payable by or levied or assessed against the Owner, Contractor or the Subcontractor. Where the law requires any such taxes to be stated and charged

1 of 2

separately, the total price of all items included in the Work plus the amount of such taxes shall not exceed the Price.

When a price is given by the Subcontractor for the initial houses or model houses in the first phase of this project, those prices shall be held for a non-escalation period of twelve (6) months for that Work Order as well as each subsequent Work Order.  The Contractor shall also have the right to demand pricing from the Subcontractor on the basis of a 6 month non-escalation period.  Prior to entering into the Work Order for the first phase or any subsequent Work Order, Contractor may elect to use the pricing for a 6 month or 12 month non-escalation period.  Once the Work Order has been executed by the Contractor, however, no further escalations will be permitted for any reason on that particular Work Order even if the non-escalation period has elapsed.

D.      Insurance.  Unless modified by the Work Order, Subcontractor shall maintain the insurance policies and in the amounts set forth on Exhibit "C" attached hereto.

E.      Terms and Conditions; Exhibits.  Exhibit "A," the Terms and Conditions attached to this Agreement, are made a part hereof.  The Work Orders shall contain separate Exhibits.  Exhibits "A" and "B" are attached hereto.

F.      IMPORTANT: THE EXECUTION OF THIS MASTER AGREEMENT DOES NOT OBLIGATE THE CONTRACTOR TO ENTER INTO WORK ORDERS WITH SUBCONTRACTOR ON EVERY PROJECT PERFORMED BY CONTRACTOR.  THE CONSIDERATION GIVEN SUBCONTRACTOR BY CONTRACTOR FOR ENTERING THIS MASTER AGREEMENT SHALL BE THE SAME CONSIDERATION AS SET FORTH IN THE WORK ORDER FOR EACH PARTICULAR PROJECT.

IN WITNESS WHEREOF, the parties have executed this Subcontract effective as of the day and year first above written.

GUIDI HOMES, INC.

DREIFUSS PRE-BILT, INC.
DAVID WALDMAN, PRESIDENT

2 of 2

## EXHIBIT "A"
## TERMS AND CONDITIONS

These Terms and Conditions are an extension of the Contract Documents.  This document is intended to be generic in nature.  All of its provisions are subject to modification or revision in the individual Work Order(s).

Article 1.  Definitions

1.1     The term "Contract" as used herein refers to the Contract between the Owner and the Contractor for construction of the Project.

1.2     The term "Contract Documents" as used herein refers to the "Contract" between the Owner and the Contractor, all plans, drawings, specifications, general conditions, supplemental general conditions, and special conditions, addenda, amendments, and/or instruments of like effect.

1.3     The term "Subcontract" as used herein refers to the Work Order, these Terms and Conditions, the Master Agreement, together with any exhibits, attachments or addenda incorporated herewith and referred to herein.

1.4     The term "Subcontract Documents" as used herein refers jointly and/or severally to the aforesaid Contract, Contract Documents and Subcontract.

Article 2.  Duties of the Subcontractor

2.1     The Subcontractor is bound to the Contractor by the same terms and conditions and to the fullest extent by which Contractor is bound to the Owner under the Contract.  In the event of any inconsistency between the terms and conditions of the Contract (including the General Conditions) and this Subcontract, the more restrictive provisions as applicable to the Subcontractor shall govern.

2.2     When requested to do so by the Contractor, Subcontractor agrees to submit a list of any proposed sub-subcontractors, and Subcontractor shall not delegate, or further subcontract to others the performance of any of its obligations or work required or contemplated by this Subcontract without prior written consent of the Contractor, which shall not be unreasonably withheld.

2.2.1   If Subcontractor enters into agreements with any sub-tier subcontractor, it shall require each sub-tier subcontractor to agree in writing to be bound by all provisions of the Subcontract Documents, including the Contract and the General Conditions, applicable to its work.

2.3.1   Subcontractor hereby warrants that he has investigated and familiarized himself with all laws and codes applicable to its work; with the availability, cost and suitability of personnel, materials, equipment, utilities, etc; with the prevailing wage scales, union benefits and working conditions, craft jurisdiction, existing labor agreements (as applicable); all site conditions and restrictions, underground conditions, prevailing weather and climatological conditions; and any other factors which may affect Subcontractor's work.

2.3.2   Subcontractor further agrees that Contractor shall not be liable to Subcontractor on any claim for additional payment or additional time or any claim whatsoever if such claims directly or indirectly result from Subcontractor's failure to investigate and familiarize itself with the conditions under which this Subcontract is to be performed.

2.3.3   Subcontractor warrants it has visited the site and has become familiar with all conditions at the site, including without limitation, the conditions described in the General Conditions.

2.3.4   Generally, the specifications describe Work which cannot be indicated on the drawings and indicate types, qualities and methods of installation of the various materials and equipment required for the work.  It is not intended to mention every item of Work in the specifications which can be adequately shown on the drawings or to show on the drawings all items of Work described or required by the specifications even if they are of such nature that they could have been shown thereon.  All materials or labor for Work which is shown on the drawings or is reasonably inferable therefrom as being necessary to produce a finished job shall be provided by the Subcontractor whether or not the Work is expressly covered in the specifications.

2.3.5   Subcontractor, before proceeding with any work under its Subcontract will accurately check and verify

1 of 19

Subcontractors Initials

all previous and surrounding work done by others and determine the correctness of same. The Subcontractor shall field measure all work relating to its work. The failure of the Subcontractor to detect and disclose any existing discrepancies or nonconformities and report same to Contractor., in writing, before commencing its work shall relieve Contractor of any and all responsibility for same, and the Subcontractor shall be responsible and liable for all resulting damages, costs and expenses arising as a result of discrepancies and nonconformities that should have been discovered by the Subcontractor.

2.4    COORDINATION WITH OWNER'S SALES FORCES AND POTENTIAL OR ACTUAL PURCHASERS

2.4.1    Subcontractor hereby agrees for both it and its subcontractors to coordinate with Owner's Sales Forces in both the selection and change order process. Subcontractor and its Subcontractors shall provide samples of all selection and change order materials as well as written materials relating to selections if so requested. They shall also provide to the Owner's Sales Forces pricing of any reasonably requested changes and shall explain such changes to any potential or actual purchasers upon request. All such requests shall be processed through Contractor unless otherwise directed by Contractor in writing.

2.4.2    Subcontractor and its Subcontractors shall also coordinate with purchasers on milestone activities including but not limited to (1) rough-in inspection, (2) electrical outlet placement walk-through, (3) mechanical vent placement walk through, (4) pre-closing final walk-through, (5) punchlist creation walk-through and (6) punchlist completion walk-through. To the extent that other walk-throughs or inspections with purchasers are necessary, such walk-throughs or inspections shall be scheduled through Contractor unless otherwise directed by Contractor in writing.

2.4.3    Subcontractor shall also be directly responsible to purchaser for any warranty obligations set forth in the Owner's Purchase and Sales Agreement unless otherwise detailed in the particular Work Order for that particular house. In addition, in the case of a "spec" or model home, Subcontractor shall also be directly responsible to Owner and any subsequent purchaser for any warranty obligations set forth in the Owner's standard Purchase and Sales Agreement unless otherwise detailed in the particular notice to proceed for that particular house.

Article 3.    Integration

3.1    This Subcontract constitutes the entire agreement between the parties and supersedes all proposals, correspondence, and oral agreements between the Subcontractor and Contractor, if any. Except as otherwise provided for herein, no changes, amendments or modifications of the terms hereof shall be valid unless reduced to writing and signed by the parties hereto.

Article 4.    Payment

4.1.1    Pursuant to the Contract Documents, Owner is obligated to pay Contractor in accordance with the terms specified in the Work Order.

4.1.2    Subcontractor hereby acknowledges that the Contractor has fully disclosed the Owner's manner of payment pursuant to the Contractor Subcontractor Payment Act, 73 P.S. Section 501, et seq.

4.1.3    Provided Subcontractor's rate of progress and general performance are satisfactory to the Contractor and provided that the Subcontractor is in full compliance with each and every provision of the Subcontract Documents, the Contractor will make partial payments to the Subcontractor on the Contractor pay estimate form in an amount equal to 90% of the estimated value of work and materials incorporated into the Project (and of materials delivered to the Project site and suitably stored by the Subcontractor) and paid to Contractor by Owner, less the aggregate of previous payments, within fourteen (14) days of receipt thereof from the Owner or fourteen (14) days after receipt of Subcontractor's invoice, whichever is later.

4.1.4    PAYMENT FROM THE OWNER TO THE CONTRACTOR IS A CONDITION PRECEDENT TO PAYMENT FROM THE CONTRACTOR TO THE SUBCONTRACTOR PURSUANT TO THIS ARTICLE.

4.1.5    ON PENNSYLVANIA PROJECTS, IN CONSIDERATION FOR CONTRACTOR'S AGREEMENT TO ENTER INTO THE SUBCONTRACT, SUBCONTRACTOR HEREBY AGREES TO WAIVE

2 of 19

DW, PWB
Subcontractors Initials

ALL RIGHTS TO INTEREST ABOVE THE LEGAL RATE, PENALTIES AND/OR ATTORNEY'S FEES PROVIDED BY THE CONTRACTOR AND SUBCONTRACTOR PAYMENT ACT, 73 P.S. SECTION 501 ET SEQ.

4.1.6   ON PENNSYLVANIA PROJECTS, SUBCONTRACTOR HEREBY AGREES THAT, IF THE OWNER REQUIRES CONTRACTOR TO WAIVE ANY OR ALL OF ITS RIGHTS UNDER THE CONTRACTOR AND SUBCONTRACTOR PAYMENT ACT, 73 P.S. SECTIONS 501 ET SEQ., SUBCONTRACTOR HEREBY AGREES TO SIMILARLY WAIVE ITS RIGHTS UNDER THE ACT.

4.1.7   Subcontractor acknowledges that in the event payment is not made to Contractor for any reason including, but not limited to, default by the Owner, Subcontractor shall look exclusively to the Owner for payment of any and all funds due under this Subcontract. Subcontractor further agrees that delay in payment for non-payment by the Owner does not create any separate obligation of Contractor to pay regardless of the extent of the delay. Subcontractor has the right to pursue payment from the Owner if the Owner is delinquent in payment per this agreement.

4.1.8   Within ten (10) days of execution, the Subcontractor shall submit to the Contractor a complete and accurate schedule of values of the various parts of its work. This schedule, when approved by the Contractor, shall be used as the basis for making payments.

4.1.9   On a monthly basis, the Subcontractor shall submit a request for partial payment consistent with the schedule of values and representing a true and accurate estimate of the work completed during the immediately preceding pay period. Unless modified by Work Order, Subcontractor's invoice must be received by the Contractor by the 25th of the month for all work completed to date. When required by the Contractor, Subcontractor shall provide an accurate inventory of materials suitably stored at the job site. Each application shall be accompanied by such invoices, vouchers, waivers, releases, certifications and affidavits as may be required by the Owner and/or Contractor. The Subcontractor agrees that any application for payment not in compliance may be held over for processing at the beginning of the pay period following correction of such application, with or without notice to Subcontractor.

4.1.10  No partial payment shall constitute acceptance by the Contractor of the work or material for which the partial payment is made; nor shall any partial payment constitute a waiver of any right to require fulfillment of all the terms of this Subcontract. Contractor shall promptly advise the Subcontractor in writing if the Owner or Contractor disapproves of or is withholding all or any of a Request for Payment, including change orders. Even if Subcontractor disagrees with Contractor's disapproval, Subcontractor shall continue to perform all work under this agreement including that in dispute. The Subcontractor shall also take all reasonable steps necessary to ensure that there will be no work stoppage or delay on account of such disapproval. Both parties agree to endeavor to promptly resolve such disputes on an ongoing basis.

4.1.11  The Subcontractor hereby agrees to reimburse the Contractor in the event of overpayment, together with any costs and expenses including administrative costs and attorney's fees, which the Contractor may incur in securing recovery thereof.

4.2   Contractor expressly reserves the right to issue joint checks to Subcontractor and its materialmen, suppliers or subcontractors, or any of Subcontractor's creditors having potential lien rights and/or claims against the work, for any payments that are, or may become, due and owing by Contractor to Subcontractor under this Agreement.

4.3   The Contractor may deduct from amounts due or to become due to the Subcontractor on this Project any sum due or to become due to Contractor from the Subcontractor whether or not said sums are in any way related to this Subcontract or Project.

4.4   In the event Subcontractor is in default of or breaches or fails to comply with any provision of the Subcontract; or in the event that any person asserts, or threatens to assert, any lien or claim, against the Project, the Owner, the Contractor or any Surety arising from Subcontractor's performance of this Subcontract, the Contractor may, at its option, withhold out of any payments due or to become due to the Subcontractor a sum sufficient to completely protect and indemnify the Contractor and the Owner from all loss, damage and/or expense, including attorney's fees and litigation costs, until the condition

3 of 19

Subcontractors Initials

requiring such measure has been remedied by the Subcontractor to the satisfaction of the Contractor. If the Contractor is compelled to expend monies in defending, discharging or otherwise disposing of any claim or lien in excess of retained or withheld sums, the Subcontractor shall, upon demand, reimburse the Contractor for the excess amount so expended, including reasonable attorney's fees and costs incurred by Contractor incident to such defense and/or incidental to Contractor's collection from Subcontractor of such excess.

4.5    Notwithstanding anything to the contrary contained in this Subcontract, and without any limitation as to time, Contractor shall not be obligated to make payments to Subcontractor under this Subcontract:

  a)    when such payment will leave a balance which is less then the retained percentage plus an amount adequate to satisfy all obligations of the Subcontractor for labor, materials, tools, etc. furnished or to be furnished by Subcontractor in the performance of its work;

  b)    when Subcontractor is or with reasonable probability (as determined by the Contractor) may become unable to comply with or completely perform this Subcontract;

  c)    whenever the Contractor, in its sole discretion, shall determine that the Project is being or is in danger of being delayed by the Subcontractor;

  d)    pending satisfactory correction, replacement and/or restoration of deficient work, material, or supplies, or of any work rejected if not conforming with this Subcontract or the Subcontract Documents.

4.6    The Subcontractor agrees, as a condition precedent to payment hereunder, to furnish the Contractor with such partial and/or final releases and/or waiver of liens as the Contractor may from time to time request in the form set forth in Exhibit "E-2" hereof.

Article 5.  Final Payment

5.1    Final payment will be made within thirty (30) days after the Subcontractor's work has been completed to the satisfaction of the Owner and the Contractor, and the Contractor has received from the Owner written acceptance thereof together with payment in full for this portion of the work. Final payment is subject to Contractor's determination that all the requirements of the Subcontract have been met and discharged by Subcontractor.  PAYMENT FROM THE OWNER TO THE CONTRACTOR IS A CONDITION PRECEDENT TO PAYMENT FROM THE CONTRACTOR TO THE SUBCONTRACTOR PURSUANT TO THIS ARTICLE.

5.2    No final payment shall constitute acceptance by the Contractor of the work or material for which the final payment is made, nor a waiver of any right to require fulfillment of all the terms of this Subcontract. The Subcontractor hereby agrees to reimburse the Contractor in the event of overpayment, together with any costs and expenses, including administrative costs and attorney's fees, the Contractor may incur in securing recovery thereof.

Article 6.  Financial Condition of Subcontractor

6.1    If at any time Contractor in its sole discretion shall determine that the Subcontractor's financial condition has become impaired or unsatisfactory, Subcontractor shall furnish additional security satisfactory to the Contractor within three (3) days after written demand by Contractor.

6.2    The Contractor, Owner's representatives and architect at all times shall have free access to the office, shops and yards of the Subcontractor to verify any information about the work to be performed by the Subcontractor.

Article 7.  Assignment

7.1.1    The Subcontractor will make no assignment of the proceeds of this Subcontract without the prior written consent of the Contractor, which consent shall not be unreasonably withheld.

7.1.2    The Contractor shall not be obligated to any assignee of the Subcontractor on account of payments at any time made in good faith to the assignor.

7.1.3    The Contractor shall not be liable to any assignee of the Subcontractor for any amount in excess of

4 of 19

DW, PILES
Subcontractors Initials

the net sums owing Subcontractor hereunder.

7.1.4   By making an assignment of the proceeds hereof, the Subcontractor waives any claims against Contractor resulting from Contractor's continued payment to assignees or former assignees, not withstanding notification to Contractor of termination of any such assignment.

7.1.5   By making an assignment of the proceeds hereof, Subcontractor agrees to assume full liability for the conveyance to assignees of any payments mistakenly, inadvertently, or otherwise made or addressed to Subcontractor and Subcontractor agrees to defend and hold harmless the Contractor from claim or action of any assignee related to this Subcontract.

7.2   The Subcontractor shall not assign or sublet this Subcontract or any part or interest therein without Contractor's prior written consent. If Contractor so consents, such assignment is subject and subordinated to all labor preferences and other liabilities, actual or potential, as may be imposed on Contractor due to any obligation or liability of the Subcontractor.

7.3.1   Subcontractor agrees that its Subcontract is assigned by the Contractor to the Owner provided that:

   .1     assignment is effective only after termination of the Contract by the Owner for cause and only for those subcontract agreements which the Owner accepts by notifying the Subcontractor and Contractor in writing; and

   .2     assignment is subject to the prior rights of the surety, if any, obligated under bond relating to the Contract.

7.3.2   Upon such assignment, the Owner shall be responsible to the Subcontractor for those obligations of the Contractor that accrue subsequent to the Owner's exercise of any rights under this conditional assignment.

### Article 8.  Performance Bond and Labor and Material Bond

8.1   The Contractor shall have the right to require any Subcontractor to furnish bonds covering the faithful performance of the Subcontract and the payment of all obligations arising thereunder as well as lien discharge bonds pursuant to Waiver of Liens and Release Article detailed below. The failure of the Subcontractor to furnish a bond within seven (7) days after having been given notice of such requirements by Contractor shall constitute sufficient cause for termination of this Subcontract without notice.

8.2   The Subcontractor's cost of the bond will be reimbursed by Contractor unless negotiated into the initial Subcontract Work Order amount. If not, then Contractor will reimburse Subcontractor for proven premium costs without mark-up.

### Article 9.  Unit Price Basis

9.1   If the terms of this Subcontract provide for the payment of work performed on a unit price basis, the unit of measurement for payment shall be one for work certified. Verification of weights or quantities will be furnished at the time of delivery. In the event the parties fail to agree on the actual quantity performed, Contractor shall have the right to measure the quantity of work in place and make final settlement on the basis of such measurement. Unit prices shall be the same for both additions and deductions.

### Article 10.  Equipment and Facilities

10.1   The Subcontractor shall provide at its own expense whatever tools; machines; equipment; plant; utilities; services' storage sheds; workshops; offices; first aid or emergency treatment facilities and any other facility he may deem necessary for the complete performance of all work required under this Subcontract, and shall remove any such installations and thoroughly clean and restore the site and premises at the completion of the work.

10.2   If the Subcontractor has occasion to utilize any of the facilities of the Contractor, when and if available, Subcontractor shall pay an equitable portion of the cost thereof. The Contractor shall bear no responsibility for any loss or damage from any cause whatsoever arising from Subcontractor's use of such facilities.

Copying Prohibited

                                          RW, RLB3
                                   Subcontractors Initials

Article 11.  <u>Submittals</u>

11.1.1   The Subcontractor agrees to submit, in sufficient number, all shop or fabrication drawings, design and performance data, test, samples, operating and/or maintenance manuals for use in the performance of this Subcontract as directed by the Contractor within thirty (30) days after execution of the Subcontract unless directed to do so within a lesser period by the Contractor.

11.1.2   Approval of any of the foregoing by the Contractor, the Owner or the Owner's authorized agent shall under no circumstances alter the requirements of the Subcontract Documents or constitute acceptance by the Contractor of any method, material or equipment not acceptable to the Owner or the Owner's authorized agent.

11.2   The Subcontractor agrees that the cost of any of the foregoing required hereunder is included in the amount of this Subcontract.

Article 12.  <u>Materials Furnished by Contractor</u>

12.1   It is hereby agreed by Subcontractor, if furnishing labor only for the finishing, installation or erection of materials furnished by Contractor, that the following costs, without restriction, are to be fully recovered by Contractor from Subcontractor:

a)       the full cost of material required to replace due to damage by the Subcontractor;

b)       the full cost of removing rejected materials when not properly installed or supplied by Subcontractor; and

c)       the full cost of altering any work of Subcontractor not accepted by the Owner's authorized agent.

Article 13.  <u>Cutting, Patching and Blocking</u>

13.1   The Subcontractor shall obtain Contractor's approval for and shall do any cutting, patching and blocking necessary to complete this work hereunder, and such work shall be performed to the same standards and shall match any work performed pursuant to the Contract Documents.

Article 14.  <u>Maintenance of Site</u>

14.1.1   Subcontractor agrees to keep the premises and all finished work clean free of dirt, rubbish, debris and any other waste materials at all times and to remove from the site all scrap and waste materials resulting from work under the Subcontract within twenty-four (24) hours after receipt by him from Contractor of written notice to do so.  Subcontractor shall be responsible for the removal and disposal of all receptacles and containers into which same is deposited.  Upon the completion of the various portions of work, the Subcontractor shall broom clean its work area.

14.1.2   The Subcontractor shall properly cover and protect the work of others from damage due to the performance of the work required under this Subcontract, and Subcontractor shall promptly clean, restore, or pay for the replacement of any such work damaged or soiled in the performance of its own work.

14.2   Subcontractor further agrees to furnish protection at all times for its own work and all materials stored for use under this Subcontract and to bear and be solely liable for all loss and/or damage of any kind to or in connection with said work and materials at any time prior to the final completion and acceptance thereof, unless said loss or damage is caused solely by the negligence of the Contractor and is subject to recovery under such applicable insurance policies as may be in effect.

14.3   If the Subcontractor fails to promptly perform such cleaning, protection and/or repair as directed by the Contractor, the Contractor shall have the right to proceed with such cleaning, protection and/or repair, and Subcontractor, on demand therefor, shall repay to the Contractor the actual cost of such work plus a reasonable percentage to cover Contractor's supervision, insurance, tax and overhead.

Article 15.  <u>Payment to Suppliers and Sub-subcontractors</u>

15.1   Prior to performing any Work concerning, relating to, or under this Subcontract and whenever so requested by Contractor, Subcontractor shall disclose, in writing, to Contractor, the names,

Copy Reproduction Prohibited

Subcontractors Initials

addresses, telephone numbers, a description of the labor and/or material to be provided, the contract amount, payments made and balances due for all sub-subcontractors, materials suppliers and/or other persons and entities that have or will, supply or transport goods, materials, equipment, machinery, fixtures, services or labor under any agreement with Subcontractor for the Subcontractor's Work under this Subcontract. In addition, the Subcontractor may, prior to performing any Work concerning, relating to, or under this Contract, be required by Contractor to provide a copy of all such agreements to Contractor. The disclosures required by this paragraph is a condition precedent to Subcontractor performing any work at the Project, but, in no event, shall the Contractor's failure to enforce this requirement be deemed to be a waiver of Contractor's right to so demand disclosure by Subcontractor.

15.2   Subcontractor shall pay for all materials and supplies furnished and for all work, labor and services performed as required under this Subcontract, shall execute partial and final releases of liens upon demand by the Contractor, and shall indemnify Contractor and Owner against and save them and the premises harmless from any and all claims, demands, liens or suits, for all such material and supplies purchased and for all work, labor and services performed by others, including reimbursement of attorney's fees and any other costs of defense incurred.

15.3   The Subcontractor agrees and covenants that money received for the performance of this Subcontract shall be used solely for the benefit of persons and firms supplying labor, materials, supplies, tools, machines, equipment, plant or services exclusively for this Project in connection with this Subcontract; that money paid to the Subcontractor pursuant to this Subcontract shall immediately become and constitute a trust fund for the benefit of said persons and firms, and shall not in any instance be diverted by Subcontractor to any other purpose until all obligations and claims arising hereunder have been fully discharged.

Article 16.  Warranties

16.1   The Subcontractor warrants and guarantees the work and materials which he performs or furnishes under this Subcontract and agrees to make good, at its own expense, any defect in materials or workmanship which may occur or develop prior to Contractor's release from responsibility to the Owner.

16.2   The Subcontractor further agrees to assume, as a direct obligation to the Contractor and/or the Owner, any guarantees or warranties which would otherwise be the responsibility of the Contractor or other subcontractors, when such guarantees or warranties have been cancelled as a result of the Subcontractor's operations in performance of this Subcontract.

16.3   Without limitation of the foregoing or other obligations of the Subcontractor provided for in the Subcontract Documents, immediately upon the Contractor's demand, the Subcontractor, at its own expense, shall repair, replace, restore or rebuild, at the Contractor's option, any work in which defects in materials or workmanship may appear, or which is otherwise not in conformance with the other warranties of the Subcontractor hereunder, or to which damage may occur because of such defects or lack of conformance, within one (1) year or such longer period as required by the Specifications from the date of the Owner's and architect's final acceptance of the project. If the Subcontractor fails to comply, the Contractor may correct such defect or lack of conformance, as the case may be, and the Subcontractor shall immediately reimburse the Contractor thereof.

Article 17.  Time of Performance

17.1.1   Time is of the essence.

17.1.2   The Subcontractor agrees to keep himself thoroughly informed as to the overall progress of the Project; to commence and to prosecute the work undertaken hereunder in a prompt and diligent manner whenever such work, or any part of it, becomes available, or at such time or times as the Contractor may direct, so as to promote the general progress of the entire Project; and Subcontractor shall not by delay or otherwise interfere with or hinder the work or progress of the Contractor or any other subcontractor.

17.1.3   Upon Contractor's request, Subcontract shall furnish such evidence as the Contractor may require

7 of 19

DW. PLED
Subcontractors Initials

relating to Subcontractor's ability to fully perform this Subcontract in the manner and within the time established as herein provided.

17.1.4   The Subcontractor also shall furnish upon request by the Contractor from time to time cash flow expenditures for labor for its work (which shall include the estimated payroll for each of the trades it will employ by subcontract).

17.1.5   The Contractor exclusively shall control scheduling and coordination of the work, including the periodic updating and re-sequencing thereof, if any and the Subcontractor shall comply therewith.

17.1.6   The Contractor shall have the right to schedule other work at the same time and in the same areas as the Subcontractor's work.

17.1.7   At its sole discretion, the Contractor may schedule work during a time of and from time to time during winter conditions. The determination of when winter conditions exist shall rest exclusively with the Contractor.

17.2     The Subcontractor agrees to notify the Contractor of its objection to, or inability to comply with, any directive, notification, order, schedule or revisions thereof dealing with the time or times of its performance hereof, and to do so within three (3) days of Contractor's issuance thereof.

17.3     Specific requirements as to the time of performance shall take precedence over the more general requirements of this article.

17.4.1   In the event of any failure of Subcontractor to complete its work within the required time, the Subcontractor hereby agrees to reimburse the Contractor for any and all actual and/or liquidated damages that may be assessed against the Contractor by the Owner, which are directly or indirectly attributable to work caused by the Subcontractor's failure to comply fully with the foregoing provision.

17.4.2   Subcontractor also agrees to pay to the Contractor such damages as the Contractor may sustain by reason of any delay, directly or indirectly, attributable to or caused by the Subcontractor, including, but not limited to, recovery of Contractor's overhead and expense related to the managing and supervising of the prime Contract work.

17.5     In the event Subcontractor's performance of this Subcontract is delayed or interfered with by acts of the Owner, Contractor or other Subcontractors, Subcontractor may submit to the Contractor a written request for an extension of time for the performance of same.

17.6     At the request of the Contractor, the Subcontractor shall perform certain parts of the work before other parts, add extra manpower, or order overtime labor in order to comply with the project schedule, all without increase in the Subcontract price, unless otherwise specifically provided in the General Conditions.

17.7     If in order to expedite the final completion of the Work, Contractor requests Subcontractor to work overtime at a time when Subcontractor is not in default in any of the provisions of this contract, Subcontractor agrees to work said overtime and it is understood that Contractor shall pay Subcontractor therefore only the Subcontractor's extra labor costs over the rate for regular time during the period of such overtime, including additional insurance and taxes incurred by Subcontractor with respect thereto. Time slips covering said overtime must be submitted to Contractor's authorized agent for checking and approval. No commissions, fees, overhead, or profit is to be charged by or allowed to Subcontractor for or on account of said overtime. However, if Subcontractor shall at any time be behind in the work herein contemplated, or if in the opinion of the Contractor, Subcontractor is delaying the progress of the work necessary to complete the Project, then and in either such event, if requested by Contractor, Subcontractor shall cause to be performed overtime work as may be necessary to keep abreast with the general progress of the work at the Project, and in either such event the cost and expense of such overtime shall be borne entirely by Subcontractor.

17.8     If the Subcontractor shall be delayed in the prosecution or completion of the Subcontract Work by the act, neglect or default of the Contractor, the Architect, the Owner, or any other subcontractor employed by the Contractor upon the project, or by any damage caused by fire or other casualty for which the Subcontractor is not responsible, or by general strikes or lockouts caused by acts of employees, then the time fixed by the Contractor for the completion of the Subcontract Work shall

_____
Subcontractors Initials

be extended for such period of time as shall be determined and fixed by the Contractor as the time lost by reason of any or all of the causes aforesaid. This shall be Subcontractor's sole and exclusive remedy for such delay and in no event shall Contractor be responsible for any increased costs, charges, expenses or damage of any kind resulting from any such delays. No allowance of an extension of time for performance of this Subcontract will be granted, unless a claim therefor is presented to the Contractor in writing and within forty-eight (48) hours of the occurrence of the cause thereof, and then only if the Contractor agrees to such an extension of time in its sole discretion. Time elapsed between Work Orders, phases of the Work or construction of individual houses does not constitute a delay, interruption or suspension.

Article 18.  Changes in Work
    18.1    Contractor may at any time, by written order and without notice to surety, make changes in the work herein contracted for and the Subcontractor shall proceed with the work as directed. If said changes cause an increase or decrease in the cost of performance or in the time required for performance an equitable adjustment shall be made and this Subcontract shall be modified in writing accordingly. Nothing herein shall excuse the Subcontractor from proceeding with the prosecution of the work as changed.

    18.2    For any adjustments by Change Order, Subcontractor will be permitted to charge ten percent (10%) as a reasonable allowance for a combined overhead and profit mark-up for work not involving Sub-subcontractors and five percent (5%) as a reasonable allowance for a combined overhead and profit mark-up for Work by Sub-subcontractors.

    18.3    If Contractor and Subcontractor are unable to agree on the price for the changed work, Contractor shall have the right to order Subcontractor to proceed with the changed work on a time and material basis. When changed work, other than overtime ordered by Contractor, is performed on a time and material basis, unless otherwise limited by the agreement between Owner and Contractor, Subcontractor shall receive: (1) the actual cost of labor including applicable insurance and payroll taxes, based upon the Approved Labor Rates, plus ten percent (10%) for overhead and profit, and (2) the actual cost of material and equipment, plus ten percent (10%) for overhead and profit. In performing changed work on a time and material basis, if such work requires that Subcontractor use a subcontractor, Subcontractor shall limit its subcontractor as set-forth above and Subcontractor shall be limited to a mark-up of its subcontractor's total of five percent (5%) for Subcontractor's overhead and profit. Whenever changed work is performed on a time and material basis, Contractor shall have the right to audit Subcontractor's books, records, documents and other evidence bearing on the costs and expenses of the Subcontractor for such changed work.

    18.4    No extension to Subcontractor's time of performance as a result of changed work shall be allowed under this Subcontract unless authorized by Contractor in writing. The value of the changed work requested by Subcontractor shall include all costs for delay and disruption to Subcontractor's work. Subcontractor shall not be entitled to any additional compensation for delay and disruption caused by the changed work unless such costs are requested and approved by the Owner. In no event, shall Subcontractor be entitled to compensation for the collective impact of changed work.

Article 19.  Claims
    19.1    The Subcontractor agrees to make any claims to the Contractor for damages or additional compensation based on alleged extra work, changed conditions or any other grounds within three (3) days of the discovery of the condition causing the need for additional compensation or damages or within sufficient time (48 hours prior to the amount of time set forth in the notice requirement in the Contract between Contractor and Owner for like claims) to permit Contractor to advise the Owner in the manner provided in the Contract Documents for like claims, whichever is shorter. The Contractor will not be liable to the Subcontractor on account of any claim not timely or properly presented or until it is allowed by the Owner. Payment by Owner on any claims by Subcontractor is a condition precedent to payment by Contractor on any claims of Subcontractor.

    19.2    The Subcontractor agrees that any liability of the Contractor to the Subcontractor on any claim of

<div align="center">9 of 19</div>

Copy Prohibited

<div align="right">

_D.V. Perez_
Subcontractors Initials
</div>

any sort by the Subcontractor against Contractor arising in whole or in part out of any act, omission, default, order, directive, decision or change by the Owner, or which could be the subject of a claim by the Contractor against the Owner, shall be liquidated and limited to whatever the Contractor actually receives from the Owner, if anything, as a result of the presentation of a claim based thereon to the Owner, and the Subcontractor shall have no other or further claims whatsoever against the Contractor based thereon or in any way related thereto.  Any claim prosecuted hereunder shall be subject to the sole direction and control of the Contractor.

19.3   If the Subcontractor encounters any condition which forms the basis of a claim for extra compensation or time, or any other type of claim, including but not limited to those conditions which are (1) subsurface or otherwise concealed physical conditions which differ materially from those indicated in the Contract Documents or (2) unknown physical conditions of an unusual nature, which differ materially from those ordinarily found to exist and generally recognized as inherent in construction activities of the character provided for in the Contract Documents, it shall be its duty to give written notice to the Contractor prior to commencing any work involving said condition and no later than three (3) business days after encountering the condition so the Contractor may inspect said condition and take such steps as Contractor deems necessary.  In the absence of such notice to the Contractor, Subcontractor shall be fully liable for any and all expense, loss or damage resulting from said condition.  The Contractor will promptly investigate such conditions and, if they differ materially and cause an increase or decrease in the Subcontractor's cost of, or time required for, performance of any part of the Work, will recommend an equitable adjustment in the Subcontract Sum or Subcontract Time, or both. If the Contractor determines that the conditions at the site are not materially different from those indicated in the Contract Documents and that no change in the terms of the Subcontract is justified, the Contractor shall so notify the Subcontractor in writing, stating the reasons.

19.4   It is also agreed that Subcontractor shall not be entitled to any additional payment or compensation under this Subcontract without the express written approval or Contractor.  No officer, employee or agent of Contractor is authorized to direct any Extra Work by oral order except minor changes in the work not involving extra cost or time.

Article 20.  Disputes

20.1.1   In the event of any dispute between the Contractor and the Owner which involves the work required to be performed by Subcontractor under this Subcontract, or in the event of any dispute between Contractor and Subcontractor which involves a claim against the Owner for either additional compensation and/or an extension of time under the Contract Documents, Subcontractor agrees to be bound to Contractor and Contractor agrees to be bound to Subcontractor to the same extent that Contractor is bound to the Owner by the terms of the Contract Documents and by all decisions or findings made thereunder by the persons so authorized in the Contract Documents, or by an administrative agency or court of competent jurisdiction, whether or not Subcontractor is a party to the proceedings before said person, agency or court.

20.1.2   If any dispute or claim is prosecuted or defended by the Contractor, and Subcontractor is not directly a party or litigant, Subcontractor agrees to cooperate fully with Contractor and shall pay or reimburse Contractor for all expenses and costs, including reasonable attorney's fees, incurred in connection therewith to the extent of the Subcontractor's interest in such claim or dispute.

20.1.3   It is expressly understood and agreed in connection with the determination of such claim or disputes that Contractor shall never be liable to Subcontractor to any greater extent than Owner is liable to Contractor.

20.2   In the event of any claim or dispute between Contractor and Subcontractor, it is further specifically agreed by the parties hereto that no claim shall interfere with the performance work required to be performed under this Subcontract.

Article 21.  Default

21.1.1   In the event the Subcontractor fails to comply, or becomes unable to comply, or with reasonable

_____
Subcontractors Initials

probability (as determined solely by Contractor) will become unable to comply, with any of the provisions of this Subcontract; or in the event Subcontractor fails at any time to supply a sufficient number of properly skilled workmen with sufficient materials, equipment or plant of proper quality or fails in any respect to prosecute the work with promptness and diligence; or causes by any action or omission a stoppage of or delay in the work of the Contractor or other subcontractor of Contractor; or in the event Subcontractor abandons its work or any part thereof; and such failure, inability or deficiency (as determined solely by Contractor) is not corrected within one day after written demand by the Contractor to the Subcontractor; the Contractor may, in addition to and without prejudice to any other right or remedy, take over and complete the performance of the Subcontract, at the expense of the Subcontractor; or the Contractor may, without taking over the work, immediately and without notice to Subcontractor, furnish the necessary materials and labor through itself or others, to remedy the situation, all at the expense of the Subcontractor.

21.1.2   The parties hereto further agree that any of the following shall, at the option of the Contractor, constitute inability to comply with the provisions of this Subcontract for purposes of this article:

    a)   the filing of a petition in bankruptcy or a petition for the appointment of a receiver by or against the Subcontractor;

    b)   the insolvency of the Subcontractor or its inability to meet its debts as they mature;

    c)   the establishment of a receivership or any committee of creditors involving Subcontractor's business or assets, or the making of an assignment for the benefit of Subcontractor's creditors; or

    d)   the failure or refusal of Subcontractor to respond to any written order or notice duly issued by the Contractor.

21.1.3   Subcontractor hereby waives any and all defenses, claims or causes of action against Contractor based in whole or in part on the contention that Subcontractor would have been able to comply with the Subcontract.

21.2.1   Upon any action by the Contractor pursuant to this article, the Subcontractor shall not be entitled to further payment on this Subcontract until the work has been completed and accepted by the Owner and payment therefore has been received by the Contractor from the Owner.

21.2.2   If the expense incurred by the Contractor exceeds the unpaid balance due, the Subcontractor agrees to promptly pay the difference to the Contractor together with interest thereon at the rate of the prime rate plus 2% per annum until paid, and the Contractor shall have a lien upon all material, tools, and equipment taken possession of to secure the payment thereof.

21.2.3   With respect to expenses incurred by the Contractor pursuant to this article, it is hereby agreed that the costs and expenses chargeable to the Subcontractor as herein before provided shall include, without restriction, the cost of materials, labor, subcontracts, purchase orders, transportation, equipment and expense thereon, supplies, services, insurance, taxes, appliances, tools, utilities, power used or consumed, supervision, administration, job overhead, travel, attorney's fees, legal and accounting fees and expenses, Contractor's general overhead as allocated to the work and other costs and expenses incurred or sustained by the Contractor, plus ten percent (10%) profit on the actual cost of the work performed as well as on the amount of claims paid by the Contractor for Subcontractor or for which it deems itself liable.

21.3   In no instance will any action whatsoever taken by the Contractor pursuant to this Subcontract relieve or mitigate Subcontractor's full and absolute responsibility for any and all of the Subcontractor's obligations under this Subcontract.

21.4   In the event the employment of the Subcontractor is terminated by the Contractor for cause under this Article and it is subsequently determined by a court of competent jurisdiction or arbitrator(s) that such termination was without cause, such termination shall thereupon be deemed a Termination for Convenience under Article 22 and the provisions of Section 22.2 shall apply.

Article 22.  Suspension or Termination for Convenience

22.1   The Contractor may, without cause, order the Subcontractor in writing to suspend, delay or

Copyright Prohibited

_____
DW PRESS
Subcontractors Initials

interrupt the Work in whole or in part for such period of time as the Contractor may determine. In such an event, the Contract Sum and Contract Time shall be adjusted for increases in the proven and documented cost and time caused by suspension. Adjustment of the Contract Sum shall not include profit, special or consequential damages. No adjustment shall be made to the extent: (1) that performance is, was or would have been so suspended, delayed or interrupted by another cause for which the Subcontractor is responsible; or (2) that an equitable adjustment is made or denied under another provision of the Contract.

22.2    The Contractor may, at any time, terminate this Subcontract in whole or in part for the Contractor's convenience and without cause.  Termination by the Contractor under this Paragraph shall be by notice of termination delivered to the Subcontractor specifying the extent of termination and the effective date of such termination, the Subcontractor shall recover as its sole remedy payment for work properly performed in connection with the terminated portion of the work prior to the effective date of termination and for items properly and timely fabricated off the Project site, delivered and stored in accordance with the Contractor's instructions.  The Subcontractor hereby waives and forfeits all other claims for payment and damage, including, without limitation, anticipated profits.

## Article 23.  Coordination

23.1    The Subcontractor agrees to perform the work called for in this Subcontract in such a manner that he will not injure or damage any other work performed by the Contractor or any other subcontractor.

23.2    The Subcontractor further agrees to cooperate with the Contractor and other subcontractors whose work might interfere with the Subcontractor's work and to prepare sketches and drawings as directed, and/or to participate in the preparation of coordinated drawings in areas of congestion, specifically noting and advising the Contractor of any such interference.

23.3.   The Subcontractor agrees to have a representative present at regularly scheduled jobsite coordination meetings.  This representative must be a principal of the company or designated project manager who has the authority to comply with all scheduling and other requests of the General Contractor.  It is further agreed that the Subcontractor's representative shall appear promptly at the designated meeting time. If the Subcontractor fails to attend these meetings on a timely basis, the Contractor shall have the right to declare the Subcontractor in default of this Subcontract, and seek all legal remedies in accordance with the terms of this Subcontract.

## Article 24.  Indemnification

24.1    To the fullest extent permitted by law, Subcontractor agrees to indemnify, hold harmless and defend **Guidi Homes, Inc.  and General Contractor, Construction Manager, Prime Contractor, Owner, Architect, Engineer, Partner and Joint Venture** and their agents, employees, representatives, officers, directors, stockholders, members, managers and parent, subsidiary and affiliated companies (the "Indemnified Parties") from and against any and all liability for loss, damage or expense for which the Indemnified Parties may be held liable by reason of injury (including death) to any person (including Subcontractor's employees) or damage to any property of whatsoever kind or nature arising out of or in any manner connected with the work to be performed for the Indemnified Parties (including, but not limited to, work performed under this contract, work performed under Change Order, or any such other work performed for or on behalf of the Indemnified Parties, whether performed at the site or not or in any way connected with the use, misuse, erection, maintenance, operation or failure of any machinery or equipment whether or not such machinery or equipment was furnished, rented or loaned by any of the Indemnified Parties, even for and if caused in whole or in part by any act, omission, or negligence of the Indemnified Parties. It is expressly understood and agreed that the indemnity contained in this paragraph covers claims by Subcontractor's employees and that Subcontractor expressly waives any defense to this indemnification obligation which may arise under the Workers' Compensation Act of any State. In addition, Subcontractor shall defend the Indemnified Parties

12 of 19

Subcontractors Initials

against any claim which may potentially give rise to indemnification of the Indemnified Parties, even if such claim alleges that the Indemnified Parties are wholly or partially at fault for causing the loss. If Indemnification for the Indemnified Parties' sole negligence is expressly prohibited by Law, such defense shall continue until it is conclusively established by a court of competent jurisdiction that: 1) the Indemnified Parties are solely liable for causing the bodily injury or property damage alleged; and 2) that neither Subcontractor nor its employees nor any Subcontractor to Subcontractor is liable; at which time the Indemnified Parties will absorb all costs of defense. It is further expressly agreed that Subcontractor assumes the fullest extent of all obligations to indemnify and defend all parties whom **Guidi Homes, Inc.** is obligated to indemnify and defend in **Guidi Homes, Inc.'s** contract with General Contractor, Construction Manager, Prime Contractor, Owner, Architect, Engineer, Partner and Joint Venture (whether or not such obligations may extend to items beyond those addressed in this Agreement).

If there are any damages or claims of any kind or nature unsettled when the subcontract work is finished, the final payment by **Guidi Homes, Inc.** shall be deferred until all such claims shall have been adjusted or suitable coverage or indemnity acceptable to Guidi Homes, Inc. is provided by Subcontractor or Subcontractor's insurance carrier.

Subcontractor and **Guidi Homes, Inc.** further agree that the Laws of the Commonwealth of Pennsylvania shall apply to the construction and application of the Indemnification and Hold Harmless Agreements set forth above

24.2    In the event and to the extent that a claim is made by an employee of Subcontractor against an Indemnified Party hereunder, the intent of this Article is that Subcontractor shall and it hereby agrees to indemnify Owner, Architect, Contractor and their parent, subsidiary, or affiliated companies and each of their agents, officers, directors, employees and assigns to the same extent as if the claim was made by a non-employee of Subcontractor. Accordingly, in addition to the above provisions, and in order to render the parties' intent and this indemnity agreement fully enforceable, Subcontractor, in an indemnification claim hereunder, hereby expressly and without reservation waives any defense or immunity it may have under any applicable Worker's Compensation Laws or any other statute or judicial decision disallowing or limiting such indemnification and consents to a cause of action for indemnity. Said waiver and consent to indemnification is made irrespective of and specifically waiving any defense or immunity under any statute or judicial decision disallowing or limiting such indemnification.

24.3    The Subcontractor shall bear any expense of an Indemnified Party because of any claim or other matter indemnified against hereunder, including reasonable attorney's fees and court costs in the defense of, or preparing for the defense against, any such claim, even if such claim or any lawsuit arising therefrom is groundless, false or fraudulent. If any such claim has not been settled or discharged when the Work is finished, final settlement between the Contractor and the Subcontractor and final payment of the Subcontract Price and the acceptance of the Work shall be deferred until any such claim is paid or settled or the Subcontractor provides a bond, acceptable to the Contractor, in its sole discretion, to satisfy such claim. At the request of any Indemnified Party, Subcontractor shall retain an attorney to represent such Indemnified Party in the defense of any such claim, provided, however, that any attorney employed in such defense must be satisfactory to such Indemnified Party.

24.4    The parties hereby agree that the Contractor shall not be liable for any loss or casualty incurred or caused by the Subcontractor. The Subcontractor shall maintain full and complete insurance on its work until final acceptance of the Work. The Subcontractor assumes all risk of loss for all its work regardless of whether the Subcontractor had previously been paid for same. Contractor is not responsible to provide any service for the Subcontractor's benefit, and is not liable for any loss or damage to the Subcontractor's Work.

24.5    In addition to the above, Subcontractor shall indemnify and hold harmless the Indemnified Parties for all damages, losses, or claims that arise as a result, in whole or in part, of the negligence, errors,

13 of 19

Dw, PREB
Subcontractors Initials

omissions, or failure to perform by the Subcontractor, his employees, his agents or his subcontractors. The Subcontractor shall indemnify and hold harmless the Owner for all damages, losses, or claims, including related attorney fees, that arise as a result, in whole or in part, of the breach of this Agreement or any implied covenants deemed to be applied thereto, intentional acts, omissions, or other failures to perform by the Subcontractor, his employees, his agents or his subcontractors.

Article 25.  Elimination or Reduction of Work

    25.1    In the event of elimination or reduction of the work to be performed under this Subcontract by reason of termination or modification of the Subcontract Documents or a change in the work to be done thereunder, either in accordance with the terms of the Contract or the Subcontract Documents or by default by Owner, Subcontractor shall not be entitled to recover from Contractor more than its fair and equitable portion of any sums received by Contractor for work done or materials supplied by this Subcontractor on this Subcontract. The rights and claims of the Contractor, other subcontractors and third parties shall be taken into consideration in determining Subcontractor's fair and equitable share.

Article 26.  Labor Harmony

    26.1    The Subcontractor accepts complete responsibility to maintain labor harmony with all trades working on this project during the performance of Subcontractor's Work.

Article 27.  Permits and Compliance with Law

    27.1    Subcontractor shall obtain and pay for all permits, licenses and official inspection made necessary by its work and shall comply with all laws, ordinances and regulations bearing on the work required under this Subcontract.

    27.2    Without limitation of any other provision hereof, if the Subcontractor performs any Work which is contrary to such laws, ordinances, codes, rules and regulations, he shall make all changes as required to comply therewith and bear all costs arising therefrom without additional reimbursement.

Article 28.  Independent Contractor

    28.1    The Subcontractor certifies that he is "an independent Contractor" subject, as an employer, to all applicable statutes and regulations with respect to such status.

Article 29.  Employees

    29.1    The Subcontractor shall not employ any person in performance of this Subcontract whose employment might be reasonably objected to by the Contractor or Owner and hereby agrees to promptly remove from the Project any such person or party.

Article 30.  Notice

    30.1.1    Written notice, where required by the terms of this Subcontract, may be accomplished by personal delivery of said notice or by use of the United States mail or a facsimile communication. The written notice shall become effective upon the date stated therein, or, if no such date is stated, upon the date upon which delivery is complete.

    30.1.2    Personal delivery is complete when the notice is delivered to the Subcontractor or its representative at the Project or at the office address of the Subcontractor appearing in this Subcontract. The Subcontractor shall, at all times during its work on this Project, have a representative authorized to receive written notices present on the Project site during all normal working hours. In the absence of such a representative, personal delivery is complete when the notice is delivered to any of its subcontractors, supervisors or workmen, or in their absence, left in a conspicuous place on the Project site in the area of Subcontractor's work.

    30.1.3.    If facsimile is used, completion of the facsimile will have a confirmation notice attached thereto, to

                    DW, PRES
                    Subcontractors Initials

indicate that the fax has been sent in its entirety, and shall have a date reflected thereon.

30.1.4    When regular or overnight mail is used, delivery is complete for the purposes of paragraph 30.1.1 on the date first occurring among the following: a) on the day the communication is received by Subcontractor evidenced by a return receipt furnished by the United States Post Office Department or by any recognized messenger or delivery service, or b) on the third day after the notice is deposited in the U.S. mail addressed to the Subcontractor at its last known address.

Article 31.    Superintendent

31.1    The Subcontractor shall at all times maintain a qualified and skilled superintendent or foreman at the site of the work who shall be satisfactory to the Owner, the Owner's authorized agent and/or the Contractor. Such superintendent or foreman shall be duly and legally authorized to represent and act for the Subcontractor with respect to all matters in connection with or arising out of work under this Subcontract.

Article 32.    Subcontractor's Dealing with Owner

32.1    It is agreed that all of Subcontractor's dealings with the Owner's authorized agent, the Owner, or any other party named in the Contract Documents shall be through the Contractor.

32.2    The Subcontractor further agrees that he shall not make any agreement with the Owner's authorized agent or with the Owner pertaining to any phase of the performance of this Subcontract.

Article 33.    Owner Right to Reject Subcontract and Third Party Beneficiary Rights

33.1    Subcontractor recognizes that the Owner may reject any proposed subcontractor or supplier for any reason and at its discretion prior to execution of the subcontract.

33.2    Nothing contained in the Subcontract Documents or Contract Documents shall create a contractual relationship between the Owner and any third parties; however, it is understood and agreed that the Owner is an intended third party beneficiary of all subcontracts, purchase orders, and other agreements between the Contractor and third parties.

Article 34.    No Commingling of Materials

34.1    To the extent that the materials or equipment is for a particular Work Order, the materials and equipment must be marked as such and must not be commingled with material or equipment for other portions of the project. No payments will be made for stored materials or equipment unless they are so designated and separate.

Article 35.    Contributions, Taxes and Insurance

35.1    The Subcontractor agrees to and does hereby accept full and exclusive liability for the payment of all contributions, taxes, insurance of any description whatever, now or hereafter imposed by any authority, which are measured by the wages, salaries or other remunerations paid to persons employed by Subcontractor on work performed pursuant to the terms of this Subcontract.

35.2    Subcontractor further agrees to and does hereby accept full and exclusive liability for the payment of all personal property taxes, inventory taxes, sales taxes, use taxes, excise taxes, fuel taxes, transportation taxes, franchise taxes, and all other taxes, and/or tax assessments in any manner whatsoever relating to the materials, supplies, tools, machinery, equipment and plant which may be purchased, acquired, rented or used by Subcontractor relating to all work performed under this Subcontract.

Article 36.    Insurance

36.1.1    Subcontractor shall provide and maintain at all times during the performance of this Subcontract Workmen's Compensation and Employer's Liability insurance for protection of Subcontractor's employees, as required by law; and insurance covering Public Liability, Property Damage and Subcontractor's Contractual Liability hereunder (including but not limited to all work performance and operation of automobiles, trucks and other vehicles, the values of which are itemized in Exhibit "C").

15 of 19

Subcontractors Initials

36.1.2  All insurance required hereunder shall be maintained in full force and effect in a company or companies satisfactory to Contractor, at the Subcontractor's expense, and until performance in full hereof has been accomplished and final payment has been issued in evidence thereof. Further, such insurance shall be subject to the requirement that Contractor must be notified by thirty (30) days written notice before cancellation of any such policy. In the event of the threatened cancellation for non-payment of premium, Contractor may pay the same for Subcontractor and deduct the said payment from amounts then or subsequently owing to the Subcontractor hereunder.

36.1.3  Certificates of insurance must be filed with the Contractor within thirty (30) days of the date of execution of this Subcontract or prior to commencement of work, whichever is earlier. No payment shall be considered due and owing hereunder until certificates of insurance satisfactory to the Contractor have been received in its office.

36.1.4  Subcontractors' liability policy shall be the primary policy and must list as additional insured both Contractor and the Owner of the Project as well as any additional entities listed in the relevant Work Order using the following language:
**Guidi Homes, Inc and (Name of Owner if other) are additional insured on the captioned General Liability, Umbrella liability and Automobile Liability Policies on a Primary and Noncontributory basis. A waiver of Subrogation is provided on these policies in favor of Guidi Homes, Inc and Haverford Reserve LP, including workers compensation where permitted by State Law.**

36.1.5  Subcontractor is required to report to Contractor in writing, any job related illness or accident within three (3) business days of illness or accident.

36.2  Subcontractor shall require its Sub-subcontractor to provide and maintain at all times during the performance of the Sub-Subcontractor's Subcontract, Workmen's Compensation and Employer's Liability insurance for protection of the Sub-Subcontractor's employees, as required by law; and insurance covering Public Liability Property Damage and Sub-Subcontractor's Contractual Liability under its Subcontract (including but not limited to all work performance and operation of automobiles, trucks and other vehicles, the values of which are itemized in Exhibit "C"). The insurance provided by the Sub-Subcontractor shall meet all of the requirements of this Subcontract.

36.3  In the event Contractor, in its sole discretion, determines that Subcontractor is not maintaining the insurance required by this Agreement, Contractor shall have the right to immediately terminate this Agreement without any notice to Subcontractor.

36.4  To the fullest extent permitted by applicable law, Subcontractor waives all subrogation rights against Contractor, Owner, and any of their agents and employees: (1) for damages caused by fire or other perils to the extent covered by property insurance provided under the Principal Contract, the Subcontract or other property insurance applicable to the Work, except such rights as they may have to proceeds of such insurance held by Owner or Contractor as fiduciary; and (2) for other claims to the extent arising out of a loss or claim covered by Subcontractor's liability, automobile or worker's compensation insurance. Subcontractor shall require of Subcontractor's sub-subcontractors, agents and employees by appropriate agreements, written where legally required for validity, similar waivers in favor of other parties enumerated herein. The policies shall provide such waivers of subrogation by endorsement or otherwise. A waiver of subrogation shall be effective as to a person or entity even though that person or entity would otherwise have a duty of indemnification, contractual or otherwise, did not pay the insurance premium directly or indirectly, and whether or not the person or entity had an insurable interest in the property damaged.

## Article 37.  Effective Date

37.1  The effective date of this Subcontract is intended by both parties to be the date indicated at the beginning of this Subcontract. The dates appearing by the signatures at the end of this document merely indicate the dates that the signatures were affixed.

## Article 38.  Waiver of Liens and Releases

38.1  If Contractor posts a bond guaranteeing payment for goods, materials, and equipment supplied,

16 of 19

DW PRES
Subcontractors Initials

labor or services provided to the Project by Subcontractors, then Subcontractor agrees to waive its right to file a mechanics' lien and that no mechanics' liens, notices, or claims, or materialman's liens, notices, or claims, or any other liens or claims of any kind whatsoever will be filed, enforced, or maintained with respect to the goods, materials, and equipment supplied, labor or services performed pursuant to this Subcontract against the Project for which they are supplied or performed, or against the owner, real property, building, or other improvements of which the Project is a part, or any part or parts thereof or the appurtenances thereto by Subcontractor, its successors and assigns. If the bond posted by Contractor guarantees payment for goods, materials, and equipment supplied, labor or services provided to the Project by sub-subcontractors, suppliers, materialman and other entities pursuant to a contract with Subcontractor, then Subcontractor shall obtain lien waivers from such sub-subcontractors, suppliers, materialman and other any other similarly situated entities, stating that liens may not be filed on the Project and provide written notice of this lien waiver provision to its sub-subcontractors, suppliers, materialman, and all other persons or entities acting by, through, or under it or them, prior to and before any labor or services are performed, or goods, materials, or equipment are supplied to the Project pursuant to this Subcontract.

38.2    If Contractor posts a bond guaranteeing payment for goods, materials, and equipment supplied, or labor or services performed by Subcontractor, then, in the event a mechanics' lien, notice, or claim, or materialman's lien, notice, or claim, or construction lien claim, or lien, or any other lien or claim of any kind whatsoever is filed, enforced, or maintained by Subcontractor and/or any of Subcontractor's sub-subcontractors, suppliers, materialmen, and all other persons or entities acting by, through, or under it or them, then Subcontractor shall defend, indemnify, and hold Contractor harmless from such liens and/or claims, and shall also cause said mechanics' lien, notice, or claim, or materialman's lien, notice, claim, construction lien claim, or other lien of any kind whatsoever, to be discharged in accordance with applicable law. Subcontractor also agrees to pay and reimburse Contractor for all costs, expenses and attorney's fees incurred by Contractor in defending, responding to and/or discharging liens or claims filed by Subcontractor and/or any of Subcontractor's sub-subcontractors, suppliers, materialmen, and all other persons or entities acting by, through, or under it or them whenever a valid lien waiver is in place on a Project.

38.3    As a prerequisite to payment, Subcontractor agrees that it will execute, in a form satisfactory to owner, all documents required by Contractor that evidence, ensure, and guarantee that the Subcontractor has made payment for all Work performed in connection with this Subcontract, including, but not limited to, Releases and Partial Waiver of Liens, in consideration for each and every payment and up the date covered by the payment, whether partial or final. Said Releases and Partial Waiver of Liens shall include, whenever so requested by Contractor, and in a form acceptable to Contractor, Partial Waiver of Liens and Release of claims, costs, expenses, fees, charges, changes, change orders, or change order requests that arise out of or relate to Subcontractor's Work performed from all contractors, suppliers, persons and/or entities that have, or will, provide labor, materials, equipment, machinery, fixtures, services, or labor under any agreement(s) with Subcontractor for the Subcontractor's Work under this Subcontract. A sample Partial Lien Waiver and Release Form is attached hereto as Exhibit "E-2" to this Subcontract. Contractor reserves the right to modify the form of this Partial Lien Waiver and Release.

38.4    The Subcontractor, when required by the Contractor as a condition precedent to the making of final payment hereunder, shall furnish to the Contractor a full and complete release and discharge, in a form satisfactory to the Contractor, of all liens, claims and demands arising out of or relating to the Subcontract work and any and all materials furnished, work done and equipment used in connection therewith. Furthermore, if, prior to final payment, the Owner or any party providing financing for the Project requests a release of liens from the Subcontractor, the Subcontractor shall execute and deliver such release of liens in a form satisfactory to the Owner or such other party. A sample Final Lien Waiver and Release is attached hereto as Exhibit "F-2" to this Subcontract.

Article 39.  Applicable Law

DW, PRB
Subcontractors Initials

39.1   The law of the Commonwealth of Pennsylvania, not including choice of law analysis, shall be applicable to this Subcontract and shall be used to decide any dispute related to this Subcontract.

Article 40.  Determination of Disputes

40.1.1   Any dispute between the parties related to this Contract shall be determined by the courts of the Commonwealth of Pennsylvania located in Montgomery County or, if the Contractor agrees in writing that the Owner is a party to the dispute, the venue required by the Contract Documents, with the exception noted in Section 40.1.2 below.  The Subcontractor hereby consents to the personal jurisdiction of that Court over it and agrees to accept service of process issuing from that Court.  As part of the consideration given by the parties hereto, the parties mutually agree to waive their respective rights to a jury in any such matter.

40.1.2   If a dispute arising out of or relates to this Subcontract, or breach thereof, and if the dispute cannot be settled through pre-litigation negotiations, the Contractor and Subcontractor agree, at the Contractor's sole election, to subject the dispute to arbitration administered by the American Arbitration Association under its Construction Industry Arbitration Rules whereby a judgment on the award rendered by the Arbitrator(s) may be entered in any Court having jurisdiction thereof. Under such circumstances, the Arbitrator(s) shall have the exclusive power to determine issues of arbitrability.  Such arbitration shall be final and binding upon the parties.

40.1.3   Pending final resolution of a dispute, except as otherwise agreed in writing, the Subcontractor shall proceed diligently with performance of the Work.

40.1.4   Enforceability of Elections.  If the elections afforded Contractor in Section 40.1.1 or 40.1.2 hereof are not enforceable, then both parties shall be bound to arbitrate all disputes in which the disputed amount is less than Five Hundred Thousand Dollars ($500,000.00) and may litigate any dispute involving a higher amount.

40.1.5   Venue.  Unless the Contractor agrees in writing that the Owner is a party to the dispute, so that the venue will be as required by the Contract Documents, the venue for any mediation, arbitration or litigation proceeding relating to Subcontractor's Work shall be in the county in which Contractor's home office is located.

Article 41.  Nondiscrimination in Employment

41.1   UNLESS EXEMPT IN ACCORDANCE WITH EXECUTIVE ORDER 11246 OF SEPTEMBER 24, 1965, DURING THE PERFORMANCE OF THIS SUBCONTRACT, THE SUBCONTRACTOR AGREES AS FOLLOWS:

41.1.1   The Subcontractor will not discriminate against any employee, or applicant for employment because of sex, race, religion, color or national origin.  The Subcontractor will take affirmative action to ensure that applicants are employed and that employees are treated during employment without regard to their age, sex, religion, color or national origin.  The Subcontractor agrees to post in conspicuous places, available to the employees and applicants for employment, notices to be provided setting forth the provisions of the nondiscrimination clause.

41.1.2   The Subcontractor will, in all solicitations or advertisement for employees, placed by or on behalf of the Subcontractor, state that all qualified applicants will receive consideration for employment without regard to sex, race, religion, color or national origin.

41.1.3   If applicable, the Subcontractor will send to each labor union or representative of workers with which he has a collective bargaining agreement or other contract or understanding, a notice advising the said labor union or workers' representative of the Subcontractor's commitments under this section, and shall post copies of the notice in conspicuous places available to employees and applicants for employment.

41.1.4   The Subcontractor will comply with all provisions of Executive Order 11246 of September 24, 1965 and the rules, regulations and relevant orders of the Secretary of Labor.

41.1.5   The Subcontractor will furnish all information and reports required by Executive Order 11246 of September 24, 1965 and by the rules, regulations and orders of the Secretary of Labor, or pursuant thereto, and will permit access of his books, records, and accounts by the administering agency and

18 of 19

_D.W. ?ReB_
Subcontractors Initials

Copy Prohibited

the Secretary of Labor for purposes of investigation to ascertain compliance with rules, regulations and orders.

41.1.6   In the event the Subcontractor is in non-compliance with the nondiscrimination clauses of the Subcontract Documents or with any of the said rules, regulations or orders, this Subcontract may be canceled, terminated or suspended in whole or in part, and the Subcontractor may be declared ineligible for further government contracts or federally assisted construction contracts in accordance with procedures authorized in Executive Order 11246 of September 24, 1965 and such other sanctions as may be imposed and remedies invoked as provided in the said Executive Order or by rules, regulations or orders of the Secretary of Labor, or as otherwise provided by Law.

41.1.7   The Subcontractors will include the provisions of Paragraph One (1) through Seven (7) in every Sub-Contract or Purchase Order unless exempted by rules, regulations and orders of the Secretary of Labor issued pursuant to Executive Order 11246 of September 24, 1965, so that such provisions will be binding upon each Sub-contractor or Vendor. The Subcontractor will take such action with respect to any Sub-subcontract or Purchase Order as the administering agency may direct as a means of enforcing such provisions, including sanctions for noncompliance; provided however, that in the event the Subcontractor becomes involved in, or is threatened with, litigation with a Sub-subcontractor or vendor as a result of such direction by the administering agency, the Subcontractor may request the United States to enter into such litigation to protect the interests of the United States.

Copying Prohibited

19 of 19

## Exhibit "C"
## REQUIRED LINES OF COVERAGE AND MINIMUM INSURANCE REQUIREMENTS

**Commercial General Liability Insurance:** Comprehensive General Liability Insurance including G.H.I.'S Protective Liability and Contractual Liability insurance with and insurance shall insure the hold harmless and indemnification agreements of the SUBCONTRACTOR running to G.H.I.

a)   Occurrences Policy Form (including Contractual Liability Coverage)

b)   Limits of Liability:

| | |
|---|---|
| General Aggregate (per Project) | $2,000,000 |
| Products – Completed Operations Aggregate | $1,000,000 |
| Personal & Advertising Injury | $1,000,000 |
| Each Occurrence | $1,000,000 |
| Fire Legal Liability Coverage | $    50,000 |

**Workers Compensation and Employers Liability Insurance** complying with the laws of the State in which the work is to be performed, or elsewhere as may be required.   Workmen's Compensation including Occupational Disease and Employer's Liability Insurance covering all SUBCONTRACTOR'S employees directly or indirectly engaged in the performance of this Contract.

a) Workers' Compensation Coverage:  Statutory Requirements

b)   Employers Liability Limit Not Less Than:

| | |
|---|---|
| Bodily Injury by Accident: | $100,000 each accident |
| Bodily Injury by Disease: | $500,000 each accident |
| Bodily Injury by Disease: | $100,000 policy limit |

c)   U.S. Longshoreman's and Harbor Worker's Coverage should be certified where applicable.

**Business Automobile:**
Owned, Hired and Non-Owned Vehicles Coverage

Bodily Injury and Property Damage Liability Limits - $1,000,000 Per Accident

**Umbrella Excess Liability:**
Minimum **Per Project** Limit - $5,000,000 Per Occurrence/Aggregate

**Other Insurance** as may be required by law or G.H.I.

**Financial Rating of Insurance Companies**
A.M. Best Rating: A- (Excellent) or Higher
A.M. Best Financial Size Category: Class VII or higher

Subcontractors shall provide a Certificate of Insurance evidencing these coverage's.

The Certificate of Insurance is to name Guidi Homes, Inc., et al and the owner as an "additional insured on a primary basis" using the following language:

Guidi Homes, Inc and Owner are additional insured on the captioned General Liability, Umbrella liability and Automobile Liability Policies on a Primary and Noncontributory basis.  A waiver of Subrogation is provided on these policies in favor of Guidi Homes, Inc and Owner, including workers compensation where permitted by State Law.

Moreover, it must provide that, in event of any material changes in your policy or the cancellation or non-renewal of your insurance, thirty (30) days advance written notice must be given to Guidi Homes, Inc., et al.

**EXHIBIT "E-2"**

**Sub-Contractor Partial Lien Release**

## SUBCONTRACTOR AND SUB-SUBCONTRACTOR ACKNOWLEDGEMENT OF PROGRESS PAYMENT AND PARTIAL LIEN RELEASE AND WAIVER

_____("Subcontractor") hereby acknowledges that upon receipt from ___Guidi Homes_____ ("Contractor") of the sum of $_____ ("Progress Payment") which Progress Payment shall constitute payment in full of the amount presently due from Contractor to Subcontractor for labor performed or materials furnished by Subcontractor, and any and all of its Sub-Subcontractors and materialmen, pursuant to that certain Contract between Contractor and Subcontractor dated _____, as modified by and including any and all change orders, extras, additions, substitutions and omissions through the date hereof (the "Contract"), in connection with construction at lot _____ of Haverford Reserve, The Carriage Homes (the "Project") located at 3500 Darby Road, Haverford Township, Delaware County, Pennsylvania (the "Property").

The Progress Payment is more particularly described in the application for payment, number _____ dated _____, (the "Invoice") previously submitted by Subcontractor to Contractor, which Invoice is incorporated herein by this reference. Subcontractor hereby represents and warrants to Contractor and Haverford Reserve L.P. ("Developer") that, including the Progress Payment, through the date hereof Subcontractor has received from Contractor payments totaling $_____ for labor performed or materials furnished pursuant to the Contract.

Subcontractor hereby represents and warrants to Contractor and Developer that (i) except for retainage in the amount of $ 0.00 _____ (the "Retainage"), the Progress Payment will constitute payment in full of all amounts presently due from Contractor to Subcontractor for labor performed and materials furnished pursuant to the Contract, (ii) no notice of unpaid balance or right to file lien or mechanic's or materialman's lien or claim has been filed against the Property or served by Subcontractor, (iii) to the best of Subcontractors knowledge, information and belief, no notice of unpaid balance or right to file lien or mechanic's or materialman's lien or Claim has been filed or served against the Property by any of its Sub-Subcontractors, or materialmen who performed labor or furnished materials with respect to the Project, (iv) there is no known basis for the filing of any mechanic's or materialman's lien, and other claim, or notice with respect to the Project by Subcontractor or anyone acting through or under Subcontractor, (v) all Sub-Subcontractors and materialmen who were entitled to receive a portion of any progress payment previously paid to Subcontractor have been paid in full, less retainage and pending change orders, if any, and (vi) attached hereto is a true and complete list of all Sub-subcontractors and materialmen which have performed work by, through, or under Subcontractor.

Subcontractor, on behalf of itself, its predecessors, successors, affiliates, and all Sub-subcontractors, and materialmen, for and in consideration of the Progress Payment, hereby forever waives, releases, and relinquishes any and all liens, claims, and demands whatsoever, which it now has or might or could have on or against the Project, the Property, The Township of Haverford, Developer and Developer's successors and assigns, attorneys, affiliates, and lenders (collectively "Developer Releasees") for labor performed or materials furnished in connection with the Application; provided, however, that this release does not apply to the Retainage or to

any labor performed or materials furnished pursuant to the Contract after the date of this Acknowledgment and Release.

Subcontractor further declares that by signing and sealing this instrument, Subcontractor shall be completely estopped from filing or maintaining any and all liens, claims, and notices against the Project and the Property for or with respect to the work described in the Application as well as all prior Applications, and that in the event that any such lien, claim, or notice is filed or has been filed by Subcontractor or anyone acting through or under Subcontractor, Subcontractor shall immediately take steps to cause such lien, claim, or notice to be withdrawn, discharged, and satisfied. Subcontractor shall indemnify, defend, and hold harmless Developer Releasees from and against all claims, damages, losses, and expenses, including, but not limited to, attorney's fees, arising out or of resulting from the assertion by Subcontractor, or any of its Sub-Subcontractors or materialmen, of any construction claim, lien or notice or the filing of any construction claim, lien, or notice against the Project or the Property or the failure to discharge mechanic's liens, claims, and other filings as aforesaid.

IN WITNESS WHEREOF, Subcontractor, intending to be legally bound hereby, has caused this instrument to be executed, under seal, as of this _____ day of _____, 2009.

> SUBCONTRACTOR:
>
> By: _____
>
> Name: _____
>
> Title: _____

COMMONWEALTH OF PENNSYLVANIA:   )
                                  ) ss.
COUNTY OF _____   )

On this _____ day of _____, 2009, before me, a Notary Public in and for the Commonwealth of Pennsylvania, personally appeared _____ the _____ of _____, the corporation that executed the within and foregoing instrument, and acknowledged said instrument to be the free and voluntary act and deed of said corporation for the uses and purposes therein mentioned, and on oath stated that w/he was authorized to executed said instrument.

WITNESS my hand and official seal hereto affixed the day and year first as above written.

> _____
> Name: _____
> NOTARY PUBLIC in and for the
> Commonwealth of Pennsylvania
>
> My appointment expires: _____

[NOTARIAL SEAL]

EXHIBIT "F-2"

**Subcontractor Final Lien Release**

## SUBCONTACTOR, SUB-SUBCONTRACTOR, AND SUPPLIER ACCEPTANCE OF FINAL PAYMENT AND RELEASE OF LIENS AND CLAIMS

_____ ("Subcontractor," Sub-Subcontractor," or "Supplier") hereby acknowledges receipt from Guidi Homes ("Contractor") and Haverford Reserve LP ("Developer") of the sum of $_____ For Invoice(s) _____ which will constitute full and final payment of any and all amounts due to Subcontractor for labor performed or materials furnished by Subcontractor, and any and all of its Sub-Subcontractors and materialmen, pursuant to contract, or otherwise, including any and all change orders, extras, additions, substitutions and omissions through the date hereof (the "Contract"), in connection with lot _____ of Haverford Reserve, The Carriage Homes (the "Project") located at 3500 Darby Road, Haverford Township, Delaware County, Pennsylvania (the "Property").

Subcontractor hereby represents and warrants to Contractor and Developer the Final Payment constitutes final payment in full of all amounts due for labor performed and materials furnished pursuant to the Contract, (ii) no notice of unpaid balance or right to file construction lien has been filed or served against the Property by Subcontractor, (iii) to the best of Subcontractor's knowledge, information and belief, no notice of unpaid balance or right to file construction lien has been filed or served against the Property by any of its Sub-Subcontractors or materialmen who performed labor or furnished materials with respect to the Project, (iv) there is no known basis for the filing of any construction lien, and other claim, or notice with respect to the Project, (v) all Sub-Subcontractors and materialmen who were entitled to receive a portion of any progress payment previously paid to Subcontractor have been paid in full, and (vi) attached hereto is a true and complete list of all Sub-subcontractors and materialmen which have performed work by, through, or under Subcontractor.

Subcontractor, on behalf of itself, its predecessors, successors, affiliates, and all Sub-subcontractors and materialmen, for and in consideration of payment made, hereby forever waives, releases, and relinquishes any and all liens, claims, and demands whatsoever, which it now has or might or could have on or against the Project, the property, The Township of Haverford, Developer and Developer's sucessors and assigns, attorneys, affiliates, and lenders (collectively "Developer Releasees") for labor performed or materials furnished in connection with the Project.

Subcontractor further declares that by signing and sealing this instrument and upon receipt of the Final Payment, Subcontractor shall be completely stopped from filing or maintaining any and all liens, claims, and notices against the Project and the Property, Contractor, and the Developer Releasees, and tat in the event that any such lien, claim, or notice is filed or has been filed by Subcontractor or anyone acting through or under Subcontractor, Subcontractor shall immediately take steps to cause such lien, claim, or notice to be withdrawn,

discharged, and satisfied.  Subcontractor shall indemnify, defend, and hold harmless Contractor and Developer Releasees from and against all claims, damages, losses, and expenses, including, but not limited to, attorney's fees, arising out of or resulting from the assertion by Subcontractor, or any of its Sub-Subcontractors or materialmen, of any construction lien or claim or the filing of any construction claim, lien, or notice against the Project or the Property or the failure to discharge mechanic's liens, claims, and other filings as aforesaid.

IN WITNESS WHEREOF, Subcontractor, intending to be legally bound hereby, has caused this instrument to be executed, under seal, as of this _____ day of _____, 2009.

SUBCONTRACTOR:

By:       _____

Name:   _____

Title:    _____

COMMONWEALTH OF PENNSYLVANIA:       )
                                                                          ) ss.
COUNTY OF _____       )

On this _____ day of _____, 2009, before me, a Notary Public in and for the Commonwealth of Pennsylvania, personally appeared _____ the _____ of _____, the corporation that executed the within and foregoing instrument, and acknowledged said instrument to be the free and voluntary act and deed of said corporation for the uses and purposes therein mentioned, and on oath stated that w/he was authorized to executed said instrument.

WITNESS my hand and official seal hereto affixed the day and year first as above written.

_____
Name: _____
NOTARY PUBLIC in and for the
Commonwealth of Pennsylvania

My appointment expires: _____

[NOTARIAL SEAL]

## SUBCONTRACT WORK ORDER

This Subcontract, made this _27_th_ day of _January_, 2010 by and between __Dreifuss Prebilt, Inc.__ hereinafter designated the Subcontractor, and GUIDI HOMES, INC., 925 Harvest Drive, Suite 220, Blue Bell, PA   19422, hereinafter designated the Contractor.

WITNESSETH:

That for and in consideration of the mutual promises and covenants herein contained, the Subcontractor and the Contractor agree as follows:

**Section A.**      The Subcontractor covenants, promises and agrees to furnish all material and personal property of every description, and to diligently and fully perform all work hereinafter described for the construction of ____supply and installation of prefab fireplace____ hereinafter called the Project, to be located at **224 Valley Ridge Road** for the use and benefit of <u>Haverford Reserve LP</u> hereinafter designated the Owner; in strict accordance with the Contract between the Contractor and the Owner entered into ____July 17, 2008_____ and hereby made a part of this Subcontract by reference.

The term "Contract" as used herein refers to the Contract between the Owner and the Contractor for construction of the Project.  The term "Contract Documents" as used herein refers to the "Contract" between the Owner and the Contractor, all plans, drawings, specifications, general conditions, supplemental general conditions, and special conditions, addenda, amendments, and/or instruments of like effect. The term "Subcontract" or "Work Order" as used herein refers to this Subcontract Work Order, the Master Agreement, together with any exhibits, attachments or addenda incorporated herewith and referred to herein. The term "Subcontract Documents" as used herein refers jointly and/or severally to the aforesaid Contract, Contract Documents and Subcontract.   The term "Master Agreement" shall mean the Master Agreement between Contractor and Subcontractor dated ____1/27/2010_____ and all exhibits thereto. To the extent the Work Order conflicts with the Master Agreement, the Work Order shall control.

**Section B.**      The Subcontractor agrees to furnish all necessary management, supervision, labor, materials, machinery, tools, scaffolding, equipment, engineering, testing ,all transportation, cartage, handling, hoisting, patterns, models, surveys, field measurement, shop drawings, protection of work and labor for winter conditions, and/or any other act or thing required to diligently and fully perform and complete those portions of the work  in such time and duration as described in Exhibit "1," attached hereto and hereby made a part of this Subcontract.

**Section C.**      The Contractor agrees to pay the Subcontractor for the full and complete performance of this Subcontract the sum of $_____ **$3,477.00**_____ (which price is firm and not subject to escalation) and which includes all applicable federal, state and municipal taxes; and further agrees to make all partial and final payments on account thereof and in accordance with the terms and provisions of the Subcontract Documents.

Pursuant to the Contract Documents, Owner is obligated to pay Contractor in the following manner: On or before the twenty-fifth (25th) day of the month immediately preceding a month in which the Construction Manager will submit an Application for Payment, the Owner, the Architect, and the Construction Manager shall meet to review a preliminary draft of such Application for Payment (hereinafter referred to as a "Pencil Draw") prepared by the Construction Manager. The Construction Manager shall revise the Pencil Draw in accordance with any good-faith objection or recommendation of either the Owner or the Architect that is consistent with the requirements of the Contract Documents. Such revised Pencil Draw shall be resubmitted by the Construction Manager to the Owner as the Application for Payment due on the first (1st) day of the month immediately following the month in which the Pencil Draw was first submitted. The Construction Manager shall also submit with each Application for Payment a written narrative describing the basis for any item set forth in the Application for Payment that does not conform to instructions of the Owner or the Architect in connection with any applicable Pencil Draw.  Provided an Application for Payment is received by the Architect not later than the first day of a month, the Owner shall make payment to the Construction Manager not later than the 30 days of the same month later contingent upon the approval of the

1 of 2

_____
Subcontractors Initials

Copyright Protected

Architect, Lender and the Township, if necessary. An information copy, including all backup and supporting detail shall be provided to the Owner concurrently with the Architect. If an Application for Payment is received by the Architect after the application date fixed above, payment shall be made by the Owner not later than   thirty (30) days after the Architect receives the Application for Payment subject to the approval of the Architect, Lender and the Township, if necessary.

Provided Subcontractor's rate of progress and general performance are satisfactory to the Contractor and provided that the Subcontractor is in full compliance with each and every provision of the Subcontract Documents, the Contractor will make partial payments to the Subcontractor on the Contractor pay estimate form in an amount equal to 90% of the estimated value of work and materials  incorporated into the Project (and of materials delivered to the Project site and suitably stored by the Subcontractor) and paid to Contractor by Owner, less the aggregate of previous payments, within fourteen (14) days of receipt thereof from the Owner or fourteen (14) days after receipt of Subcontractor's invoice, whichever is later.

PAYMENT FROM THE OWNER TO THE CONTRACTOR IS A CONDITION PRECEDENT TO PAYMENT FROM THE CONTRACTOR TO THE SUBCONTRACTOR PURSUANT TO THIS ARTICLE. Subcontractor acknowledges that it has considered the Owner's financial capacity in deciding to enter into this Subcontract and agrees to take the risk associated with the Owner's non-payment.

**Section D.  Scope of Work**: All work included in the Contract shall be done under the direction of Contractor. Said work shall be performed in strict accord with the Contract Documents.  The work to be performed by the Subcontractor includes that work specifically set forth in this Contract, as well as any and all other work incident or related thereto, including but not limited to that work reasonably necessary for a complete and proper Project, or which is necessary to have a properly working and totally acceptable system and Project.  All work covered by this Contract shall be performed in a skillful and workmanlike manner with material, equipment, etc. being both new and of the best kind and grade for the purpose intended.  The Subcontractor shall provide, at its own expense, shop and working drawings, tests, samples, models, guarantees, permits, licenses, unloading facilities and services, temporary utilities, etc. unless noted otherwise, and all other items necessary for the proper performance of this Contract and acceptance of the Project.  The Subcontractor shall pay for all inspection fees, royalties, and license fees.

GUIDI HOMES, INC.

_____          By _____   Date 2/11/10
Witness

Subcontractor

_____          By _____   Date 1/28/10
Witness                                DAVID WALDMAN, PRES.

Subcontractors Initials

**ADDENDUM TO MASTER AGREEMENT**

THIS ADDENDUM TO MASTER AGREEMENT ("Addendum") is made effective as of the _1__ day of __January_____, 2013, by and among **GUIDI HOMES, INC.** (the "Company"), and _____Dreifuss Pre-Built Inc_____ ("Subcontractor") and shall be considered an amendment to the Master Agreement (the "Agreement") between the parties dated __1/2008_____.

In consideration of the mutual promises herein contained and contained in Work Orders entered into by the parties, the parties, intending legally to be bound, agree as follows:

1.      The Agreement is revised as follows:

   1.1      A new paragraph G is hereby added to the Agreement as follows:

   G.      Subcontractor agrees that Contractor may assign its rights in the Agreement, including the terms and conditions, on a Work Order by Work Order basis to other entities.  By accepting the relevant Work Order, Subcontractor is accepting this assignment and shall be bound by the term of this Agreement as if the new entity is listed as the "Contractor" in the Master Agreement. If the Contractor assigns the Agreement to another contractor or other entity, Contractor shall have no legally responsibility for any of the assignee contractor's obligations under the Agreement.

2.      The Terms and Conditions of the Agreement are revised as follows:

   2.1      Article 4.1.3 is hereby deleted and replaced with the following:

   4.1.3   Provided Subcontractor's rate of progress and general performance are satisfactory to the Contractor and provided that the Subcontractor is in full compliance with each and every provision of the Subcontract Documents, the Contractor will make payment to the Subcontractor within forty-five (45) days after receipt of Subcontractor's invoice with a stated interest rate for late payments of not greater than Prime Rate as established by Commerce Bank.

   2.2      A new Article 42 is hereby added to the Agreement as follows:

   Article 42.  Employment by Owner.  Subcontractor acknowledges that Contractor incurs substantial expenses for marketing and relationship building with its clients including but not limited to owners and developers of real estate, and Subcontractor agrees to perform services for Owner only through a Work Order with the Contractor.  Subcontractor further agrees as part of the consideration for the Work Order that it shall not directly be hired or retained by the Owner in any manner without the

Copying Prohibited

written consent of the Contractor for one (1) year after the completion of the Subcontractor's work under the Work Order relating to that Owner.

3.    AMENDMENT OF AGREEMENT.  This Addendum may not be amended, modified or changed, except by a writing signed by all of the parties.

4.    MISCELLANEOUS.

4.1    This Agreement may be executed in counterparts and as so executed shall constitute one agreement binding on all parties, notwithstanding the fact that all parties have not signed the original or the same counterpart.

4.2    The terms and provisions hereof shall be binding upon and shall inure to the benefit of the parties, and their respective heirs, personal representatives, successors, and assigns.

4.3    The captions used herein are for convenience of reference only, and shall not be deemed to modify or construe any of the terms or provisions hereof.

4.4    This Addendum shall be governed and construed in accordance with the laws of Pennsylvania.

4.5    IMPORTANT: THE EXECUTION OF THIS ADDENDUM TO MASTER AGREEMENT DOES NOT OBLIGATE THE CONTRACTOR TO ENTER INTO WORK ORDERS WITH SUBCONTRACTOR ON EVERY PROJECT PERFORMED BY CONTRACTOR.  THE CONSIDERATION GIVEN SUBCONTRACTOR BY CONTRACTOR FOR ENTERING THIS ADDENDUM TO MASTER AGREEMENT SHALL BE THE SAME CONSIDERATION AS SET FORTH IN THE WORK ORDER FOR EACH PARTICULAR PROJECT.

IN WITNESS WHEREOF, the parties have affixed their hands and seals as of the date first written above.

_____          _____
GUIDI HOMES, INC.                       Subcontractor
                                        DAVID WAXMAN, PRESIDENT

Copyright Prohibited

2 of 2

## ADDENDUM TO MASTER AGREEMENT

THIS ADDENDUM TO MASTER AGREEMENT ("Addendum") is made effective as of the _1__ day of __January_____, 2013, by and among **GUIDI HOMES, INC.** (the "Company"), and _____Dreifuss  Pre-Built Inc_____ ("Subcontractor") and shall be considered an amendment to the Master Agreement (the "Agreement") between the parties dated __1/2008_____.

In consideration of the mutual promises herein contained and contained in Work Orders entered into by the parties, the parties, intending legally to be bound, agree as follows:

1.      The Agreement is revised as follows:

    1.1     A new paragraph G is hereby added to the Agreement as follows:

        G.     Subcontractor agrees that Contractor may assign its rights in the Agreement, including the terms and conditions, on a Work Order by Work Order basis to other entities.  By accepting the relevant Work Order, Subcontractor is accepting this assignment and shall be bound by the term of this Agreement as if the new entity is listed as the "Contractor" in the Master Agreement. If the Contractor assigns the Agreement to another contractor or other entity, Contractor shall have no legally responsibility for any of the assignee contractor's obligations under the Agreement.

2.      The Terms and Conditions of the Agreement are revised as follows:

    2.1     Article 4.1.3 is hereby deleted and replaced with the following:

        4.1.3   Provided Subcontractor's rate of progress and general performance are satisfactory to the Contractor and provided that the Subcontractor is in full compliance with each and every provision of the Subcontract Documents, the Contractor will make payment to the Subcontractor within forty-five (45) days after receipt of Subcontractor's invoice with a stated interest rate for late payments of not greater than Prime Rate as established by Commerce Bank.

    2.2     A new Article 42 is hereby added to the Agreement as follows:

        Article 42.  Employment by Owner.  Subcontractor acknowledges that Contractor incurs substantial expenses for marketing and relationship building with its clients including but not limited to owners and developers of real estate, and Subcontractor agrees to perform services for Owner only through a Work Order with the Contractor.  Subcontractor further agrees as part of the consideration for the Work Order that it shall not directly be hired or retained by the Owner in any manner without the

written consent of the Contractor for one (1) year after the completion of the Subcontractor's work under the Work Order relating to that Owner.

3.    AMENDMENT OF AGREEMENT.  This Addendum may not be amended, modified or changed, except by a writing signed by all of the parties.

4.    MISCELLANEOUS.

4.1    This Agreement may be executed in counterparts and as so executed shall constitute one agreement binding on all parties, notwithstanding the fact that all parties have not signed the original or the same counterpart.

4.2    The terms and provisions hereof shall be binding upon and shall inure to the benefit of the parties, and their respective heirs, personal representatives, successors, and assigns.

4.3    The captions used herein are for convenience of reference only, and shall not be deemed to modify or construe any of the terms or provisions hereof.

4.4    This Addendum shall be governed and construed in accordance with the laws of Pennsylvania.

4.5    IMPORTANT: THE EXECUTION OF THIS ADDENDUM TO MASTER AGREEMENT DOES NOT OBLIGATE THE CONTRACTOR TO ENTER INTO WORK ORDERS WITH SUBCONTRACTOR ON EVERY PROJECT PERFORMED BY CONTRACTOR. THE CONSIDERATION GIVEN SUBCONTRACTOR BY CONTRACTOR FOR ENTERING THIS ADDENDUM TO MASTER AGREEMENT SHALL BE THE SAME CONSIDERATION AS SET FORTH IN THE WORK ORDER FOR EACH PARTICULAR PROJECT.

IN WITNESS WHEREOF, the parties have affixed their hands and seals as of the date first written above.

_____          _____
GUIDI HOMES, INC.                                         Subcontractor
                                                                     DAVID WACHMAN, PRESIDENT

#1901194-v1 05882-0001

**EXHIBIT "H"**

Copying Prohibited

# MARSHALL DENNEHEY
## WARNER COLEMAN & GOGGIN

ATTORNEYS-AT-LAW   WWW.MARSHALLDENNEHEY.COM

A  P R O F E S S I O N A L   C O R P O R A T I O N

620 Freedom Business Center, Suite 300, King of Prussia, PA 19406
(610) 354-8250  Fax (610) 354-8299

Direct Dial:  (610) 354-8271
Email:  mldetweiler@mdwcg.com

| | |
|---|---|
| **PENNSYLVANIA** | **OHIO** |
| Allentown | Cincinnati |
| Doylestown | Cleveland |
| Erie | |
| Harrisburg | **FLORIDA** |
| King of Prussia | Ft. Lauderdale |
| Philadelphia | Jacksonville |
| Pittsburgh | Orlando |
| Scranton | Tampa |
| **NEW JERSEY** | **NEW YORK** |
| Mount Laurel | Long Island |
| Roseland | New York City |
| | Westchester |
| **DELAWARE** | |
| Wilmington | |

March 31, 2020

**VIA U.S. MAIL**

DH Custom Carpentry, LLC
1224 Valley Forge Road
Norristown, PA 19403

> Re:   **Haverford Reserve Community Association v. Haverford Reserve, LP, et al.**
>        **Delaware County CCP Docket No. 16-11177**
>        **Our File No. 04128.00165**

Dear Sir or Madam:

I write to advise you that Defendants, Guidi Homes at Haverford Reserve, LLC and Guidi Homes, Inc., (the "Guidi Defendants") are formally tendering their defense and indemnification of the above-referenced matter to DH Custom Carpentry, LLC and/or its insurance carriers in the above-referenced matter. Accordingly, we request that you notify all of DH Custom Carpentry, LLC's general liability insurance carrier(s) of the lawsuit that insured your company from the date of completion of your work on the first home in Haverford Reserve up to and including today.  All such policies are potentially triggered by this case and this tender.  Please provide written confirmation by April 10, 2020 that DH Custom Carpentry, LLC ("DH Custom Carpentry") and/or its insurance carriers have accepted the Guidi Defendants' tender and will assume the complete defense of this action, as well as indemnify the Guidi Defendants for all legal fees and costs incurred from the date of this tender letter as it relates to your company's work at Haverford Reserve.

The remainder of this letter provides the basis for the Guidi Defendants' tender and request for defense and indemnification.  Please note, however, that these bases are not exclusive, and the Guidi Defendants reserve the right to assert additional bases for the Guidi Defendants' tender and request for indemnification.

This civil action was initiated by Plaintiff Haverford Reserve Community Association in 2016.  This matter originally involved allegations of structural defects at a planned residential community known as Haverford Reserve (the "Community"), construction of which began in 2008.  On December 20, 2016 Plaintiff filed a Praecipe for Writ of Summons to start the case.  On January 10, 2017, Plaintiff filed the Complaint setting forth alleged facts, legal theories and damages. *See* Exhibit A, attached hereto, Complaint without exhibits.  Plaintiff's original Complaint alleged the existence of various structural defects and consequential

March 31, 2020
Page 2

damage with regard to certain Common Elements and Controlled Facilities of the Community relating primarily to roof and gutter Controlled Facilities of the Community, including but not limited to:

- Water intrusion due to poor and inconsistent design and construction;
- Improper design of roof elements;
- Creation of trap points for leaves on roofs due to poor and inconsistent design and construction;
- Ice damming on roofs due to poor and inconsistent design and construction;
- Improper gutter performance due to poor and inconsistent design and construction;
- Improper gutter and downspout sizes due to poor and inconsistent design and construction; and
- Failure to record the precise location of all underground leaders.

*See* Exhibit A at Paragraphs 56-57.   In addition, structural defects as to other exterior Common Elements of the Community were alleged, including inadequate construction of driveways, persistent leaks in the Community's irrigation system, cracked curbing, and deteriorating concrete around storm water facilities. *See id.* at Paragraph 58.

On February 24, 2020, Plaintiff filed a Motion for Leave to file an Amended Complaint.  The proposed Amended Complaint alleges the same structural defects as the original Complaint, and then also adds allegations about undersized gutters and downspouts due to poor and inconsistent design and construction, deficient gutter endcaps and outlet tubes, and incorrectly designed gutter slopes.  *See* Exhibit B, proposed Amended Complaint without exhibits, at Paragraph 103.  Notably, the proposed Amended Complaint also alleges new defects pertaining to structural elements of the Units, including:  exterior façade stucco, stone veneer and cement fiber siding ("cladding"), weep screeds, weather resistant barriers beneath the cladding, and flashing for proper drainage of the moisture beneath Unit cladding, chimney caps, pans and enclosures with weep screed, missing and/or improper flashing for windows, cladding, and roofs, incorrectly installed deck ledger boards and flashing, entry stoops/porches, undersized gutters and downspouts.  *See id.* at Paragraph 25.

In addition, the proposed Amended Complaint alleges that the following common elements and controlled facilities in the Community are structurally defective:  poor drainage/wet yards between units, driveway depressions, edge cracking and raveling, insulation at rim joists; improper attic ventilation systems; roof sheathing that is not fire retardant, deficient roof truss connections, missing PVC trim board fasteners to prevent connection failures, clearance of Hardie Board in the Community; and missing and/or improper window flashing.  *See id.* at Paragraph 101.   The proposed Amended Complaint alleges liability based upon numerous legal theories including, but not limited to, negligence, negligent supervision and breach of express and implied warranties.  The proposed Amended Complaint alleges defects and also consequential damage from defects.  It also alleges that the defective work was done by subcontractors.  As a part of this tender, the Guidi Defendants allege that the allegedly defective work of its subcontractors and the alleged consequential damage was neither expected nor intended from the standpoint of you and/or the Guidi Defendants.

Finally, the proposed Amended Complaint alleges:  "Despite the exercise of reasonable diligence, the Association has not discovered the existence or cause of all structural defects as defined in the Act, and other deficiencies and nonconformities in the Community.  Investigations into these structural defects as defined in the Act, and other deficiencies and nonconformities in the Community are ongoing, and the Association

Copying Prohibited

March 31, 2020
Page 3

reserves the right to supplement this pleading upon discovery of further latent and patent structural defects as defined in the Act, and other deficiencies and nonconformities in the Community." *See* id. at Paragraph 62.

As you are aware, DH Custom Carpentry performed, *inter alia,* work pertaining to the decks at the Community at times relevant to the instant litigation.  Accordingly, the Guidi Defendants tender the defense and indemnification of this matter to DH Custom Carpentry.

In addition, we also request that you send us the applicable insurance policies and the contact names for those individuals handling these insurance policies on behalf of DH Custom Carpentry and the Guidi Defendants, so that we may restate the Guidi Defendants' tender of defense and indemnification to these individuals on an additional insured basis, as well.

We ask for your prompt attention to this matter and request DH Custom Carpentry respond by no later than April 10, 2020, as discussed above.

Very truly yours,

*/s/ Michael L. Detweiler*

Michael L. Detweiler

MLD

cc (Via Email):      Robert Hoffman, Esquire
James McEvilly, Esquire
Mark Parisi, Esquire
Daniel Utain, Esquire
Jay Branderbrit, Esquire
Jane Bonner

620 Freedom Business Center, Suite 300 · King of Prussia, PA 19406
(610) 354-8271 · Fax (610) 354-8299

Email: mldetweiler@mdwcg.com

April 3, 2020

**VIA U.S. MAIL**

Stucco Code, Inc.
918 Shadeland Avenue
Drexel Hill, PA 19026

      **Re:**   **Haverford Reserve Community Association v. Haverford Reserve, LP, et al.**
                **Delaware County CCP Docket No. 16-11177**
                **Our File No. 04128.00165**

Dear Sir or Madam:

      I write to advise you that Defendants, Guidi Homes at Haverford Reserve, LLC and Guidi Homes, Inc., (the "Guidi Defendants") are formally tendering their defense of the above-referenced case to Stucco Code, Inc. and/or its insurance carriers pursuant to the Master Agreement ("Master Agreement") between the Guidi Defendants and Stucco Code, Inc. ("Stucco Code") that was in effect at all times relevant to the instant litigation. Accordingly, we request that you notify all of Stucco Code's general liability insurance carrier(s) of the lawsuit that insured your company from the date of completion of your work on the first home in Haverford Reserve up to and including today. All such policies are potentially triggered by this case and this tender. The instant tender of defense and indemnification is based, in part, on the indemnification provisions of the Master Agreement and the Guidi Defendants' additional insured status and also the allegations of negligence and consequential damages to property other than your work that have been made by the plaintiff in the litigation. Please provide the names of your insurance companies for the relevant time period and if you have contact information for them, please forward that, as well.

      We are requesting written confirmation by April 20, 2020 that Stucco Code and/or its insurance carriers have accepted the Guidi Defendants' tender and will assume the complete

Stucco Code, Inc.
April 3, 2020

defense of this action, as well as indemnify the Guidi Defendants for all legal fees and costs incurred from the date of this tender letter as it relates to your company's work at Haverford Reserve.

The remainder of this letter provides the basis for the Guidi Defendants' tender and request for defense and indemnification.   Please note, however, that these bases are not exclusive, and the Guidi Defendants reserve the right to assert additional bases for the Guidi Defendants' tender and request for indemnification.

This civil action was initiated by Plaintiff Haverford Reserve Community Association in 2016.  This matter originally involved allegations of structural defects at a planned residential community known as Haverford Reserve (the "Community"), construction of which began in 2008.   On December 20, 2016 Plaintiff filed a Praecipe for Writ of Summons to start the case.  On January 10, 2017, Plaintiff filed the Complaint setting forth alleged facts, legal theories and damages.  *See* Exhibit A, attached hereto, Complaint without exhibits.  Plaintiff's original Complaint alleged the existence of various structural defects and consequential damage with regard to certain Common Elements and Controlled Facilities of the Community relating primarily to to roof and gutter Controlled Facilities of the Community, including but not limited to:

- Water intrusion due to poor and inconsistent design and construction;
- Improper design of roof elements;
- Creation of trap points for leaves on roofs due to poor and inconsistent design and construction;
- Ice damming on roofs due to poor and inconsistent design and construction;
- Improper gutter performance due to poor and inconsistent design and construction;
- Improper gutter and downspout sizes due to poor and inconsistent design and construction; and
- Failure to record the precise location of all underground leaders.

*See* Exhibit A at Paragraphs 56-57.   In addition, structural defects as to other exterior Common Elements of the Community were alleged, including inadequate construction of driveways, persistent leaks in the Community's irrigation system, cracked curbing, and deteriorating concrete around storm water facilities.  *See* id. at Paragraph 58.

On February 24, 2020, Plaintiff filed a Motion for Leave to file an Amended Complaint.  The proposed Amended Complaint alleges the same structural defects as and then also adds allegations about undersized gutters and downspouts due to poor and inconsistent design and construction, deficient gutter endcaps and outlet tubes, and incorrectly designed gutter slopes.  *See* Exhibit B, proposed Amended Complaint without exhibits, at Paragraph 103.   Notably, the proposed Amended Complaint also alleges new defects pertaining to structural elements of the  Units including:  exterior façade stucco, stone veneer and cement fiber siding ("cladding"), weep screeds, weather resistant barriers beneath

Stucco Code, Inc.
April 3, 2020

the cladding, and flashing for proper drainage of the moisture beneath Unit cladding, chimney caps, pans and enclosures with weep screed, missing and/or improper flashing for windows, cladding, and roofs, incorrectly installed deck ledger boards and flashing, entry stoops/porches, undersized gutters and downspouts. *See* id. at Paragraph 25.

In addition, the proposed Amended Complaint alleges the following common elements and controlled facilities in the Community are structurally defective:  poor drainage/wet yards between units, driveway depressions, edge cracking and raveling, insulation at rim joists; improper attic ventilation systems; roof sheathing that is not fire retardant, deficient roof truss connections, missing PVC trim board fasteners to prevent connection failures, clearance of Hardie Board in the Community; and missing and/or improper window flashing. *See* id. at Paragraph 101.  The proposed Amended Complaint alleges liability based numerous legal theories including, but not limited to, negligence, negligent supervision and breach of express and implied warranties.  The proposed Amended Complaint alleges defects and also consequential damage from defects.  It also alleges that the defective work was done by subcontractors.  As a part of this tender, the Guidi Defendants allege that the allegedly defective work of its subcontractors and the alleged consequential damage was neither expected nor intended from the standpoint of you and/or the Guidi Defendants.

Finally, the proposed Amended Complaint alleges:  "Despite the exercise of reasonable diligence, the Association has not discovered the existence or cause of all structural defects as defined in the Act, and other deficiencies and nonconformities in the Community.  Investigations into these structural defects as defined in the Act, and other deficiencies and nonconformities in the Community are ongoing, and the Association reserves the right to supplement this pleading upon discovery of further latent and patent structural defects as defined in the Act, and other deficiencies and nonconformities in the Community." *See* id. at Paragraph 62.

As you are aware, Stucco Code contracted to perform, *inter alia,* stucco and veneer stone work at the Community as well as installation of the exterior weather resistant barrier system, pursuant to the above-referenced Master Agreement.  *See* Master Agreement attached hereto as Exhibit C.  The Master Agreement states in pertinent part:

### Article 24. Indemnification

24.1 To the fullest extent permitted by law, Subcontractor agrees to indemnify, hold harmless and defend Guidi Homes, Inc. and General Contractor, Construction Manager, Prime Contractor, Owner, Architect, Engineer, Partner and Joint Venture and their agents, employees, representatives, officers, directors, stockholders, members, managers and parent, subsidiary and affiliated companies (the "Indemnified Parties") from and against any and all liability for loss, damage or expense for which the Indemnified Parties may be held liable by reason of injury (including death) to any person (including Subcontractor's employees) or damage to any property of whatsoever kind or nature arising out of or in any manner connected with the work to

Stucco Code, Inc.
April 3, 2020

be performed for the Indemnified Parties (including, but not limited to, work performed under this contract, work performed under Change Order, or any such other work performed for or on behalf of the Indemnified Parties, whether performed at the site or not or in any way connected with the use, misuse, erection, maintenance, operation or failure of any machinery or equipment whether or not such machinery or equipment was furnished, rented or loaned by any of the Indemnified Parties, even for and if caused in whole or in part by any act, omission, or negligence of the Indemnified Parties. It is expressly understood and agreed that the indemnity contained in this paragraph covers claims by Subcontractor's employees and that Subcontractor expressly waives any defense to this indemnification obligation which may arise under the Workers' Compensation Act of any State. In addition, Subcontractor shall defend the Indemnified Parties against any claim which may potentially give rise to indemnification of the Indemnified Parties, even if such claim alleges that the Indemnified Parties are wholly or partially at fault for causing the loss. If Indemnification for the Indemnified Patties' sole negligence is expressly prohibited by Law, such defense shall continue until it is conclusively established by a court of competent jurisdiction dial: 1) the Indemnified Parties arc solely liable for causing the bodily injury or property damage alleged; and 2) that neither Subcontractor nor its employees nor any Subcontractor to Subcontractor is liable; at which time the Indemnified Parties will absorb all costs of defense. It is further expressly agreed that Subcontractor assumes the fullest extent of all obligations to indemnify and defend all parties whom Guidi Homes, Inc. is obligated to indemnify and defend in Guidi Homes, Inc.'s contract with General Contractor, Construction Manager, Prime Contractor, Owner, Architect, Engineer, Partner and Joint Venture (whether or not such obligations may extend to items beyond those addressed in this Agreement). If there are any damages or claims of any kind or nature unsettled when the subcontract work is finished, the final payment by Guidi Homes, Inc. shall be deferred until all such claims shall have been adjusted or suitable coverage or indemnity acceptable to Guidi Homes, Inc. is provided by Subcontractor or Subcontractor's insurance carrier.

*See* Master Agreement at Paragraph 24.1, attached hereto.

The above-referenced indemnification provisions are triggered by the allegations in this case. Pursuant to the foregoing, the Guidi Defendants tender the defense and indemnification of pertinent parts of this matter to Stucco Code.

In addition, the Master Agreement provides that: "Subcontractor shall provide and maintain at all times during the performance of this Subcontract Workmen's Compensation and Employers Liability insurance for protection of Subcontractor's employees, as required by law; and insurance covering Public Liability, Property Damage and Subcontractor's Contractual Liability hereunder (including but not limited to all work performance and operation of automobiles, trucks and other vehicles, the values of which are itemized in Exhibit "C"). *See* Master Agreement at 36.1.1.

Stucco Code, Inc.
April 3, 2020

The Master Agreement further states: "Subcontractors' liability policy shall be the primary policy and must list as additional insured both Contractor and the Owner of the Project as well as any additional entities listed in the relevant Work Order using the following language: **Guidi Homes, Inc. and {Name of Owner if other) are additional insured on the captioned General Liability, Umbrella liability and Automobile Liability Policies on a Primary and Noncontributory basis. A waiver of Subrogation is provided on these policies in favor of Guidi Homes, Inc. and Haverford Reserve LP, including workers compensation where permitted by State Law."** *See* Master Agreement at Paragraph 36.1.4.

Accordingly, reference is made to the Certificate of Liability Insurance attached hereto as Exhibit D. Please forward the Guidi Defendants tender, based on additional insured status, to Harford Mutual Insurance Companies, Agency Resources National Liberty and Fire, or to any other carrier(s) implicated by the attached Certificate.  To the extent the tender to Stucco Code's carriers is in any way denied or not accepted, we also request that you send us the applicable insurance policies and the contact names for those individuals handling these insurance policies on behalf of Stucco Code  and the Guidi Defendants, so that we may restate the Guidi Defendants' tender of defense and indemnification to these individuals on an additional insured basis, as well.

We ask for your prompt attention to this matter and request Stucco Code respond by no later than April 20, 2020, as discussed above.

Very truly yours,

*/s/ Michael L. Detweiler*

Michael L. Detweiler

MLD

cc:     <u>**Via Email**</u>
Mark Parisi, Esquire
Daniel Utain, Esquire
Jay Branderbrit, Esquire
Andrew Reilly, Esquire
Jane Bonner

<u>**Via Mail**</u>
Levy Insurance Agency
Attn.:  Lisa Dougherty
500 Abbott Drive
Suite D2
Broomall, PA 19008

Stucco Code, Inc.
April 3, 2020

Harford Mutual Insurance Companies
200 N. Main Street
Bel Air, MD 21014



# MARSHALL DENNEHEY
## WARNER COLEMAN & GOGGIN

ATTORNEYS-AT-LAW    WWW.MARSHALLDENNEHEY.COM

A  PROFESSIONAL  CORPORATION

620 Freedom Business Center, Suite 300, King of Prussia, PA 19406
(610) 354-8250  Fax (610) 354-8299

Direct Dial:  (610) 354-8271
Email:  mldetweiler@mdwcg.com

| | |
|---|---|
| PENNSYLVANIA | OHIO |
| Allentown | Cincinnati |
| Doylestown | Cleveland |
| Erie | |
| Harrisburg | FLORIDA |
| King of Prussia | Ft. Lauderdale |
| Philadelphia | Jacksonville |
| Pittsburgh | Orlando |
| Scranton | Tampa |
| NEW JERSEY | NEW YORK |
| Mount Laurel | Long Island |
| Roseland | New York City |
| | Westchester |
| DELAWARE | |
| Wilmington | |

March 31, 2020

**VIA U.S. MAIL**

Dream Maker Construction Services, LLC
5284 Clymer Road
Quakertown, PA 18951

     **Re:**    **Haverford Reserve Community Association v. Haverford Reserve, LP, et al.**
            **Delaware County CCP Docket No. 16-11177**
            **Our File No. 04128.00165**

Dear Sir or Madam:

     I write to advise you that Defendants, Guidi Homes at Haverford Reserve, LLC and Guidi Homes, Inc., (the "Guidi Defendants") are formally tendering their defense and indemnification of the above-referenced matter to Dream Maker Construction Services, LLC and/or its insurance carriers in the above-referenced matter. Accordingly, we request that you notify all of Dream Maker Construction Services, LLC's general liability insurance carrier(s) of the lawsuit that insured your company from the date of completion of your work on the first home in Haverford Reserve up to and including today.  All such policies are potentially triggered by this case and this tender.  Please provide written confirmation by April 10, 2020 that Dream Maker Construction Services, LLC ("Dream Maker") and/or its insurance carriers have accepted the Guidi Defendants' tender and will assume the complete defense of this action, as well as indemnify the Guidi Defendants for all legal fees and costs incurred from the date of this tender letter as it relates to your company's work at Haverford Reserve.

     The remainder of this letter provides the basis for the Guidi Defendants' tender and request for defense and indemnification.  Please note, however, that these bases are not exclusive, and the Guidi Defendants reserve the right to assert additional bases for the Guidi Defendants' tender and request for indemnification.

     This civil action was initiated by Plaintiff Haverford Reserve Community Association in 2016.  This matter originally involved allegations of structural defects at a planned residential community known as Haverford Reserve (the "Community"), construction of which began in 2008.  On December 20, 2016 Plaintiff filed a Praecipe for Writ of Summons to start the case.  On January 10, 2017, Plaintiff filed the Complaint setting forth alleged facts, legal theories and damages.  *See* Exhibit A, attached hereto, Complaint without exhibits.  Plaintiff's original Complaint alleged the existence of various structural defects and consequential

March 31, 2020
Page 2

damage with regard to certain Common Elements and Controlled Facilities of the Community relating primarily to roof and gutter Controlled Facilities of the Community, including but not limited to:

- Water intrusion due to poor and inconsistent design and construction;

- Improper design of roof elements;

- Creation of trap points for leaves on roofs due to poor and inconsistent design and construction;

- Ice damming on roofs due to poor and inconsistent design and construction;

- Improper gutter performance due to poor and inconsistent design and construction;

- Improper gutter and downspout sizes due to poor and inconsistent design and construction; and

- Failure to record the precise location of all underground leaders.

*See* Exhibit A at Paragraphs 56-57.   In addition, structural defects as to other exterior Common Elements of the Community were alleged, including inadequate construction of driveways, persistent leaks in the Community's irrigation system, cracked curbing, and deteriorating concrete around storm water facilities. *See id.* at Paragraph 58.

On February 24, 2020, Plaintiff filed a Motion for Leave to file an Amended Complaint.  The proposed Amended Complaint alleges the same structural defects as the original Complaint, and then also adds allegations about undersized gutters and downspouts due to poor and inconsistent design and construction, deficient gutter endcaps and outlet tubes, and incorrectly designed gutter slopes.  *See* Exhibit B, proposed Amended Complaint without exhibits, at Paragraph 103.   Notably, the proposed Amended Complaint also alleges new defects pertaining to structural elements of the Units, including:  exterior façade stucco, stone veneer and cement fiber siding ("cladding"), weep screeds, weather resistant barriers beneath the cladding, and flashing for proper drainage of the moisture beneath Unit cladding, chimney caps, pans and enclosures with weep screed, missing and/or improper flashing for windows, cladding, and roofs, incorrectly installed deck ledger boards and flashing, entry stoops/porches, undersized gutters and downspouts. *See id.* at Paragraph 25.

In addition, the proposed Amended Complaint alleges that the following common elements and controlled facilities in the Community are structurally defective:  poor drainage/wet yards between units, driveway depressions, edge cracking and raveling, insulation at rim joists; improper attic ventilation systems; roof sheathing that is not fire retardant, deficient roof truss connections, missing PVC trim board fasteners to prevent connection failures, clearance of Hardie Board in the Community; and missing and/or improper window flashing. *See id.* at Paragraph 101.   The proposed Amended Complaint alleges liability based upon numerous legal theories including, but not limited to, negligence, negligent supervision and breach of express and implied warranties.  The proposed Amended Complaint alleges defects and also consequential damage from defects.  It also alleges that the defective work was done by subcontractors.  As a part of this tender, the Guidi Defendants allege that the allegedly defective work of its subcontractors and the alleged consequential damage was neither expected nor intended from the standpoint of you and/or the Guidi Defendants.

March 31, 2020
Page 3
_____

Finally, the proposed Amended Complaint alleges:  "Despite the exercise of reasonable diligence, the Association has not discovered the existence or cause of all structural defects as defined in the Act, and other deficiencies and nonconformities in the Community.  Investigations into these structural defects as defined in the Act, and other deficiencies and nonconformities in the Community are ongoing, and the Association reserves the right to supplement this pleading upon discovery of further latent and patent structural defects as defined in the Act, and other deficiencies and nonconformities in the Community."  *See* id. at Paragraph 62.

As you are aware, Dream Maker performed, *inter alia,* work pertaining to the decks at the Community at times relevant to the instant litigation.  Accordingly, the Guidi Defendants tender the defense and indemnification of this matter to Dream Maker.

In addition, we also request that you send us the applicable insurance policies and the contact names for those individuals handling these insurance policies on behalf of Dream Maker and the Guidi Defendants, so that we may restate the Guidi Defendants' tender of defense and indemnification to these individuals on an additional insured basis, as well.

We ask for your prompt attention to this matter and request Dream Maker respond by no later than April 10, 2020, as discussed above.

Very truly yours,

*/s/ Michael L. Detweiler*

Michael L. Detweiler

MLD

cc (Via Email):        Robert Hoffman, Esquire
                       James McEvilly, Esquire
                       Mark Parisi, Esquire
                       Daniel Utain, Esquire
                       Jay Branderbrit, Esquire
                       Jane Bonner

Copying Prohibited

# MARSHALL DENNEHEY
## WARNER COLEMAN & GOGGIN

ATTORNEYS AT LAW     WWW.MARSHALLDENNEHEY.COM

A PROFESSIONAL CORPORATION

620 Freedom Business Center, Suite 300, King of Prussia, PA 19406
(610) 354-8250  Fax (610) 354-8299

Direct Dial:  (610) 354-8271
Email:  mldetweiler@mdwcg.com

| | |
|---|---|
| **PENNSYLVANIA** | **OHIO** |
| Allentown | Cincinnati |
| Doylestown | Cleveland |
| Erie | |
| Harrisburg | **FLORIDA** |
| King of Prussia | Ft. Lauderdale |
| Philadelphia | Jacksonville |
| Pittsburgh | Orlando |
| Scranton | Tampa |
| **NEW JERSEY** | **NEW YORK** |
| Mount Laurel | Long Island |
| Roseland | New York City |
| | Westchester |
| **DELAWARE** | |
| Wilmington | |

March 31, 2020

**VIA U.S. MAIL**

Dreifuss Fireplaces
6610 Hasbrook Avenue
Philadelphia, PA 19111

> Re: **Haverford Reserve Community Association v. Haverford Reserve, LP, et al.**
> **Delaware County CCP Docket No. 16-11177**
> **Our File No. 04128.00165**

I write to advise you that Defendants, Guidi Homes at Haverford Reserve, LLC and Guidi Homes, Inc., (the "Guidi Defendants") are formally tendering their defense and indemnification of the above-referenced matter to Dreifuss Prebilt a/k/a Dreifuss Fireplaces ("Dreifuss") and/or its insurance carriers in the above-referenced matter. Accordingly, we request that you notify all of Dreifuss's general liability insurance carrier(s) of the lawsuit that insured your company from the date of completion of your work on the first home in Haverford Reserve up to and including today. All such policies are potentially triggered by this case and this tender. Please provide written confirmation by April 10, 2020 that Dreifuss and/or its insurance carriers have accepted the Guidi Defendants' tender and will assume the complete defense of this action, as well as indemnify the Guidi Defendants for all legal fees and costs incurred from the date of this tender letter as it relates to your company's work at Haverford Reserve.

The remainder of this letter provides the basis for the Guidi Defendants' tender and request for defense and indemnification. Please note, however, that these bases are not exclusive, and the Guidi Defendants reserve the right to assert additional bases for the Guidi Defendants' tender and request for indemnification.

This civil action was initiated by Plaintiff Haverford Reserve Community Association in 2016. This matter originally involved allegations of structural defects at a planned residential community known as Haverford Reserve (the "Community"), construction of which began in 2008. On December 20, 2016 Plaintiff filed a Praecipe for Writ of Summons to start the case. On January 10, 2017, Plaintiff filed the Complaint setting forth alleged facts, legal theories and damages. *See* Exhibit A, attached hereto, Complaint without exhibits. Plaintiff's original Complaint alleged the existence of various structural defects and consequential damage with regard to certain Common Elements and Controlled Facilities of the Community relating primarily to roof and gutter Controlled Facilities of the Community, including but not limited to:

March 31, 2020
Page 2

- Water intrusion due to poor and inconsistent design and construction;

- Improper design of roof elements;

- Creation of trap points for leaves on roofs due to poor and inconsistent design and construction;

- Ice damming on roofs due to poor and inconsistent design and construction;

- Improper gutter performance due to poor and inconsistent design and construction;

- Improper gutter and downspout sizes due to poor and inconsistent design and construction; and

- Failure to record the precise location of all underground leaders.

*See* Exhibit A at Paragraphs 56-57.   In addition, structural defects as to other exterior Common Elements of the Community were alleged, including inadequate construction of driveways, persistent leaks in the Community's irrigation system, cracked curbing, and deteriorating concrete around storm water facilities. *See id.* at Paragraph 58.

On February 24, 2020, Plaintiff filed a Motion for Leave to file an Amended Complaint.  The proposed Amended Complaint alleges the same structural defects as the original Complaint, and then also adds allegations about undersized gutters and downspouts due to poor and inconsistent design and construction, deficient gutter endcaps and outlet tubes, and incorrectly designed gutter slopes. *See* Exhibit B, proposed Amended Complaint without exhibits, at Paragraph 103.  Notably, the proposed Amended Complaint also alleges new defects pertaining to structural elements of the Units, including:  exterior façade stucco, stone veneer and cement fiber siding ("cladding"), weep screeds, weather resistant barriers beneath the cladding, and flashing for proper drainage of the moisture beneath Unit cladding, chimney caps, pans and enclosures with weep screed, missing and/or improper flashing for windows, cladding, and roofs, incorrectly installed deck ledger boards and flashing, entry stoops/porches, undersized gutters and downspouts. *See id.* at Paragraph 25.

In addition, the proposed Amended Complaint alleges that the following common elements and controlled facilities in the Community are structurally defective:  poor drainage/wet yards between units, driveway depressions, edge cracking and raveling, insulation at rim joists; improper attic ventilation systems; roof sheathing that is not fire retardant, deficient roof truss connections, missing PVC trim board fasteners to prevent connection failures, clearance of Hardie Board in the Community; and missing and/or improper window flashing. *See id.* at Paragraph 101.  The proposed Amended Complaint alleges liability based upon numerous legal theories including, but not limited to, negligence, negligent supervision and breach of express and implied warranties.  The proposed Amended Complaint alleges defects and also consequential damage from defects.  It also alleges that the defective work was done by subcontractors.  As a part of this tender, the Guidi Defendants allege that the allegedly defective work of its subcontractors and the alleged consequential damage was neither expected nor intended from the standpoint of you and/or the Guidi Defendants.

March 31, 2020
Page 3

Finally, the proposed Amended Complaint alleges: "Despite the exercise of reasonable diligence, the Association has not discovered the existence or cause of all structural defects as defined in the Act, and other deficiencies and nonconformities in the Community. Investigations into these structural defects as defined in the Act, and other deficiencies and nonconformities in the Community are ongoing, and the Association reserves the right to supplement this pleading upon discovery of further latent and patent structural defects as defined in the Act, and other deficiencies and nonconformities in the Community." *See* id. at Paragraph 62.

As you are aware, Dreifuss performed, *inter alia,* work pertaining to the chimneys at the Community at times relevant to the instant litigation. Accordingly, the Guidi Defendants tender the defense and indemnification of this matter to Dreifuss.

In addition, we also request that you send us the applicable insurance policies and the contact names for those individuals handling these insurance policies on behalf of Dreifuss and the Guidi Defendants, so that we may restate the Guidi Defendants' tender of defense and indemnification to these individuals on an additional insured basis, as well.

We ask for your prompt attention to this matter and request Dreifuss respond by no later than April 10, 2020, as discussed above.

Very truly yours,

*/s/ Michael L. Detweiler*

Michael L. Detweiler

MLD
cc (Via Email):    Robert Hoffman, Esquire
                James McEvilly, Esquire
                Mark Parisi, Esquire
                Daniel Utain, Esquire
                Jay Branderbrit, Esquire
                Jane Bonner

Copying Prohibited

# MARSHALL DENNEHEY
## WARNER COLEMAN & GOGGIN

**ATTORNEYS-AT-LAW   WWW.MARSHALLDENNEHEY.COM**

A PROFESSIONAL CORPORATION

620 Freedom Business Center, Suite 300, King of Prussia, PA 19406
(610) 354-8250  Fax (610) 354-8299

Direct Dial:  (610) 354-8271
Email:  mldetweiler@mdwcg.com

| | |
|---|---|
| **PENNSYLVANIA** | **OHIO** |
| Allentown | Cincinnati |
| Doylestown | Cleveland |
| Erie | |
| Harrisburg | **FLORIDA** |
| King of Prussia | Ft. Lauderdale |
| Philadelphia | Jacksonville |
| Pittsburgh | Orlando |
| Scranton | Tampa |
| **NEW JERSEY** | **NEW YORK** |
| Mount Laurel | Long Island |
| Roseland | New York City |
| | Westchester |
| **DELAWARE** | |
| Wilmington | |

March 27, 2020

**VIA U.S. MAIL AND CERTIFIED MAIL,**
**RETURN RECEIPT REQUESTED 7019 2280 0000 6297 6386**

Advanced Plastering, Inc.
attn.:  Barry Campbell
3108 Greenhill Lane
Norristown, PA 19403

> **Re:   Haverford Reserve Community Association v. Haverford Reserve, LP, et al.**
> **Delaware County CCP Docket No. 16-11177**
> **Our File No. 04128.00165**

Dear Mr. Campbell:

I write to advise you that Defendants, Guidi Homes at Haverford Reserve, LLC and Guidi Homes, Inc., (the "Guidi Defendants") are formally tendering their defense of the above-referenced case to Advanced Plastering and/or its insurance carriers pursuant to the December 9, 2009 Master Agreement ("Master Agreement") between the Guidi Defendants and Advanced Plastering that was in effect at all times relevant to the instant litigation.  Accordingly, we request that you notify all of Advanced Plastering's general liability insurance carrier(s) of the lawsuit that insured your company from the date of completion of your work on the first home in Haverford Reserve up to and including today.  All such policies are potentially triggered by this case and this tender.  The instant tender of defense and indemnification is based, in part, on the indemnification provisions of the Master Agreement and the Guidi Defendants' additional insured status and also the allegations of negligence and consequential damages to property other than your work that have been made by the plaintiff in the litigation.  Please provide the names of your insurance companies for the relevant time period and if you have contact information for them, please forward that, as well.

We are requesting written confirmation by April 10, 2020 that Advanced Plastering and/or its insurance carriers have accepted the Guidi Defendants' tender and will assume the complete defense of this action, as well as indemnify the Guidi Defendants for all legal fees and costs incurred from the date of this tender letter as it relates to your company's work at Haverford Reserve.

Copying Prohibited

March 27, 2020
Page 2

The remainder of this letter provides the basis for the Guidi Defendants' tender and request for defense and indemnification. Please note, however, that these bases are not exclusive, and the Guidi Defendants reserve the right to assert additional bases for the Guidi Defendants' tender and request for indemnification.

This civil action was initiated by Plaintiff Haverford Reserve Community Association in 2016. This matter originally involved allegations of structural defects at a planned residential community known as Haverford Reserve (the "Community"), construction of which began in 2008. On December 20, 2016 Plaintiff filed a Praecipe for Writ of Summons to start the case. On January 10, 2017, Plaintiff filed the Complaint setting forth alleged facts, legal theories and damages. *See* Exhibit A, attached hereto, Complaint without exhibits. Plaintiff's original Complaint alleged the existence of various structural defects and consequential damage with regard to certain Common Elements and Controlled Facilities of the Community relating primarily to to roof and gutter Controlled Facilities of the Community, including but not limited to:

- Water intrusion due to poor and inconsistent design and construction;
- Improper design of roof elements;
- Creation of trap points for leaves on roofs due to poor and inconsistent design and construction;
- Ice damming on roofs due to poor and inconsistent design and construction;
- Improper gutter performance due to poor and inconsistent design and construction;
- Improper gutter and downspout sizes due to poor and inconsistent design and construction; and
- Failure to record the precise location of all underground leaders.

*See* Exhibit A at Paragraphs 56-57. In addition, structural defects as to other exterior Common Elements of the Community were alleged, including inadequate construction of driveways, persistent leaks in the Community's irrigation system, cracked curbing, and deteriorating concrete around storm water facilities. *See id.* at Paragraph 58.

On February 24, 2020, Plaintiff filed a Motion for Leave to file an Amended Complaint. The proposed Amended Complaint alleges the same structural defects as and then also adds allegations about undersized gutters and downspouts due to poor and inconsistent design and construction, deficient gutter endcaps and outlet tubes, and incorrectly designed gutter slopes. *See* Exhibit B, proposed Amended Complaint without exhibits, at Paragraph 103. Notably, the proposed Amended Complaint also alleges new defects pertaining to structural elements of the Units including: exterior façade stucco, stone veneer and cement fiber siding ("cladding"), weep screeds, weather resistant barriers beneath the cladding, and flashing for proper drainage of the moisture beneath Unit cladding, chimney caps, pans and enclosures with weep screed, missing and/or improper flashing for windows, cladding, and roofs, incorrectly installed deck ledger boards and flashing, entry stoops/porches, undersized gutters and downspouts. *See id.* at Paragraph 25.

In addition, the proposed Amended Complaint alleges the following common elements and controlled facilities in the Community are structurally defective: poor drainage/wet yards between units, driveway depressions, edge cracking and raveling, insulation at rim joists; improper attic ventilation systems; roof sheathing that is not fire retardant, deficient roof truss connections, missing PVC trim board fasteners to prevent connection failures, clearance of Hardie Board in the Community; and missing and/or improper window flashing. *See id.* at Paragraph 101. The proposed Amended Complaint alleges liability based numerous legal theories including, but not limited to, negligence, negligent supervision and breach of express and implied

March 27, 2020
Page 3

warranties.  The proposed Amended Complaint alleges defects and also consequential damage from defects.  It also alleges that the defective work was done by subcontractors.  As a part of this tender, the Guidi Defendants allege that the allegedly defective work of its subcontractors and the alleged consequential damage was neither expected nor intended from the standpoint of you and/or the Guidi Defendants.

Finally, the proposed Amended Complaint alleges: "Despite the exercise of reasonable diligence, the Association has not discovered the existence or cause of all structural defects as defined in the Act, and other deficiencies and nonconformities in the Community.  Investigations into these structural defects as defined in the Act, and other deficiencies and nonconformities in the Community are ongoing, and the Association reserves the right to supplement this pleading upon discovery of further latent and patent structural defects as defined in the Act, and other deficiencies and nonconformities in the Community."  *See* id. at Paragraph 62.

As you are aware, Advanced Plastering contracted to perform, *inter alia,* stucco and veneer stone work at the Community as well as installation of the exterior weather resistant barrier system, pursuant to the above-referenced Master Agreement.  *See* Master Agreement attached hereto as Exhibit C.  The Master Agreement states in pertinent part:

### Article 24. Indemnification

24.1 To the fullest extent permitted by law, Subcontractor agrees to indemnify, hold harmless and defend Guidi Homes, Inc. and General Contractor, Construction Manager, Prime Contractor, Owner, Architect, Engineer, Partner and Joint Venture and their agents, employees, representatives, officers, directors, stockholders, members, managers and parent, subsidiary and affiliated companies (the "Indemnified Parties") from and against any and all liability for loss, damage or expense for which the Indemnified Parties may be held liable by reason of injury (including death) to any person (including Subcontractor's employees) or damage to any property of whatsoever kind or nature arising out of or in any manner connected with the work to be performed for the Indemnified Parties (including, but not limited to, work performed under this contract, work performed under Change Order, or any such other work performed for or on behalf of the Indemnified Parties, whether performed at the site or not or in any way connected with the use, misuse, erection, maintenance, operation or failure of any machinery or equipment whether or not such machinery or equipment was furnished, rented or loaned by any of the Indemnified Parties, even for and if caused in whole or in part by any act, omission, or negligence of the Indemnified Parties. It is expressly understood and agreed that the indemnity contained in this paragraph covers claims by Subcontractor's employees and that Subcontractor expressly waives any defense to this indemnification obligation which may arise under the Workers' Compensation Act of any State. In addition, Subcontractor shall defend the Indemnified Parties against any claim which may potentially give rise to indemnification of the Indemnified Parties, even if such claim alleges that the Indemnified Parties are wholly or partially at fault for causing the loss. If Indemnification for the Indemnified Patties' sole negligence is expressly prohibited by Law, such defense shall continue until it is conclusively established by a court of competent jurisdiction dial: 1) the Indemnified Parties arc solely liable for causing the bodily injury or property damage alleged; and 2) that neither Subcontractor nor its employees nor any Subcontractor to Subcontractor is liable; at which time the Indemnified Parties will absorb all costs

March 27, 2020
Page 4

of defense. It is further expressly agreed that Subcontractor assumes the fullest extent of all obligations to indemnify and defend all parties whom Guidi Homes, Inc. is obligated to indemnify and defend in Guidi Homes, Inc.'s contract with General Contractor, Construction Manager, Prime Contractor, Owner, Architect, Engineer, Partner and Joint Venture (whether or not such obligations may extend to items beyond those addressed in this Agreement).

If there are any damages or claims of any kind or nature unsettled when the subcontract work is finished, the final payment by Guidi Homes, Inc. shall be deferred until all such claims shall have been adjusted or suitable coverage or indemnity acceptable to Guidi Homes, Inc. is provided by Subcontractor or Subcontractor's insurance carrier.

*See* Master Agreement at Paragraph 24.1, attached hereto.

The above-referenced indemnification provisions are triggered by the allegations in this case. Pursuant to the foregoing, the Guidi Defendants tender the defense and indemnification of pertinent parts of this matter to Advanced Plastering.

In addition, the Master Agreement provides that: "Subcontractor shall provide and maintain at all times during the performance of this Subcontract Workmen's Compensation and Employers Liability insurance for protection of Subcontractor's employees, as required by law; and insurance covering Public Liability, Property Damage and Subcontractor's Contractual Liability hereunder (including but not limited to all work performance and operation of automobiles, trucks and other vehicles, the values of which are itemized in Exhibit "C"). *See* Master Agreement at 36.1.1.

The Master Agreement further states: "Subcontractors' liability policy shall be the primary policy and must list as additional insured both Contractor and the Owner of the Project as well as any additional entities listed in the relevant Work Order using the following language: **Guidi Homes, Inc. and {Name of Owner if other) are additional insured on the captioned General Liability, Umbrella liability and Automobile Liability Policies on a Primary and Noncontributory basis. A waiver of Subrogation is provided on these policies in favor of Guidi Homes, Inc. and Haverford Reserve LP, including workers compensation where permitted by State Law."** *See* Master Agreement at Paragraph 36.1.4.

Accordingly, we also request that you send us the applicable insurance policies and the contact names for those individuals handling these insurance policies on behalf of Advanced Plastering and the Guidi Defendants, so that we may restate the Guidi Defendants' tender of defense and indemnification to your insurance companies on an additional insured basis, as well.

We ask for your prompt attention to this matter and request Advanced Plastering respond by no later than April 10, 2020, as discussed above.

Very truly yours,

*/s/ Michael L. Detweiler*
Michael L. Detweiler

MLD

March 27, 2020
Page 5

cc:    Mark Parisi, Esquire (Via Email)
          Daniel Utain, Esquire (Via Email)
          Jay Branderbrit, Esquire (Via Email)
          Andrew Reilly, Esquire (Via Email)

Copying Prohibited

# MARSHALL DENNEHEY
## WARNER COLEMAN & GOGGIN

ATTORNEYS-AT-LAW     WWW.MARSHALLDENNEHEY.COM

A PROFESSIONAL CORPORATION

620 Freedom Business Center, Suite 300, King of Prussia, PA 19406
(610) 354-8250  Fax (610) 354-8299

Direct Dial:  (610) 354-8271
Email:  mldetweiler@mdwcg.com

| | |
|---|---|
| **PENNSYLVANIA** | **OHIO** |
| Allentown | Cincinnati |
| Doylestown | Cleveland |
| Erie | |
| Harrisburg | **FLORIDA** |
| King of Prussia | Ft. Lauderdale |
| Philadelphia | Jacksonville |
| Pittsburgh | Orlando |
| Scranton | Tampa |
| **NEW JERSEY** | **NEW YORK** |
| Mount Laurel | Long Island |
| Roseland | New York City |
| | Westchester |
| **DELAWARE** | |
| Wilmington | |

March 31, 2020

**VIA U.S. MAIL**     Certified Mail 7018 2290 0001 1499 2522

JL Horgan Services, LLC
1213 Patty's Circle
Lansdale, PA 19446

>   Re:     **Haverford Reserve Community Association v. Haverford Reserve, LP, et al.**
>            **Delaware County CCP Docket No. 16-11177**
>            **Our File No. 04128.00165**

Dear Sir or Madam:

        I write to advise you that Defendants, Guidi Homes at Haverford Reserve, LLC and Guidi Homes, Inc., (the "Guidi Defendants") are formally tendering their defense and indemnification of the above-referenced matter to JL Horgan Services, LLC and/or its insurance carriers in the above-referenced matter.  Accordingly, we request that you notify all of JL Horgan Services, LLC's general liability insurance carrier(s) of the lawsuit that insured your company from the date of completion of your work on the first home in Haverford Reserve up to and including today.  All such policies are potentially triggered by this case and this tender.  Please provide written confirmation by April 10, 2020 that JL Horgan Services, LLC ("JL Horgan") and/or its insurance carriers have accepted the Guidi Defendants' tender and will assume the complete defense of this action, as well as indemnify the Guidi Defendants for all legal fees and costs incurred from the date of this tender letter as it relates to your company's work at Haverford Reserve.

        The remainder of this letter provides the basis for the Guidi Defendants' tender and request for defense and indemnification.  Please note, however, that these bases are not exclusive, and the Guidi Defendants reserve the right to assert additional bases for the Guidi Defendants' tender and request for indemnification.

        This civil action was initiated by Plaintiff Haverford Reserve Community Association in 2016.  This matter originally involved allegations of structural defects at a planned residential community known as Haverford Reserve (the "Community"), construction of which began in 2008.  On December 20, 2016 Plaintiff filed a Praecipe for Writ of Summons to start the case.  On January 10, 2017, Plaintiff filed the Complaint setting forth alleged facts, legal theories and damages.  *See* Exhibit A, attached hereto, Complaint without exhibits.  Plaintiff's original Complaint alleged the existence of various structural defects and consequential

March 31, 2020
Page 2

damage with regard to certain Common Elements and Controlled Facilities of the Community relating primarily to roof and gutter Controlled Facilities of the Community, including but not limited to:

- Water intrusion due to poor and inconsistent design and construction;
- Improper design of roof elements;
- Creation of trap points for leaves on roofs due to poor and inconsistent design and construction;
- Ice damming on roofs due to poor and inconsistent design and construction;
- Improper gutter performance due to poor and inconsistent design and construction;
- Improper gutter and downspout sizes due to poor and inconsistent design and construction; and
- Failure to record the precise location of all underground leaders.

*See* Exhibit A at Paragraphs 56-57.   In addition, structural defects as to other exterior Common Elements of the Community were alleged, including inadequate construction of driveways, persistent leaks in the Community's irrigation system, cracked curbing, and deteriorating concrete around storm water facilities. *See* id. at Paragraph 58.

On February 24, 2020, Plaintiff filed a Motion for Leave to file an Amended Complaint.  The proposed Amended Complaint alleges the same structural defects as the original Complaint, and then also adds allegations about undersized gutters and downspouts due to poor and inconsistent design and construction, deficient gutter endcaps and outlet tubes, and incorrectly designed gutter slopes. *See* Exhibit B, proposed Amended Complaint without exhibits, at Paragraph 103.  Notably, the proposed Amended Complaint also alleges new defects pertaining to structural elements of the Units, including:  exterior façade stucco, stone veneer and cement fiber siding ("cladding"), weep screeds, weather resistant barriers beneath the cladding, and flashing for proper drainage of the moisture beneath Unit cladding, chimney caps, pans and enclosures with weep screed, missing and/or improper flashing for windows, cladding, and roofs, incorrectly installed deck ledger boards and flashing, entry stoops/porches, undersized gutters and downspouts. *See* id. at Paragraph 25.

In addition, the proposed Amended Complaint alleges that the following common elements and controlled facilities in the Community are structurally defective:  poor drainage/wet yards between units, driveway depressions, edge cracking and raveling, insulation at rim joists; improper attic ventilation systems; roof sheathing that is not fire retardant, deficient roof truss connections, missing PVC trim board fasteners to prevent connection failures, clearance of Hardie Board in the Community; and missing and/or improper window flashing. *See* id. at Paragraph 101.   The proposed Amended Complaint alleges liability based upon numerous legal theories including, but not limited to, negligence, negligent supervision and breach of express and implied warranties.  The proposed Amended Complaint alleges defects and also consequential damage from defects.  It also alleges that the defective work was done by subcontractors.  As a part of this tender, the Guidi Defendants allege that the allegedly defective work of its subcontractors and the alleged consequential damage was neither expected nor intended from the standpoint of you and/or the Guidi Defendants.

Finally, the proposed Amended Complaint alleges:  "Despite the exercise of reasonable diligence, the Association has not discovered the existence or cause of all structural defects as defined in the Act, and other deficiencies and nonconformities in the Community.  Investigations into these structural defects as defined in the Act, and other deficiencies and nonconformities in the Community are ongoing, and the Association

March 31, 2020
Page 3

reserves the right to supplement this pleading upon discovery of further latent and patent structural defects as defined in the Act, and other deficiencies and nonconformities in the Community." *See* id. at Paragraph 62.

As you are aware, JL Horgan performed, *inter alia,* work pertaining to concrete steps at the Community at times relevant to the instant litigation.  Accordingly, the Guidi Defendants tender the defense and indemnification of this matter to JL Horgan.

In addition, we also request that you send us the applicable insurance policies and the contact names for those individuals handling these insurance policies on behalf of JL Horgan and the Guidi Defendants, so that we may restate the Guidi Defendants' tender of defense and indemnification to these individuals on an additional insured basis, as well.

We ask for your prompt attention to this matter and request JL Horgan respond by no later than April 10, 2020, as discussed above.

Very truly yours,

*/s/ Michael L. Detweiler*

Michael L. Detweiler

MLD

cc (Via Email):    Robert Hoffman, Esquire
James McEvilly, Esquire
Mark Parisi, Esquire
Daniel Utain, Esquire
Jay Branderbrit, Esquire
Jane Bonner

# MARSHALL DENNEHEY
## WARNER COLEMAN & GOGGIN

ATTORNEYS-AT-LAW   WWW.MARSHALLDENNEHEY.COM

A PROFESSIONAL CORPORATION
620 Freedom Business Center, Suite 300, King of Prussia, PA 19406
(610) 354-8250  Fax (610) 354-8299

Direct Dial: (610) 354-8271
Email: mldetweiler@mdwcg.com

| | |
|---|---|
| **PENNSYLVANIA** | **OHIO** |
| Allentown | Cincinnati |
| Doylestown | Cleveland |
| Erie | |
| Harrisburg | **FLORIDA** |
| King of Prussia | Ft. Lauderdale |
| Philadelphia | Jacksonville |
| Pittsburgh | Orlando |
| Scranton | Tampa |
| **NEW JERSEY** | **NEW YORK** |
| Mount Laurel | Long Island |
| Roseland | New York City |
| | Westchester |
| **DELAWARE** | |
| Wilmington | |

April 3, 2020

**VIA U.S. MAIL**

Guerrero Brothers, Inc.
3 Pinetown Road
Audubon, PA 19047

      **Re:**   **Haverford Reserve Community Association v. Haverford Reserve, LP, et al.**
           **Delaware County CCP Docket No. 16-11177**
           **Our File No. 04128.00165**

Dear Sir or Madam:

      I write to advise you that Defendants, Guidi Homes at Haverford Reserve, LLC and Guidi Homes, Inc., (the "Guidi Defendants") are formally tendering their defense of the above-referenced case to Guerrero Brothers, Inc. and/or its insurance carriers pursuant to the Master Agreement ("Master Agreement") between the Guidi Defendants and Guerrero Brothers, Inc. ("Guerrero") that was in effect at all times relevant to the instant litigation. Accordingly, we request that you notify all of Guerrero's general liability insurance carrier(s) of the lawsuit that insured your company from the date of completion of your work on the first home in Haverford Reserve up to and including today. All such policies are potentially triggered by this case and this tender. The instant tender of defense and indemnification is based, in part, on the indemnification provisions of the Master Agreement and the Guidi Defendants' additional insured status and also the allegations of negligence and consequential damages to property other than your work that have been made by the plaintiff in the litigation. Please provide the names of your insurance companies for the relevant time period and if you have contact information for them, please forward that, as well.

      We are requesting written confirmation by April 20, 2020 that Guerrero and/or its insurance carriers have accepted the Guidi Defendants' tender and will assume the complete defense of this action, as well as indemnify the Guidi Defendants for all legal fees and costs

April 3, 2020
Page 2

incurred from the date of this tender letter as it relates to your company's work at Haverford Reserve.

The remainder of this letter provides the basis for the Guidi Defendants' tender and request for defense and indemnification.   Please note, however, that these bases are not exclusive, and the Guidi Defendants reserve the right to assert additional bases for the Guidi Defendants' tender and request for indemnification.

This civil action was initiated by Plaintiff Haverford Reserve Community Association in 2016.  This matter originally involved allegations of structural defects at a planned residential community known as Haverford Reserve (the "Community"), construction of which began in 2008.   On December 20, 2016 Plaintiff filed a Praecipe for Writ of Summons to start the case.  On January 10, 2017, Plaintiff filed the Complaint setting forth alleged facts, legal theories and damages.  *See* Exhibit A, attached hereto, Complaint without exhibits.  Plaintiff's original Complaint alleged the existence of various structural defects and consequential damage with regard to certain Common Elements and Controlled Facilities of the Community relating primarily to to roof and gutter Controlled Facilities of the Community, including but not limited to:

- Water intrusion due to poor and inconsistent design and construction;
- Improper design of roof elements;
- Creation of trap points for leaves on roofs due to poor and inconsistent design and construction;
- Ice damming on roofs due to poor and inconsistent design and construction;
- Improper gutter performance due to poor and inconsistent design and construction;
- Improper gutter and downspout sizes due to poor and inconsistent design and construction; and
- Failure to record the precise location of all underground leaders.

*See* Exhibit A at Paragraphs 56-57.   In addition, structural defects as to other exterior Common Elements of the Community were alleged, including inadequate construction of driveways, persistent leaks in the Community's irrigation system, cracked curbing, and deteriorating concrete around storm water facilities.  *See* id. at Paragraph 58.

On February 24, 2020, Plaintiff filed a Motion for Leave to file an Amended Complaint.  The proposed Amended Complaint alleges the same structural defects as and then also adds allegations about undersized gutters and downspouts due to poor and inconsistent design and construction, deficient gutter endcaps and outlet tubes, and incorrectly designed gutter slopes.  *See* Exhibit B, proposed Amended Complaint without exhibits, at Paragraph 103.   Notably, the proposed Amended Complaint also alleges new defects pertaining to structural elements of the  Units including:  exterior façade stucco, stone

April 3, 2020
Page 3

veneer and cement fiber siding ("cladding"), weep screeds, weather resistant barriers beneath the cladding, and flashing for proper drainage of the moisture beneath Unit cladding, chimney caps, pans and enclosures with weep screed, missing and/or improper flashing for windows, cladding, and roofs, incorrectly installed deck ledger boards and flashing, entry stoops/porches, undersized gutters and downspouts. *See* id. at Paragraph 25.

In addition, the proposed Amended Complaint alleges the following common elements and controlled facilities in the Community are structurally defective:  poor drainage/wet yards between units, driveway depressions, edge cracking and raveling, insulation at rim joists; improper attic ventilation systems; roof sheathing that is not fire retardant, deficient roof truss connections, missing PVC trim board fasteners to prevent connection failures, clearance of Hardie Board in the Community; and missing and/or improper window flashing. *See* id. at Paragraph 101.  The proposed Amended Complaint alleges liability based numerous legal theories including, but not limited to, negligence, negligent supervision and breach of express and implied warranties.  The proposed Amended Complaint alleges defects and also consequential damage from defects.  It also alleges that the defective work was done by subcontractors.  As a part of this tender, the Guidi Defendants allege that the allegedly defective work of its subcontractors and the alleged consequential damage was neither expected nor intended from the standpoint of you and/or the Guidi Defendants.

Finally, the proposed Amended Complaint alleges:  "Despite the exercise of reasonable diligence, the Association has not discovered the existence or cause of all structural defects as defined in the Act, and other deficiencies and nonconformities in the Community.  Investigations into these structural defects as defined in the Act, and other deficiencies and nonconformities in the Community are ongoing, and the Association reserves the right to supplement this pleading upon discovery of further latent and patent structural defects as defined in the Act, and other deficiencies and nonconformities in the Community." *See* id. at Paragraph 62.

As you are aware, Guerrero contracted to perform, *inter alia,* stucco and veneer stone work at the Community as well as installation of the exterior weather resistant barrier system, pursuant to the above-referenced Master Agreement.  *See* Master Agreement attached hereto as Exhibit C.  The Master Agreement states in pertinent part:

**Article 24. Indemnification**

24.1 To the fullest extent permitted by law, Subcontractor agrees to indemnify, hold harmless and defend Guidi Homes, Inc. and General Contractor, Construction Manager, Prime Contractor, Owner, Architect, Engineer, Partner and Joint Venture and their agents, employees, representatives, officers, directors, stockholders, members, managers and parent, subsidiary and affiliated companies (the "Indemnified Parties") from and against any and all liability for loss, damage or expense for which

April 3, 2020
Page 4

the Indemnified Parties may be held liable by reason of injury (including death) to any person (including Subcontractor's employees) or damage to any property of whatsoever kind or nature arising out of or in any manner connected with the work to be performed for the Indemnified Parties (including, but not limited to, work performed under this contract, work performed under Change Order, or any such other work performed for or on behalf of the Indemnified Parties, whether performed at the site or not or in any way connected with the use, misuse, erection, maintenance, operation or failure of any machinery or equipment whether or not such machinery or equipment was furnished, rented or loaned by any of the Indemnified Parties, even for and if caused in whole or in part by any act, omission, or negligence of the Indemnified Parties. It is expressly understood and agreed that the indemnity contained in this paragraph covers claims by Subcontractor's employees and that Subcontractor expressly waives any defense to this indemnification obligation which may arise under the Workers' Compensation Act of any State. In addition, Subcontractor shall defend the Indemnified Parties against any claim which may potentially give rise to indemnification of the Indemnified Parties, even if such claim alleges that the Indemnified Parties are wholly or partially at fault for causing the loss. If Indemnification for the Indemnified Patties' sole negligence is expressly prohibited by Law, such defense shall continue until it is conclusively established by a court of competent jurisdiction dial: 1) the Indemnified Parties arc solely liable for causing the bodily injury or property damage alleged; and 2) that neither Subcontractor nor its employees nor any Subcontractor to Subcontractor is liable; at which time the Indemnified Parties will absorb all costs of defense. It is further expressly agreed that Subcontractor assumes the fullest extent of all obligations to indemnify and defend all parties whom Guidi Homes, Inc. is obligated to indemnify and defend in Guidi Homes, Inc.'s contract with General Contractor, Construction Manager, Prime Contractor, Owner, Architect, Engineer, Partner and Joint Venture (whether or not such obligations may extend to items beyond those addressed in this Agreement). If there are any damages or claims of any kind or nature unsettled when the subcontract work is finished, the final payment by Guidi Homes, Inc. shall be deferred until all such claims shall have been adjusted or suitable coverage or indemnity acceptable to Guidi Homes, Inc. is provided by Subcontractor or Subcontractor's insurance carrier.

*See* Master Agreement at Paragraph 24.1, attached hereto.

The above-referenced indemnification provisions are triggered by the allegations in this case. Pursuant to the foregoing, the Guidi Defendants tender the defense and indemnification of pertinent parts of this matter to Guerrero.

In addition, the Master Agreement provides that: "Subcontractor shall provide and maintain at all times during the performance of this Subcontract Workmen's Compensation and Employers Liability insurance for protection of Subcontractor's employees, as required

April 3, 2020
Page 5

by law; and insurance covering Public Liability, Property Damage and Subcontractor's
Contractual Liability hereunder (including but not limited to all work performance and
operation of automobiles, trucks and other vehicles, the values of which are itemized in
Exhibit "C").  *See* Master Agreement at 36.1.1.

> The Master Agreement further states:  "Subcontractors' liability policy shall
> be the primary policy and must list as additional insured both Contractor and
> the Owner of the Project as well as any additional entities listed in the relevant
> Work Order using the following language:  **Guidi Homes, Inc. and {Name of**
> **Owner if other) are additional insured on the captioned General Liability,**
> **Umbrella liability and Automobile Liability Policies on a Primary and**
> **Noncontributory basis. A waiver of Subrogation is provided on these**
> **policies in favor of Guidi Homes, Inc. and Haverford Reserve LP,**
> **including workers compensation where permitted by State Law."**  *See*
> Master Agreement at Paragraph 36.1.4.

Accordingly, reference is made to the Certificate of Liability Insurance attached hereto as Exhibit D.
Please forward the Guidi Defendants tender, based on additional insured status, to Nationwide Property and
Casualty, or to any other carrier(s) implicated by the attached Certificate.   To the extent the tender to Stucco
Code's carriers is in any way denied or not accepted, we also request that you send us the applicable insurance
policies and the contact names for those individuals handling these insurance policies on behalf of Stucco Code
and the Guidi Defendants, so that we may restate the Guidi Defendants' tender of defense and indemnification
to these individuals on an additional insured basis, as well.

We ask for your prompt attention to this matter and request Guerrero respond by no later than April 20,
2020, as discussed above.

Very truly yours,

*/s/ Michael L. Detweiler*

Michael L. Detweiler

MLD

cc:   **Via Email**
      Mark Parisi, Esquire
      Daniel Utain, Esquire
      Jay Branderbrit, Esquire
      Andrew Reilly, Esquire

Copying prohibited

April 3, 2020
Page 6

Jane Bonner

**<u>Via Mail</u>**
The Hibson Agency
Attn.:  Susan Millar
245 Ridge Pike, 2nd Floor
Eagleville, PA 19403

Nationwide Property and Casualty
Nationwide Headquarters
One Nationwide Plaza
Columbus, OH 43215-2220

Copying Prohibited

# MARSHALL DENNEHEY
## WARNER COLEMAN & GOGGIN

ATTORNEYS-AT-LAW     WWW.MARSHALLDENNEHEY.COM

A  P R O F E S S I O N A L   C O R P O R A T I O N
620 Freedom Business Center, Suite 300, King of Prussia, PA 19406
(610) 354-8250  Fax (610) 354-8299

Direct Dial:  (610) 354-8271
Email:  mldetweiler@mdwcg.com

| | |
|---|---|
| **PENNSYLVANIA** | **OHIO** |
| Allentown | Cincinnati |
| Doylestown | Cleveland |
| Erie | |
| Harrisburg | **FLORIDA** |
| King of Prussia | Ft. Lauderdale |
| Philadelphia | Jacksonville |
| Pittsburgh | Orlando |
| Scranton | Tampa |
| **NEW JERSEY** | **NEW YORK** |
| Mount Laurel | Long Island |
| Roseland | New York City |
| | Westchester |
| **DELAWARE** | |
| Wilmington | |

March 27, 2020

<u>**VIA U.S. MAIL AND CERTIFIED MAIL**</u>
<u>**RETURN RECEIPT REQUESTED 7019 2280 0000 6297**</u>

Cornerstone Concrete, Inc.
12 Edgemoor Lane
Honey Brook, PA 19344

> **Re:   Haverford Reserve Community Association v. Haverford Reserve, LP, et al.**
> **Delaware County CCP Docket No. 16-11177**
> **Our File No. 04128.00165**

Dear Sir or Madam:

I write to advise you that Defendants, Guidi Homes at Haverford Reserve, LLC and Guidi Homes, Inc., (the "Guidi Defendants") are formally tendering their defense and indemnification of the above-referenced matter to Cornerstone Concrete, Inc. and/or its insurance carriers in the above-referenced matter.  Accordingly, we request that you notify all of Cornerstone Concrete, Inc.'s general liability insurance carrier(s) of the lawsuit that insured your company from the date of completion of your work on the first home in Haverford Reserve up to and including today.  All such policies are potentially triggered by this case and this tender. Please provide written confirmation by April 10, 2020 that Cornerstone Concrete, Inc. ("Cornerstone Concrete") and/or its insurance carriers have accepted the Guidi Defendants' tender and will assume the complete defense of this action, as well as indemnify the Guidi Defendants for all legal fees and costs incurred from the date of this tender letter as it relates to your company's work at Haverford Reserve.

The remainder of this letter provides the basis for the Guidi Defendants' tender and request for defense and indemnification.  Please note, however, that these bases are not exclusive, and the Guidi Defendants reserve the right to assert additional bases for the Guidi Defendants' tender and request for indemnification.

This civil action was initiated by Plaintiff Haverford Reserve Community Association in 2016.  This matter originally involved allegations of structural defects at a planned residential

March 27, 2020
Page 2

community known as Haverford Reserve (the "Community"), construction of which began in 2008.  On December 20, 2016 Plaintiff filed a Praecipe for Writ of Summons to start the case. On January 10, 2017, Plaintiff filed the Complaint setting forth alleged facts, legal theories and damages.  *See* Exhibit A, attached hereto, Complaint without exhibits.  Plaintiff's original Complaint alleged the existence of various structural defects and consequential damage with regard to certain Common Elements and Controlled Facilities of the Community relating primarily to roof and gutter Controlled Facilities of the Community, including but not limited to:

- Water intrusion due to poor and inconsistent design and construction;
- Improper design of roof elements;
- Creation of trap points for leaves on roofs due to poor and inconsistent design and construction;
- Ice damming on roofs due to poor and inconsistent design and construction;
- Improper gutter performance due to poor and inconsistent design and construction;
- Improper gutter and downspout sizes due to poor and inconsistent design and construction; and
- Failure to record the precise location of all underground leaders.

*See* Exhibit A at Paragraphs 56-57.  In addition, structural defects as to other exterior Common Elements of the Community were alleged, including inadequate construction of driveways, persistent leaks in the Community's irrigation system, cracked curbing, and deteriorating concrete around storm water facilities.  *See id.* at Paragraph 58.

On February 24, 2020, Plaintiff filed a Motion for Leave to file an Amended Complaint. The proposed Amended Complaint alleges the same structural defects as the original Complaint, and then also adds allegations about undersized gutters and downspouts due to poor and inconsistent design and construction, deficient gutter endcaps and outlet tubes, and incorrectly designed gutter slopes.  *See* Exhibit B, proposed Amended Complaint without exhibits, at Paragraph 103.  Notably, the proposed Amended Complaint also alleges new defects pertaining to structural elements of the Units, including:  exterior façade stucco, stone veneer and cement fiber siding ("cladding"), weep screeds, weather resistant barriers beneath the cladding, and flashing for proper drainage of the moisture beneath Unit cladding, chimney caps, pans and enclosures with weep screed, missing and/or improper flashing for windows, cladding, and roofs, incorrectly installed deck ledger boards and flashing, entry stoops/porches, undersized gutters and downspouts.  *See id.* at Paragraph 25.

In addition, the proposed Amended Complaint alleges that the following common elements and controlled facilities in the Community are structurally defective:  poor drainage/wet yards between units, driveway depressions, edge cracking and raveling, insulation at rim joists; improper attic ventilation systems; roof sheathing that is not fire retardant, deficient roof truss connections, missing PVC trim board fasteners to prevent connection failures, clearance of Hardie Board in the Community; and missing and/or improper window flashing.  *See id.* at Paragraph 101.  The proposed Amended Complaint alleges liability based upon numerous legal theories including, but not limited to, negligence, negligent supervision and breach of express

March 27, 2020
Page 3

and implied warranties.  The proposed Amended Complaint alleges defects and also consequential damage from defects.  It also alleges that the defective work was done by subcontractors.  As a part of this tender, the Guidi Defendants allege that the allegedly defective work of its subcontractors and the alleged consequential damage was neither expected nor intended from the standpoint of you and/or the Guidi Defendants.

Finally, the proposed Amended Complaint alleges: "Despite the exercise of reasonable diligence, the Association has not discovered the existence or cause of all structural defects as defined in the Act, and other deficiencies and nonconformities in the Community.  Investigations into these structural defects as defined in the Act, and other deficiencies and nonconformities in the Community are ongoing, and the Association reserves the right to supplement this pleading upon discovery of further latent and patent structural defects as defined in the Act, and other deficiencies and nonconformities in the Community." *See* id. at Paragraph 62.

As you are aware, Cornerstone Concrete performed, *inter alia,* work pertaining to concrete steps at the entryway to the homes in the Community at times relevant to the instant litigation.  It is alleged that the steps were negligently installed in such a manner as to cause water to be trapped between the steps and the homes causing rot and deterioration to the sheathing and framing.  Accordingly, the Guidi Defendants tender the defense and indemnification of pertinent parts of this matter to Cornerstone Concrete.

In addition, reference is made to the Certificate of Liability Insurance attached hereto as Exhibit C, which names Guidi Homes as an additional insured on a primary and non-contributory basis for work performed at the Community pursuant to the applicable insurance polic(ies).  Please forward this tender of the Guidi Defendants to all of Cornerstone's applicable general liability insurance carrier(s) that insured your company from the date of completion of your work on the first home you worked on in Haverford Reserve up to and including today.  All such policies are potentially triggered by this case and this tender  Please also send to us the applicable insurance policies and the contact names for those individuals handling these insurance policies so that we may communicate directly with them regarding this matter.

We ask for your prompt attention to this matter and request Cornerstone Concrete respond by no later than April 10, 2020, as discussed above.

Very truly yours,

*/s/ Michael L. Detweiler*

Michael L. Detweiler

MLD

March 27, 2020
Page 4

cc:    Cincinnati Insurance Co.
        P.O. Box 145496
        Cincinnati, OH 45250-5490

        Cincinnati Casualty Co.
        6200 South Gilmore Road
        Fairfield, OH 45014

        The Rigg Darlington Group, Inc.
        attn.:  Susan D'Amico
        14 East Welsh Pool Road
        Exton, PA 19341

        Mark Parisi, Esquire (Via Email)
        Daniel Utain, Esquire (Via Email)
        Jay Branderbrit, Esquire (Via Email)
        Andrew Reilly, Esquire (Via Email)

Copying Prohibited

# MARSHALL DENNEHEY
## WARNER COLEMAN & GOGGIN

ATTORNEYS-AT-LAW    WWW.MARSHALLDENNEHEY.COM

A  PROFESSIONAL  CORPORATION

620 Freedom Business Center, Suite 300, King of Prussia, PA 19406
(610) 354-8250  Fax (610) 354-8299

Direct Dial:  (610) 354-8271
Email:  mldetweiler@mdwcg.com

| PENNSYLVANIA | OHIO |
|---|---|
| Allentown | Cincinnati |
| Doylestown | Cleveland |
| Erie | |
| Harrisburg | FLORIDA |
| King of Prussia | Ft. Lauderdale |
| Philadelphia | Jacksonville |
| Pittsburgh | Orlando |
| Scranton | Tampa |
| NEW JERSEY | NEW YORK |
| Mount Laurel | Long Island |
| Roseland | New York City |
| | Westchester |
| DELAWARE | |
| Wilmington | |

March 31, 2020

**VIA U.S. MAIL**

Specialty Supply Company, Inc.
5 N. Olney Avenue
Suite 100A
Cherry Hill, NJ 08003

> Re:    **Haverford Reserve Community Association v. Haverford Reserve, LP, et al.**
> **Delaware County CCP Docket No. 16-11177**
> **Our File No. 04128.00165**

Dear Sir or Madam:

I write to advise you that Defendants, Guidi Homes at Haverford Reserve, LLC and Guidi Homes, Inc., (the "Guidi Defendants") are formally tendering their defense and indemnification of the above-referenced matter to Specialty Supply Company, Inc. and/or its insurance carriers in the above-referenced matter. Accordingly, we request that you notify all of Specialty Supply Company, Inc.'s general liability insurance carrier(s) of the lawsuit that insured your company from the date of completion of your work on the first home in Haverford Reserve up to and including today.  All such policies are potentially triggered by this case and this tender.  Please provide written confirmation by April 10, 2020 that Specialty Supply Company, Inc. ("Specialty Supply") and/or its insurance carriers have accepted the Guidi Defendants' tender and will assume the complete defense of this action, as well as indemnify the Guidi Defendants for all legal fees and costs incurred from the date of this tender letter as it relates to your company's work at Haverford Reserve.

The remainder of this letter provides the basis for the Guidi Defendants' tender and request for defense and indemnification.   Please note, however, that these bases are not exclusive, and the Guidi Defendants reserve the right to assert additional bases for the Guidi Defendants' tender and request for indemnification.

This civil action was initiated by Plaintiff Haverford Reserve Community Association in 2016.  This matter originally involved allegations of structural defects at a planned residential community known as Haverford Reserve (the "Community"), construction of which began in 2008.  On December 20, 2016 Plaintiff

March 31, 2020
Page 2

filed a Praecipe for Writ of Summons to start the case.  On January 10, 2017, Plaintiff filed the Complaint setting forth alleged facts, legal theories and damages.  *See* Exhibit A, attached hereto, Complaint without exhibits.  Plaintiff's original Complaint alleged the existence of various structural defects and consequential damage with regard to certain Common Elements and Controlled Facilities of the Community relating primarily to roof and gutter Controlled Facilities of the Community, including but not limited to:

- Water intrusion due to poor and inconsistent design and construction;

- Improper design of roof elements;

- Creation of trap points for leaves on roofs due to poor and inconsistent design and construction;

- Ice damming on roofs due to poor and inconsistent design and construction;

- Improper gutter performance due to poor and inconsistent design and construction;

- Improper gutter and downspout sizes due to poor and inconsistent design and construction; and

- Failure to record the precise location of all underground leaders.

*See* Exhibit A at Paragraphs 56-57.   In addition, structural defects as to other exterior Common Elements of the Community were alleged, including inadequate construction of driveways, persistent leaks in the Community's irrigation system, cracked curbing, and deteriorating concrete around storm water facilities. *See id.* at Paragraph 58.

On February 24, 2020, Plaintiff filed a Motion for Leave to file an Amended Complaint.  The proposed Amended Complaint alleges the same structural defects as the original Complaint, and then also adds allegations about undersized gutters and downspouts due to poor and inconsistent design and construction, deficient gutter endcaps and outlet tubes, and incorrectly designed gutter slopes.  *See* Exhibit B, proposed Amended Complaint without exhibits, at Paragraph 103.   Notably, the proposed Amended Complaint also alleges new defects pertaining to structural elements of the Units, including:  exterior façade stucco, stone veneer and cement fiber siding ("cladding"), weep screeds, weather resistant barriers beneath the cladding, and flashing for proper drainage of the moisture beneath Unit cladding, chimney caps, pans and enclosures with weep screed, missing and/or improper flashing for windows, cladding, and roofs, incorrectly installed deck ledger boards and flashing, entry stoops/porches, undersized gutters and downspouts.  *See id.* at Paragraph 25.

In addition, the proposed Amended Complaint alleges that the following common elements and controlled facilities in the Community are structurally defective:  poor drainage/wet yards between units, driveway depressions, edge cracking and raveling, insulation at rim joists; improper attic ventilation systems; roof sheathing that is not fire retardant, deficient roof truss connections, missing PVC trim board fasteners to prevent connection failures, clearance of Hardie Board in the Community; and missing and/or improper window flashing.  *See id.* at Paragraph 101.   The proposed Amended Complaint alleges liability based upon numerous legal theories including, but not limited to, negligence, negligent supervision and breach of express and implied warranties.  The proposed Amended Complaint alleges defects and also consequential damage from defects.  It also alleges that the defective work was done by subcontractors.  As a part of this tender, the Guidi Defendants

| | |
|---|---|
| HAVERFORD RESERVE COMMUNITY ASSOCIATION | : COURT OF COMMON PLEAS OF : DELAWARE COUNTY, PA |
| Plaintiff | : |
| vs. | : DOCKET NO. 16-11177 |
| | : |
| HAVERFORD RESERVE, LP, HAVERFORD RESERVE, GP, LLC, THE GOLDENBERG GROUP, INC., GUIDI HOMES AT HAVERFORD RESERVE, LLC AND GUIDI HOMES, INC. | : : : : : : |
| Defendants | : |
| vs. | : : |
| ADVANCED PLASTERING, INC, GUERRERO BROTHERS, INC., STUCCO CODE, INC., JL HORGAN SERVICES, LLC, CORNERSTONE CONCRETE, INC., DH CUSTOM CARPENTRY, LLC, DREAM MAKER CONSTRUCTION SERVICES, LLC, AND DREIFUSS PREBILT, INC. A/K/A DREIFUSS FIREPLACES AND SPECIALTY SUPPLY COMPANY, INC. | : : : : : : : : : : : |
| Additional Defendants | : |

## CERTIFICATE OF SERVICE

I, Michael L. Detweiler, Esquire, attorney for Defendants, Guidi Homes at Haverford Reserve, LLC and Guidi Homes, Inc., hereby certifies that the foregoing Joinder Complaint was served upon the follow via notice of electronic filing and/or US Mail:

*Robert J. Hoffman, Esquire*
*James P. McEvilly, III, Esquire*
*Marcus & Hoffman, PC*
*326 West State Street*
*Media, PA  19063*
*Attorneys for Plaintiff*

*Blair H. Granger, Esquire*
*The Granger Firm*
*1800 East Lancaster Ave.*

Copying Prohibited

*Paoli, PA 19301*
*Attorney for Advanced Plastering*

*GUERRERO BROTHERS, INC.,*
*380 Country Ln.*
*King of Prussia, PA  19406*

*Gregory S. Hirtzel, Esquire*
*Fowler Firtzel McNulty Spaulding*
*1860 Charter Lane, Suite 201*
*Lancaster, PA 17601*
*Attorney for Stucco Code, Inc.*

*JL HORGAN SERVICES, LLC,*
*1213 Patty's Circle*
*Lansdale, PA 19446*

*CORNERSTONE CONCRETE, INC.*
*12 Edgemoor Lane*
*Honey Brook, PA 19344*

*DH CUSTOM CARPENTRY, LLC*
*1224 Valley Forge Road*
*Norristown, PA 19403*

*DREAM MAKER CONSTRUCTION SERVICES, LLC*
*5284 Clymer Road*
*Quakertown, PA  18951*

*Carmelo T. Torraca, Esq.*
*Cooper Levenson*
*1125 Atlantic Avenue*
*Atlantic City, NJ 08401*
*Attorney for Dreifuss Prebilt, Inc. a/k/a Dreifuss Fireplaces*

*SPECIALTY SUPPLY COMPANY, INC.*
*5 N. Olney Avenue, Suite 100A*
*Cherry Hill, NJ 08003*

**MARSHALL DENNEHEY WARNER**
**COLEMAN & GOGGIN**

BY:   */s/ Michael L. Detweiler, Esq.*
_____
MICHAEL L. DETWEILER, ESQ.

Attorney for Defendants,
Guidi Homes at Haverford Reserve, LLC
and Guidi Homes, Inc.

**KAPLIN STEWART**

BY:    */s/ Daniel R. Utain, Esq.*
_____
Daniel R. Utain, Esq.
Attorney for Defendants, Haverford Reserve
LP, Haverford Reserve GP, LLC, The
Goldenberg Group, Inc., Guidi Homes at
Haverford Reserve LLC, and Guidi Homes,
Inc.

**KENT & MCBRIDE, P.C.**

BY:    */s/ Jay D. Branderbit, Esq.*
_____
Jay D. Branderbit, Esq.
Attorney for Defendant Haverford Reserve
LP

**WHITE AND WILLIAMS, LLP**

BY:    */s/ Mark Parisi, Esq.*
_____
Mark L. Parisi, Esq.
Attorney for Defendants, Haverford Reserve
LP, Haverford Reserve, GP, LLC, The
Goldenberg Group, Inc., Guidi Homes at
Haverford Reserve, LLC and Guidi Homes,
Inc.

**SWARTZ CAMPBELL, LLC**

BY:    */s/ Andrew J. Reilly, Esq.*
_____
Andrew J. Reilly, Esq.
Attorney for Defendants, Haverford
Reserve, LP, Haverford Reserve GP, LLC,
The Goldenberg Group, Inc., Guidi Homes
at Haverford Reserve, LLC and Guidi
Homes, Inc.

Dated:  <u>March 19, 2021</u>

Copying Prohibited