UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| MAIN STREET AMERICA ASSURANCE COMPANY and<br>NGM INSURANCE COMPANY,<br>　Plaintiffs<br><br>v.<br><br>ADVANCED PLASTERING, INC.<br>　Defendant | CIVIL ACTION<br>NO. 2:22-cv-03805-TJS |

**ADVANCED PLASTERING, INC.'S ANSWER AND AFFIRMATIVE DEFENSES TO THE PLAINTIFFS' AMENDED COMPLAINT**

Defendant, Advanced Plastering, Inc. ("Advanced"), by and through its undersigned attorneys, Answers with Affirmative Defenses to the Plaintiffs Complaint, as follows:

1.　Admitted.

2.　Admitted in part; denied in part. It is admitted that Advanced has been joined in the Underlying Lawsuit brought by a community association representing approximately 100 homes in a Philadelphia suburb against the developer and general contractor. Plaintiffs' characterization of the claims in "Underlying Lawsuit" is denied.  The Underlying Lawsuit includes allegations, *inter alia*, regarding damage to property.

3.　Admitted in part; denied in part. It is admitted that Main Street seeks such a declaration. It is denied that Main Street is entitled to such a declaration.

4.　Admitted in part; denied in part. It is admitted that Plaintiffs contentions stated in this averment are the Plaintiffs bases for seeking relief. It is denied that said contentions are correct. To the contrary, the claims against Advanced in the Underlying Lawsuit include, as a matter of law, claims for property damage caused by an occurrence under the Main Street Policies and that the pleadings in the Underlying Lawsuit do not establish that the alleged property damage did not occur during the policy periods and indeed the pleadings can be interpreted to potentially include coverage.  As a result, since

the pleadings do not foreclose coverage being possible under the MSAAC Polices or the NGM Policies, a duty to defend exists.

5. Admitted.

6. Admitted.

7. Admitted.

8. Admitted.

9. Admitted in part and denied in part. Admitted except that the business address of Advanced Plastering is 2 Liberty Avenue, Norristown, PA 19403.

10. Admitted in part; denied in part. Whether the court has jurisdiction is denied as a conclusion of law. It is admitted that neither plaintiff is the citizen of the same state of Advanced Plastering. As to the amount in controversy, Defendant is without sufficient knowledge or information to admit or deny said averment and the same is therefore denied. Plaintiffs' characterization of the allegations in the "Underlying Lawsuit" is also denied.

11. Admitted in part; denied in part. It is admitted that the Court has authority under the Declaratory Judgment Act to issue a declaratory judgment, it is denied that said Act does confer subject matter jurisdiction upon the district courts, but rather the Act merely permits them to render declaratory relief or exercise their discretion to dismiss claims that should be decided by a state court.

12. Admitted.

13. Admitted.

14. Admitted in part and denied in part. It is admitted that the MSAAC policies were issued. As to the alleged date of cancellation *pro rata* on September 24, 2015, the same is denied as the term "pro rata" is not defined and it is unclear how it is being used in this allegation. As to the allegations that the policies are attached, this is admitted to the extent that policies speak for themselves, but discovery will be needed to verify the policies are true and correct and contain all material terms of the policies issued on the policy dates.

15. Admitted.

16. Admitted in part; denied in part. It is admitted that the policies include the language that appears to have been restated in this averment. To the extent that this allegation contains language that deviates from the printed text of said policies, then the same is denied.

17. Admitted in part; denied in part. It is admitted that an "occurrence" is defined in the policy as alleged. However, "property damage" is defined as follows:

> "Property damage" means:
>   a. Physical injury to tangible property, including all resulting loss of use of that property. All such loss of use shall be deemed to occur at the time of the physical injury that caused it; or
>   b. Loss of use of tangible property that is not physically injured. All such loss of use shall be deemed to occur at the time of the "occurrence" that caused it.
> For the purposes of this insurance, electronic data is not tangible property.
> As used in this definition, electronic data means information, facts or programs stored as, created or used on, or transmitted to or from computer software, including systems and applications software, hard or floppy disks, CD-ROMs, tapes, drives, cells, data processing devices or any other media which are used with electronically controlled equipment.

18. Admitted in part and denied in part. It is admitted that the NGM policies were issued. As to the alleged date of cancellation *pro rata* on September 24, 2015, the same is denied as the term "pro rata" is not defined and it is unclear how it is being used in this allegation. As to the allegations that the policies are attached, this is admitted to the extent that policies speak for themselves, but discovery will be needed to verify the policies are true and correct and contain all material terms of the policies issued on the policy dates.

19. Admitted in part; denied in part. It appears the first and second of said policies contain the said Commercial Liability Umbrella Coverage Form language, but said language appears to be missing from the third policy. However, to the extent the third policy appears to incorporate said form by refence on the Schedule of Forms and Endorsements, then admitted.

20. Admitted in part; denied in part. Paragraph 19 above is incorporated by reference. It is admitted that the policies include the language that appears to have been restated in this averment. To the extent that this allegation contains language that deviates from the printed text of said policies, then the same is denied.

21. Admitted in part; denied in part. It is admitted that an "occurrence" is defined in the policy as alleged. However, "property damage" is defined as follows:

> "Property damage" means:
>   a. Physical injury to tangible property, including all resulting loss of use of that property. All such loss of use shall be deemed to occur at the time of the physical injury that caused it; or
>   b. Loss of use of tangible property that is not physically injured. All such loss of use shall be deemed to occur at the time of the "occurrence" that caused it.
> With respect to the ownership, maintenance or use of "covered autos", property damage also includes "pollution cost or expense", but only to the extent that coverage exists under the "underlying insurance" or would have existed but for the exhaustion of the underlying limits.
> For the purposes of this insurance, with respect to other than the ownership, maintenance or use of "covered autos", electronic data is not tangible property.
> As used in this definition, electronic data means information, facts or programs stored as or on, created or used on, or transmitted to or from computer software (including systems and applications software), hard or floppy disks, CD-ROMS, tapes, drives, cells, data processing devices or any other media which are used with electronically controlled equipment.

22. Admitted in part; denied in part. It appears the fourth of said policies contain the said Commercial Liability Umbrella Coverage Form language, but said language appears to be missing from the fifth policy. However, to the extent the fifth policy appears to incorporate said form by refence on the Schedule of Forms and Endorsements, then admitted.

23. Admitted in part; denied in part. Paragraph 22 above is incorporated by reference. It is admitted that the policies include the language that appears to have been restated in this averment. To the extent that this allegation contains language that deviates from the printed text of said policies, then the same is denied.

24. Admitted in part; denied in part. It is admitted that an "occurrence" is defined in the policy as alleged. However, "property damage" is defined as follows:

> "Property damage" means:
>   a. Physical injury to tangible property, including all resulting loss of use of that property. All such loss of use shall be deemed to occur at the time of the physical injury that caused it; or
>   b. Loss of use of tangible property that is not physically injured. All such loss of use shall be deemed to occur at the time of the "occurrence" that caused it.
> With respect to the ownership, maintenance or use of "covered autos", property damage also includes "pollution cost or expense", but only to the extent that coverage exists under the "underlying insurance" or would have existed but for the exhaustion of the underlying limits.
> For the purposes of this insurance, with respect to other than the ownership, maintenance or use of "covered autos", electronic data is not tangible property.
> As used in this definition, electronic data means information, facts or programs stored as or on, created or used on, or transmitted to or from computer software (including systems and applications software), hard or floppy disks, CD-ROMs, tapes, drives, cells, data processing devices or any other media which are used with electronically controlled equipment.

25. Admitted in part; denied in part. It is admitted only that the terms quoted language appears, but the definitions cited are not fully set forth in the complaint and although the definitions in the various policies are similar, they are not identical. Further, Plaintiffs' overly simplistic and self-serving summarization of coverage owed to Advanced is denied as the policy must be read as a while.

26. Admitted in part; denied in part. It is admitted that the policies include the language that appears to have been restated in this averment. To the extent that this allegation contains language that deviates from the printed text of said policies, then the same is denied.

27. Admitted in part; denied in part. It is admitted that the policies include the language regarding exclusions that appears to have been referenced in this averment. It is not clear what Plaintiffs

are alleging regarding the Umbrella Policies having "different enumeration". To the extent that this allegation references language that deviates from the printed text of said policies, then the same is denied.

28.     Admitted in part; denied in part. It is admitted that said policies include the language that appears to have been restated in this averment. To the extent that this allegation contains language that deviates from the printed text of said policies, then the same is denied.

29.     Admitted in part; denied in part. It is admitted that said policies include the language that appears to have been restated in this averment. To the extent that this allegation contains language that deviates from the printed text of said policies, then the same is denied.

30.     Admitted that Exhibit C is a copy of the Master Agreement that Guidi attached to its Joinder Complaint as an exhibit. Denied, to the extent implied, that the Master Contract was not thereafter altered.

31.     Admitted.

32.     Admitted in part; denied in part. It is admitted that Guidi issued work orders to Advanced for some of the homes. It is denied the work orders directed Advanced to install veneer stonework exteriors. It is further denied that the work orders "directed" Advanced to install stucco as Advanced was requested to install stucco on a home prior to the work order being issued and then when the work was substantially complete Advanced was requested to sign such work orders before receiving payment.

33.     Admitted in part; denied in part. It is admitted that Advanced received work orders. It is denied that the work was done in response to receiving any such work order. Instead, Advanced was requested to perform work on a home and then when the work was substantially complete Advanced was requested to sign such work orders before receiving payment. It is admitted that Advanced applied first and second scratch coats to some of the homes. It is denied that Advanced applied first and second scratch coats to all of the homes for which Advanced was engaged to perform work as Advanced

engaged sub-contractors to perform said work on some of the homes. It is denied Advanced applied veneer stonework on any of the homes.

  34. Admitted, although a writ of summons was filed December 20, 2016.

  35. Admitted. In addition, the Underlying Lawsuit now includes as a matter of law the rights of the Plaintiffs to have direct claims against the joined parties.

  36. Admitted.

  37. Admitted in part; denied in part. It is admitted that the quoted language in this averment (excluding the bracketed text) is contained in the Second Amended Complaint. By way of further response, there are numerous other allegations contained therein. As to the allegation of when the homeowners and the association learned of their damages, while the complaint in the Underlying Lawsuit does allege that the Association learned of some damage through a series of inspections dated July 30, 2019 to September 28, 2020, the Underlying Lawsuit does not allege that these dates were when all damage was learned of and this averment is therefore denied to the extent if infers otherwise. Plaintiffs' characterization of the relationship between moisture intrusion and damage is also denied. It is admitted that the Second Amended Complain estimates repair damages of approximately $10 Million dollars.

  38. Admitted.

  39. Admitted.

  40. Admitted in part; denied in part.  It is admitted that the First Amended Joinder Complaint alleges liability of the Joinder Defendants based on indemnity agreements. It is denied that is all said complaint alleges and multiple theories of liability of Advanced are pled that are not based on contractual indemnity.

  41. Admitted.

  42. Admitted in part; denied in part. Advanced is without sufficient information or knowledge as to when Plaintiffs first became aware of the Underlying Lawsuit and the same is therefore

denied. It is admitted that Plaintiffs or at least one of them contacted Advanced to begin investigating the claim.

43. Admitted in part and denied in part. Advanced is without sufficient information or knowledge as to what evaluation was done by Plaintiffs or what it concluded beyond the allegations of the Complaint (i.e., the original and Amended Complaint) and those allegations are denied. It is admitted that Advanced Plastering disputes that there is no coverage afforded, at least based on the pleadings.

44. Denied. To the contrary, Main Street has an obligation to defend, and may have an obligation to indemnify Advanced as the Underlying Lawsuit alleges "property damage" cause by an "occurrence" when at minimum the work was performed by subcontractors and the damage is not to work performed by the insured, but instead is to other property and said damage was not intended or foreseen by the Insured.

45. Denied. To the contrary, Main Street has a duty to defend, and may have an obligation to indemnify, Advanced as the Underlying Lawsuit underlying matter can be interpreted as alleging "property damage" that occurred during the policy periods where the damage was not to work performed by the insured, but instead is to other property.

46. Denied. To the contrary, Main Street has a duty to defend, and may have an obligation to indemnify, Advanced as the Form Exclusions do not preclude or limit coverage for Advanced Plastering in connection with the Underlying Lawsuit. The allegation does not even identify which of the form exclusions allegedly would preclude or limit coverage. Moreover, any exclusion that only limits coverage would not absolve Plaintiffs from the duty to defend. Finally, there are multiple allegations that fall outside any exclusions, to the extent any of the pleadings in the Underlying Lawsuit would even trigger said exclusions, which is denied.

47. Denied. To the contrary, MSAAC Street has a duty to defend, and may have an obligation to indemnify, Advanced as the Form Exclusions do not preclude or limit coverage for

Advanced Plastering in connection with the Underlying Lawsuit. There are multiple allegations that fall outside any exclusions, to the extent any of the pleadings in the Underlying Lawsuit would even trigger said exclusions, which is denied. The Plaintiffs fail to cite in their complaint to any allegations in the Underlying Lawsuit to EIFS or Fungi or Bacteria that would trigger the exclusion(s).

48. Denied. To the contrary, Main Street has a duty to defend, and may have an obligation to indemnify. The Plaintiffs fail to cite to what specific provisions they are even referring to in in the policies that limit or preclude coverage.

## COUNT I

49. The above paragraphs are incorporated herein by reference.

50. Denied. The damages sought in the Underlying Lawsuit as alleged constitute "property damage" cause by an "occurrence" or at minimum the pleadings do not foreclose the possibility of coverage.

51. Denied. The damages sought in the Underlying Lawsuit as alleged are not excluded from coverage by the Form Exclusions, the Fungi or Bacteria Exclusions or the EIFS Exclusion. Plaintiffs fail to cite to any allegations in the Underlying Lawsuit that would trigger any of the said Exclusions.

52. Denied. To the contrary, Main Street has a current duty to defend, and may have an obligation to indemnify, Advanced in the Underlying Lawsuit.

53. Denied. To the contrary, Main Street has a current duty to defend, and may have an obligation to indemnify, Advanced in the Underlying Lawsuit.

54. Admitted.

WHEREFORE, Defendant respectfully requests that this Court enter judgment in its favor and against Plaintiffs, dismissing Plaintiffs' Amended Complaint, with prejudice.

## FIRST AFFIRMATIVE DEFENSE

Plaintiffs have failed to state a claim upon which relief can be granted.

## SECOND AFFIRMATIVE DEFENSE

The claims by Plaintiffs that there are no indemnity obligations are not ripe yet and this Court therefore lacks or should decline subject matter jurisdiction.

## THIRD AFFIRMATIVE DEFENSE

The allegations in the Underlying Lawsuit potentially could support recovery under the subject policies and therefore the Plaintiffs owe a duty to defend Advanced, and therefore have a conditional obligation to indemnify Advanced in the event it is held liable for the claims in the Underlying Lawsuit.

## FOURTH AFFIRMATIVE DEFENSE

The Underlying Lawsuit alleges that defective work and/or materials performed and provided by Advanced damaged other components installed in the homes by others, and therefore such damage constitutes damage caused by an occurrence under the subject policies triggering a duty for Plaintiffs to defend Advanced under said policies.

## FIFTH AFFIRMATIVE DEFENSE

The damage alleged in the Underlying Lawsuit are not limited to Advanced's own work product and therefor such damage to other property constitutes damage caused by an occurrence under the subject policies triggering a duty for Plaintiffs to defend Advanced under said policies.

## SIXTH AFFIRMATIVE DEFENSE

"The risk intended to be insured [by the subject polies] is the possibility that the goods, products or work of the insured, once relinquished and completed, will cause bodily injury or damage to property other than to the completed work itself and for which the insured by [sic] be found liable." <u>Kvaerner</u> 908 A.2d 888, 899 (Pa. 2006) n.10, citing <u>Insurance Protection for Products Liability and Completed Operations; What Every Lawyer Should Know</u>, 50 Neb.L.Rev. 415, 441 (1971). "The coverage is for tort liability for physical damages to others and not for contractual liability of the insured for economic loss because the product or completed work is not that for which the damaged person bargained." <u>Id.</u>

## SEVENTH AFFIRMATIVE DEFENSE

Any Exclusion that merely *limits* coverage would not remove the duty to defend.

## EIGHTH AFFIRMATIVE DEFENSE

Advanced's work was performed by subcontractors and therefore the exclusion for "Damage to Your Work" does not apply.

## NINTH AFFIRMATIVE DEFENSE

The Exclusions actually cited by Plaintiffs are inapplicable to the claims in the Underlying Lawsuit.

## TENTH AFFIRMATIVE DEFENSE

The Underlying Lawsuit asserts injuries that could potentially have manifested themselves during the policy periods and as such has asserted claims that are potentially covered and a duty to defend exists.

## ELEVENTH AFFIRMATIVE DEFENSE

Plaintiffs have taken contrary positions in this case on coverage despite the pleadings in the Underlying Lawsuit upon which their coverage determinations have been made never changing. Plaintiff MSAAC first sent a reservation of rights letter dated November 18, 2021 to Advanced Plastering that did not raise as a basis for withdrawing from the defense all of the issues set forth in their Amended Complaint, despite having the same pleadings from the Underlying Lawsuit available and any analysis being limited to the four corners of the pleadings in the Underlying Lawsuit. A copy of said letter is attached hereto as Exhibit "1". Specifically, Plaintiff did not raise the lack of an "occurrence" in their original reservation of rights. Advanced Plastering does not appear to have received a reservation of rights letter from NGM. Thereafter on July 20, 2022, Plaintiffs sent a new letter setting forth additional defenses not raised during the original Reservation of Rights letter and indicating categorically that no coverage is afforded under the Policies, stating: "…MSAAC and NGM have determined, based on its evaluation of these material and its investigation to date, that there is no

coverage afforded to Advanced Plastering, Inc. for the claims asserted against it in the Lawsuit." A copy of said letter is attached hereto as Exhibit "2". Despite this categorical statement, they did not withdraw counsel or notify Advanced Plastering in the letter that a Declaratory Action would be filed. Instead, they referenced a mediation and Advanced Plastering's duty to cooperate under the Policies. Then, days later, Steve Bradley, a claims adjustor for Main Street, received an email from Selective Insurance Company of America (who is also providing a defense), alleging that Plaintiffs withdrawal from the defense a year into the litigation was being done in bad faith. In response, Mr. Bradley advised that the Main Street insurers "are not withdrawing from defense – where does it say that? We are still defending pursuant to and subject to updated letter and will be attending mediation". However, now that mediation has not to date been successful, Plaintiffs have turned around proceeded to ask the Court to allow it to do just what Mr. Bradley assured was not being done – withdraw its defense. Nothing in the pleadings in the Underlying Lawsuit has changed from the initial time the Plaintiffs assessed this case and agreed to provide a defense.  But in that time period, Advanced has turned over the defense and strategy to the counsel appointed by MSACC, with multiple site visits and multiple meetings to discuss strategy. In the meantime, the Plaintiffs have attended mediation and it is unknown if any information from the mediation was part of any decision to withdraw a defense.

## TWELFTH AFFIRMATIVE DEFENSE

The Plaintiffs' claims are barred by the doctrine of laches.

## THIRTEENTH AFFIRMATIVE DEFENSE

The Plaintiffs' claims are barred by the doctrine of estoppel. The Plaintiffs failed to raise the lack of an "occurrence" in its initial reservation of rights letter (Exhibit "1") and as such failed to fairly inform Advanced of Plaintiff's position and therefore Plaintiff failed to validly preserve said defense to coverage under the subject policy. Further, Defendant waited too long to raise said defense in its subsequent correspondence (Exhibit "2") and as such it was untimely.

## FOURTEENTH AFFIRMATIVE DEFENSE

The Plaintiffs' claims are barred by the doctrine of waiver.

## FIFTEENTH AFFIRMATIVE DEFENSE

The Court may decline jurisdiction as subject matter jurisdiction is discretionary and the issues raised are better resolved in a parallel state court action. Further, a district court should exercise restraint when the state law involved in the declaratory judgment action is close or unsettled. The Federal Court's General Policy of Restraint and Avoidance of Duplicative Litigation Favor Declining Jurisdiction. The claims and defenses of all parties in this action will be presented to the state court for resolution as part of the State Court Action. Permitting Main Street to raise those claims and defenses as part of this action will duplicate the litigation in the state court and will unnecessarily increase the cost of litigation and the burden on the courts. In order to avoid duplicative litigation, this Court should decline to exercise jurisdiction over the Declaratory Complaint.

## SIXTEENTH AFFIRMATIVE DEFENSE

Main Street is racing to obtain a decision to create res judicata on any obligations it would otherwise be determined to have when any garnishment actions occur in the State Court Action, to avoid the discovery costs of the State Court Action and to obtain a decision that will insulate it from liability in the State Court Action before that Action is actually determined, all to the detriment of Advanced. A review of the State Court Dockets demonstrates an Order of the Delaware County Court of Common Pleas in the Underlying Lawsuit entered on September 20, 2022 and attached as Exhibit "A" hereto, showing the State Court has just setting a discovery schedule that will allow discovery for almost one year. This Declaratory Complaint by Main Street was filed three days later.

## SEVENTEENTH AFFIRMATIVE DEFENSE

Main Street Has a Conflict of Interest in Attempting to Disclaim Coverage under the Policy while the Underlying Lawsuit is Pending.

WHEREFORE, Defendant respectfully requests that this Court enter judgment in its favor and against Plaintiffs, dismissing Plaintiffs' Amended Complaint, with prejudice.

|  |  |
|---|---|
|  | Respectfully submitted,<br>**The Granger Firm** |
| Date: December 12, 2022 | /s/ *Blair H. Granger*<br>Blair H. Granger, Esquire<br>Attorney I.D. #56025<br>David J. Scaggs, Esquire<br>Attorney I.D. # 82117<br>1800 E. Lancaster Avenue, Suite K<br>Paoli, PA 19301<br>610-640-7500<br>blair.granger@thegrangerfirm.com<br>david.scaggs@thegrangerfirm.com |

# UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| MAIN STREET AMERICA ASSURANCE COMPANY and <br> NGM INSURANCE COMPANY, <br>    Plaintiffs <br><br> v. <br><br> ADVANCED PLASTERING, INC. <br>    Defendant | NO. 2:22-cv-03805-TJS |

## CERTIFICATE OF SERVICE

     I, Blair H. Granger, Esquire, hereby certify that on this date, a copy of Defendants' Answer with Affirmative Defense was served upon the parties through the Court's electronic case filing system as follows:

| | |
|---|---|
| Gerald D. Wixted (Bar No. 54545) <br> Dilworth Paxson, LLP <br> 2 Research Way <br> Princeton, New Jersey 08540 <br> gwisted@dilworthlaw.com <br> *Attorneys for Plaintiff* | Susan M. Hogan pro hac vice <br> Joseph Dudek pro hac vice <br> Kramon & Graham, P.A. <br> One South Street, Suite 2600 <br> Baltimore, Maryland 21202-3201 <br> shogan@kg-law.com <br> jdudek@kg-law.com <br> *Attorneys for Plaintiff* |

### THE GRANGER FIRM

Date: December 12, 2022

/s/ *Blair H. Granger*
Blair H. Granger, Esquire
Attorney I.D. #56025
David J. Scaggs, Esquire
Attorney I.D. # 82117
1800 E. Lancaster Avenue, Suite K
Paoli, PA 19301
610-640-7500
blair.granger@thegrangerfirm.com
david.scaggs@thegrangerfirm.com