IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| MAIN STREET AMERICA ASSURANCE COMPANY, NGM INSURANCE COMPANY | : : : : | CIVIL ACTION |
| v. | : : | NO. 22-3805 |
| ADVANCED PLASTERING, INC. | : | |

## MEMORANDUM

**MURPHY, J.**                                                                                                July 11, 2023

**I.      Introduction**

In this case, an insurance company wants us to declare that it does not have to insure a construction subcontractor against potential damages. The subcontractor built the exteriors of homes that were plagued by water damage.

An association representing the owners of the damaged homes sued in Pennsylvania state court. The subcontractor wants its former insurance company to defend or indemnify it, but the insurance company disagrees that coverage is required.

The insurance company says that it did not agree to insure the subcontractor against damages caused by faulty workmanship. Its policy insured the subcontractor against liability *only* caused by "occurrences," which, under Pennsylvania law, does not encompass damages from faulty workmanship. The subcontractor responds that an "occurrence" caused the property damage.

The Third Circuit has clearly addressed this situation, and we are compelled to agree that faulty workmanship does not equate to an occurrence. Unfortunately, the prospect of faulty workmanship is too foreseeable to be considered accidental. And here, the insurance company did not agree to insure against damages caused by poor job performance.

Therefore, we grant the insurance company's motion for judgment on the pleadings.

## II.   Factual Allegations

In 2010, the Haverford Reserve Community Association began its plan of constructing a 100-home, "flexible planned community." DI-21 Ex. D ¶ 34. Haverford Reserve worked with several companies to build the houses, including Guido Homes, Inc. *Id.* Ex. D ¶¶ 22, 23, 39. Guido Homes subcontracted with Advanced Plastering "to install stucco and veneer stonework exteriors to some of the homes." *See id.* ¶¶ 30-33.

Unfortunately for Haverford Reserve, the construction caused problems. *See id.* ¶ 37. Engineers hired by Haverford Reserve found "extensive hidden moisture damage behind the stucco and exterior cladding on homes in the [c]ommunity." *Id.* Ex. D ¶¶ 56, 70. The moisture damage forced Haverford Reserve to embark on a "multi-million dollar repair and remediation project." *Id.* Ex. D ¶ 3.

To hold the construction companies responsible, Haverford Reserve sued them in state court. *See id.* ¶ 34. Haverford Reserve accused the companies, Guido Homes included, of negligence and breaching their express and implied warranties to construct the home exteriors "in a good and workmanlike manner." *See generally id.* Ex. D.

In response, Guido Homes joined Advanced Plastering to the lawsuit. *See generally id.* Ex. E. Guido Homes claimed that, because Advanced Plastering constructed the exteriors of the homes, it was liable for "some or all" of Haverford Reserve's potential damages. *Id.* ¶ 40. It argued that liability would pass to Advanced Plastering if Haverford Reserve succeeded on its claims. *Id.* Ex. E ¶ 43.

Needing a defense and facing the possibility of damages, Advanced Plastering submitted

an insurance claim with Main Street America Assurance Company and NGM Insurance Company (together, "Main Street").[1]  *Id.* ¶ 42.  Main Street issued liability insurance policies to Advanced Plastering from 2010 to 2016 — the time when Advanced Plastering helped construct the home exteriors.  *Id.* ¶¶ 14, 18.  The policies insured Advanced Plastering against liability arising from "'property damage' that is 'caused by an occurrence.'"  *Id.* ¶ 25; *see also id.* Ex. B-1 at 18 ("This insurance applies to 'bodily injury' and 'property damage' only if [t]he 'bodily injury' or 'property damage' is caused by ***an*** '***occurrence***' that takes place in the 'coverage territory' . . . ." (emphasis added)).[2]

Main Street investigated the claim and concluded it did not need to indemnify or defend Advanced Plastering.  *Id.* ¶ 43.  It did agree — for the time being — to defend Advanced Plastering, while fully reserving its rights.  *Id.* ¶ 5.  To confirm its conclusion, Main Street asks us to declare two things: (1) it does not have to defend or indemnify Advanced Plastering from the underlying lawsuit brought by Haverford Reserve, and (2) it may withdraw its defense of Advanced Plastering.  *Id.* ¶ 54.

### III.  Main Street's Motion for Judgment on the Pleadings

Main Street moved for judgment on the pleadings after Advanced Plastering answered its amended complaint.  *See* DI 22, 23.  Main Street says the "language in the insuring agreements"

---

[1] There are two plaintiff insurance companies and two insurance policies, but because there are no differences material to this opinion, we will simply refer to Main Street and its policy.  *See* DI 21 at 1 (defining Main Street America Assurance Company and NGM Insurance Company together as "Main Street"); *id.* ¶ 25 ("In sum, all the coverage forms in the Main Street Policies provide coverage for 'property damage' that is 'caused by an occurrence' and that 'occurs during the policy period,' using identical definitions of 'property damage' and 'occurrence.'").

[2] This citation uses the CM/ECF docketing system's pagination.

is enough to decide the case. DI 23-1 at 8. Its argument favoring judgment on the pleadings is two-fold.

First, Main Street argues the moisture damage did not occur during the time frame that Main Street insured Advanced Plastering. *Id.* at 9. Main Street cites to the "first-manifestation rule," which states that insurance coverage kicks in "when either bodily injury or property damage becomes reasonably apparent." *Id.* (quoting *Pa Nat'l Mut. Cas. Ins. Co. v. St. John*, 106 A.3d 1, 17 (Pa. Super. Ct. 2007)). Because the engineers hired by Haverford Reserve did not discover the exterior water damage until — at the earliest — two years after the insurance policy expired, Main Street does not need to extend its coverage. *See id.* at 10-11.

Second, Main Street argues the damage at the heart of Haverford Reserve's complaint was not caused by an "occurrence," thus, coverage does not attach. *See id.* at 2. Main Street relies on language from the Pennsylvania Supreme Court likening an "occurrence" to an "accident" presenting "a degree of fortuity." *Id.* at 11 (quoting *Kvaerner Metals Div. of Kvaerner U.S. Inc. v. Com. Union Ins. Co.*, 908 A.2d 888, 899 (Pa. 2006)). In Main Street's view, Haverford Reserve sued for faulty workmanship, and courts do not treat faulty workmanship as an "occurrence." *Id.* at 16.

In response, Advanced Plastering first argues that the moisture damage could have "potentially" manifested itself while Main Street's insurance policies were in effect. DI 26-2 at 11-12. Absent "absolute language" in the state court complaint, Advanced Plastering explains it is plausible that the moisture damage first manifested itself during the policy periods. *Id.* at 11. Advanced Plastering tells us it will be put "in between a rock and a hard place" if we conclude otherwise. *Id.* at 9 n.3. Advanced Plastering argues that it might learn — through discovery in

4

the state court lawsuit — that the "manifestation first occurred during the . . . policy periods" and "be left with no insurance at all." *Id.*

Second, Advanced Plastering responds that an "occurrence" caused the moisture damage. *See id.* at 13-24. Advanced Plastering argues that we can "plausibly . . . read" the underlying state court complaint to allege that it used "defective products" to construct Haverford Reserve's homes. *Id.* at 15. The use of defective products, Advanced Plastering says, is treated differently than faulty workmanship under Pennsylvania law, which does not constitute an "occurrence." *Id.* (citing and quoting *Indalex, Inc. v. Nat'l Union Fire Ins. Co. of Pittsburgh*, 83 A.3d 418 (Pa. Super. Ct. 2013)). Further, Advanced Plastering argues that an "occurrence" happened because the water damaged parts of the homes that it did *not* help construct. *See id.* at 17-19. It argues the duty to defend attaches where "other property" is damaged outside of the home exteriors that it built. *See id.* at 18-19 (citing *Pa. Mfrs. Indem. Co. v. Pottstown*, 215 A.3d 1010, 1016-17 (Pa. Super. Ct. 2019).

For the reasons set forth below, we grant Main Street's motion for judgment on the pleadings. It has no duty to defend or indemnify Advanced Plastering because an "occurrence" did not cause the water damage.

**IV.   Jurisdiction**

Main Street requests relief under the Declaratory Judgment Act, which Congress enacted to give courts the authority to "declare the rights" of parties. *See* 28 U.S.C. § 2201(a). We may grant declaratory remedies where "there is an 'actual controversy' based on independent jurisdictional grounds." *Fed. Kemper Ins. Co. v. Rauscher*, 807 F.2d 345, 351-52 (3d Cir. 1986). Therefore, we must make sure that we have independent subject-matter jurisdiction.

And we do. *See* 28 U.S.C. § 1332(a)(1); *see also* DI 21 ¶¶ 7-10. We sit in diversity, so we "must apply state substantive law and federal procedural law." *Chamberlain v. Giampapa*, 210 F.3d 154, 158 (3d Cir. 2000). We are "bound to follow state law as announced by" Pennsylvania: "the highest state court." *Edwards v. HOVENSA, LLC*, 497 F.3d 355, 361 (3d Cir. 2007).

V.  **Standard of Review**

The Federal Rules of Civil Procedure allow a motion for judgment on the pleadings "[a]fter the pleadings are closed — but early enough not to delay trial." Fed. R. Civ. P. 12(c). Judgment on the pleadings "will not be granted 'unless the movant clearly established that no material issue of fact remains to be resolved and that he is entitled to judgment as a matter of law.'" *Jablonski v. Pan Am. World Airways, Inc.*, 863 F.2d 289, 290 (3d Cir. 1988) (quoting *Society Hill Civic Ass'n v. Harris*, 632 F.2d 1045, 1054 (3d Cir. 1980)). "[A]nd, as with review the grant of a [m]otion to [d]ismiss under 12(b)(6), we view the facts alleged in the pleadings and the inferences to be drawn from those facts in the light most favorable to the [non-moving party]." *Leamer v. Fauver*, 288 F.3d 532, 535 (3d Cir. 2002). We may consider "the pleadings and exhibits attached thereto, matters of public record, and 'undisputedly authentic documents attached to the motion for judgment on the pleadings if [a party's] claims are based on the documents.'" *Ettinger & Assocs., LLC v. Hartford/Twin City Fire Ins. Co.*, 22 F. Supp. 3d 447, 449 (E.D. Pa. 2014) (quoting *Atiyeh v. Nat'l Fire Ins. Co. of Hartford*, 742 F. Supp. 2d 591, 595 (E.D. Pa. 2010)).

VI.  **Analysis**[3]

Main Street need not defend or indemnify[4] Advanced Plastering because Haverford Reserve alleged that faulty workmanship — not a fortuitous "accident" — caused the water damage at issue. The Third Circuit has said an insurer has a duty to defend its insured "until it becomes absolutely clear that there is no longer a possibility that the insurer owes its insured a defense." *Ramara, Inc. v. Westfield Ins. Co.*, 814 F.3d 660, 673-74 (3d Cir. 2016). To decide whether the duty to defend attaches, the Third Circuit has "defin[ed] the scope of coverage under the insurance policy on which the insured relies and compar[ed] the scope of coverage to the allegations of the underlying complaint." *Id.* at 673. And "[g]iven the broad scope of the duty to defend, courts construe the complaint in the underlying action liberally, accepting the factual allegations as true and resolving all doubts as to coverage in favor of the insured." *Atain Ins. Co. v. Basement Waterproofing Specialists, Inc.*, 2021 WL 5139903, at *3 (E.D. Pa. Nov. 3, 2021).

Further, we confine our analysis of insurance coverage to only the complaint and the insurance policy because the Pennsylvania Supreme Court "compar[es]" the "four corners" of both documents to answer coverage questions. *Am. & Foreign Ins. Co. v. Jerry's Sport Center, Inc.*, 2 A.3d 526, 609 (Pa. 2010); *see also Ramara*, 814 F.3d at 673 n.9 (referring to the "eight corners rule" that instructs courts "not [to] look outside the allegations of the underlying

---

[3] Whether the moisture damage first manifested when Main Street's insurance policies were in effect is immaterial. Even assuming the water damage first manifested itself between 2010-2016, it does not alter our end conclusion that an "occurrence" did not cause the damage. Therefore, we do not need to address Main Street's argument on this point.

[4] Indemnification and defense are related in that an insurer's duty to defend its insured is broader in scope than its obligation to indemnify them. *Evanston Ins. Co. v. Tristar Prods., Inc.*, 537 F. Supp. 3d 798, 812 (E.D. Pa. 2021); *see Kvaerner*, 908 A.2d at 896 n.7. Thus, if a duty to defend exists, so does a duty to indemnify.

complaint or consider extrinsic evidence").

With this backdrop, we compare Main Street's amended complaint to the language of the insurance policy at issue. The insurance policy states that "insurance applies" only when "'property damage' is caused by an 'occurrence.'" *See, e.g.*, DI 21 Ex. A-1. When faced with similar insurance policy language, the Pennsylvania Supreme Court has equated an "occurrence" to "an accident." *Kvaerner*, 908 A.2d at 897. An accident, according to its "dictionary definition," is "[a]n unexpected and undesirable event" — "impl[ying] a degree of fortuity." *Id.* at 897-98.

The Third Circuit has uniformly adopted the Pennsylvania Supreme Court's definition of an "occurrence" in similar insurance coverage cases. *See, e.g.*, *Am. Home Assurance Co. v. Superior Well Servs., Inc.*, 69 F.4th 143, 147 (3d Cir. 2023); *Berkley Specialty Ins. Co. v. Masterforce Constr. Corp.*, 2023 WL 3378003, at *2 (3d Cir. May 11, 2023); *Sapa Extrusions, Inc. v. Liberty Mut. Ins. Co.*, 939 F.3d 243, 253-54 (3d Cir. 2019). And applying the Pennsylvania Supreme Court's reasoning, the Third Circuit has rejected the contention that faulty workmanship — or a "failure to perform a contract 'in a workman like manner'" — is unforeseeable enough to be considered an accident. *Superior Well Servs.*, 69 F.4th at 147-48; *see also Sapa Extrusions*, 939 F.3d at 254.

Foreseeability matters when determining whether an "occurrence" took place. The Pennsylvania Superior Court has explained that refusing to consider "faulty workmanship" as "sufficiently fortuitous to constitute an 'occurrence' or 'accident' . . . is consistent with [Pennsylvania's] longstanding notion of legal and proximate causation in tort law." *Millers Cap. Ins. Co. v. Gambone Bros. Dev. Co., Inc.*, 941 A.2d 706, 713 (Pa. Super. Ct. 2007).

For example, in *Specialty Surfaces International, Inc. v. Continental Casualty Co.*, the Third Circuit concluded that water damage was "an entirely foreseeable, if not predictable, result" of a company's failure to "properly install [a] drainage system" for synthetic turf.  609 F.3d 223, 239 (3d Cir. 2010).  The Third Circuit rejected a workman's attempt to focus on the specific "work product" that was damaged, versus "whether the alleged damage was caused by an accident or unexpected event, or was a foreseeable result of the faulty workmanship."  *Id.*; *see also Masterforce Constr. Corp.*, 2023 WL 3378003, at *2 ("[D]amage to the agreed-upon contractual work product . . . and damage to other property . . . is a distinction without a difference."); *Sapa Extrusions*, 939 F.3d at 256 ("[A]ny distinction between damage to the work product alone versus damage to other property is irrelevant so long as both foreseeably flow from faulty workmanship.").

Further, courts reject attempts to "recast" faulty workmanship claims as defective product claims.  *See, e.g.*, *Main St. Am. Assurance Co. v. Howard Lynch Plastering, Inc.*, 585 F. Supp. 3d 737, 745 (E.D. Pa. 2022); *Quality Stone Veneer, Inc. v. Selective Ins. Co. of Am.*, 229 F. Supp. 3d 351, 359 (E.D. Pa. 2017).  True, allegations of damages resulting from defective products may constitute an "occurrence."  *See Indalex, Inc. v. Nat'l Union Fire Ins. Co. of Pittsburgh*, 83 A.3d 418, 424 (Pa. Super. Ct. 2013).  But a workman cannot claim that the "active malfunction" of a product caused damages where the underlying allegations clearly demonstrate a faulty workmanship claim.  *See Howard Lynch Plastering*, 585 F. Supp. 3d at 745.

Here, Haverford Reserve's underlying state court complaint repeatedly alleges that faulty workmanship caused the moisture damage.  *See* DI 21 Ex. D ¶¶ 74-75, 77-81.  And the Third Circuit has plainly held that faulty workmanship does not constitute an occurrence.  Advanced

9

Plastering's effort to distance the allegations from faulty workmanship — and move them closer to "defective products" — is unpersuasive.  DI 26-2 at 15.  Haverford Reserve brought breach of warranty and negligence causes of action, but not products liability.  *See generally* DI 21 Ex. D.  "[C]asting such claims as one for negligence does not alone give rise to a duty to defend."  *Main Street Am. Assurance Co. v. Connolly Contractors, Inc.*, 587 F. Supp. 3d 256, 272 (E.D. Pa. 2022).  And regardless, "the nature of the allegations themselves, not the particular cause of action that is pled in the complaint . . . determines whether [insurance] coverage has been triggered."  *Utica Mut. Ins. Co. v. Voegele Mech., Inc.*, 418 F. Supp. 3d 78, 91 (E.D. Pa. 2019).

The closest Advanced Plastering comes to convincing us that "defective product" allegations are present is a single paragraph in Guido Homes' *joinder* complaint against Advanced Plastering.  *See* DI 26-2 at 17 (citing DI 21 Ex. E ¶ 78) (alleging "various components comprising the various elements of the Community and the exterior envelopes of the homes within the Community were defective").  This argument fails for three reasons.  First, the specific allegation supports Guido Homes' *negligence* cause of action.  *See* DI 21 Ex. E at 20 (Count VII: Negligence).  Second, most of Guido Homes' joinder allegations refer to faulty workmanship, not defective products.  *See, e.g., id.* Ex. E ¶¶ 62-64, 72, 79-81.  Third, the allegation itself refers to the "subcontractors," i.e., Advanced Plastering, "*negligently perfom[ing] their work.*"  *Id.* Ex. E ¶ 78 (emphasis added).  Thus, Advanced Plastering's reliance on *Indalex* is inapposite.

We also are not persuaded by Advanced Plastering's argument that, because the moisture damaged property it did not work on, the damage is unforeseeable.  *See* DI 26-2 at 19.  Advanced Plastering leans heavily on the Pennsylvania Superior Court's decision in

*Pennsylvania Manufacturers Indemnity Co. v. Pottstown Industrial Complex LP*, which considered a flood caused by roof leaks as an occurrence. 215 A.3d 1010, 1017 (Pa. Super. Ct. 2019).

Reliance on *Pottstown* is misplaced, as explicated by the court in *Main Street America Assurance Company v. Connolly Contractors, Inc.*, which faced similar facts as us. 587 F. Supp. 3d 256 (E.D. Pa. 2022). Here — similar to *Connelly Contractors* but unlike *Pottstown* — the damage at issue is not to "inventory housed within an insured landlord's property"; the damages is to the "products themselves, the houses." *Id.* at 274.[5] Further, like the damage in *Connelly Contractors*, the "damage to non-defective portions *of the home structure*" foreseeably flows from faulty workmanship. *Id.* (emphasis added) (referencing *Gambone*); *see also Sapa Extrusions*, 939 F.3d at 256.

Therefore, Advanced Plastering's two main arguments favoring the finding of an "occurrence" fail.[6]

---

[5] And the underlying allegations illuminate exactly what was damaged: the homes in the Haverford Reserve community. *See, e.g.*, DI 21 Ex. D ¶¶ 66 ("hidden moisture damage beneath exterior stucco, stone veneer, and other cladding"), 75 ("full removal of stone veneer and stucco cladding, removal and replacement of stone pavers surrounding the entryways, and resulting in damage to the building components underlying the exterior cladding"), 78 ("deterioration of the building components"), 79 ("extensive water damage to the exterior façade components, stone pavers surrounding entryways, and the interior building components, materials, framing, and wood sheathing").

[6] We also disagree with Advanced Plastering's last-ditch argument that Main Street did not "properly preserve [its] potential coverage defense" in its initial reservation of rights letter. DI 26-2 at 27. Under Pennsylvania law, "a reservation of rights . . . must fairly inform the insured of the insurer's position and must be timely." *Brugnoli v. United Nat'l Ins. Co.*, 426 A.2d 164, 167 (Pa. Super. Ct. 1981). "[S]ome level of specificity is necessary" when an insurance company reserves its right to assert "potential defense[s] to coverage." *Selective Way Ins. Co. v. MAK Servs., Inc.*, 232 A.3d 762, 770 (Pa. Super. Ct. 2020). But "list[ing] every potential defense to coverage" is not required. *Id.*

11

**VII.     Conclusion**

Under Pennsylvania and Third Circuit law, we are obliged to hold that an "occurrence" did not cause the moisture damage discovered by Haverford Reserve. Therefore, Main Street does not have a duty to defend or indemnify Advanced Plastering. We grant Main Street's motion for judgment on the pleadings.

---

Main Street sent Advanced Plastering its reservation of rights letter only one month after finding out about Haverford Reserve's lawsuit. *See* DI 21 ¶ 42; DI 22 Ex. 1. In the letter, Main Street stated the following:

> Be advised that if the alleged defects are to the work required by your contract, without an allegation of resultant damages, coverage may not apply for the claim as these defects *would not* meet the definition of "property damage" arising from an "occurrence," under the policy.

DI 22 Ex. 1 at 2 (emphasis added). The letter also said Advanced Plastering's "policy specifically *excludes* coverage for damages to 'your work' or claims to repair or replace 'your work,' including warranties related to 'your work.'" *Id.* at 10. This language refutes Advanced Plastering's supposition that the letter did not "reference . . . that the State Court action did not or might not constitute an occurrence." DI 26-2 at 32. Therefore, Advanced Plastering's argument fails.